UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:22-cr-254 (RC) |
| TYLER ETHRIDGE, | |
| Defendant. | |

**GOVERNMENT'S RESPONSE TO PROBATION'S
SUPPLEMENTAL SENTENCING MEMORANDUM**

Per the Court's Minute Order, issued on January 29, 2024, the government provides this response to the United States Probation Office's ("Probation's") supplemental sentencing memorandum "calculating the applicable guidelines range assuming *arguendo* the Section 1512(c)(2) charge dropped out."

At sentencing, the Court must calculate the Guidelines range for *each* count of conviction, including the § 1512(c)(2) conviction. U.S.S.G. § 1B1.1(a)(4). "'[F]ailing to calculate (or improperly calculating) the Guidelines range' is 'significant procedural error.'" *United States v. Brown*, 892 F.3d 385, 400 (D.C. Cir. 2018) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). As the Court knows, the Supreme Court is reviewing the scope of 18 U.S.C. § 1512(c). *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), *cert. granted*, No. 23-5572 (Dec. 13, 2023). Even if the Supreme Court narrows the scope of the statute, its ruling may not invalidate Ethridge's conviction on Count Two, the charged violation of § 1512(c)(2). *See United States v. Brock*, No. 23-3045, 2023 WL 3671002, at *2 (D.C. Cir. May 25, 2023) (Millett, J., concurring). For this reason, among others, the government does not concede that Ethridge's sentencing guidelines

1

range would necessarily change if the Supreme Court reversed *Fischer*.[1]

Case in point, that is the conclusion Probation reached in its analysis of the Court's hypothetical. *See* ECF No. 39. Probation determined that even "assuming *arguendo* the Section 1512(c)(2) charge dropped out," *see* Minute Order 1/29/24, Ethridge's guidelines range of incarceration would not change, remaining at 46-57 months of imprisonment, *compare* Draft PSR, ECF No. 30 ¶ 120 *with* ECF No. 39 ¶ 31, because Ethridge's conviction under 18 U.S.C. § 1752(a)(1) would still cross-reference to the obstruction guideline, U.S.S.G. § 2J1.2, *see* ECF No. 39 ¶ 11. In its application of the guidelines, Probation has accurately identified the key issue here, which is that the guidelines focus on *conduct*, not the *statutory charge* alone, and thus it is unlikely that *Fischer* will impact Ethridge's sentencing guidelines range.

Nevertheless, the government understands the counterfactual exercise posed by the Court to presuppose that the Supreme Court's *Fischer* ruling would render § 1512(c)(2) completely unavailable, even for guidelines analysis purposes (and even though *Fischer* will not decide that issue). With that in mind, this supplemental sentencing memorandum discusses only how Ethridge's Guidelines would be impacted under the theoretical scenario in which the Supreme Court not only reverses *Fischer*, but does so in a way that invalidates the government's application of § 1512(c)(2) in this case such that Ethridge was not, and could not have been, convicted under § 1512(c), and the obstruction guideline, U.S.S.G. § 2J1.2, cannot be applied to him.

---

[1] For instance, depending on the ruling in *Fischer*, the government may still be able to argue that Ethridge's conviction under 18 U.S.C. § 1752(a)(1) cross-references to the obstruction guideline U.S.S.G. § 2J1.2, because, by a preponderance of the evidence, Ethridge trespassed with the intent to commit obstruction of an official proceeding or another felony. *See* U.S.S.G. § 2B2.3(c) (trespass guideline containing cross reference where "the offense was committed with the intent to commit a felony offense").

**Count One: 18 U.S.C. § 231(a)(3)—Civil Disorder**

Since there is no applicable Chapter Two Guideline for Count One in the Statutory Appendix, use "the most analogous guideline." *See* U.S.S.G. § 2X5.1. Here, that is U.S.S.G. § 2A2.4, "Obstructing or Impeding Officers."

| Base offense level | 10 | U.S.S.G. §2A2.4(a) |
|---|---|---|
| Special offense characteristic | +3 | U.S.S.G. §2A2.4(b)(1)(A) – If the offense involved physical contact, increase by 3 levels<br><br>Ethridge used his body weight to try to hold his ground and resist the efforts of police officers to clear a hallway adjacent to the Rotunda. He also braced against others engaged in the same conduct, contributing his body weight to theirs. In the process, Ethridge made direct and indirect physical contact with police officers who were trying to move him and others out of the area.<br><br>Physical contact need not be direct and encompasses indirect uses of force. *See, e.g.*, *United States v. Taliaferro*, 211 F.3d 412, 415-16 (7th Cir. 2000) (specific offense characteristic properly applied where inmate threw a cup of urine into a prison guard's face); *United States v. Shelton*, 431 F. Supp. 2d 675, 675-77 (E.D. Tex. 2006) (defendant threw a cup containing feces and urine at a prison guard, which struck his head, face, and chest), *aff'd*, 230 F. App'x 457 (5th Cir. 2007). Courts have held that the specific offense characteristic applied to a defendant who worked in concert with a codefendant who made indirect contact with the victim. *See United States v. Beltran-Higuera*, 642 F. App'x 780, 782–84 (9th Cir. 2016). |
| **Total** | **13** | |

3

**Count Three: 18 U.S.C. § 1752(a)(1)—Entering and Remaining in a Restricted Building or Grounds**

| Base Offense Level: | 4 | U.S.S.G. §2B2.3(a) |
|---|---|---|
| Special offense characteristic | +2 | U.S.S.G. §2B2.3(b)(1)(A)(vii): the trespass occurred "at any restricted building or grounds." <br><br> On January 6, 2021, the U.S. Capitol grounds were restricted because protectees of the United States Secret Service were visiting. *See* 18 U.S.C. § 1752(c)(1)(B). |
| Cross Reference | *See below | U.S.S.G. §2B2.3(c)(1): "If the offense was committed with the intent to commit a felony offense, apply §2X1.1 in respect to that felony offense, if the resulting offense level is greater than that determined above." |

Here—in the theoretical scenario where Count Two, the violation of 18 U.S.C. § 1512(c)(2), is unavailable to use as the other felony offense that Count Three, the violation of 18 U.S.C. § 1752(a)(1), was committed to achieve—the other felony offense that Ethridge intended to commit is Count One, the violation of 18 U.S.C. § 231(a)(3). Thus, applying the §2X1.1 cross-reference, the Guidelines for Count Three become the same as for Count One:

| Base Offense Level (adjusted) | 13 (from Count One) | U.S.S.G. §2X1.1(a): "The base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." <br><br> Ethridge entered and/or remained in the restricted area of the Capitol complex and the Capitol building itself for the purpose of obstructing, impeding, or interfering with the police officers' efforts to contain and quell the ongoing civil disorder, as charged in Count One. The substantive offense is thus Count One, and the base offense level for that offense should be |

4

|  |  | applied. |
|---|---|---|
| **Total** | **13** |  |

**Count Four: 18 U.S.C. § 1752(a)(2)—Disorderly and Disruptive Conduct in a Restricted Building or Grounds**

Since there is no applicable Chapter Two Guideline for this offense in the Statutory Appendix, use "the most analogous guideline." U.S.S.G. §2X5.1. Here, that is U.S.S.G. §2A2.4, "Obstructing or Impeding Officers."

| Base offense level | 10 | U.S.S.G. §2A2.4(a) |
|---|---|---|
| Special offense characteristic | +3 | U.S.S.G. §2A2.4(b)(1)—Offense involved physical contact<br><br>*See* discussion in Count One above. |
| **Total** | **13** |  |

**Counts Five and Six: 40 U.S.C. § 5104(e)(2)(D) and (G)—Disorderly Conduct in a Capitol Building and Parading, Demonstrating or Picketing in a Capitol Building**

Counts Five and Six are Class B misdemeanors to which the Sentencing Guidelines do not apply.

**A. Grouping Analysis**

Under U.S.S.G. §3D1.2(a) and (c), "closely related counts" group. Count One comprises a single group (Group One) under U.S.S.G. §3D1.2(a) and (b) because the victims are the groups of officers defending the Pennsylvania Avenue approach to the Capitol and Rotunda.

Count Three and Four comprise a single group (Group Two) under U.S.S.G. §3D1.2(a) and (b) because the victim of those counts is Congress.

The offense level for each group is the offense level for the count in that group with the

5

highest offense level. U.S.S.G. § 3D1.3.

### B. Unit Analysis

Pursuant to U.S.S.G. § 3D1.4, after determining the group with the highest offense level, that offense level is increased according to the number of units generated by the remaining groups. Units are determined by comparing the offense levels for the remaining groups to the offense level of the group with the highest offense level, which here is 13 (for Count One).

Applying § 3D1.4(a) and (b), the unit analysis is as follows:

| Group | Offense Level | Number of Units |
|---|---|---|
| 1 | 13 | 1 |
| 2 | 13 | 1 |

A total of 2 units results in an additional 2 levels added to the highest group offense level. U.S.S.G. § 3D1.4. The final offense level is thus 15.

### C. Criminal History

Ethridge scores zero criminal history points and thus falls under Criminal History Category I.

### D. Section 4C1.1

A new guideline, U.S.S.G. § 4C1.1—created in recent amendments to the Sentencing Guidelines for 2023—provides for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria. *Id.*

Although Ethridge has zero criminal history points, Section 4C1.1 does not apply in this case because his offense involved "violence or credible threats of violence." U.S.S.G. § 4C1.1(a)(3). Although Ethridge himself did not assault a police officer, he forcibly resisted officers in two different locations at two different times, and in both instances his actions credibly

6

threatened violence and aided and abetted other rioters who were being violent. Specifically, in the first instance, Ethridge was part of the mob that rushed and breached the guarded bicycle rack barricades near the Peace Circle. *See* ECF No. 26 at 9-10. In the process, the mob knocked over USCP Officer Caroline Edwards, who sustained multiple injuries as a result, including a traumatic brain injury from her head striking the concrete stairs behind her. *See id.* Ethridge both contributed to the mob surge that overwhelmed the police, including Officer Edwards, and he aided and abetted the rioters who struck the barricade directly in front of her, knocking her to the ground. In the second instance, Ethridge forcibly resisted officers' efforts to clear him and other rioters from a hallway near the Rotunda. *See id.* at 15-16. Again, while Ethridge himself did not strike or assault officers during this skirmish, his actions aided and abetted other rioters who did. *See United States v. Bauer*, 21-cr-386 (TNM), ECF No. 195 (rejecting defendant's claim that § 4C1.1 applies to her because, though not charged with assault, she used violence when she shoved an officer and made a credible threat of violence when she urged the mob to hang Speaker Pelosi). As a result, Ethridge does not satisfy the criteria for § 4C1.1 to apply.

Even if the court were to find § 4C1.1 applicable, it should offset the reduction by varying upwards by two levels. The January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the

floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [the defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions").

Moreover, the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6. This is particularly so given the degree to which individuals, including defendants who have been sentenced, continue to propagate the same visceral sentiments which motivated the attack.

### E. Conclusion

As described above, Ethridge's Guidelines sentencing range depends not only on whether Count Two survives *Fischer*, but on how exactly the Supreme Court interprets § 1512(c)(2), and therefore which "other felony"—Count Two or Count One—is used for the U.S.S.G. §2X1.1(a) cross-reference applicable in Count Four.

If the Supreme Court upholds *Fischer* or reverses in a manner that still enables the government to argue that Count Two may be used as the cross-reference, such as by leaving open the possibility that Ethridge's *intent* was to violate § 1512, *see* note 1, *supra*, Ethridge's sentencing guidelines range of imprisonment would be **57-71 months**.

8

"Assuming *arguendo* the Section 1512(c)(2) charge dropped out" completely, however, *see* 1/24/24 Minute Order, the "other felony" for purposes of the cross-reference would be Count One. In that situation, Ethridge's sentencing guidelines range of imprisonment would be **18-24 months**. If the Court intends to base its sentence off of this latter range, an **upward variance** would be appropriate under the § 3553(a) factors. *See United States v. Fonticoba*, 21-cr-368 (TJK), Sent'g Tr. 1/11/24 at 66–67 (stating that, if Fonticoba's § 1512(c)(2) conviction were invalidated, an upward variance would be appropriate to account for the severity of his conduct).

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY

BY:    */s/ Michael M. Gordon*
        MICHAEL M. GORDON
        Senior Trial Counsel, Capitol Siege Section
        Assistant United States Attorney
        Florida Bar. No. 1026025
        400 N. Tampa Street, Suite 3200
        Tampa, Florida 33602-4798
        michael.gordon3@usdoj.gov
        (813) 274-6000

        */s/ Brendan Ballou*
        BRENDAN BALLOU
        Special Counsel, Detailee
        D.C. Bar No. 241592
        601 D St., NW
        Washington, D.C. 20001
        brendan.ballou-kelley@usdoj.gov
        (202) 431-8493