**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 1:22-cr-254 (RC)** |
| **TYLER ETHRIDGE,** | |
| **Defendant.** | |

<u>**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM
IN RESPONSE TO COURT ORDER REGARDING *BROCK***</u>

Per the Court's Minute Order, issued on March 11, 2024, the government provides this supplemental sentencing memorandum "setting forth the change, if any, in their Guidelines calculations following the Circuit's opinion in *United States v. Brock* (regarding USSG § 2J1.2)."

**A. Change in Offense Level**

In *United States v. Brock*, 94 F.4th 39, 51 (D.C. Cir. 2024), the Court of Appeals for the D.C. Circuit held that the term "administration of justice," as used in U.S.S.G. § 2J1.2, does not apply to Congress' certification of electoral college votes. Accordingly, the enhancement in U.S.S.G. § 2J1.2(b)(2), which requires a three-level enhancement "[i]f the offense resulted in substantial interference with the administration of justice" does not apply where a defendant interfered solely with the certification of electoral college votes. U.S.S.G. § 2J1.2(b)(2); *Brock*, 94 F.4th at 59. This holding also precludes application of the eight-level enhancement in U.S.S.G. § 2J1.2(b)(1)(B), which applies if an offense "involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice," to defendants who interfered solely with Congress' certification of electoral college votes.

Here, the U.S. Probation Office ("Probation") and the government applied both of the

1

above § 2J1.2 enhancements in calculating the Sentencing Guidelines for Count 2, Ethridge's conviction for Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2). *See* PSR ¶¶ 67-68. After *Brock*, that calculation is no longer accurate. Ethridge's Guidelines on Count 2 are now as follows:

| Base offense level | 14 | U.S.S.G. § 2J1.2(a) |
|---|---|---|
| **Total** | **14** | |

Although *Brock* does not impact the Sentencing Guidelines calculations for any of Ethridge's other counts of conviction (*i.e.* Counts 1 and 3-6), the reduced Sentencing Guidelines range for Count 2 affects the grouping analysis.

### B.  Grouping Analysis

Under U.S.S.G. § 3D1.2(a) and (c), "closely related counts" group.  Count 1, Ethridge's violation of 18 U.S.C. § 231(a)(3) (Civil Disorder), comprises a single group (Group One) under U.S.S.G. § 3D1.2(a) and (b) because the victims are the groups of officers defending the Pennsylvania Avenue approach to the Capitol and Rotunda.

Count 2 (Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2)), Count 3 (Entering or Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1)), and Count 4 (Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2)) comprise a single group (Group Two) under U.S.S.G. § 3D1.2(a) and (b) because the victim of those counts is Congress.

Count 5 (Disorderly Conduct in the Capitol Grounds or Building, in violation of 40 U.S.C. § 5104(e)(2)(D)) and Count 6 (Parading, Demonstrating, or Picketing in the Capitol Buildings, in violation of 40 U.S.C. § 5104(e)(2)(G)) are misdemeanors to which the Sentencing Guidelines do

not apply and thus do not group.

The offense level for each group is the offense level for the count in that group with the highest offense level. U.S.S.G. § 3D1.3.

### C.  Unit Analysis

Pursuant to U.S.S.G. § 3D1.4, after determining the group with the highest offense level, that offense level is increased according to the number of units generated by the remaining groups. Units are determined by comparing the offense levels for the remaining groups to the offense level of the group with the highest offense level, which here is 14 (for Group Two).

Applying § 3D1.4(a) and (b), the unit analysis is as follows:

| Group | Offense Level | Number of Units |
|-------|---------------|-----------------|
| 1 | 13 | 1 |
| 2 | 14 | 1 |

A total of 2 units results in an additional 2 levels added to the highest group offense level. U.S.S.G. § 3D1.4. The final offense level is thus 16.[1]

### D.  Criminal History and Guidelines Range

Ethridge scores zero criminal history points and thus falls under Criminal History Category I.[2] Ethridge's criminal history range is thus 21 to 27 months' imprisonment.

---

[1] As Probation and the government have previously explained, *see* PSR ¶¶ 53, 73; Govt. Sent'g Mem., ECF No. 34 at 11-14, 17, the defendant should not receive any credit for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, cmt. (n.1 and 2).

[2] Although Ethridge has zero criminal history points, U.S.S.G. § 4C1.1, which provides for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria, does not apply to him because his conduct at the Peace Circle and in the Rotunda involved "violence or credible threats of violence." U.S.S.G. § 4C1.1(a)(3). Rather than restate evidence and arguments on this point that the government has already submitted to this Court twice, the government incorporates those filings here by reference. *See* Govt. Sent'g Mem.,

**E. Upward Departure or Variance**

After determining the defendant's Guidelines range, a court then considers any departures or variances. *See* U.S.S.G. § 1B1.1(a)-(c) and § 1B1.1, cmt. (background). The Guidelines apply to a "heartland of typical cases." *Koon v. United States*, 518 U.S. 81, 94-95 (1996). A "departure" is based on "the framework set out in the Guidelines," while a "variance" is imposed "outside the guidelines framework" based under the applicable 18 U.S.C. § 3553(a) factors taken as a whole. *United States v. Murray*, 897 F.3d 298, 309 n.8 (D.C. Cir. 2018) (cleaned up). Specific departure statements reflect Commission guidance on what makes a case "atypical" and when departures are "encouraged." *Koon,* 518 U.S. at 94-95.

As described above, the enhancements under U.S.S.G. §§ 2J1.2(b)(1)(B) and (b)(2) no longer apply after *Brock*. But that decision does not undercut the severity of Ethridge's crimes. If anything, tossing aside a barricade; storming, invading, and occupying the Capitol; leveraging his position as a religious leader to call on others to join the fight as a demonstration of their religious commitment; and forcibly resisting police officers' attempts to clear rioters from the building, all in an attempt to stop Congress from certifying a presidential election, is *far more serious* than interfering with a routine court proceeding. *See Brock*, 94 F.4th at 59 ("interference with one stage of the electoral college vote-counting process . . . no doubt endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work"). Although the D.C. Circuit has held that §§ 2J1.2(b)(1)(B) and (b)(2) do not technically apply to the certification of the electoral vote count, that does not prevent this Court from considering how the uniquely horrifying events of January 6 factor into an appropriate sentence. Precisely because the D.C. Circuit held, in *Brock*,

---

ECF No. 34 at 17-18; Govt. Resp. to Probation's Supp. Sent'g Mem., ECF No. 40 at 6-8.

that the Sentencing Guidelines do not account for this crucial factor, the Court should otherwise

depart or vary to impose the government's requested sentence.[3] *See e.g.*, *United States v. Bender*,

21-cr-508-BAH, ECF 161 at 3 n.1 ("The D.C. Circuit issued an opinion on March 1, 2024 in

*United States v. Brock*, No. 23-3045, holding that the sentencing enhancement at U.S.S.G. §

2J1.2(b)(2) does not apply to convictions under 18 U.S.C. § 1512(c)(2) for conduct disrupting

Congress's counting and certification of the electoral college votes on January 6, 2021, but that

decision does not influence the outcome in this case, since *the Court would have varied upwards*

*by at least three offense levels to account for the significant disruption of a critical and important*

*governmental function as a result of defendants' offense conduct if the specific offense*

*characteristic at U.S.S.G. § 2J1.2(b)(2) did not apply.*") (emphasis added). Indeed, pursuant to

*Brock*—which was ultimately a technical dispute over the interpretation of a specific offense

characteristic—a person who obstructed justice during a routine court proceeding, causing

substantial interference, and even using violence or the threat of such violence, would receive a

vastly higher punishment than a person who corruptly intended to stop a proceeding involving the

democratic transfer of power inherent to the U.S. Constitution. That alone warrants an upward

variance.

Chapter 5, Part K of the Guidelines "identifies some of the circumstances that the

Commission may have not adequately taken into consideration in determining the applicable

guideline range," which may warrant a departure. U.S.S.G. § 5K2.0(a)(2)(A). One such

---

[3] As originally calculated in the PSR here, applying the enhancements in U.S.S.G. §§
2J1.2(b)(1)(B) and (b)(2) would result in a total offense level of 25. *See* PSR at ¶¶ 54-72.
Accordingly, the Guidelines range would have been 57-71 months' imprisonment. *See* Govt.
Sent'g Mem., ECF No. 34 at 19.

circumstance is when an offense results in "a significant disruption of a governmental function." U.S.S.G. § 5K2.7.[4] A departure under this guideline is warranted in "unusual" circumstances where the Guidelines do not reflect the appropriate punishment for the offense. *Id.* In such circumstances, "the court may increase the sentence above the authorized guideline range to [1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected." *Id.*

Although by its own terms § 5K2.7 "ordinarily" does not provide for an upward departure when the offense involves obstruction of justice, the obstruction of the Electoral College certification on January 6, 2021, is the type of unusual circumstance that the Sentencing Commission could not have anticipated and that warrants an upward departure. As the commentary explains, departure under § 5K2.7 is appropriate if the disruption of a governmental function is "substantial," meaning "substantially in excess" of the disruption ordinarily involved in an obstruction offense. *See* § 5K2.0 cmt. 3(B)(ii). Those who obstructed the certification proceedings on January 6 targeted the peaceful transfer of power, one of the fundamental and foundational principles of our democracy. They were part of a mob that injured more than one hundred police officers and resulted in more than 2.9 million dollars in losses.[5] Defendants like Ethridge

---

[4] This guideline does not require the government to establish a direct link between the defendant's misconduct and the alleged disruption, nor does it "require that the disruption be of any particular type or consequence." *See United States v. Saani*, 650 F.3d 761, 765–66, 771 (D.C. Cir. 2011).

[5] Given the dangerous circumstances created by the riot, the Court could also depart under § 5K2.14 in addition to, or as an alternative to, departing under § 5K2.7. Section 5K2.14 provides for a departure if "national security, public health, or safety was significantly endangered." The assault on the Capitol endangered the safety of the public, police, and elected officials in a way not already captured by Ethridge's guidelines range, so a departure would be appropriate. *Cf. United States v. Calloway*, 94 F.4th 130, 134 (D.C. Cir. 2024) (affirming departure under § 5K2.14 where district court found that the defendant "created a serious risk that multiple individuals could

"endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *Brock*, 94 F.4th at 59. It was an unprecedented day in American history. Surely few, if any, disruptions of governmental functions have been more "substantial," and it was a disruption far "in excess of . . . that which ordinarily is involved in" an obstruction offense (such as impeding a single judicial proceeding). § 5K2.0(a)(3); *id.* cmt. 3(B)(ii). But, following *Brock*, the seriousness of the crimes committed by defendants like Ethridge is not adequately captured by the applicable Guideline, § 2J1.2. Other judges of this court have already applied § 5K2.7 in January 6 cases. *See, e.g.*, *United States v. Eicher*, 22-cr-38 (BAH), Sent. Tr. 9/15/23 at 50 (applying § 5K2.7 because the defendant "join[ed] a mob, in the center of the melee, and through the sheer numbers and aggressive conduct towards police, breached the Capitol resulting in stopping the legitimate business of Congress for hours").[6]

If the Court decides not to apply a departure within the U.S.S.G., an upward variance to the government's recommended sentence of 60 months of imprisonment is warranted to achieve an appropriate sentence under the § 3553(a) sentencing factors. An upward variance is appropriate when "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018) (cleaned up).

Here, an upward variance is warranted to account for the unique nature and circumstances

---

have been killed or injured").

[6] If the Court does apply a departure, the government requests that the Court also specify that it would have imposed the same sentence as a variance. *See United States v. Brevard*, 18 F.4th 722, 728–29 (D.C. Cir. 2021) (upholding the district court's sentence where the departure was erroneously applied but the district court indicated that it was also imposing the sentence as a variance).

of the offenses and to reflect the seriousness of the offenses. As discussed throughout the government's sentencing memorandum, ECF No. 34, Ethridge's obstruction of justice on January 6 was a serious offense that attacked the fundamentals of American democracy. As Judge McFadden stated in a pre-*Brock* sentencing hearing:

> Regardless of whether the 'administration of justice' language actually applies to this situation, *I have no doubt that the Commission would have intended for this to apply to substantial interference with an official proceeding like a certification process, which is itself more significant than almost any court proceeding*… [Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources.

*United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent'g Tr. 9/22/22 at 86-87 (emphasis added).

Here, the specific facts and circumstances of Ethridge's case and the sentences for comparable individuals, as detailed in the government's sentencing memorandum, *see* ECF No. 34 ("Govt. Sent. Mem.") at 25-27, support an upward variance to 60 months' incarceration. *See United States v. Fonticoba*, 21-cr-368 (TJK), Sent'g Tr. 1/11/24 at 66–67 (stating that, even if the defendant's § 1512 conviction were invalidated, a *significant* upward variance would be warranted to account for the defendant's intent "to obstruct the proceeding and the nature of the proceeding itself") (emphasis added); *see also United States v. Bender, et al.*, 21-cr-508 (BAH), Memorandum Opinion (March 6, 2024), ECF 161 at 3 n.1. Indeed, as described in the government's sentencing memorandum, the conduct of January 6 defendants Daniel Scott (sentenced to 60 months' incarceration in case number 21-cr-292-RCL) and Rachel Powell (sentenced to 57 months in 21-cr-179-RCL) mirrored Ethridge's in many salient respects: all three defendants helped the mob violently break through police lines, encouraged other rioters to fight the police, were not candid with the police during post-arrest interviews, and otherwise acted to obstruct the investigations

against them. *See* Govt. Sent. Mem. at 25-27. Moreover, the main differences between Scott, Powell, and Ethridge's conduct balance each other out. For example, while Scott physically bulldozed police officers, he did not enter the building and volunteered to cooperate against other defendants; Powell did not contact police officers but used a weapon (an ice axe) to break a Capitol window, entered the building twice, and afterward expressed no remorse and continued to justify the riot and the criminal actions of herself and others; meanwhile, although Ethridge did not initiate contact with police nor use a weapon, he spent 30 minutes inside the building, physically resisted the officers' efforts to expel him, and—similar to Powell—continued to stoke the same fires on social media, even after pleading guilty. *See id.* Viewed holistically, Scott, Powell, and Ethridge are similarly culpable and deserve similar sentences. *See id.*

## F.  Conclusion

Adjusting Ethridge's Sentencing Guidelines calculation as dictated by *Brock* results in Ethridge scoring a total offense level of 16 with criminal history category I, and thus a range of imprisonment of 21-27 months.

Nevertheless, the Court should vary upwards and sentence Ethridge to 60 months' imprisonment, the government's pre-*Brock* recommendation, in order to give effect to "the concerns underlying the Government's requests for these enhancements under the § 3553(a) factors at sentencing." *See United States v. Seefried*, 639 F. Supp. 3d 8, 20 (D.D.C. 2022).

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY:     */s/ Michael M. Gordon*
        MICHAEL M. GORDON
        Senior Trial Counsel, Capitol Siege Section

Case 1:22-cr-00254-RC   Document 45   Filed 05/08/24   Page 10 of 10

Assistant United States Attorney
Florida Bar. No. 1026025
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
michael.gordon3@usdoj.gov
(813) 274-6000

*/s/ Brendan Ballou*
BRENDAN BALLOU
Special Counsel, Detailee
D.C. Bar No. 241592
601 D St., NW
Washington, D.C. 20001
brendan.ballou-kelley@usdoj.gov
(202) 431-8493