**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 1:22-cr-254 (RC)** |
| **TYLER ETHRIDGE,** | |
| **Defendant.** | |

## GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this supplemental sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Tyler Ethridge to 53 months of imprisonment, three years of supervised release, $2,000 in restitution, and the mandatory $270 special assessment. The government's recommended custodial sentence represents an upward departure and/or variance from the applicable Sentencing Guidelines range, which is justified for the reasons described below.

### I.     INTRODUCTION

As described in the "Government's Sentencing Memorandum," filed on January 9, 2024, *see* ECF No. 34, defendant Tyler Ethridge—a 35-year-old service crew member for a sewer collection company and a former minister—participated in the January 6, 2021 attack on the United States Capitol, a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million

1

dollars in losses.[1]

After a bench trial with stipulated facts, the Court found Ethridge guilty of two felonies and four misdemeanors. Specifically, the Court found that Ethridge violated 18 U.S.C. §§ 231(a)(3) (Civil Disorder); 1512(c)(2) (Obstruction of an Official Proceeding); 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds); and 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds; and 40 U.S.C. §§ 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building or Grounds); and 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building).

Months after Ethridge's conviction, however, the Supreme Court held in *Fischer v. United States*, 144 S. Ct. 2176 (2024) that Section 1512(c) does not cover "*all* means of obstructing, influencing, or impeding any official proceeding" and remanded *Fischer* to the D.C. Circuit for further proceedings and to assess the sufficiency of the indictment on that count. *Id*. at 2185, 2190. In light of *Fischer*, similar additional litigation would have been necessary here to determine whether Ethridge's conduct still satisfies the elements of a violation of Section 1512(c)(2). Rather than pursue that additional litigation, the government moved to dismiss Ethridge's Section 1512(c)(2) conviction, recognizing the length of time this case has been pending, the number of times sentencing has been continued, the specific facts of this case, the other relevant charges, and

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

the need to promote judicial economy and efficiency. *See* ECF No. 48. The Court granted the government's motion, *see* ECF No. 49, and Ethridge is now due to be sentenced on the remaining counts of conviction.

As explained herein, a sentence of 53 months of incarceration, three years of supervised release, $2,000 in restitution, a fine, and the mandatory special assessment of $270 is appropriate because Ethridge (1) was at the forefront of the first group of rioters to breach the restricted area; (2) helped remove the bicycle rack barricades at the first breach point, which facilitated the mob's success in overwhelming the U.S. Capitol's perimeter defenses; (3) ignored police efforts to repel and disperse him and other rioters on the West Plaza, which included being struck by pepper spray and rubber bullets; (4) climbed scaffolding outside the Capitol building and exhorted other rioters to fight the police; (5) unlawfully entered the U.S. Capitol building through the Upper West Terrace Door; (6) exhibited clear knowledge that his conduct was illegal, such as when he urged another rioter to cover his face to conceal his identity and when he recorded himself justifying his conduct even though he knew it would likely get him fired from his job as a pastor and might lead to him being jailed; (7) penetrated to the Rotunda; (8) braced himself and physically resisted police efforts to force him out of a hallway near the Rotunda; (9) spent a total of 30 minutes inside the building; (10) after January 6, posted multiple statements on social media exalting the riot and demonstrating his lack of remorse; and (11) was not completely truthful in his FBI interviews. The government's recommended sentence reflects the gravity of Ethridge's conduct and the Sentencing Guidelines' failure to fully account for it.

## II.   FACTUAL BACKGROUND

### A.   The January 6, 2021 Attack on the Capitol

The government refers the court to the "Joint Statement of Elements and Facts for Bench Trial with Stipulated Facts," ECF No. 26, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election. The attack resulted in substantial damage to the U.S. Capitol, resulting in losses of more than 2.9 million dollars.

### B.   Ethridge's Role in the January 6, 2021 Attack on the Capitol and Conduct Afterward

The government refers the court to the "Government's Sentencing Memorandum," ECF No. 34, for a detailed account of Ethridge's conduct during and after the January 6, 2021, attack on the Capitol.

## III.   STATUTORY PENALTIES

Ethridge now faces sentencing on each of the counts listed above. The maximum terms of incarceration for each count are detailed in the chart below.

| Count | Statute | Maximum Term of Imprisonment |
|:-----:|:--------|:----------------------------:|
| 1 | 18 U.S.C. § 231(a)(3) | 5 years |
| 3 | 18 U.S.C. § 1752(a)(1) | 1 year |
| 4 | 18 U.S.C. § 1752(a)(2) | 1 year |
| 5 | 40 U.S.C. § 5104(e)(2)(D) | 6 months |
| 6 | 40 U.S.C. § 5104(e)(2)(G) | 6 months |

For the sole felony count, *i.e.*, Count 1, the Court may also impose a term of supervised release of not more than three years and a fine of up to $250,000, and the Court must impose a mandatory special assessment of $100.

4

As for the Class A misdemeanor counts, *i.e.*, Counts 3-4, Ethridge faces up to one year of imprisonment, a maximum of one year of supervised release, a fine of up to $100,000, and a mandatory special assessment of $25 per count. On the Class B misdemeanor counts, *i.e.*, Counts 5-6, Ethridge faces up to six months of imprisonment, a fine of up to $5,000, and a mandatory special assessment of $10.

## IV.    THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). Here, prior to the Supreme Court issuing its *Fischer* decision, the government—at the Court's direction—provided its calculation of what Ethridge's Guidelines would be if the Supreme Court invalidated the application of Section 1512(c)(2) to Ethridge's conduct. *See* ECF No. 40 ("Government's Response to Probation's Supplemental Sentencing Memorandum"). The government stands by that calculation, which determined that Ethridge's advisory sentencing guidelines range would be—and now is—18-24 months of imprisonment. *See id.* at 9.

The government continues to agree with Probation that Ethridge should not receive a reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 because his post-conviction conduct—in particular, his Twitter posts continuing to justify his conduct at the Capitol, even after his conviction on stipulated facts—show that Ethridge has not actually accepted responsibility for his offenses. *See* PSR ¶¶ 53, 73. In the eight months since the government filed its original sentencing memorandum, Ethridge has continued to post to Twitter/X in a manner that reveals he does not accept that his actions on January 6, 2021, were wrong or criminal; in fact, he continues to celebrate them. For example, on July 25, 2024, Ethridge re-posted

a selfie video he recorded inside the Rotunda on January 6, 2021, in which he proclaimed "I hope this doesn't get me thrown in jail. I'm officially a pastor. This is what pastors need to do. [...] Christians, we need to infiltrate every area of society like this. Every area of society like this. Peacefully. But if it takes a little bit of aggression to barge through the walls that Satan separates us from the culture, it's time for the body of Christ to infiltrate the culture." *See* Tweet by "Tyler Ethridge," @TEEthridge on July 25, 2024, available at: https://twitter.com/TEEthridge (last accessed September 9, 2024). While Etheridge is entitled to believe what he believes, he is not entitled to acceptance of responsibility under the U.S.S.G.

Finally, the government reiterates that the PSR incorrectly assessed a two-level reduction pursuant to U.S.S.G. § 4C1.1. Ethridge is not eligible for this reduction because he personally engaged in violence or credible threats of violence. *See* ECF No. 40, at 17-19.

## V.   JUSTIFICATION FOR AN UPWARD DEPARTURE AND/OR VARIANCE

After determining the defendant's Guidelines range, a court then considers any departures or variances. *See* U.S.S.G. § 1B1.1(a)-(c). Because Ethridge's Guidelines range does not capture the unprecedented and uniquely harmful nature of his crimes, which struck at the heart of our democracy and the rule of law, the government respectfully requests that the Court depart or vary upwards from the top of the advisory Guidelines range.

Ethridge was an avid and willing participant in an unprecedented crime. He joined a mob that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, injured more than one hundred police officers and resulted in more than 2.9 million dollars in losses. His offenses targeted the peaceful transfer of power, an essential government function, and one of the fundamental and foundational principles of our democracy.

Like every member of the mob, Ethridge "endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *United States v. Brock*, 94 F.4th 39, 59 (D.C. Cir. 2024). As Judge McFadden put it to another rioter, "[Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources." *United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent'g Tr. 9/22/22 at 86-87.

But nothing in Ethridge's Guidelines calculation reflects these facts. Ethridge would face the same offense level if his crimes had not endangered the democratic process or interfered with the peaceful transfer of power.[2] There is no specific offense characteristic in the Guidelines for attacking democracy or abandoning the rule of law. "And simply saying, yeah, I know I trespassed, I trespassed, that's not really capturing the impact of what that day meant when all of those members of Congress met there to fulfill their constitutional duty." *United States v. Calhoun*, 21-CR-116-DLF, Sent. Tr. at 85. So a sentence within the defendant's Guidelines range here would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

The Guidelines expressly state that a departure is warranted when an offense results in "a significant disruption of a governmental function" and the Guidelines do not reflect the appropriate

---

[2] The D.C. Circuit's holding in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024), finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot when drafting the Guidelines. And the Supreme Court's recent decision in *United States v. Fischer*, -- S.Ct. -- (2024) demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, slip op. at 29 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

punishment for the offense. U.S.S.G. § 5K2.7.[3] In such circumstances, "the court may increase the sentence above the authorized guideline range to [1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected."

It is not hyperbole to call what happened on January 6 a crime of historic magnitude. As judges of this district have repeatedly and clearly stated, January 6 was an unprecedented disruption of the nation's most sacred function—conducing the peaceful transfer of power "The events that occurred at the Capitol on January 6th will be in the history books that our children read, our children's children read and their children's children read. It's part of the history of this nation, and it's a stain on the history of this nation." *United States v. Miller*, 21-CR-75-RDM, Sent. Tr., at 67. But just as the history books will describe the crimes of January 6, so will they tell the story of how this nation responded. Future generations will rightly ask what this generation did to prevent another such attack from occurring. The damage done to this country on January 6 must be reflected in the sentences imposed on those who caused the damage—it must not be treated as just another crime. As several judges have properly remarked:

- "The effort undertaken by those who stormed the Capitol on January 6 and those who entered the Capitol [. . .] was to stop the peaceful transfer of power following the legitimate outcome of our presidential election. That's a process that has been a hallmark of American democracy for 200 years. And that effort to reject the outcome of the 2020 presidential election involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part." *United States v. Languerand*, 21-CR-353-JDB, Sent. Tr., at 33-34.

- "The security breach forced lawmakers to hide inside the House gallery until they

---

[3] This guideline does not require the government to establish a direct link between the defendant's misconduct and the alleged disruption, nor does it "require that the disruption be of any particular type or consequence." *See United States v. Saani*, 650 F.3d 761, 765–66, 771 (D.C. Cir. 2011).

could be evacuated to undisclosed locations. In short, the rioters' actions threatened the peaceful transfer of power, a direct attack on our nation's democracy." *United States v. Fitzsimons*, 21-CR-158-RC, Sent. Tr., at 85-86.

- "But what a dangerous precedent the attack on January 6 set. What a Pandora's Box it opened. We still don't [know] how corrosive it will prove to be to our constitutional order, at least until we have reestablished the practice of a peaceful transfer of power. *United States v. Sparks*, 21-CR-87-TJK, Sent. Tr. at 94.

Indeed, even before *Fischer*, judges of this Court gave significant upward departures and/or variances when they found the advisory guideline range inadequate. *See, e.g.*, *United States v. Hale-Cusanelli*, 21-CR-37-TNM, 9/22/22 Sent. Tr.; *United States v. Christian Secor*, 21-CR-157-TNM, 10/19/22 Sent. Tr.; *United States v. Hunter and Kevin Seefried*, 21-CR-287-TNM. 10/24/22 Sent. Tr.; *United States v. William Watson*, 21-CR-513-RBW, 3/9/23 Sent. Tr.; *United States v. Riley Williams*, 21-CR-618-ABJ, 3/23/23 Sent. Tr.; *United States v. Hatchet Speed*, 22-CR-244-TNM, 5/8/23 Sent. Tr.

And several judges of this Court have upwardly departed in January 6 cases precisely because in a post-*Fischer* world, the advisory guideline range did not adequately take into account all of the relevant circumstances. *See United States v. Eicher*, 22-cr-38 (BAH), Sent. Tr. 9/15/23 at 50 (applying § 5K2.7 because the defendant "join[ed] a mob, in the center of the melee, and through the sheer numbers and aggressive conduct towards police, breached the Capitol resulting in stopping the legitimate business of Congress for hours"); *United States v. Black*, 21-CR-127-ABJ, Sent. Tr. 5/16/23 at 27 (applying an upward departure pursuant to § 5K2.7 for a January 6 rioter).

Recently, in *United States v. Sparks*, 21-CR-87-TJK, Judge Kelly sentenced a defendant who, like Ethridge, was convicted of violating both 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 231. Just like here, the government moved to dismiss Sparks' § 1512(c)(2) count prior to sentencing, in

light of the Supreme Court's *Fischer* decision. And just like Ethridge here, Sparks faced an advisory guideline range of 15-21 months.

Judge Kelly found it important that despite the dismissal of the § 1512(c)(2) count, the defendant's conduct still included "an intent to obstruct or interfere with that proceeding, that important constitutional proceeding," which the court found to be "pretty dark behavior" that "posed a threat to whether our constitutional process will proceed or whether a mob would interfere with that process." *Sparks* Sentencing Tr., at 87-88. The court found that the "typical person convicted of [18 U.S.C. § 231] engaged in nothing at all like the attack on the Capitol and the certification." *Id.* at 94-95. Because Sparks' advisory guideline range was driven by the § 231 conviction, that range did not "account for the defendant's intent to obstruct, not just law enforcement officers doing their duty under that statute, but a proceeding, or for the purposes of [U.S.S.G. §] 5K2.7, a governmental function. And not any proceeding, but one foundational to our country's governance." *Id.* at 93. The court found Sparks' intent to "interfere or obstruct with the electoral college vote certification . . . plays an important role in explaining why" Sparks' advisory guideline range did not fully account for his criminal conduct. *Id.* at 94. Accordingly, the court found a significant upward departure was warranted under both U.S.S.G. §§ 5K2.7 and § 5K2.21, and in the alternative a variance of equal amount was warranted under the § 3553(a) factors. The court then sentenced Sparks to 53 months of imprisonment, approximately 150% above the high end of the advisory guideline range.

Similarly, in *United States v. Robertson*, 21-CR-34-CRC, Judge Cooper resentenced a defendant after the government dismissed the defendant's 1512(c)(2) conviction in light of *Fischer*. The court determined that a new advisory guideline range of 37 to 46 months applied,

but, like Judge Kelly, Judge Cooper found that the post-*Fischer* guidelines did not meaningfully account for the severity of the defendant's crimes, particularly given the Court's prior finding that the defendant had the corrupt intent to interfere with the democratic tradition. *See Robertson* Sent. Tr. at 59-61. Accordingly, the court held that an upward departure was appropriate under U.S.S.G. § 5K2.0 because Robertson's conduct was "more harmful or egregious than the typical case represented by the otherwise applicable guideline range" and under U.S.S.G. § 5K2.7 because Robertson's conduct "resulted in a significant disruption of a governmental function, namely halting of the certification . . . and that is so regardless of whether Section 1512(c) applies." *Id*. at 61. After considering the § 3553(a) factors, Judge Cooper ultimately sentenced Robertson to 72 months of imprisonment, approximately 56% above the high end of the advisory guideline range.

Because the seriousness of defendant's crime is not adequately captured by the applicable Guideline, an upward departure is appropriate here as well. If the Court declines to depart, however, an upward variance is warranted. An upward variance is appropriate when "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018) (cleaned up). While the Supreme Court's decision in *Fischer* has changed defendant's advisory Guideline range, "*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors [because] the Court may still consider [defendant's] serious conduct on January 6th, 2021 in its entirety. To reduce [defendant's] sentence . . . would require this Court to take a drastically different view of [defendant's] conduct." *United States v. Hostetter*, 21-CR-392-RCL, ECF 507, at 4-5 (cleaned up).  Indeed, "*Fischer* does not mean that I cannot consider at sentencing evidence that establishes that the defendant intended to obstruct Congress' certification of the

electoral vote in determining whether . . . the resulting guideline range fully accounts for the criminal conduct." *Sparks* Sentencing Tr. at 95. *See also United States v. Kelly*, 21-CR-708-RCL, ECF 151, at 5 ("Nothing about *Fischer* or any hypothetical outcome of [defendant's] appeal bears directly on the severity of his conduct on January 6th . . . . Likewise, the outcome in *Fischer* would not dictate the Court's application of the sentencing factors prescribed in 18 U.S.C. § 3553(a)"); *United States v. Jensen*, 21-CR-6-TJK, Sent. Tr. at 16 ("given the importance and the significance of the proceeding of certifying the Electoral College votes, I would vary upward -- even if this [sentencing enhancement] didn't apply, I would vary upward when considering the nature of the offense.").

In past sentencings, this court has made clear its view that the January 6 "rioters' actions threatened the peaceful transfer of power, a direct attack on our nation's democracy." *United States v. Fitzsimons*, 21-CR-158-RC, Sent. Tr., at 85-86. Those were not merely empty words—they were a recognition of the seriousness and unprecedented nature of the riot.

Also unprecedented is the need for January 6 sentences to promote respect for the law and deter future crime. *See* 18 U.S.C. § 3553(a)(2)(A), (B). The January 6 rioters went far beyond merely breaking the law. "There is a difference between breaking the law and rejecting the rule of law." *See* Opening Remarks, January 6 Select Committee (Rep. Kinzinger).[4]

And the risk of another attack on the Capitol remains. "The heated and inflammatory rhetoric that brought the defendant to the District has not subsided. The lie that the election was stolen and illegitimate is still being perpetrated." *United States v. Cleveland*, 21-CR-159-ABJ, Sent. Tr. at 94-95. If we are to prevent another January 6 and restore respect for the rule of law,

---

[4] Available at https://www.cnn.com/2021/07/27/politics/read-kinzinger-remarks-0727/index.html

sentences in these cases must send a message, and that message will not be conveyed by treating the January 6 riot as a run-of-the-mill offense.

In addition to departing upwards, other courts have varied upward from the advisory guideline range specifically because of the unique and serious nature of the crimes committed that day; this Court should do no less. *See United States v. Reffitt,* 21-CR-87-DLF, Mem. Op. and Order 4/10/24 at 10-11 (upward variance would be justified because "as other judges in this district have noted, the proceedings at issue on January 6, 2021 were of much greater significance than run-of-the-mill 'judicial, quasi-judicial, and adjunct investigative proceedings'"); *United States v. Fonticoba*, 21-CR-368-TJK, Sent'g Tr. 1/11/24 at 66–67 (stating that, even if the defendant's § 1512 conviction were invalidated, a significant upward variance was warranted to account for the defendant's intent "to obstruct the proceeding and the nature of the proceeding itself"); *United States v. Secor*, 21-CR-157-TNM, Sent. Tr. 10/19/22 at 53 ("I believe both the seriousness of the event — you obstructed the certification of an official proceeding — and your particular role in it . . . require a significant upward variance"); *United States v. Hale-Cusanelli*, 21-CR-37-TNM, Sent. Tr. 9/22/22 at 87 ("I also believe the extensive damage and injuries caused on January 6th with your fellow rioters require additional punishment beyond what my [guideline] calculation allows.").[5]

---

[5] The D.C. Circuit has made clear that it "ordinarily presume[s] a district court imposing an alternative non-guidelines sentence took into account all the factors listed in § 3553(a) and accorded them the appropriate significance." *United States v. Warren*, 700 F.3d 528, 533 (D.C. Cir. 2012) (quoting *United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005)). But as recently discussed in *United States v. Iracks*, 2024 WL 3308241 (D.C. Cir. July 5, 2024), for a sentence above the applicable Guidelines range, the Sentencing Reform Act provides that the district court must state "the specific reason for the imposition of a sentence different from that described [in the Guidelines,]" both orally during the sentencing and on a written form appended to the judgment. 18 U.S.C. § 3553(c)(2) (emphasis added). Accordingly, the government requests that

In this case, the government submits that an upward variance and/or departure to 53 months is appropriate, resulting in the same sentence as Judge Kelly imposed in *Sparks*. Ethridge, like Sparks, was fully cognizant of the procedural significance of January 6 and intent on overrunning Congress to stop the certification of the election from occurring. Ethridge, like Sparks, understood that law enforcement did not condone his presence on Capitol grounds, let alone inside the Capitol building, and pushed forward anyway, ignoring barriers, police orders, rubber bullets, and chemical spray deterrents. And Ethridge, like Sparks, helped lead early groups of rioters through barriers, creating a permission structure that others followed. Moreover, as discussed in the "Government's Sentencing Memorandum," similarly situated defendants received sentences of 57-60 months. ECF No. 34 at 25-27 (citing *United States v. Daniel Scott*, 21-cr-292 (RCL) and *United States v. Rachel Powell*, 21-cr-179 (RCL)).

## VI.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

The government refers the court to the "Government's Sentencing Memorandum," ECF No. 34, for a detailed account of how the sentencing factors articulated in 18 U.S.C. § 3553(a) apply to Ethridge, and why these factors support the government's recommended sentence. *See also United States v. Hostetter*, 21-CR-392-RCL, ECF No. 507 at 4-5 (cleaned up) ("*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors [because] the Court may still consider [the defendant's] serious conduct on January 6th, 2021, in its entirety.")

---

the Court make specific findings that this defendant's "conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range" and "explain why the otherwise applicable Guidelines calculation 'does not fully account for the described criminal conduct.'" *United States v. Brown*, 892 F.3d 385, 404–05 (D.C. Cir. 2018) (quoting *Brown*, 808 F.3d at 867, 872 (D.C. Cir. 2015)).

14

## VII.   RESTITUTION

The government refers the court to the "Government's Sentencing Memorandum," *id.*, for an explanation of why the Court should require Ethridge to pay $2,000 in restitution for his convictions. This amount fairly reflects Ethridge's role in the offenses and the damages resulting from his conduct. Moreover, in cases where the parties have entered into a guilty plea agreement, two thousand dollars has consistently been the agreed upon amount of restitution and the amount of restitution imposed by judges of this Court where the defendant was not directly and personally involved in damaging property. Accordingly, such a restitution order avoids sentencing disparity.

## VIII.   CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of 53 months of imprisonment, three years of supervised release, $2,000 in restitution, and the mandatory $270 special assessment.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


BY:   */s/ Michael M. Gordon*
MICHAEL M. GORDON
Senior Trial Counsel, Capitol Siege Section
Assistant United States Attorney
Florida Bar. No. 1026025
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
michael.gordon3@usdoj.gov
(813) 274-6000