```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
 2                            ---

 3

    UNITED STATES OF AMERICA,      )
 4                                 )
                                   )
 5           Plaintiff,            )  CRIMINAL NO. 21-087-1
                                   )
 6   v.                            )
                                   )  Tuesday, August 27, 2024
 7   MICHAEL SPARKS,               )

 8

              Defendant.
 9
                     TRANSCRIPT OF SENTENCING
10
         BEFORE THE HONORABLE JUDGE TIMOTHY J. KELLY
11                UNITED STATES DISTRICT JUDGE
                             ---
12
    APPEARANCES:      UNITED STATES ATTORNEY'S OFFICE
13                    BY:  EMILY W. ALLEN, AUSA
                           SONIA MITTAL
14                    555 Fourth Street NW
                      Washington, DC 20530
15                    202-252-7759
                      Email: emily.allen@usdoj.gov
16
                      For the Government
17
                      SCOTT T. WENDELSDORF, ESQ.
18                    WESTERN KY FEDERAL COMMUNITY DEFENDER
                      629 S. 4th Street, Suite 200
19                    Louisville, KY 40202
                      502-584-0525
20                    Email: scott_wendelsdorf@fd.org

21                    For the Defendant
                             ---
22
    COURT REPORTER:   CHANDRA R. KEAN, RMR
23                    Official Court Reporter
                      333 Constitution Avenue, NW
24                    Washington, DC 20001

25
```

1                     <u>**PROCEEDINGS**</u>

10:23:33   2       (Court called to order at 10:23 a.m.)

10:23:33   3         DEPUTY COURTROOM CLERK:  This is Criminal

10:23:37   4  Matter 21-87.  *United States of America v. Defendant*

10:23:42   5  *One, Michael Sparks*.

10:23:44   6        Present for the government are Emily Allen and

10:23:47   7  Sonia Mittal.  Present for the United States Probation

10:23:51   8  Office is Sherry Baker.  Present for the defendant is

10:23:55   9  Scott Wendelsdorf.  Also present is the defendant,

10:23:57   10  Mr. Sparks.

10:23:58   11         THE COURT:  All right.  Well, good morning.

10:23:59   12  We are here for the sentencing for Mr. Sparks.

10:24:03   13        Does either side -- before I sort of launch into

10:24:07   14  the usual mechanics of this, does either side have

10:24:12   15  anything preliminary they want to raise?

10:24:16   16         MS. ALLEN:  Good morning, Your Honor.

10:24:16   17         THE COURT:  Good morning.  If you could --

10:24:18   18  Ms. Allen, I don't know why the microphone is pointed --

10:24:21   19  you can either use it from there or come up to the

10:24:24   20  podium, whatever you would like.

10:24:26   21         MS. ALLEN:  I'll just come up.

          22         THE COURT:  All right.

10:24:28   23         MS. ALLEN:  The only thing I wanted to make

10:24:29   24  sure before we begin, Your Honor, is that a sealed

10:24:32   25  filing -- it's a victim impact statement from Sergeant

10:24:35  1    Nichols, and I want to make sure that that was received

10:24:38  2    by the Court.

10:24:39  3            THE COURT:  It was received.  It made it on to

10:24:41  4    the docket.

10:24:42  5            MS. ALLEN:  Thank you.

10:24:43  6            THE COURT:  All right.  Anything from you,

10:24:45  7    Mr. Wendelsdorf?

10:24:46  8            MR. WENDELSDORF:  No, Your Honor.

10:24:47  9            THE COURT:  Okay.  So I have received and

10:24:49  10   reviewed the presentence report and the sentencing

10:24:54  11   recommendation from the probation office.  Those are on

10:24:55  12   the docket at Numbers 134 and 135.

10:25:00  13       I've also received sentencing memoranda from the

10:25:03  14   government and the defendant and all the attachments,

10:25:07  15   including the letter, Mr. Sparks, you wrote to me, and

10:25:11  16   the other -- many other letters of community support.

10:25:15  17   And those are all -- and then the video exhibits

10:25:20  18   submitted by the government, as well as the victim

10:25:24  19   impact statement the government indicated.  Those are

10:25:26  20   all on the docket at 131, 132, 136, 139, and 140.

10:25:32  21       Are there any other -- just for the record, are

10:25:35  22   there any other documents or materials for me to review?

10:25:41  23       From the government?

10:25:42  24            MS. ALLEN:  No, Your Honor.

10:25:42  25            THE COURT:  From the defense?

| | | |
|---|---|---|
| 10:25:44 | 1 | MR. WENDELSDORF:  No, sir. |
| 10:25:45 | 2 | THE COURT:  Okay.  Mr. Sparks, our sentencing |
| 10:25:48 | 3 | hearing today will proceed in four steps.  And all the |
| 10:25:52 | 4 | while, I want you to keep in mind the seriousness, |
| 10:25:54 | 5 | obviously, of why we are here.  You were found guilty of |
| 10:25:58 | 6 | several serious federal crimes, and today's proceeding |
| 10:26:00 | 7 | is about the consequences that you'll face as a result |
| 10:26:03 | 8 | of your decision to commit those crimes. |
| 10:26:07 | 9 | The first step of today's hearing is for me to |
| 10:26:09 | 10 | determine whether you have reviewed the presentence |
| 10:26:14 | 11 | report and to make sure -- and to find out whether there |
| 10:26:19 | 12 | are any outstanding objections to that report, and if |
| 10:26:21 | 13 | so, to resolve those objections. |
| 10:26:27 | 14 | The second step is for me to determine what |
| 10:26:29 | 15 | sentencing guidelines and sentencing range applies in |
| 10:26:33 | 16 | your case based on your criminal history and considering |
| 10:26:38 | 17 | any mitigating or aggravating factors that may warrant a |
| 10:26:43 | 18 | departure under the sentencing guidelines. |
| 10:26:45 | 19 | The third step is for me to hear from the |
| 10:26:47 | 20 | government, from your counsel, and from you if you wish |
| 10:26:53 | 21 | to be heard, beyond what you already wrote to me, about |
| 10:27:00 | 22 | an appropriate sentence.  And the last step requires me |
| 10:27:02 | 23 | to fashion a just and fair sentence in light of the |
| 10:27:04 | 24 | factors Congress set forth in 18 United States Code, |
| 10:27:09 | 25 | Section 3553(a). |

10:27:10   1      And as part of this last step, I will actually

10:27:13   2   impose the sentence along with other required

10:27:17   3   consequences of the offense.

10:27:22   4      So the final presentence report and sentencing

10:27:25   5   recommendation were filed in this matter on August 20th

10:27:27   6   of 2024.

10:27:32   7      Does the government have any objection to any of

10:27:34   8   the factual statements in the report?

10:27:37   9           MS. ALLEN:  No, Your Honor.

10:27:38   10           THE COURT:  All right.  And are you expecting

10:27:40   11   an evidentiary hearing on any matter?

10:27:42   12           MS. ALLEN:  We are not, no.

10:27:44   13           THE COURT:  Okay.  Mr. Sparks, before I turn to

10:27:48   14   your attorney, let me ask you, are you satisfied with

10:27:54   15   your attorney in this case?

10:27:55   16           THE DEFENDANT:  Yes, Your Honor.

10:27:57   17           THE COURT:  Okay.  All right.  And do you feel

10:27:58   18   you've had enough time to talk with him about the

10:28:03   19   presentence report that was filed and the other papers

10:28:05   20   the government filed in connection with this sentence?

10:28:07   21           THE DEFENDANT:  Yes, Your Honor.

10:28:09   22           THE COURT:  All right.  Mr. Wendelsdorf, I know

10:28:13   23   we're going to get into a dispute about the guidelines,

10:28:18   24   and I think I've identified two factual disputes that

10:28:23   25   still remain with regard to the presentence report.  You

| | | |
|---|---|---|
| 10:28:27 | 1 | tell me if I have identified them. |
| 10:28:30 | 2 | You had raised one with regard to Paragraph 29, |
| 10:28:36 | 3 | which is the -- I should -- which is the conclusion |
| 10:28:45 | 4 | that -- in the report anyway -- let me just double-check |
| 10:28:52 | 5 | this.  Right.  Which is the conclusion in the report |
| 10:28:55 | 6 | that it was your client who said, "All it's going to |
| 10:28:59 | 7 | take is one person to go, the rest is following." |
| 10:29:01 | 8 | That's number one. |
| 10:29:03 | 9 | And number two was Paragraph 35, which is a little |
| 10:29:11 | 10 | more -- a little more -- a little more vague, but the |
| 10:29:17 | 11 | fact that it says, The mob shouted where are they |
| 10:29:20 | 12 | counting the votes, it doesn't say directly your client, |
| 10:29:24 | 13 | but you may think that that require -- you think that |
| 10:29:26 | 14 | that requires clarification that it was not your client |
| 10:29:31 | 15 | that said that? |
| 10:29:32 | 16 | MR. WENDELSDORF:  Yes, Your Honor.  And I |
| 10:29:33 | 17 | believe I cited the facts in the record from the trial |
| 10:29:35 | 18 | that I believe support my position.  I have nothing to |
| 10:29:38 | 19 | add. |
| 10:29:39 | 20 | THE COURT:  Okay. |
| 10:29:39 | 21 | MR. WENDELSDORF:  Your Honor heard all the |
| 10:29:41 | 22 | evidence. |
| 10:29:42 | 23 | THE COURT:  Right.  No, no, no, and I think |
| 10:29:44 | 24 | that's fair. |
| 10:29:44 | 25 | Let me just hear -- here is my -- well, does the |

| | |
|---|---|
| 10:29:49 | 1 |
| 10:29:55 | 2 |

government want to be heard on any -- either of those

factual disputes?

        MS. ALLEN:  Your Honor, I'm not sure the

resolution of those disputes really makes much of a

difference in how the case looks and Your Honor's

decisions today.

    Because there's certainly no dispute that

Mr. Sparks was part of the conversation where we -- we

think it's very clear from the evidence that Mr. Sparks

was the one who said, "All it's going to take is one

person to go, the rest is following."

    But even if he weren't, that's a conversation

happening with him participating; he would have heard

it; it goes to his state of mind when he does enter the

building.  But whether he said it or not is not really

something that needs a decision.

    And then the same thing with the "where are they

counting the votes."  I don't know that there was

evidence at trial that Mr. Sparks was one of the people

who said that, though he was standing in the group of

people who are all very clearly yelling that question

out to the officers.

        THE COURT:  Okay.  Very well.  I will say this

with regard to those things.

    First, I think with regard to the statement on the

10:31:11  1    mall, I did spend a fair amount of time with that video,

10:31:18  2    looking at it, trying to see what I -- what I thought of

10:31:20  3    it.

10:31:22  4        And while I think the government is -- may well be

10:31:26  5    right that it doesn't -- I think -- Ms. Allen is right

10:31:38  6    that it would have been a conversation that would have

10:31:40  7    been in earshot of Mr. Sparks.  And considering the

10:31:44  8    overall circumstances, and I'm not sure him saying that

10:31:48  9    adds that much to the overall evidence in the case one

10:31:51  10   way or the other.

10:31:52  11       I mean, he did go into the Capitol as the first

10:31:57  12   person regardless.  So I think -- I'm not sure I have

10:32:02  13   to -- well, I do have to rule on it, but I will go ahead

10:32:05  14   and do it because I spent a lot of time trying to figure

10:32:08  15   out if I thought that was the case.

10:32:12  16       And as to that statement, I do find to a

10:32:14  17   preponderance that Mr. Sparks did make that statement.

10:32:18  18   I think it's something like eight seconds from when the

10:32:23  19   statement is made to when the camera pans back to

10:32:28  20   Mr. Sparks.  And so, and I -- so you can -- and

10:32:34  21   Mr. Sparks speaks then.

10:32:35  22       So, you know, you have a point of comparison

10:32:38  23   between the voices, and I've listened to it a lot.  And

10:32:43  24   based on that, based on the fact that when the camera

10:32:47  25   pans back to Mr. Sparks, he hasn't just -- there's no

10:32:50    1    indication that he's just run up on to the scene, and it

10:32:55    2    seems to me the obvious conclusion based upon his

10:32:58    3    presence right there and the very short -- I believe

10:33:01    4    it's eight seconds -- period between when that's -- the

10:33:04    5    statement in question is made and when Mr. Sparks speaks

10:33:07    6    again and the camera pans over to him, that he's -- that

10:33:11    7    he is the speaker.

10:33:13    8         Again, all I -- as counsel knows, all I have to do

10:33:16    9    is find -- is decide this to a preponderance not to

10:33:21   10    beyond a reasonable doubt.  And I think to a

10:33:23   11    preponderance, the voice matches to me and the other

10:33:26   12    circumstantial evidence suggests that he was the

10:33:32   13    speaker.

10:33:32   14         Again, I'm not sure that it is a decisive piece of

10:33:36   15    evidence given all the other evidence in the case, but I

10:33:39   16    think that's what I can and do find.

10:33:44   17         With regard to the other Paragraph 35, I agree

10:33:49   18    there was no evidence, as you, Mr. Wendelsdorf, made the

10:33:56   19    point.  There was no evidence, conspicuously so, let's

10:33:59   20    put it that way.  There was no evidence that

10:34:03   21    Mr. Sparks -- at trial that Mr. Sparks said -- made that

10:34:05   22    statement.  Certainly, there's no way to tell from the

10:34:14   23    video that he said that.  So I don't believe, and the

10:34:16   24    government is not prepared to try to prove that up now.

10:34:19   25         So I will not make that finding and do not consider

10:34:22   1    that statement against Mr. Sparks --

10:34:30   2                MR. WENDELSDORF:  Thank you, Judge.

10:34:31   3                THE COURT:  -- as part of the sentencing.

10:34:32   4         I will say, just like the first statement, you

10:34:36   5    know, we'll kind of circle back to this, I think -- and

10:34:42   6    so, actually before we come off it, what I'll do is just

10:34:46   7    say if the presentence report can be -- this is

10:34:49   8    Paragraph 35 -- if it can be amended simply to say

10:34:53   9    someone in the mob shouted, "where are they counting the

10:34:57  10    F'ing votes.  So rather than, "the mob shouted,"

10:35:03  11    "someone in the mob," I think emphasizes a little more

10:35:05  12    that the -- it hasn't been proven to a preponderance

10:35:08  13    that it was Mr. Sparks that said that.

10:35:10  14         But I do think -- and I won't spend too much time

10:35:14  15    on this, I'll just say that I -- truly in Mr. Sparks'

10:35:20  16    statement to me, he made the point that he was there to

10:35:23  17    sort of let his voice be heard and observe something

10:35:26  18    that was unfolding.

10:35:28  19         It strikes me that that statement is perfectly

10:35:31  20    consistent with that.  I don't know why you would spend

10:35:34  21    all the effort of getting into the Capitol and then not

10:35:37  22    be looking for where the proceeding was taking place,

10:35:43  23    even if your intention was to merely observe it or to

10:35:50  24    make your voice heard in some way regarding it.

10:35:53  25         So I'm not sure that it really changes things that

10:35:56  1    much, but anyway, that's my ruling on 35.  If the

10:36:00  2    presentence report can reflect that, I think it will be

10:36:05  3    more accurate.

10:36:06  4        All right.  With that change, then, I will accept

10:36:09  5    the facts as stated in the presentence report, and the

10:36:14  6    presentence report will be part of my findings of fact

10:36:17  7    for this sentencing.

10:36:18  8        Now, the determination of the guidelines is next.

10:36:23  9    The presentence report lays out the statutory sentencing

10:36:28  10   framework that applies in this case.  I think at the end

10:36:30  11   of the day, we're only going to have basically two

10:36:34  12   arguments about this.  But let me lay out most of what I

10:36:37  13   think we're all in agreement about.

10:36:39  14       First as a preliminary matter, Congress has imposed

10:36:43  15   a statutory maximum sentence for each of the offenses at

10:36:50  16   issue here today.  For Count 2, that's five years,

10:36:53  17   maximum; for Counts 10 and 11, that's one year; and for

10:36:58  18   Counts 12 and 14, that is six years -- I'm sorry, six

10:37:02  19   months.  Six months.

10:37:02  20       As far as the guidelines go, after grouping -- and

10:37:07  21   we'll talk about -- I know the PSR and the government

10:37:09  22   calculate the total offense level as 14.  We're sort

10:37:16  23   of -- I guess now is a good place to pause.

10:37:21  24       I don't know -- and let me just offer some thoughts

10:37:24  25   on -- so with regard to grouping, you know,

10:37:32  1    Mr. Wendelsdorf, you mentioned -- I think you called it

10:37:36  2    a grouping penalty or --

10:37:37  3              MR. WENDELSDORF:  Enhancement I believe was the

10:37:39  4    term.

10:37:39  5              THE COURT:  Enhancement.

10:37:40  6        As you know, it's not an enhancement.  It's just a

10:37:43  7    way that the guidelines tell me, probation and me, to

10:37:54  8    apply the guidelines.

10:37:55  9        I don't see as far as -- I have looked at what the

10:37:58  10   government submitted, especially how they lay out the

10:38:01  11   authority on Page 26 of their memo, I think the

10:38:05  12   government is right, it is a weird quirk about which

10:38:09  13   particular counts of conviction are in play about how

10:38:13  14   they group.

10:38:15  15       So I don't know if you have anything to add, but to

10:38:18  16   me, the way the government lays out the fact that they

10:38:21  17   group, I think is accurate.  And you may -- you may not

10:38:28  18   particularly like the way it plays out here, but I think

10:38:31  19   that's what the guidelines demand I do.

10:38:35  20             MR. WENDELSDORF:  At the appropriate time,

10:38:37  21   Judge, I would like to be heard on the issue.

10:38:38  22             THE COURT:  Okay.  I think this is the

10:38:40  23   appropriate time.

10:38:43  24             MR. WENDELSDORF:  Okay.  Switch glasses.

10:38:45  25             THE COURT:  So we'll talk about this and then

10:38:47  1    we'll talk about obstruction, which are the two things

10:38:50  2    that really create a disparity between what the two

10:38:54  3    parties think the guidelines should be, putting aside

10:38:57  4    for the moment departures.

10:38:59  5        MR. WENDELSDORF:  Yes, Your Honor.  Thank you

10:39:00  6    for the opportunity to respond to the grouping issue.

10:39:03  7        The PSR and the government argue that the 231 count

10:39:08  8    comprises one group while the 1752 counts comprise a

10:39:11  9    second group.

10:39:12  10   This is based on the assertions that the charges

10:39:14  11   involved different victims, obstruction of police

10:39:18  12   officers during a civil disorder for the 231 charge, and

10:39:22  13   disruption of Congress for the 1752 charges.

10:39:25  14   The grouping analysis we believe of the PSR and the

10:39:29  15   government in their memorandum is flawed for two

10:39:32  16   independent reasons.

10:39:36  17   One is set forth in the defendant's sentencing

10:39:38  18   memorandum, but the second one is inherent in the

10:39:41  19   sentencing memorandum of the United States, and by

10:39:46  20   reference, the PSR.

10:39:48  21   First, the PSR errs in not grouping all counts

10:39:53  22   together in this case in the 3D1.2.  They involve, in

10:39:57  23   our view, the same victim, that is, Congress or the

10:40:00  24   government, as the PSR puts it.

10:40:03  25   As I point out in my sentencing memorandum, the

10:40:06  1    common thread that runs through 18 United States Code

10:40:10  2    231(a)(3), 1752(a)(1), and 1752(a)(2) is interference

10:40:16  3    with governmental functions.

10:40:21  4         In case of 231(a)(3), it is obstructing, delaying,

10:40:25  5    or adversely affecting the, quote, "conduct or

10:40:28  6    performance of any federally projected function."

10:40:31  7         In the case of 1752, it is doing an act, quote,

10:40:35  8    "with intent to impede or disrupt the orderly conduct of

10:40:39  9    government business or official functions that, in fact,

10:40:42  10   impedes or disrupts the orderly conduct of government

10:40:46  11   business or official functions."

10:40:50  12        All three charges plainly constitute, in my view,

10:40:54  13   Your Honor, a common harm, interference with government

10:40:58  14   functions, with a common victim, the government itself.

10:41:02  15        Accordingly, they involve the same victim and the

10:41:05  16   same act or transaction or two or more acts or

10:41:09  17   transactions connected by a common criminal objective or

10:41:12  18   constituting part of a common scheme or plan.

10:41:15  19   Accordingly, they should group, in our view, under

10:41:19  20   3D1.2(a) and or 3D1.2(b).

10:41:24  21        In the sentencing memorandum of the United States,

10:41:27  22   I cited in my sentencing memorandum several other cases

10:41:30  23   in which this grouping did not take place.  And I tried

10:41:34  24   to use those as an example of why this grouping decision

10:41:39  25   is incorrect.

| 10:41:40 | 1 | The government dismissed those references to the |
| 10:41:44 | 2 | other cases arguing that all of the counts in those |
| 10:41:47 | 3 | other cases did, in fact, share a common offense |
| 10:41:51 | 4 | characteristic and were, therefore, appropriately |
| 10:41:54 | 5 | grouped. |
| 10:41:55 | 6 | Even if, as the PSR and the government argue, the |
| 10:42:00 | 7 | charges involve different victims and do not group under |
| 10:42:03 | 8 | 3D1.2(a) and/or (b), both the government and the PSR |
| 10:42:09 | 9 | ignore the directive of 3D1.2(c), which provides that |
| 10:42:15 | 10 | even when charges involve different victims, they must |
| 10:42:19 | 11 | still be considered a single group under 3D1.2 if, |
| 10:42:25 | 12 | quote, "one of the counts embodies conduct that is |
| 10:42:29 | 13 | treated as a specific offense characteristic in" -- this |
| 10:42:32 | 14 | is the important part -- "or other adjustment to the |
| 10:42:36 | 15 | guidelines applicable to another of the counts," close |
| 10:42:39 | 16 | quote. |
| 10:42:40 | 17 | And that is precisely what the PSR does in this |
| 10:42:43 | 18 | case.  It upwardly adjusts the guideline applicable to |
| 10:42:47 | 19 | the 1752 counts because of the offense conduct in the |
| 10:42:52 | 20 | 231 count. |
| 10:42:54 | 21 | Normally, the base offense level for the 1752 |
| 10:42:57 | 22 | counts would be 4 under 2B2.3(a) with two levels added |
| 10:43:05 | 23 | under 2B2.3(b)(1)(A) because the conduct occurred in a |
| 10:43:09 | 24 | restricted building or grounds.  This would result |
| 10:43:12 | 25 | ordinarily in a total offense level of 6. |

10:43:15  1          But the government and the PSR apply the

10:43:19  2     cross-reference of 2B2.3(c) which provides, quote, "if

10:43:23  3     the offense was committed with the intent to commit a

10:43:26  4     felony offense, apply 2X1.1 in respect to that felony

10:43:33  5     offense if the resulting offense level is greater than

10:43:36  6     that determined above."

10:43:39  7          Well, that's exactly what happened.  Let's break it

10:43:41  8     down, if Your Honor please.

10:43:43  9          In Paragraph 58 of the PSR, as to count -- as to

10:43:48  10    the 231 count, the PSR deems the applicable guideline to

10:43:52  11    be 2X5.1 because there's no guideline expressly

10:43:57  12    promulgated to apply to 231.

10:44:00  13         2X5.1 directs us to the most analogous guideline

10:44:05  14    which the PSR deems to be 2A2.4, obstructing or impeding

10:44:10  15    officers.  In Paragraph 59, the PSR and the government

10:44:16  16    agrees, as to the 1752 counts, they deem the appropriate

10:44:21  17    guideline to be, as I just pointed out, 2B2.3, which I

10:44:26  18    think all agree would ordinarily result in a total

10:44:30  19    offense level of 6.

10:44:32  20         However, the PSR goes on to state, and I quote,

10:44:35  21    "the cross-reference notes that if the offense was

10:44:38  22    committed with the intent to commit a felony offense,

10:44:41  23    apply U.S. SG2X1.1 in respect to that felony offense if

10:44:48  24    the resulting offense level is greater than that

10:44:51  25    determined by application of 2B2.3."

10:44:56  1            THE COURT:  Where -- Mr. Wendelsdorf, what
10:44:59  2    paragraph were you just reading from?
10:45:02  3            MR. WENDELSDORF:  Paragraph 59 of the final
10:45:04  4    PSR, Your Honor.
10:45:05  5            THE COURT:  Okay.  I'm there.
10:45:07  6            MR. WENDELSDORF:  In Paragraph 59, and I quote
10:45:09  7    from the PSR, "in this case, Defendant Sparks entered
10:45:12  8    the Capitol Building with the intent to obstruct
10:45:15  9    officers during a civil disorder."  That's 231.
10:45:21  10       Considering the cross-reference -- going back to
10:45:23  11   the quote, "considering the cross-reference, the
10:45:26  12   applicable guideline is USSG 2A2.4," close quote.
10:45:33  13       And then in Paragraph 64, in short, the act or
10:45:37  14   transaction involved in the 231 count was obstructing or
10:45:42  15   impeding officers during a civil disorder.  Precisely
10:45:47  16   because Mr. Sparks obstructed or impeded officers during
10:45:51  17   a civil disorder, the guideline applicable to the 1752
10:45:55  18   counts is adjusted from 2B2.3 and an offense level of 6,
10:46:01  19   to 2A2.4, an offense level of 10.
10:46:05  20       In my view, Your Honor, this constitutes a classic
10:46:09  21   application of 3D1.2(c).
10:46:13  22       So all three charges group under either 3D1.2(a) or
10:46:20  23   3D1.2(b) because the 231 count and the 1752 counts
10:46:26  24   involve the same victim and the same act or transaction
10:46:29  25   or two or more acts or transactions connected by a

10:46:33  1    common criminal objective or constituting part of a

10:46:37  2    scheme or plan.

10:46:38  3         If the Court rejects that analysis and adopts that

10:46:42  4    of the PSR and the government that separate victims

10:46:45  5    were, in fact, involved, then all three charges still

10:46:48  6    group under 3D1.2(c) because the conduct in the 231

10:46:54  7    count was clearly used to upwardly adjust the guideline

10:46:58  8    and offense levels in the 1752 counts.

10:47:03  9         Thank you, Your Honor.

10:47:04  10         THE COURT:  Okay.  Let me hear from the

10:47:06  11    government.

10:47:07  12         I think -- I understood your argument coming in to

10:47:12  13    today regarding the victims, and I think I can't -- I

10:47:15  14    don't have it in front of me the way you described the

10:47:18  15    victim in the civil disorder count, but it's very clear

10:47:23  16    from the elements of the offense that it's a -- that

10:47:26  17    it's the officers.  It's not a proceeding even if the --

10:47:33  18    you know, the elements of the offense are that the

10:47:36  19    defendant knowingly committed or attempted to commit an

10:47:40  20    act with the intended purpose of obstructing, impeding,

10:47:45  21    or interfering with a law enforcement officer.

10:47:46  22         So I think there's a strong argument, and I think

10:47:49  23    in every case this is -- no matter what else in the

10:47:53  24    guidelines is going on, conceptually, we have considered

10:47:59  25    offenses that go -- that are against an officer, let's

10:48:04  1   say this or assault, something like that, as a

10:48:07  2   different -- as having a different victim than offenses

10:48:11  3   that are pointed at a proceeding or a government

10:48:17  4   function or other -- things that are not human beings.

10:48:23  5       And I think that's going to be the government's

10:48:25  6   argument on that front, and I think that has been -- I

10:48:27  7   think that's fairly well-worn -- a well-worn argument

10:48:35  8   that I think courts have -- judges in this court have

10:48:39  9   generally accepted.

10:48:40  10      The other -- I have not heard -- I don't think

10:48:42  11  you -- I think you did not put that down on a paper, the

10:48:45  12  second argument I don't think.

10:48:47  13          MR. WENDELSDORF:  It is a response to the

10:48:48  14  government's sentencing memorandum, Judge.

10:48:49  15          THE COURT:  I'm not telling you -- I'm not

10:48:52  16  upset about it.  I'm just saying I don't think I was

10:48:55  17  prepared to address it.

10:48:57  18          MR. WENDELSDORF:  Right.

10:48:59  19          THE COURT:  And you can make, you know, any

10:49:00  20  argument that comes to you the moment before you step in

10:49:02  21  the courtroom, it seems to me.

10:49:04  22      But, so in particular -- and it may just be that as

10:49:11  23  a matter of fact that is not a specific offense

10:49:13  24  characteristic or an adjustment as those terms are

10:49:19  25  technically used under the guidelines.  It's a

10:49:21  1    cross-reference, but it's not any of those other two

10:49:23  2    animals.

10:49:24  3        But, Ms. Allen, I'll hear from you.

10:49:29  4        MS. ALLEN:  Yes, Your Honor.  So as to the

10:49:30  5    first argument, it's very clear there are two separate

10:49:33  6    victims here:  Congress and the proceedings in Congress,

10:49:36  7    which were the target of the 1752 offenses, and the law

10:49:42  8    enforcement officers who were obstructed, impeded, and

10:49:44  9    interfered with who were the subject of the 231

10:49:48  10   offense.

10:49:49  11       What Mr. Wendelsdorf is citing is the

10:49:51  12   jurisdictional hook for the 231 offense so -- in order

10:49:56  13   to be guilty of 231, there has to be a federal hook

10:50:00  14   there, a federal interest, and that could be either that

10:50:03  15   the civil disorder interfered with interstate commerce

10:50:06  16   or interfered with a federally protected function.  So

10:50:11  17   there are two victims here.

10:50:12  18       And as to the second argument, I understand why

10:50:15  19   Mr. Wendelsdorf would make this argument.  I myself have

10:50:18  20   been confused about this in the past, and I have looked

10:50:21  21   into this.  It turns out that the guidelines themselves

10:50:24  22   specifically reference this.  So at 3D1.2, the

10:50:30  23   Commentary Application Note 5, Paragraph 3 --

10:50:34  24       THE COURT:  For some reason, I have this

10:50:36  25   highlighted.  Either -- I guess it may have come up

10:50:41  1    before me.

10:50:42  2          MS. ALLEN:  And Your Honor is absolutely right.

10:50:45  3    A specific offense characteristic or an adjustment is a

10:50:49  4    different type of animal than a cross-reference.  We are

10:50:53  5    here dealing with a cross-reference under the

10:50:57  6    guidelines.  And as the guidelines themselves

10:50:59  7    specifically say, a cross-reference to another offense

10:51:02  8    guideline does not constitute a specific offense

10:51:06  9    characteristic or other adjustment.

10:51:07  10         THE COURT:  Where does it say that?

10:51:09  11         MS. ALLEN:  It's the third paragraph of

10:51:11  12    Application Note 5.

10:51:13  13         THE COURT:  Yeah, it does say that.  Yeah, this

10:51:16  14    must have come up in another case or I wouldn't have had

10:51:20  15    this highlighted in my guidelines manual.

10:51:25  16         So okay.  Very well.  I think that's right.  It

10:51:29  17    does say that.  And so I think, again, applying the

10:51:33  18    guidelines as I am supposed to, regardless of how the

10:51:39  19    sentence comes out in the end, given what Ms. Allen has

10:51:45  20    pointed out, which is, again, the Application Note 5 of

10:51:52  21    3D1.2, I do think the government's -- the way the

10:51:58  22    government and the PSR lay out the guideline with regard

10:52:03  23    to the grouping is correct.

10:52:06  24         So let's now talk about obstruction.  Why don't --

10:52:14  25    I think maybe the most useful thing is for the

10:52:17  1    government to go first and then -- because it's -- and

10:52:21  2    then I'll hear from you, Mr. Wendelsdorf to poke

10:52:26  3    holes --

10:52:26  4              MR. WENDELSDORF:  Thank you, Judge --

10:52:27  5              THE COURT:  -- in what they're putting forth.

10:52:32  6         This is 3C1.1.

10:52:53  7              MS. ALLEN:  So there are two ways in which

10:52:57  8    Mr. Sparks deleted evidence in this case, and both of

10:53:00  9    them had an obstructive effect on the investigation and

10:53:05  10   the prosecution.

10:53:06  11        And I'd like to consider them both sort of

10:53:08  12   holistically as a course of conduct that the defendant

10:53:11  13   was engaged in from the days following January 6th.  And

10:53:16  14   I think the facts here are very important and very

10:53:20  15   illuminating.

10:53:21  16        On the evening of January 6, Mr. Sparks was

10:53:24  17   immediately identified.  Friends of his reached out and

10:53:27  18   said, you've made the news.  He was aware that he was

10:53:32  19   caught and that he was of great interest to the FBI and

10:53:41  20   to the government.

10:53:43  21        He posted to his Facebook page on January 9th that

10:53:46  22   he would be closing his account.  It seems from the

10:53:48  23   context of that post that he had sort of lost his

10:53:52  24   interest in using social media, lost his faith in --

10:53:57  25   well, as he put it -- in democracy.

10:54:00  1          But what he posted on January 9th was not relating

10:54:03  2    to threats or unwanted solicitations on social media or

10:54:08  3    anything like that.  He sort of indicated he just was

10:54:12  4    tired of using Facebook and what Facebook had done.

10:54:14  5          He did not actually shut his account down, though.

10:54:18  6    And it wasn't until many days later that he took any

10:54:22  7    action with regard to his Facebook account.  And this is

10:54:26  8    what happened.

10:54:27  9          So on January 18th, this is many days -- a couple

10:54:32  10   weeks after the events of January 6, Mr. Sparks' wife

10:54:37  11   texted him at around noon and said specifically with

10:54:41  12   regard to Facebook, quote, "hide everything."

10:54:48  13         That is not something that you say unless you're

10:54:51  14   trying to hide evidence.  That is -- that indicates an

10:54:55  15   effort to hide what he had done from law enforcement.

10:55:01  16         It's not the only inference that could be drawn

10:55:03  17   from that statement, but it's certainly a very, very

10:55:05  18   strong one.  And then you have to combine that with what

10:55:08  19   happened next.

10:55:09  20         Before Mr. Sparks took any action with respect to

10:55:12  21   his Facebook account, the FBI called him, and an FBI

10:55:16  22   agent told him that there was an arrest warrant out for

10:55:19  23   Mr. Sparks and that he would need to report -- if he

10:55:22  24   wanted to avoid being arrested, he could report the

10:55:25  25   following day to self-surrender.

10:55:29  1          And it was only after that phone call, which is

10:55:32  2     about 2:00 p.m. on the same day, January 18, that

10:55:36  3     evening, that Mr. Sparks actually deleted his account,

10:55:40  4     permanently deleted user.  He didn't make his settings

10:55:44  5     private; he didn't block any other users; he simply

10:55:49  6     deleted his entire account.

10:55:51  7          Now, we know what was in that account because

10:55:54  8     unbeknownst to Mr. Sparks at that time, the FBI had

10:55:56  9     already taken steps to preserve the account directly

10:55:58  10    through Facebook.  So several days earlier, the FBI had

10:56:02  11    preserved that evidence.  Because of that, we know

10:56:04  12    exactly what was in Mr. Sparks' Facebook account at the

10:56:08  13    time.

10:56:08  14         So not only do we know for sure that the evidence

10:56:10  15    in that account was very material to the investigation,

10:56:14  16    as we all saw -- the jury saw probably dozens of posts

10:56:19  17    from his Facebook account that all provided very strong

10:56:22  18    evidence of his intent and his activities.

10:56:24  19         But we also know from reviewing that account that

10:56:27  20    it wasn't filled with death threats as Mr. Sparks might

10:56:30  21    have the Court believe.  There simply is no evidence

10:56:34  22    that he was receiving death threats to his Facebook

10:56:37  23    account and that that's what motivated him to delete the

10:56:41  24    evidence.

10:56:42  25         There's really no other conclusion that can be

10:56:44 1    drawn but that in deleting his Facebook account,

10:56:48 2    Mr. Sparks was attempting to obstruct or impede the

10:56:54 3    administration of justice with respect to the

10:56:56 4    investigation and prosecution of this offense.

10:57:01 5        That was an attempt.  It was not successful.

10:57:05 6        With respect to Mr.  Howell's text messages that

10:57:08 7    Mr. Sparks exchanged --

10:57:09 8        THE COURT:  Of course, it doesn't -- just to

10:57:11 9    put on the record, to make clear, it doesn't have to be

10:57:14 10   successful for this adjustment to apply.

10:57:19 11       MS. ALLEN:  Exactly, Your Honor.  And that's

10:57:21 12   kind of my point with respect to the messages with

10:57:23 13   Mr. Howe.

10:57:24 14       Mr. Sparks is now claiming that if we don't know

10:57:27 15   the content of those messages, we can't impose an

10:57:31 16   enhancement for obstruction of justice.  That simply

10:57:33 17   doesn't make any sense.

10:57:34 18       It can't be that the more successfully a defendant

10:57:39 19   obstructs the investigation, the less culpable the Court

10:57:42 20   can hold him with respect to the sentencing guidelines.

10:57:45 21   That just can't be the state of the law.

10:57:47 22       THE COURT:  I guess I agree with that just as

10:57:51 23   you stated it.  Although, just, you know, live by the

10:57:58 24   application -- the commentary -- the application note,

10:58:01 25   die by the application note.

10:58:03  1          Not live or die, but the point is there is

10:58:05  2     something that defines material evidence here, and it

10:58:08  3     does say, "evidence, facts, statement, or information

10:58:12  4     that if believed would tend to influence or affect the

10:58:16  5     issue under determination."

10:58:19  6          So that's Note 6.

10:58:22  7          So is it your argument to me that even though we

10:58:27  8     don't know the content -- and I jumped ahead here, but

10:58:31  9     he's -- I understand by the 20 -- this -- well, why

10:58:38  10    don't you argue -- we haven't gone on to the text yet,

10:58:42  11    so why don't you argue to me the -- I think the argument

10:58:44  12    for the Facebook deletions is fairly straightforward, as

10:58:48  13    you just said.

10:58:53  14         The various posts leading up to January 6 are, at a

10:58:58  15    minimum, evidence of his knowledge of the certification

10:59:02  16    process, his intent that day, and some of them were

10:59:09  17    admitted at trial on those grounds.

10:59:11  18         I'm sorry, but go ahead.

10:59:12  19         Tell me why -- now, the flip side of that is, or

10:59:17  20    the other point is, with regard to the text, we don't

10:59:22  21    have the contents of the texts.  But you would say even

10:59:25  22    so -- and so I don't know what that content is, but I

10:59:30  23    can still -- even if all I had was that, I could find

10:59:35  24    that this applies, even though we don't have the -- and

10:59:39  25    I agree with you, clearly forgetting this guideline, in

10:59:45   1   the normal world of obstruction, if someone were charged

10:59:50   2   with obstruction, you wouldn't have to prove -- if they

10:59:52   3   deleted something that the circumstances suggested was

10:59:56   4   material evidence, you don't have to show what the

10:59:59   5   evidence was because it's gone.

11:00:02   6        You're just saying you think this works the same

11:00:04   7   way.

11:00:05   8        MS. ALLEN:  That's right.  And I think that one

11:00:08   9   of the things that supports that is the only reasonable

11:00:12  10   inference that we're going to ask the Court to draw from

11:00:14  11   the fact that he deleted those text messages.

11:00:17  12        We know, again, the timing here is important.

11:00:20  13   Mr. Sparks voluntarily gave his phone over knowing that

11:00:22  14   was going to happen on January 24.  That's after the

11:00:26  15   date that he self-surrendered.

11:00:28  16        There were text messages from Mr. Howe dated

11:00:30  17   January 22, so we know that he took that action

11:00:34  18   somewhere between January 22 and the day he surrendered

11:00:36  19   his phone two days later.

11:00:39  20        Mr. Sparks wants this Court to believe that this

11:00:42  21   was something he did in the routine course of things;

11:00:44  22   that he just deleted text messages the way anybody else

11:00:48  23   might because he wanted to save room on his phone.

11:00:50  24        That is not supported by any of the other evidence,

11:00:53  25   including the fact that the government recovered other

11:00:57  1    text messages with people who were not Mr. Howe who were

11:01:00  2    not his codefendant in this case that weren't deleted.

11:01:04  3         So clearly Mr. Sparks was not sort of routinely

11:01:07  4    going through his phone and deleting text messages.

11:01:09  5    This was a targeted effort to delete only the text

11:01:13  6    messages between him and his codefendant.

11:01:17  7         The evidence was clearly material to the

11:01:19  8    investigation.  Now, there is a distinction in the

11:01:22  9    guidelines between what is considered material, which

11:01:26  10   would tend to influence or affect the issue under

11:01:30  11   determination, and evidence that is -- that would

11:01:34  12   hinder -- and I'm trying to find the exact cite here to

11:01:40  13   the guidelines.

11:01:45  14        This is in Note 4 --

11:01:50  15             THE COURT:  Well, probably 4D.

11:01:53  16             MS. ALLEN:  4D.

11:02:00  17        So there's a distinction between sort of the

11:02:02  18   exculpatory no --

          19             THE COURT:  Right.

11:02:03  20             MS. ALLEN:  -- when a defendant is interviewed

11:02:05  21   and sort of reflexively denies involvement.

11:02:10  22        And in that situation, it shall not standing alone

11:02:12  23   be sufficient to warrant an adjustment for obstruction

11:02:16  24   unless it resulted in a material hindrance to the

11:02:19  25   official investigation.

11:02:19  1          That's not the standard for deleting evidence,

11:02:22  2    which only has to be material to the investigation.

11:02:25  3    There's no requirement that it caused the material

11:02:28  4    hindrance to the investigation.

11:02:30  5          So you could argue, even if those text messages

11:02:33  6    were exculpatory and showed that Mr. Howe were nowhere

11:02:36  7    near the Capitol on January 6, they would still be

11:02:39  8    material to the investigation.

11:02:40  9          Of course, we know Mr. Howe was present at the

11:02:43  10   Capitol, and it took the FBI more than a year to uncover

11:02:45  11   that.  They did not know that Mr. Howe had been present

11:02:48  12   with Mr. Sparks.  And I think the only reasonable

11:02:51  13   inference that can be drawn from the fact that

11:02:53  14   Mr. Sparks deleted those text messages is that he wanted

11:02:56  15   to keep it that way.  And Mr. Howe wanted to keep it

11:02:59  16   that way.

11:03:00  17         And when Mr. Howe was interviewed as a witness to

11:03:03  18   Mr. Sparks' offenses, he successfully lied to the FBI

11:03:08  19   and prevented them from uncovering the fact that he had

11:03:11  20   been there.

11:03:11  21         Your Honor, that's why this case went to trial in

11:03:15  22   2024 because Mr. Howe was only thereafter added as

11:03:19  23   codefendant, and this case couldn't proceed.  It was

11:03:21  24   clearly a material hindrance to the investigation for

11:03:23  25   the FBI not to know the extent of Mr. Howell's

11:03:27  1    involvement.

11:03:29  2         Whatever was in those text messages would have been

11:03:32  3    important for the FBI to know, and Mr. Sparks knew that

11:03:34  4    and that's why he deleted them just days or hours before

11:03:38  5    he gave his phone over to the FBI.

11:03:44  6         Thank you.

11:03:45  7         THE COURT:  Okay.  Very well.  And maybe just

11:03:49  8    analytic, because this includes attempts -- I don't

11:03:54  9    know.  Maybe analytically the point is, we can't --

11:04:00  10   maybe in a situation where evidence, potentially

11:04:05  11   material evidence is deleted, it still -- I could still

11:04:12  12   find it on an attempt theory even if we don't have what

11:04:15  13   the evidence was, again, based on reasonable inferences.

11:04:18  14        I don't know, but --

11:04:20  15        MS. ALLEN:  I think Mr. Wendelsdorf's argument,

11:04:21  16   which I don't agree with, I think it's incorrect, is

11:04:24  17   that only attempts can be counted toward the guidelines.

11:04:28  18        THE COURT:  That's the implication of it.

11:04:31  19        MS. ALLEN:  Yeah.  And, oh, here we have both.

          20        THE COURT:  Right.

11:04:33  21        MS. ALLEN:  We have an unsuccessful attempt to

11:04:35  22   delete Facebook evidence.  Although, he did actually

11:04:37  23   delete it.

          24        THE COURT:  Right.

11:04:38  25        MS. ALLEN:  It just happens to be -- there

11:04:38  1    happened to be a copy of it somewhere else he didn't

11:04:40  2    know about it.

11:04:41  3         And then there's the successful effort to delete

11:04:44  4    the Howe messages.

11:04:45  5         So either way you slice it, there is more than

11:04:48  6    sufficient evidence to apply 3C1.1 here, but there is --

11:04:53  7    it should be applied for both reasons.

11:04:54  8              THE COURT:  Okay.  Mr. Wendelsdorf.

11:05:26  9              MR. WENDELSDORF:  I think we're in agreement,

11:05:27  10   Your Honor, that the mere canceling of a Facebook

11:05:29  11   account standing alone is not sufficient to support an

11:05:33  12   obstruction of justice finding.

11:05:36  13        Most people do not want government or anyone else

11:05:39  14   snooping through their chats and messages, and these

11:05:43  15   accounts are deleted all the time.

11:05:50  16        But what's interesting here, in this day and age

11:05:53  17   there's an increasing number of apps and protocols

11:05:56  18   providing for confidential communication that is

11:06:00  19   ephemeral.  For example, there is an app called Confide

11:06:05  20   which has an end encryption.  It's ephemeral in the

11:06:10  21   sense that once a message is read, it is deleted

11:06:14  22   completely, and it is screenshot proof.

11:06:18  23        Other messaging apps have already taken up this

11:06:22  24   type of protocol, Snapchat, WhatsApp, Signal, Telegram,

11:06:28  25   Messenger, Instagram.  All of these now provide for

11:06:31  1   either encryption and/or ephemeral nature of the chat,

11:06:38  2   meaning, it could never be recovered once it is made.

11:06:41  3   It's like whispering in somebody's ear.  It's over, it's

11:06:46  4   done, it's gone.

11:06:48  5       So how can we say just deleting an account is

11:06:51  6   somehow obstruction when using one of these apps is not?

11:06:55  7   Are we to start applying obstruction of justice charges

11:06:58  8   routinely against any defendant who utilizes such

11:07:03  9   entirely legal devices because it may thwart government

11:07:07  10  surveillance?  No.  I think we're in agreement on that.

11:07:10  11      The burden is on the government to show the deleted

11:07:13  12  material was likely to thwart the investigation or

11:07:16  13  prosecution, the exact words of 3C1.1.

11:07:21  14      I refer the Court to the case cited in my

11:07:25  15  sentencing memorandum on Page 25, *United States v.*

11:07:29  16  *Sandlin*.  I believe this illustrates the point.

11:07:33  17      In *Sandlin*, the defendant deleted and encrypted

11:07:37  18  messages regarding weapons and gear -- it's a J6-case --

11:07:42  19  deleted encrypted messages regarding weapons and gear

11:07:46  20  the conspirators planned to bring to D.C., and their

11:07:49  21  reasons for doing so, as well as video footage of

11:07:54  22  Mr. Sandlin physically assaulting police officers on

11:07:58  23  January 6.

11:07:59  24      Clearly, clearly relevant material to his

11:08:03  25  prosecution.  And he used this facility, he encrypted,

11:08:08  1    he deleted, it was later recovered, and that's why we

11:08:11  2    know what it was.

11:08:12  3        Here, we have no evidence at all of the content of

11:08:16  4    the deleted messages from Mr. Howe.  Instead, we are

11:08:20  5    asked to speculate as to their likelihood of thwarting

11:08:24  6    the investigation.

11:08:25  7        The messages that we do have are entirely benign.

11:08:30  8    I refer the Court to U.S. Exhibit 713, 305, 304, 301.

11:08:37  9    They are talking about, for example, in 304, Trump will

11:08:42  10   win by a landslide.  Trump will have 293 electoral

11:08:47  11   votes.  He goes on in other chats to talk about the fact

11:08:52  12   that the courts are going to gear up to set aside the

11:08:57  13   election.

11:08:58  14       In one of these chats that is supposedly material

11:09:01  15   to his prosecution, the defendant says, "There's a whole

11:09:05  16   lot of talk about decertification of Arizona and Georgia

11:09:10  17   and in Wisconsin, like it's coming real soon.  Did you

11:09:14  18   hear about the Wisconsin Supreme Court on the election?

11:09:17  19   They ruled that the 2020 election was illegitimate, and

11:09:21  20   now they are moving to decertify."

11:09:23  21       This shows several things.

11:09:25  22       Number one, it shows the benign nature of these

11:09:28  23   communications; and, secondly, it shows no reference to

11:09:32  24   violence.  It shows no reference to force.  In fact, it

11:09:37  25   underscores Mr. Sparks' faith in the judicial system.

11:09:43  1    Hardly material to the prosecution before us today.

11:09:49  2          Regarding the Facebook --

11:09:50  3          THE COURT:  Can I just ask about the *Sandlin*

11:09:53  4    case?

11:09:53  5          The only point you're making with *Sandlin* was that

11:09:58  6    in some ways, the government says analogous to the

11:10:02  7    Facebook situation here, whatever was deleted, they

11:10:06  8    could show what was deleted, and so that was one of the

11:10:13  9    bases by which the government prevailed in getting that

11:10:17  10   enhancement.

11:10:18  11         It doesn't -- it's not an example of -- which would

11:10:23  12   be more helpful to you, but it's not an example of the

11:10:26  13   government being unable to show what the messages or the

11:10:30  14   deleted material was and the Court saying, oh, no, no,

11:10:35  15   no, we're not going to apply it.

11:10:37  16         Is that fair -- do I have that right?

11:10:39  17         It's an example of when they did have it, that was

11:10:41  18   something that the Court relied on.

11:10:43  19         MR. WENDELSDORF:  What would have happened in

11:10:45  20   *Sandlin* had they not had it, and all they had was the

11:10:47  21   fact that he had encrypted data on his phone?

11:10:50  22         THE COURT:  Okay.  Right.  Well, certainly, if

11:10:50  23   that's --

11:10:52  24         MR. WENDELSDORF:  It goes -- I think the burden

11:10:53  25   is on the government to show materiality, and I disagree

11:10:58  1    with Ms. Allen on that point.

11:10:59  2        I do not believe that these messages, these posts

11:11:02  3    to Facebook, were material to this prosecution because

11:11:05  4    they do not indicate any intent to commit violent acts.

11:11:10  5    They do not indicate any intent to break the law.  In

11:11:14  6    fact, they underscore Mr. Sparks' belief and commitment

11:11:17  7    to the rule of law through the course.

11:11:22  8        So I do contest the materiality of these deleted

11:11:25  9    posts.

11:11:25  10   The Facebook content that was recovered from

11:11:29  11   Mr. Sparks' account, in my view, Judge, was just merely

11:11:35  12   hyperbole.  One can find worse every day in the tweets

11:11:40  13   and posts of any member of Congress.

11:11:43  14       And, in fact, let's not forget that it was

11:11:46  15   President Trump who coined the term, "Second Amendment

11:11:50  16   solution," when he was talking about Hillary Clinton.

11:11:54  17   That gets pretty specific.  Nothing like that here.

11:11:57  18       Drag them out.  Hang them high.  This is hyperbole,

11:12:02  19   this is anger.  This is not planning.  This is not

11:12:06  20   relevant.  And I question the materiality of it.

11:12:08  21       None of these communications have plans, no

11:12:14  22   specific threats.  They're just angry words.  Deleting

11:12:19  23   them did nothing, in my view, to obstruct justice.

11:12:22  24       Exactly what constitutes obstruction or what is

11:12:25  25   likely to thwart prosecution, as Your Honor has pointed

11:12:28  1    out, is not clearly defined, and is obviously a very

11:12:33  2    fluid concept.

11:12:34  3        But as Justice Potter Stewart remarked, "I know it

11:12:40  4    when I see it."  And in *Sandlin* we see it, and here, we

11:12:44  5    do not.

11:12:45  6            THE COURT:  All right.  Very well.  I

11:12:49  7    understand your position.

11:12:52  8        So 3C1.1 says -- applies, if the defendant, one,

11:12:59  9    the defendant willfully obstructed or impeded or

11:13:02  10   attempted to obstruct or impede the administration of

11:13:06  11   justice with respect to the investigation, prosecution,

11:13:08  12   or sentencing of the instant offense of conviction; and

11:13:12  13   two, as pertinent here, the obstructive conduct related

11:13:17  14   to the defendant's offense of conviction.

11:13:21  15       It goes on to, as we've discussed, give a lot of

11:13:25  16   examples of conduct that's covered, conduct that's in

11:13:30  17   the application notes, conduct that's covered, conduct

11:13:33  18   that's not covered.

11:13:35  19       Among the conduct that is covered is destroying or

11:13:42  20   concealing or directing or procuring another person to,

11:13:45  21   but destroying or concealing evidence that is material

11:13:48  22   to an official investigation or a judicial proceeding,

11:13:56  23   e.g., shredding a document or destroying ledgers upon

11:13:58  24   learning that an official investigation has commenced or

11:14:00  25   is about to commence or attempting to do so.

11:14:06  1          That's Note 4D.

11:14:08  2          And it elsewhere defines material evidence.

11:14:14  3     Material evidence, facts, statement, or information as

11:14:16  4     used in this section, means evidence, fact, statement,

11:14:18  5     or information that, if believed, would tend to

11:14:22  6     influence or affect the issue under determination.

11:14:26  7          So I think one thing it seems like we all agree on

11:14:29  8     is, look, this is all highly fact and context dependent.

11:14:34  9     It is not a situation where just use of a particular act

11:14:39  10    or the deletion of a particular social media -- for lack

11:14:45  11    of a better word -- app is inherently obstructive.  You

11:14:51  12    have to look -- I have to look at the context.

11:14:55  13         And I think here -- you know, I think here for both

11:14:59  14    the reasons the government is saying that I have a

11:15:03  15    basis, and I -- again, it's the government's burden to

11:15:07  16    prove this to a preponderance, and I think they have.

11:15:10  17    And, again, it's the context.

11:15:12  18         Number one, you've got with regard to the Facebook,

11:15:16  19    if there wasn't this close temporal proximity to

11:15:23  20    Mr. Sparks' wife saying deactivate and hide, deactivate

11:15:30  21    Facebook and hide everything, it's literally a few hours

11:15:33  22    later that he's informed about the arrest warrant.  And

11:15:36  23    then it's a few hours after that that he deactivates or

11:15:40  24    permanently deletes the Facebook account.

11:15:43  25         And what is eventually recovered from that account

11:15:48  1    in the examples the government cites or just, you know,

11:15:56  2    a few of them are evidence.  So I'll just, for the

11:16:01  3    record, exhibits like 325 from the Facebook, 332 from

11:16:07  4    Facebook, and right -- of just a few days before January

11:16:15  5    6, 333 and 335.

11:16:19  6        These are not -- to be clear, Mr. Wendelsdorf is

11:16:21  7    right, they're not plans.  They don't necessarily --

11:16:28  8    they're maybe not quite as material as some things we

11:16:31  9    could talk about that would be even more material.  The

11:16:33 10    question is are they material?

11:16:35 11        And I think -- again, I thought they were relevant

11:16:39 12    to the point where some of them I admitted at trial.  I

11:16:43 13    think they are relevant as intent.  They were relevant

11:16:46 14    to his knowledge of what was happening that day.  So I

11:16:49 15    do think they were material, and on that basis alone, I

11:16:55 16    could find that this enhanced -- this adjustment

11:16:59 17    applied.

11:16:59 18        I just -- two other things I want to -- I think

11:17:03 19    it's important to point out.  That even if -- look,

11:17:11 20    generally speaking, with regard to obstruction, if a

11:17:14 21    person has more than one intent or more than one reason

11:17:20 22    for taking action they take, if one of their reasons for

11:17:24 23    doing so was obstructive, even if they have another

11:17:27 24    reason as well, that doesn't negate the obstructive

11:17:33 25    conduct.

| | | |
|---|---|---|
| 11:17:33 | 1 | And so even if he had dual reasons here, one was to |
| 11:17:39 | 2 | obstruct or impede the administration of justice, to |
| 11:17:42 | 3 | make this evidence unavailable, even if there was some |
| 11:17:48 | 4 | other reason for doing so, like he was receiving some |
| 11:17:52 | 5 | sort of threat. |
| 11:17:53 | 6 | I don't have that direct evidence before me, but |
| 11:17:56 | 7 | even if I did, I'm not sure it would undo the |
| 11:18:01 | 8 | circumstantial evidence here of obstruction. |
| 11:18:03 | 9 | And then on the second part of it, on the texts, |
| 11:18:07 | 10 | look, again, I think the way this should be thought of |
| 11:18:10 | 11 | is almost as -- it is on the government's burden to |
| 11:18:13 | 12 | prove materiality, no question. |
| 11:18:16 | 13 | I think given what -- but I think, again, given the |
| 11:18:23 | 14 | circumstances, given that we know Mr. Howe ended up |
| 11:18:25 | 15 | being charged and a codefendant of the defendant's, |
| 11:18:30 | 16 | given the fact that the only text messages that were |
| 11:18:32 | 17 | deleted were text messages between the two of them, and |
| 11:18:37 | 18 | given that we know the timing of that happened somewhere |
| 11:18:42 | 19 | between December 22nd and January 24th, you know, again, |
| 11:18:51 | 20 | whether you think of that as an attempt or, in fact, |
| 11:18:55 | 21 | that it -- because we don't have the particular |
| 11:19:04 | 22 | information to be able to know exactly what it was, I |
| 11:19:08 | 23 | think, again, when I have to apply this to a |
| 11:19:11 | 24 | preponderance, I think even that would qualify as well. |
| 11:19:15 | 25 | I take your point about *Sandlin*, and there are many |

11:19:18  1    cases -- of course, *Sandlin* is -- the situation there is

11:19:22  2    equivalent to the Facebook situation before me, even

11:19:25  3    though we could quibble about -- you might argue and you

11:19:32  4    did argue that the information was not material.

11:19:33  5        But I think certainly, considering both situations,

11:19:37  6    both examples, I have to apply 3C1.1.

11:19:45  7        All right.  So through those two arguments about

11:19:52  8    the guidelines, we are now at Mr. Sparks' criminal

11:20:02  9    history category, which the PSR calculates he has 0

11:20:05  10   criminal points, places him in Criminal History

11:20:09  11   Category I.  The parties don't quibble with that, I'm

11:20:12  12   sure.

11:20:13  13       And so all of that spits out a guideline range for

11:20:16  14   an offense level of 14 and a Criminal History Category

11:20:20  15   of 1, a guideline range of 15 to 21 months.

11:20:25  16       Other than what you all have already argued to me,

11:20:27  17   is there any additional objection to -- other than what

11:20:31  18   you've already argued to me, and put departures aside

11:20:34  19   for the moment, is there any objection to that

11:20:38  20   calculation?

11:20:39  21       From the government?

11:20:40  22       MS. ALLEN:  No, Your Honor.

11:20:41  23       MR. WENDELSDORF:  Nothing in addition, Your

11:20:44  24   Honor.  Thank you, Judge.

        25         THE COURT:  All right.

| | | |
|---|---|---|
| 11:20:44 | 1 | MR. WENDELSDORF:  I understand your ruling. |
| 11:20:45 | 2 | THE COURT:  All right.  So having now |
| 11:20:46 | 3 | determined -- again, putting departures aside for the |
| 11:20:49 | 4 | moment, the next step ordinarily would be for me to |
| 11:20:55 | 5 | consider departures from the guidelines, sent from the |
| 11:20:57 | 6 | guidelines. |
| 11:20:57 | 7 | I understand the government is asking for a |
| 11:21:01 | 8 | departure under 5K2.7, 5K2.14, and 5K2.21(2).  And it's |
| 11:21:10 | 9 | essentially for the same reasons the government is |
| 11:21:12 | 10 | asking for a variance. |
| 11:21:17 | 11 | So for now, I'm just going to defer on hearing you |
| 11:21:20 | 12 | on a departure and simply sort of combine hearing from |
| 11:21:24 | 13 | you on why there should be a departure, why there |
| 11:21:28 | 14 | shouldn't, and on your argument for variance -- |
| 11:21:32 | 15 | actually, both sides, I guess, argue for a variance |
| 11:21:34 | 16 | here.  These are sort of almost the same argument, so |
| 11:21:39 | 17 | there's no point in me hearing you separately on it. |
| 11:21:42 | 18 | So assuming for the moment, again, with the |
| 11:21:44 | 19 | guideline range calculated as it is, let me just lay out |
| 11:21:49 | 20 | for the record the remaining applicable other penalties |
| 11:21:58 | 21 | that go along with a sentence of 15 to 21 months. |
| 11:22:02 | 22 | So as far as supervised release goes, under the |
| 11:22:04 | 23 | statute, I can impose a supervised release of not more |
| 11:22:08 | 24 | than three years for Count 2, of not more than one year |
| 11:22:13 | 25 | for Counts 10 and 11, and supervised release is not |

11:22:18  1    applicable to Counts 12 and 14.

11:22:24  2        The guidelines range for the terms of supervised

11:22:27  3    release is one to three years for Count 2, one year for

11:22:31  4    Counts 10 and 11, and the guidelines and supervised

11:22:34  5    release are not applicable for Counts 12 and 14.

11:22:39  6        As far as probation goes, under the statute, the

11:22:43  7    defendant is eligible for one to five years of probation

11:22:48  8    on count -- let's see here.  No, no, no.

11:22:58  9        Well, under the guidelines -- under the statute, I

11:23:01  10   believe we have he's eligible for one to five years'

11:23:07  11   probation on Count 2 and up to five years of probation

11:23:12  12   on the remaining counts; and under the guidelines,

11:23:16  13   though, he is ineligible for probation on Counts 2, 10,

11:23:22  14   and 11.

11:23:23  15       As far as fines go, the maximum fine under the

11:23:27  16   statute for Count 2 is $250,000; for Counts 10 and 11,

11:23:33  17   it is $100,000; for Counts 12 and 14, it is $5,000.  And

11:23:39  18   under the guidelines, the recommended fine is between

11:23:42  19   7,500 and $75,000.

11:23:45  20       The government also seeks restitution in the amount

11:23:50  21   of $2,000, and there's also a mandatory special

11:23:54  22   assessment of $170 total due to the Clerk of the Court.

11:24:06  23       So with all of that said, before we move into

11:24:09  24   arguing about variances and departure -- yeah, and let

11:24:19  25   me correct one thing I said about probation.

11:24:22  1          Under -- yeah, no, that's right.  Under Count 2,

11:24:24  2     he's eligible for one to five years of probation, and on

11:24:29  3     Counts 10, 11, 12, and 14, up to five years of probation

11:24:33  4     as far as the statutes go.  I think I didn't say this

11:24:37  5     quite right.  As far as guidelines go, under 2, 10, and

11:24:41  6     11, he is ineligible, and under 12 and 14, the

11:24:44  7     guidelines are not applicable.

11:24:46  8          All right.  So with that correction, have I

11:24:51  9     accurately stated the statutory and guidelines framework

11:24:55  10    under which we're operating in regard to this case, with

11:24:57  11    the exception of a possible departure?

11:25:00  12         Mr. Wendelsdorf.

11:25:01  13             MR. WENDELSDORF:  You have, Your Honor.  Thank

11:25:04  14    you.

11:25:04  15             THE COURT:  Ms. Allen.

11:25:06  16             MS. ALLEN:  Yes, Your Honor.

11:25:06  17             THE COURT:  All right.  I must now consider the

11:25:10  18    relevant factors that Congress set out in 18 -- in

11:25:13  19    addition to considering the arguments for a departure, I

11:25:18  20    have to consider the relevant factors that Congress set

11:25:20  21    out in 18 United States Code, Section 3553(a).  And I

11:25:25  22    must ensure that I impose a sentence sufficient but not

11:25:28  23    greater than necessary to comply with the purposes of

11:25:30  24    sentencing.

11:25:32  25         Those purposes include the need for the sentence

11:25:34  1    imposed to reflect the seriousness of the offense, to

11:25:38  2    promote respect for the law, and to provide just

11:25:41  3    punishment for the offense.

11:25:42  4        The sentence should also afford adequate deterrence

11:25:45  5    to criminal conduct, protect the public from future

11:25:49  6    crimes of the defendant, and promote rehabilitation.

11:25:52  7        And in addition to the guidelines and policy

11:25:54  8    statements, I must consider the nature and circumstances

11:25:57  9    of the offense, the history and characteristics of the

11:26:00  10   defendant, the need for the sentence imposed to comply

11:26:03  11   with the purposes I just mentioned.

11:26:06  12       I have to consider the kinds of sentences

11:26:09  13   available, the need to avoid unwanted sentence

11:26:13  14   disparities among defendants with similar records who

11:26:15  15   have been found guilty of similar conduct, and the need

11:26:19  16   to provide restitution to victims of the offense.

11:26:22  17       So without further ado, I will hear first from the

11:26:28  18   government with regard to their arguments based on the

11:26:32  19   3553(a) factors and a variance, and their arguments with

11:26:39  20   regard to a departure.

11:26:56  21       MS. ALLEN:  Your Honor, I have a few exhibits

11:26:58  22   that I'd like to show.

11:27:01  23       THE COURT:  Do we have -- is the microphone

11:27:02  24   working there?  I just don't know whether --

11:27:04  25       MS. ALLEN:  Can you hear me?

11:27:05  1          THE COURT:  Yeah, it is.  It just may need to

11:27:06  2    be closer to you to pick you up.

11:27:40  3          MS. ALLEN:  As Your Honor found, it was Michael

11:27:42  4    Sparks who announced on his way to the Capitol, "All

11:27:45  5    it's going to take is one person to go, the rest is

11:27:48  6    following."

11:27:49  7          That was what was on his mind and on the mind of

11:27:54  8    his group of friends, including Mr. Howe, as they left

11:27:56  9    the speech at the Ellipse and headed to the Capitol.

11:27:59  10   They were getting in that building.

11:28:03  11         Mr. Sparks was ready for it.  He had his

11:28:06  12   bulletproof vest on; that's undisputed.  He had his

11:28:10  13   friends with him.  He came prepared to fight.  And it

11:28:15  14   was Mr. Sparks who was the one person who went.

11:28:32  15         As Your Honor has seen many times in this video,

11:28:34  16   which has been played at the trial and again here, and

11:28:38  17   I'm sure Your Honor has reviewed it before the

11:28:40  18   sentencing, the others around him hesitated.  They saw

11:28:44  19   the armed police officer.  They shouted, "Don't go in.

11:28:48  20   Don't go in."

11:28:50  21         Mr. Sparks was the test.  He made it in safely, and

11:28:56  22   so the rest did, in fact, follow just as Mr. Sparks had

11:29:01  23   predicted.

11:29:02  24         It was him who gave the green light to the rest of

11:29:06  25   the mob.

11:29:08  1        Mr. Sparks prepared obsessively for this moment for

11:29:14  2    months and weeks and days ahead of time.  He followed

11:29:18  3    the political news and the theories about how the people

11:29:22  4    he supported would interfere with the election,

11:29:26  5    specifically the theories and the news about how they

11:29:29  6    could interfere with the electoral college

11:29:33  7    certification.

11:29:33  8        He used increasingly desperate rhetoric over time.

11:29:39  9    "Drag these clowns out of office in December."

11:29:43  10       Then on Christmas Eve, December 24, "How about we

11:29:46  11   the people drag you out by your face?"

11:29:49  12       On January 3 --

11:29:51  13       THE COURT:  Ms. Allen, who are the -- just so I

11:29:54  14   don't forget them.  One is, is it now undisputed about

11:29:57  15   the bulletproof vest?  Why did you say that?

11:30:00  16       MS. ALLEN:  Your Honor, that was part of the

11:30:01  17   PSR, and it was my understanding that Mr. Wendelsdorf

11:30:04  18   did not object to that statement in the PSR that he was

11:30:07  19   wearing his bulletproof vest.

11:30:09  20       MR. WENDELSDORF:  Well, we certainly objected

11:30:11  21   at trial.

          22       THE COURT:  Okay.

11:30:11  23       MR. WENDELSDORF:  And we argued to the jury at

11:30:13  24   trial that there was no evidence he was wearing a

11:30:15  25   bulletproof vest.  But I understand.

11:30:17  1          THE COURT:  All right.  I just wanted to

11:30:18  2   understand the basis for that.

11:30:21  3      Okay.  And number two, is when you say, you know,

11:30:27  4   he followed political news and the theories about how

11:30:30  5   the people he supported would interfere with the

11:30:32  6   election, specifically, the theories and news about how

11:30:38  7   they could interfere with the electoral college

11:30:41  8   certification.

11:30:41  9      What do you mean specifically by that?

11:30:43  10         MS. ALLEN:  Well, one piece of evidence that

11:30:45  11   was important to the 1512 arguments here was an article

11:30:50  12   that he shared --

11:30:51  13         THE COURT:  Yes.

11:30:52  14         MS. ALLEN:  -- that Laura Bush had opined -- it

11:30:55  15   was a very, very detailed description of exactly what

11:30:57  16   she intended to happen on January 6, which is what

11:31:01  17   almost happened and then didn't.

11:31:02  18         THE COURT:  Well, but that was -- but what that

11:31:05  19   article was about was about a -- people objecting and

11:31:11  20   members of Congress objecting, correct?

11:31:13  21         MS. ALLEN:  Yes.

11:31:14  22         THE COURT:  It wasn't about people storming the

11:31:17  23   Capitol.

11:31:17  24         MS. ALLEN:  No, no, no.

11:31:19  25         THE COURT:  Right.

| 11:31:20 | 1 | MS. ALLEN:  And I mean that -- |
|---|---|---|

11:31:20    1            MS. ALLEN:  And I mean that --

11:31:21    2            THE COURT:  So when we say "interfering with

11:31:23    3    the proceeding," that was part of the proceeding?  I

11:31:26    4    mean, it is a lawful part of the proceeding that people

11:31:29    5    can object -- well, not people, members of Congress, can

11:31:34    6    object to the proceeding, object to particular votes,

11:31:38    7    and we all -- there's a process.

11:31:39    8            MS. ALLEN:  Well, Your Honor, I will agree that

11:31:42    9    it was peaceful, but I don't know if I -- I think

11:31:44    10   there's some -- a lot of open questions as to whether

11:31:47    11   that was lawful.  And I think a lot of the people who

11:31:49    12   served as the architects for that are now under

11:31:52    13   indictment in other jurisdictions.

11:31:54    14           THE COURT:  Well, okay.  You mean like

11:31:57    15   alternate electors?

11:31:59    16           MS. ALLEN:  Exactly.

11:31:59    17           THE COURT:  And that's what that article was

11:32:01    18   about?

11:32:01    19           MS. ALLEN:  Well, the alternate slate of

11:32:04    20   electors was the basis for the objections to the real

11:32:09    21   electors being accepted in Congress.

            22           THE COURT:  Well --

11:32:13    23           MS. ALLEN:  It was all sort of part of the same

11:32:16    24   underpinning.

11:32:18    25           THE COURT:  There might have been other reasons

11:32:20  1   to object.  There might have been other reasons.  I

11:32:22  2   haven't -- this isn't something I've drilled down on

11:32:25  3   before today, but there might have been other reasons

11:32:27  4   for folks to object that -- I mean, I have seen enough

11:32:34  5   news about that day to know that there were people who

11:32:37  6   wanted to -- and it really doesn't matter for purposes

11:32:42  7   here, but there were folks who said we need to return

11:32:45  8   things to the state or -- well, whatever.  There were

11:32:49  9   irregularities in the counting, et cetera, et cetera.

11:32:51  10        My only point is -- but I take your point.  Look,

11:32:54  11  this particular article, which I do have right in front

11:32:57  12  of me here, is not -- is about -- it is a path to doing

11:33:06  13  this.  It's about obstruction, but there's nothing -- I

11:33:21  14  don't -- they split up.  They go to debate.  They

11:33:35  15  ultimately have to decide the outcome of the election.

11:33:39  16  Each senator gets one vote.  If it goes to the House ...

11:33:42  17       "So if it comes time to vote and the Republicans in

11:33:47  18  the House and the Senate decide, gosh, there was so much

11:33:48  19  fraud in this election and for whatever reason they

11:33:50  20  decide they will not certify it, then guess what, Donald

11:33:56  21  Trump remains President.  So is there still hope?"

11:34:00  22       I don't know that this talks about false electors

11:34:05  23  in this article.

11:34:06  24            MS. ALLEN:  No, I think it does.

          25            THE COURT:  Okay.  All right.

11:34:07  1              MS. ALLEN:  And to be clear, I don't think

11:34:08  2      there's any facially about that article that

11:34:16  3      demonstrates any illegality.

          4              THE COURT:  Okay.

11:34:16  5              MS. ALLEN:  Certainly behind the scenes under

11:34:18  6      the surface, one could argue, and we could debate all

11:34:21  7      day whether -- what was going on.  But certainly

11:34:22  8      Mr. Sparks was following the efforts to change the

11:34:25  9      results of the election as early as November 8 when he

11:34:30  10     began posting about it, but certainly into December and

11:34:33  11     January as he was making plans to come to the Capitol.

11:34:37  12         And he knew the proceeding that was going to be

11:34:39  13     happening that date, notwithstanding the fact that his

11:34:43  14     conviction for 1512 was dismissed.

11:34:49  15         So as Your Honor can see on the screen, his

11:34:51  16     rhetoric became more and more violent over time, up to

11:34:56  17     January 3rd when he's, again, talking about dragging

11:34:59  18     lawmakers out of Congress.  This is tyranny.  And when

11:35:03  19     he was asked by a friend, Are you going to see Trump,

11:35:06  20     when he was asked that question on January 4, clearly

11:35:09  21     referring to January 6, his answer was, "We're going to

11:35:12  22     drag Congress out by their face if need be.  We are in

11:35:15  23     tyranny."  So yes -- he was going.

11:35:21  24         He also talked about bearing arms for Donald Trump

11:35:25  25     as early as November 8.  "Let us know if we need to bear

11:35:31  1  arms."

11:35:31  2      He advocated for civil war on January 1, 2021, in

11:35:38  3  his Parlor account, which Mr. Sparks would have

11:35:41  4  understood was a less censored and more safe environment

11:35:47  5  to make statements like that, his rhetoric on Parlor

11:35:51  6  being -- going further than what he said on Facebook.

11:35:54  7      And the next day, as we discussed pretrial but was

11:35:56  8  not introduced at the trial, Mr. Sparks in fact bought a

11:36:00  9  semiautomatic firearm.

11:36:04  10      Even after January 6, he has shown no remorse and

11:36:09  11  no recognition of the impact of his actions that day.

11:36:14  12  He has told people he would do it again.  He told his

11:36:21  13  mother he would go again if given the opportunity to do

11:36:23  14  it.  And that continues even years later, as we pointed

11:36:28  15  out in our sentencing memorandum and right after the

11:36:31  16  trial.

11:36:32  17      As his trial in this cause was looming in the early

11:36:36  18  months of 2024, he posted to his Facebook page that

11:36:42  19  President Biden is a, quote, "treasonous piece of scum

11:36:46  20  for remembering January 6."

11:36:50  21      When you read Mr. Sparks' version of what happened

11:36:53  22  on January 6th and when you read his sentencing

11:36:56  23  memorandum to this Court, it is as though we are talking

11:36:59  24  about two different people who engaged in two different

11:37:03  25  sets of conduct and followed two totally different

11:37:06  1    paths.

11:37:09  2        In his sentencing memo, Mr. Sparks claims that he

11:37:12  3    has lower culpability than most who entered the building

11:37:16  4    that day.  And that's at Page 31 of his sentencing

11:37:19  5    memorandum.

11:37:21  6        That is a perspective that is just worlds away from

11:37:24  7    the trial evidence that was presented in this case.  He

11:37:27  8    was not a peaceful, calm observer.  He was not there

11:37:31  9    just to make his voice heard as he now claims.

11:37:37  10        He was an agitator.  He went in wearing battle

11:37:39  11   gear, and he used that battle gear to embolden himself.

11:37:43  12   And that in turn strengthened the crowd around him.

11:37:49  13        When he got to the hallway just outside the Senate

11:37:53  14   Chamber, as the senators were still in the chamber

11:37:56  15   waiting to be evacuated, the police officers were

11:38:00  16   desperately trying to settle the crowd down, to calm the

11:38:04  17   rioters down, and to regain order before something

11:38:07  18   tragic happened, and in order so that the Vice President

11:38:10  19   and the senators could be evacuated.

11:38:13  20        And during that critical moment, that intensely

11:38:18  21   tense standoff in the Ohio Clock Corridor, Mr. Sparks

11:38:22  22   was one of the most angry and agitated of the rioters.

11:38:26  23        Here he is entering the hallway, the third or

11:38:29  24   fourth rioter, so the second or third behind Doug

11:38:33  25   Jensen, as Deputy Chief Lloyd approaches, and very, very

11:38:39  1    strongly in no uncertain terms orders the rioters to

11:38:43  2    leave now.

11:38:44  3        And Mr. Sparks answered what Inspector Lloyd --

11:38:48  4    then-Inspector Lloyd now Deputy Chief Lloyd -- said to

11:38:53  5    the rioters.  He said, "No."

11:39:16  6        He's yelling, he's pointing, and he kept going.

11:40:06  7        Mr. Sparks was creeping forward, trying to break

11:40:10  8    through that police line ahead of almost every other

11:40:15  9    rioter in the hallway.  He was right up at the front as

11:40:18  10   you can see where Doug Jensen and Inspector Lloyd were

11:40:25  11   facing off.  Mr. Sparks is creeping forward working to

11:40:28  12   get around the police line as he's yelling at the

11:40:34  13   police, shouting and pointing at the police officers,

11:40:36  14   along with his fellow rioters, including there,

11:40:39  15   Mr. Seefried, who is holding the Confederate flag and

11:40:42  16   pointing at Officer Goodman.

11:40:46  17       Now, Mr. Sparks was also at the tip of the spirit

11:40:51  18   the whole time he fought to get up the stairs through

11:40:54  19   the West Lawn and into the building.  He was directly

11:41:00  20   behind Mr. Howe as Mr. Howe attacked the police line

11:41:04  21   inside of the scaffolding structure over those stairs,

11:41:08  22   including he was right behind Mr. Howe when Mr. Howe

11:41:11  23   assaulted Special Agent Chow and resulted in his

11:41:16  24   concussion.

11:41:31  25       And Your Honor will recall Special Agent Chow's

11:41:34  1    testimony about the impact this had on him.

11:41:36  2         Mr. Sparks was at the landing at the top of -- or

11:41:40  3    the middle part of the section of the stairs as the

11:41:42  4    scaffolding structure ended.  There's a landing at the

11:41:46  5    stairs where there's a chokepoint for several minutes,

11:41:49  6    and the rioters were temporarily stuck behind the police

11:41:52  7    line there.

11:41:52  8         And his fellow rioters tried to break through that

11:41:55  9    line and eventually succeeded.  Mr. Sparks and Mr. Howe

11:41:59  10   together were standing right at the very front of that

11:42:04  11   line.

11:42:33  12        There was Mr. Sparks running to keep up with the

11:42:35  13   front of the crowd of rioters, and he made it to the

11:42:39  14   very front.  And when they got to the top of the stairs

11:42:42  15   on the Upper West Terrace, Mr. Sparks was, again, right

11:42:45  16   in the front of the mob pushing against the metal bike

11:42:50  17   racks to get through this line.

11:43:00  18        When Mr. Sparks and his partner got through this

11:43:03  19   very last line of defense before the building itself,

11:43:06  20   which in and of itself was quite a feat, they

11:43:10  21   celebrated.  And Your Honor has seen the two of them

11:43:12  22   reaching the Upper West Terrace, past all of the police

11:43:16  23   officers who tried to keep them away, and they

11:43:18  24   celebrated with a hug at the top.

11:43:36  25        The idea that Mr. Sparks' credibility --

11:43:39  1    culpability, excuse me, is lower than that of

11:43:42  2    misdemeanor defendants that Your Honor has seen is --

11:43:46  3    just defies reality, defies all of the evidence in the

11:43:51  4    case.

11:43:53  5        Mr. Sparks has marshaled a set of letters in

11:43:59  6    support and described his community involvement.  And

11:44:01  7    those are commendable.

11:44:02  8        But, Your Honor, so have all of the other similarly

11:44:05  9    situated defendants who have appeared before Your Honor

11:44:08  10   for sentencing.  And we have taken that into account in

11:44:12  11   describing the comparator cases here.

11:44:15  12       You'll recall that Doug Jensen had an impressive

11:44:18  13   array of letters in support describing his background

11:44:21  14   and his characteristics.

11:44:23  15       You'll recall Joshua Hughes, another of the rioters

11:44:27  16   who jumped in right after Mr. Sparks, again, had a very

11:44:29  17   impressive array of letters of support.

11:44:32  18       So did Dale Shalvey who Your Honor sentenced.

11:44:35  19   Those comparator cases all took into account the fact

11:44:38  20   that those were good people.  That doesn't take away

11:44:43  21   from the seriousness of their conduct here.

11:44:45  22       Mr. Sparks talks about his family obligations.  We

11:44:50  23   all have family who rely on us.  That is a part of life.

11:44:55  24   But Mr. Sparks was not concerned about the families of

11:44:59  25   the senators and the members of Congress that he went to

11:45:02  1   force out of office that day.  And he wasn't concerned

11:45:06  2   about the families of the police officers.

11:45:10  3       Special Agent Chow probably had family members who

11:45:13  4   were counting on him while he was unconscious and woke

11:45:18  5   up in the hospital.

11:45:19  6       Sergeant Nichols had people counting on him when he

11:45:23  7   had to text his family that he loved them because he

11:45:25  8   knew he might not make it home because he thought he was

11:45:29  9   going to die.

11:45:30  10      That day, Mr. Sparks was not peaceful.  He was not

11:45:35  11  passive.  He was not acting as a family man.  He was not

11:45:38  12  a Bible study leader.  He was not a caretaker.  He left

11:45:41  13  all those things behind when he came to the Capitol.

11:45:45  14      And it wasn't a momentary lapse, and he does not

11:45:49  15  feel remorse or accept responsibility for what he did,

11:45:54  16  even today.

11:45:58  17      The guidelines here -- sentencing guidelines here

11:46:02  18  just don't take into account the seriousness of the

11:46:05  19  offense and the need for the sentence imposed here to

11:46:08  20  meet all of the important goals of sentencing under

11:46:12  21  3553(a).

11:46:15  22      Your Honor, we're asking for a substantial

11:46:18  23  variance, but that variance takes into account other

11:46:20  24  individuals who have been sentenced by this Court,

11:46:24  25  including individuals who Your Honor has pointed out

11:46:26  1    that whether the sentencing guidelines came out the way

11:46:28  2    that they did would have been sentenced the same.

11:46:31  3         So we're asking for a finding under Section 3553(a)

11:46:36  4    that your sentence would be the same, regardless of the

11:46:39  5    guidelines disputes that Your Honor has just resolved

11:46:42  6    and for written findings in the event Your Honor does

11:46:47  7    vary upward to support that sentence, and to demonstrate

11:46:50  8    here why the conduct is more harmful than that that is

11:46:55  9    accounted for by the sentencing guidelines.

11:46:57  10        Obviously, the charges here have changed since the

11:47:00  11   Supreme Court decided *Fischer.*

11:47:02  12        Mr. Sparks' guidelines calculation has changed

11:47:05  13   since even before that when the D.C. Circuit decided

11:47:10  14   *Brock,* which happened to be while the jury was

11:47:12  15   deliberating in this cause.

11:47:13  16        But his conduct has not changed one bit.  The

11:47:18  17   gravity of what he did has not lessened at all, and the

11:47:23  18   reasons for this Court to impose a sentence of 57 months

11:47:27  19   have not changed.

11:47:29  20        We described at length the similarities between

11:47:32  21   Mr. Sparks and Doug Jensen.  It's hard to really imagine

11:47:37  22   a set of two defendants who have more similarities here.

11:47:41  23   Mr. Sparks riling up the crowd behind him as he arrived

11:47:47  24   at the top of the stairs to the Upper West Terrace looks

11:47:50  25   almost identical to Doug Jensen at almost the exact same

11:47:54  1    moment in almost the exact same place cheering on the

11:47:58  2    crowd behind him riling them up.

11:48:00  3        There are obviously certain similarities and

11:48:04  4    certain differences between the two of them.  We're

11:48:06  5    asking for a modestly lower sentence here to account for

11:48:10  6    the fact that Mr. Jensen was convicted of an assault

11:48:13  7    under 111(a).

11:48:15  8        But as we pointed out in our sentencing memorandum,

11:48:17  9    there are reasons to see Mr. Sparks' conduct as worse

11:48:22  10   than Mr. Jensen's.  I think the fact of that conviction

11:48:25  11   for assault does change them and does suggest that a

11:48:29  12   57-month sentence here is appropriate where 60 months

11:48:32  13   was imposed on Doug Jensen.

11:48:40  14       Your Honor has said in sentencing hearings before

11:48:42  15   in other January 6th cases that it was a miracle that

11:48:45  16   there wasn't a greater loss of life and greater injury

11:48:50  17   that day, and that it is something this Court pointed

11:48:53  18   out even in sentencing Mr. Howe.

11:48:56  19       It is a miracle that the moment that Mr. Sparks

11:48:59  20   jumped through the broken window did not turn into a

11:49:03  21   deadly tragedy.  We know it could have because we saw

11:49:06  22   what happened outside of the House Chamber when rioters

11:49:09  23   behaved almost exactly the way Mr. Sparks behaved here

11:49:14  24   and ignored the drawn weapons of other law enforcement

11:49:19  25   officers.

11:49:19   1          This was a miracle, but that miracle was made

11:49:25   2   possible because of the heroic choice of one man.  This

11:49:31   3   was one crucial moment when Capitol Police Sergeant

11:49:34   4   Victor Nichols saw exactly the choice that he faced in

11:49:38   5   that moment, and he knew the consequences that he would

11:49:40   6   face either way.

11:49:42   7          He could have drawn his weapon, he could have fired

11:49:45   8   on Sparks, but he also saw that that would lead to an

11:49:49   9   absolute bloodbath.  He kept all of us safe that day,

11:49:53  10   and perhaps most miraculously he kept the rioters safe

11:49:58  11   that day.

11:49:59  12          Sergeant Nichols has been waiting for this moment

11:50:02  13   for a long time, and he would like to address the Court.

11:50:04  14              THE COURT:  Very well.  Before he does, I just

11:50:08  15   have two quick questions.

11:50:09  16          One is, the very last social media exhibit you

11:50:15  17   brought up, I think it was on July -- I'm sorry, on

11:50:23  18   January 4th, could you just bring that up again just so

11:50:26  19   I can note the exhibit number?  The very last one I

11:50:32  20   think you -- maybe it's that one.

11:50:37  21          That's the one I'm thinking of.

11:50:39  22              MS. ALLEN:  This one?

11:50:40  23              THE COURT:  Yeah.  414?

11:50:42  24              MS. ALLEN:  That was January 4.

11:50:44  25              THE COURT:  Right.  I'm sorry, Exhibit 414,

| | | |
|---|---|---|
| 11:50:46 | 1 | though? |
| 11:50:46 | 2 | MS. ALLEN:  Oh, yes, yes. |
| 11:50:48 | 3 | THE COURT:  Okay. |
| 11:50:48 | 4 | MS. ALLEN:  And this is a text message from |
| 11:50:52 | 5 | Mr. Sparks' phone, the preceding slide that I showed |
| 11:50:55 | 6 | here which is -- |
| 11:50:56 | 7 | THE COURT:  Right. |
| 11:50:57 | 8 | MS. ALLEN:  -- a series of exhibits.  There is |
| 11:50:59 | 9 | one similar statement, January 3, that was posted to |
| 11:51:02 | 10 | Facebook. |
| 11:51:05 | 11 | THE COURT:  Right.  But, I mean, in that |
| 11:51:09 | 12 | particular context, it's being talked about in the |
| 11:51:14 | 13 | context of January 6 much more particularly. |
| 11:51:16 | 14 | MS. ALLEN:  It's very clear with the text |
| 11:51:18 | 15 | message response on January 4 that he is talking about |
| 11:51:20 | 16 | January 6. |
| 11:51:22 | 17 | THE COURT:  Okay.  And the second question I |
| 11:51:24 | 18 | have is just this:  Is your request for -- your |
| 11:51:29 | 19 | sentencing request tethered to what you think -- what |
| 11:51:34 | 20 | the guidelines -- I know they're based in part on how |
| 11:51:37 | 21 | I've sentenced other defendants and other things as you |
| 11:51:45 | 22 | described. |
| 11:51:45 | 23 | Are they tied specifically to what you think in a |
| 11:51:48 | 24 | pre-*Fischer* and pre-*Brock* world the defendant's |
| 11:51:54 | 25 | sentencing guideline would be? |

11:51:56  1          MS. ALLEN:  Insofar as they are tied to the

11:51:58  2     sentences imposed on others, I suppose -- yes, because

11:52:04  3     *Brock* made clear that the application -- the strict

11:52:08  4     adherence to the guideline for the plus eight and the

11:52:10  5     plus three under 2J1.2 were incorrectly applied.

11:52:16  6          But the rational behind those enhancements really

11:52:19  7     hasn't changed.  The nature of the conduct that supports

11:52:22  8     that concept that the guidelines were intending to

11:52:27  9     capture is the same.

11:52:29 10          We're not asking for the sentence based on a

11:52:32 11     calculation of the guidelines; it's really based on, you

11:52:35 12     know, the fair and just sentence that was imposed on

11:52:39 13     other similarly situated defendants.

11:52:42 14          I mean, look at the Hughes brothers.

11:52:44 15          THE COURT:  That obviously was in part a

11:52:45 16     product of the guidelines -- each one of those was in

11:52:48 17     part a product of the guidelines, whether I followed

11:52:51 18     them directly or -- whatever, but yes.

11:52:52 19          MS. ALLEN:  Yes.

11:53:01 20          THE COURT:  Okay.  All right.  Very well.  I'll

11:53:03 21     hear from the officer.

11:53:26 22          SERGEANT NICHOLS:  Honorable Judge Timothy J.

11:53:29 23     Kelly, thank you for allowing me to speak today.

11:53:31 24          My name is Sergeant Victor Nichols, and I've served

11:53:33 25     with the United States Capitol Police for ten years.

11:53:35  1     On January 6, 2021, I was on duty during the attack

11:53:39  2  on the United States Capitol, a day that has deeply

11:53:42  3  affected me, my colleagues, and the entire Nation.

11:53:44  4     On that day, I was the first person to confront the

11:53:47  5  rioters as they breached the Capitol.  Michael Sparks

11:53:51  6  was the first to force his way into the building,

11:53:54  7  triggering a wave of chaos that none of us were prepared

11:53:58  8  for.

11:54:01  9     His actions were more than just an entry.  They set

11:54:04  10  off a chain reaction that led to countless others

11:54:07  11  storming the Capitol and putting lives in danger.

11:54:11  12     What makes the events of that day even more painful

11:54:14  13  is the fact that we were attacked by fellow Americans,

11:54:18  14  people who use the symbols of our Nation and law

11:54:21  15  enforcement against us.

11:54:22  16     Officers were beaten with American flags and thin

11:54:26  17  blue line flags, symbols meant to represent our Nation

11:54:30  18  and honor the sacrifices of law enforcement.

11:54:33  19     Seeing these symbols turn into weapons was

11:54:36  20  shocking, deeply painful, and a stark reminder of the

11:54:40  21  hatred and lawlessness that took hold of the mob that

11:54:43  22  day.

11:54:44  23     The physical threats we face were extreme, but the

11:54:48  24  mental and emotional toll has been just as severe, if

11:54:52  25  not more so.  The events of January 6 have had a

11:54:57  1    profound impact on the mental health of Capitol police

11:55:01  2    officers.

11:55:01  3        We are trained for high pressure situations, but

11:55:04  4    nothing could have prepared us for the scale and

11:55:06  5    intensity of that day's attack.

11:55:08  6        Since then, many of my colleagues, including

11:55:10  7    myself, have struggled with the psychological aftermath.

11:55:15  8    The constate state of heightened vigilance, the

11:55:21  9    ever-present awareness of potential threats, and the

11:55:23  10   haunting memories of that day have taken a heavy toll.

11:55:26  11       The burden of these experiences is something we

11:55:28  12   carry with us every day.  It's hard to reconcile that

11:55:32  13   the very institution we are sworn to protect was so

11:55:35  14   violently attacked, and that we, too, were directly

11:55:41  15   targeted by the very people we are sworn to protect.

11:55:44  16       Tragically, the mental health challenges resulting

11:55:46  17   from that day have led to the most heartbreaking of

11:55:49  18   consequences.  Several officers have taken their own

11:55:53  19   lives, unable to cope with the trauma they endured.

11:55:58  20   These suicides are not just statistics, they are

11:56:01  21   profound losses that have left the law enforcement

11:56:03  22   community devastated.

11:56:06  23       These were officers who dedicated their lives to

11:56:09  24   protecting others and in the end, the weight of what

11:56:12  25   they experienced was too much to bear.  Their deaths are

11:56:16  1  a stark and painful reminder of the deep and lasting

11:56:20  2  impact that the events of January 6 have had on all of

11:56:23  3  us who were there.

11:56:26  4       The ripple effects extend beyond the personal and

11:56:29  5  psychological toll.  The attack has placed a significant

11:56:33  6  burden on our government and the American people.

11:56:35  7       The damage to the Capitol, the heightened security

11:56:39  8  measures, and the ongoing legal battles are a direct

11:56:42  9  consequence of the actions Michael Sparks played a part

11:56:45  10 in.

11:56:46  11      These costs are not just financial, they weigh

11:56:48  12 heavily on our collective conscience reminding us of the

11:56:52  13 fragility of the democracy and the sacrifices made to

11:56:57  14 protect it.

11:56:58  15      Michael Sparks' actions were not just unlawful,

11:57:01  16 they were a direct threat to the lives of those present,

11:57:03  17 including the officers who risked everything to defend

11:57:07  18 our elected officials.

11:57:08  19      His decision to lead that charge has had

11:57:12  20 far-reaching and tragic consequences, both visible and

11:57:17  21 hidden.  It is essential that he is held accountable,

11:57:21  22 not just to deliver justice, but to acknowledge the

11:57:23  23 profound impact his actions have had on the lives and

11:57:26  24 the well-being of those who serve our Nation.

11:57:31  25      Your Honor, I urge you to consider the deep mental

11:57:35  1    and emotional toll that Michael Sparks' actions have

11:57:38  2    taken on me, my fellow officers, and our entire

11:57:41  3    community.

11:57:42  4         The sentence imposed should reflect the seriousness

11:57:45  5    of his crimes and serve as a deterrent to ensure that a

11:57:49  6    violation of our democracy never happens again.

11:57:52  7         We must uphold the rule of law, protect our

11:57:55  8    institutions, and support the officers who are on the

11:57:58  9    front lines defending it.

11:58:00  10        Thank you.

11:58:00  11            THE COURT:  Thank you, Sergeant.  I appreciate

11:58:02  12   your service and to everyone there.

11:58:06  13            SERGEANT NICHOLS:  Thank you, sir.

11:58:14  14            THE COURT:  All right.  Mr. Wendelsdorf, I'll

11:58:15  15   hear from you, sir.

11:58:16  16            MR. WENDELSDORF:  Thank you, Your Honor.

11:58:35  17        Sergeant Nichols is completely correct.  January 6

11:58:41  18   was a horrible event.  It affected not only his life, as

11:58:49  19   he so eloquently told the Court, but the lives of all

11:58:52  20   those police officers who were on duty that day.  As a

11:58:59  21   citizen, I thank him.

11:59:02  22        Thank you, Sergeant.

11:59:06  23        But as a Judge, your job is a little different.

11:59:10  24   There's no question that the conduct -- the collective

11:59:17  25   conduct of the mob on January 6 was horrible.  It was

11:59:23   1   horrendous.

11:59:28   2        But it is your job to take Michael Sparks as an

11:59:31   3   individual.  Our society, unlike others, does not

11:59:36   4   believe in collective guilt.  We believe in individual

11:59:41   5   responsibility.  Individual guilt.

11:59:45   6        What did Michael Sparks do on January 6?  Where in

11:59:55   7   the spectrum of all the conduct that occurred in the

11:59:59   8   Capitol on that day does he fall?

12:00:03   9        There's no utility in reading back to the Court my

12:00:07  10   sentencing memorandum.  In that memorandum, I asked for

12:00:12  11   a sentence of a 12-month term of home incarceration,

12:00:17  12   followed by a three-year term of supervised release.

12:00:22  13        The guidelines call for a term of 15 to 21 months.

12:00:30  14   The probation officer has recommended a sentence of

12:00:33  15   21 months.  But the government says this is not a

12:00:39  16   guideline case.  This is a quintessential guideline

12:00:45  17   case.

12:00:48  18        If there's a variance here, it should be downward.

12:00:52  19   But I understand, I understand the burden that would

12:00:54  20   have to be carried to justify that, and Your Honor's

12:00:59  21   rulings have indicated we have not carried that burden.

12:01:03  22        So that said, I would urge the Court to look upon

12:01:06  23   this as a guideline case, and not a case that justifies

12:01:12  24   an upward departure.

12:01:15  25        The Court should place Mr. Sparks in the spectrum

12:01:22  1   of conduct on January 6.  When that is done, I disagree

12:01:25  2   with my colleague.  He is among the less culpable of

12:01:29  3   those who entered the Capitol that day.  He is not the

12:01:33  4   most culpable as painted by the government.

12:01:37  5        I respect Sergeant Nichols, and from his point of

12:01:41  6   view, what he told the Court is entirely true.  But

12:01:46  7   calling him the green light that caused the breach of

12:01:49  8   the Capitol or calling him a leader of the mob, Judge,

12:01:56  9   I'm sorry, that's a fantasy.

12:01:58  10        You heard and saw the evidence, not only in this

12:02:04  11   trial, but in the other trials over which you have

12:02:06  12   presided.  Where do we place Mr. Sparks in that spectrum

12:02:11  13   of conduct?

12:02:15  14        Yes, the government and the media tout Mr. Sparks

12:02:17  15   as the first to enter the building, and so he was in a

12:02:22  16   strict timeline sense.  But he did not lead the crowd

12:02:26  17   into the building or cause the breach through which he

12:02:30  18   and others entered.  Pezzola did that, he broke out the

12:02:36  19   window.

12:02:37  20        THE COURT:  Well, he broke the window, but I

12:02:38  21   don't --

12:02:41  22        MR. WENDELSDORF:  And Mr. Sparks went in -- was

12:02:43  23   the first one in the building, I grant you.

12:02:45  24        THE COURT:  I guess -- you had a compound

12:02:47  25   sentence there where I -- or maybe two sentences where I

12:02:49  1    agree with you that he -- he did not cause the breach to

12:02:57  2    which he --

12:02:58  3                MR. WENDELSDORF:  Yes, sir --

12:02:59  4                THE COURT:  No question.  But your first one

12:03:00  5    was, but he did not lead the crowd into the building.

12:03:04  6          And insofar as you're arguing to me that he

12:03:09  7    wasn't -- there was -- he didn't plan with others, other

12:03:13  8    than maybe Mr. Howe, but whatever.  He didn't lead a --

12:03:16  9    he didn't plan with a large group of people to do what

12:03:20  10   happened that day.  I agree, there's no evidence of

12:03:22  11   that.  Okay.

12:03:23  12         But just as a right -- in terms of what the word

12:03:29  13   "lead" mean, it could also just mean the person at the

12:03:31  14   forefront, the person who is first.

12:03:33  15               MR. WENDELSDORF:  I agree.

12:03:33  16               THE COURT:  Isn't that fair?

12:03:34  17         So, I mean, I know this is sort of -- we're now

12:03:38  18   disagreeing with the facts.  They are what they are, but

12:03:40  19   I don't think the government is out of bounds in saying

12:03:44  20   he led the mob into the Capitol if he's the first one

12:03:50  21   in, on some level.

12:03:51  22               MR. WENDELSDORF:  I apologize for my run-on

12:03:54  23   sentences.  I tend to be Faulknerian on occasion, Your

12:04:01  24   Honor.  I apologize for that.

12:04:02  25         What I was referring to was the fact that the

12:04:05  1    government ignores and that Sergeant Nichols did not see

12:04:09  2    from his perspective, was that that day there were eight

12:04:14  3    separate and individual breaches of the Capitol.

12:04:19  4         To say that but for Sparks none of this would

12:04:24  5    happen is simply not true.

12:04:25  6              THE COURT:  And they haven't said that, and

12:04:27  7    obviously I agree with you on that.

12:04:32  8              MR. WENDELSDORF:  What is important in this

12:04:33  9    case is not when or how Mr. Sparks entered the Capitol,

12:04:39  10   it's how long he was there, and what he did while

12:04:45  11   inside, in placing him in that spectrum.

12:04:48  12        In this regard, I still submit to the Court he is

12:04:52  13   among the less culpable offenders in the Capitol

12:04:56  14   breach.

12:04:57  15        Your Honor saw the evidence.  The government's own

12:05:00  16   evidence shows Mr. Sparks entering the building at

12:05:03  17   2:13 p.m.  He made his way to the Ohio Clock Tower,

12:05:11  18   where as you just saw and you saw at trial and you saw

12:05:16  19   again, he verbally confronted and argued his view with

12:05:20  20   police for approximately eight minutes:

12:05:24  21        You should be here on this side.  We are here for

12:05:26  22   you.  We support the police.  We are doing this for you.

12:05:30  23   Why aren't you on this side?

12:05:33  24        Everything was verbal.  Nothing, nothing was

12:05:36  25   physical.

12:05:38  1          When it became evident to him that Vice President

12:05:43  2     Pence was not going to declare Trump President as Trump

12:05:47  3     had assured his followers he would, and once Mr. Sparks

12:05:52  4     had had his say and made his point, what did he do?

12:05:58  5     Thirteen minutes after he entered, he literally quit the

12:06:02  6     protest and walked away from the Ohio Clock Tower.

12:06:09  7          He reentered the Senate Wing Door at 2:28 and

12:06:12  8     peacefully left the Capitol at 2:33, 20 minutes after he

12:06:21  9     entered.

12:06:22  10         Mr. Howe, Mr. Jennings, Mr. Chansley, Mr. Seefried,

12:06:28  11    and any number of others did not peacefully exit the

12:06:39  12    Capitol after only 20 minutes.  They remained.  They

12:06:43  13    became more and more enraged, and they lingered

12:06:47  14    literally for hours in the building, fighting and

12:06:49  15    attacking police, engaging in violence and destruction,

12:06:56  16    invading Congressional offices, terrorizing staff, and

12:06:59  17    even entering the Senate and House chambers themselves,

12:07:04  18    all while Mr. Sparks was shown by the government's own

12:07:07  19    evidence standing outside the building peacefully

12:07:14  20    observing events.

12:07:16  21         He was not armed.  He assaulted no one, he

12:07:20  22    destroyed nothing.  He was in the building only

12:07:25  23    20 minutes.

12:07:26  24         As Officer Goodman told the FBI, ten days after

12:07:32  25    January 6 in his interview with the FBI on January 16,

12:07:39  1    Goodman did not believe that UNM1 -- he was referring to

12:07:43  2    Sparks -- was acting in a threatening manner.  Rather,

12:07:49  3    Goodman recalled UNM1 making the following statements:

12:07:53  4        "This is our House.  I'm with you.  I support

12:07:56  5    police officers.  You need to join us on this side."

12:08:01  6        All true.  Your Honor saw that yourself.

12:08:05  7        The FBI says that Officer Goodman went on to say,

12:08:08  8    in fact, Goodman recalled that UNM1 kept trying to fist

12:08:14  9    bump me in solidarity.  Many of the statements coming

12:08:18  10   from the rest of the group were political in nature.

12:08:24  11       Goodman told the FBI there were three individuals

12:08:27  12   in the group that concerned him the most, not Sparks.

12:08:32  13   The first individual he said was the male in the front

12:08:35  14   of the video wearing a beanie hat and a black shirt with

12:08:40  15   the letter Q.  That's Douglas Jennings.

12:08:44  16       The second individual was the male who had his face

12:08:47  17   painted, was wearing horns, and was carrying what

12:08:49  18   appeared to be a spear, forever to be remembered by

12:08:55  19   history as Jacob Chansley.

12:08:58  20       The third individual was a male who was carrying a

12:09:00  21   Confederate flag and appeared to have tear drops, either

12:09:04  22   painted or tattooed, on his person.  Kevin Seefried.

12:09:15  23       In this spectrum, where does Mr. Sparks fall?

12:09:19  24   Clearly, he has been found guilty of a serious offense.

12:09:21  25   But is it an offense so unique and so egregious and so

| | | |
|---|---|---|
| 12:09:29 | 1 | extraordinary that we are to cast out the guidelines and |
| 12:09:31 | 2 | say they should not apply to this case? |
| 12:09:34 | 3 | This is within the heartland of the guidelines. |
| 12:09:42 | 4 | And I would urge the Court to consider a guideline |
| 12:09:46 | 5 | sentence for Mr. Sparks. |
| 12:09:53 | 6 | THE COURT:  All right.  Thank you, |
| 12:09:54 | 7 | Mr. Wendelsdorf. |
| 12:09:58 | 8 | I'm assuming -- I obviously have the statement |
| 12:10:01 | 9 | Mr. Sparks submitted.  I assume -- well, let me just |
| 12:10:05 | 10 | ask, does he want to address me additionally here today? |
| 12:10:09 | 11 | Obviously, he's not -- he's entitled to do that if he |
| 12:10:13 | 12 | likes, but he does not have to do that. |
| 12:10:17 | 13 | MR. WENDELSDORF:  I've explained that to him. |
| 12:10:19 | 14 | THE COURT:  Okay. |
| 12:10:21 | 15 | (Counsel conferring with defendant) |
| | 16 | MR. WENDELSDORF:  Okay.  You can go up there |
| 12:10:32 | 17 | and -- |
| 12:10:32 | 18 | THE COURT:  No, no.  I'd like him -- and you, |
| 12:10:34 | 19 | Mr. Wendelsdorf, you can come up with him if you'd like |
| 12:10:39 | 20 | as well. |
| 12:10:40 | 21 | MR. WENDELSDORF:  Thank you. |
| 12:10:40 | 22 | THE DEFENDANT:  Well, I wasn't -- I didn't have |
| 12:10:41 | 23 | anything prepared, but after hearing, you know, |
| 12:10:44 | 24 | everything today, you know, hearing Mr. Nichols give his |
| 12:10:48 | 25 | testimony and everything, I just want him to know, if |

12:10:51   1    I -- I don't know if I'm allowed to speak directly to

12:10:53   2    him, but I just want him to know and any other officer

12:10:59   3    that if I personally, you know, hurt or hindered in any

12:11:04   4    way, that never was my intention at all.

12:11:07   5        That's not who I am.  I have family who are police

12:11:11   6    officers, retirees, and my neighbor, he's a state police

12:11:17   7    officer.  And my other neighbor is a game warden.  You

12:11:19   8    know, I break bread with them all the time.  I have the

12:11:23   9    utmost respect for them and for the law.

12:11:25   10       So I would never -- and my intentions were never

12:11:26   11   ever that day to have any confrontation with any police

12:11:29   12   officers.

12:11:29   13       I just want to say, and everything -- this probably

12:11:33   14   will not -- will not be to better me because I think the

12:11:36   15   decision is already made, but anything that was -- any

12:11:40   16   preparation that was made as far as anything to go up

12:11:42   17   there that day was not -- it didn't have anything -- and

12:11:46   18   I'm speaking for me personally, it didn't have anything

12:11:48   19   to do with any foreseen confrontation with police

12:11:52   20   officers.

12:11:52   21       I would never have a confrontation with a police

12:11:56   22   officer physically or -- I would never curse a police

12:11:59   23   officer or anything like that, but we were expecting

12:12:02   24   confrontation possibly from Antifa.  That was in my

12:12:08   25   mind.  I almost know it was going to happen.  Luckily,

12:12:11   1    it didn't.

12:12:12   2         But seeing the whole -- the whole -- you know, this

12:12:14   3    whole thing has been heard from one side because I chose

12:12:19   4    not to testify.  Looking back on it, I wish I had

12:12:22   5    testified, but it is my mistake.  But you have to look

12:12:27   6    at it, I'm a person, I'm an American citizen who truly

12:12:30   7    believes to this day that we are in tyranny.

12:12:35   8         I believe our country is in a very, very serious

12:12:39   9    state.  It's not about Democrat or Republican.  I think

12:12:41   10   we have truly been infiltrated deeply, and it scares me

12:12:44   11   to death to this day.

12:12:46   12        I do believe that the 2020 election was completely

12:12:49   13   taken from the American people's vote.  I do believe

12:12:53   14   that.  And hate it.  I wish I didn't believe that.  I

12:12:56   15   wish I could just not believe it, but I've seen too much

12:13:00   16   and I do believe that's true.

12:13:03   17        And that was why -- I didn't want to go up there.

12:13:05   18   I've never -- I've always -- politics have been a thing

12:13:09   19   I've always seen from a distance.  That's -- you know, I

12:13:12   20   knew of it, I voted, but I never was per se involved in

12:13:16   21   politics.

12:13:17   22        In 2016, my mind -- my mind was changed.  I started

12:13:22   23   seeing things and I started -- you know, whether some

12:13:25   24   people say it's a conspiracy, some things are true or

12:13:27   25   not, but I got involved, started studying into it.  And

12:13:34  1    to this day, I think I do believe the election -- I

12:13:38  2    think there's been a lot of elections, looking back,

12:13:41  3    probably that weren't honest, not just the 2020.  I

12:13:45  4    think there's been many for many years.

12:13:47  5         But I love this country, I love my family.  That's

12:13:51  6    why I went.  I didn't want to go.  I didn't want to use

12:13:55  7    vacation days to go up there and protest and let my

12:13:59  8    voice be heard.

12:14:00  9         I know we've heard all the testimony.  I just want

12:14:03  10   to say the truth is I never had -- not zero -- I had

12:14:04  11   zero intentions that day of going even to the Capitol,

12:14:08  12   whether going in the Capitol, even walking to the

12:14:12  13   Capitol.  It was never talked about it.

12:14:15  14        I mean, we went up there to hear President Trump

12:14:18  15   speak.  There was never any talk about, like, walking to

12:14:22  16   the Capitol.  So as we went up there, and I just want to

12:14:26  17   say this on record, that -- I know you've seen the

12:14:28  18   video, you heard the video -- it was the camera man who

12:14:30  19   said, "All it takes is for one to go in."  It was me

12:14:34  20   that said -- and then Joe said, "I'm getting in there."

12:14:39  21   It was me that said, "You're not going in there."

12:14:42  22        That's the truth.  I mean, like I said, I don't

12:14:46  23   think it's going to change -- but that's the honest

12:14:48  24   truth on that.

12:14:49  25        So I'm sorry for my family, my wife, my children,

12:14:53  1    my extended family.  It's been tough on everybody.  I'm

12:14:57  2    very sorry for them, what I've put them through.  The

12:15:00  3    remorse, you know, my -- Scott here is telling me, you

12:15:04  4    know, you need to show remorse.  I am remorseful because

12:15:08  5    not -- again, it's not going to help me, but I'm not

12:15:11  6    remorseful that I went up there to have my voice to be

12:15:14  7    heard.

12:15:14  8        I'm remorseful that what transpired that day didn't

12:15:18  9    help anybody.  It didn't help nobody.  Nobody in this

12:15:21  10   country got helped on that day.  It hindered -- it was a

12:15:25  11   hindrance to that day.  It's hindered people ever

12:15:29  12   since.

12:15:30  13       It didn't help anybody, so I'm remorseful that that

12:15:33  14   day ever happened.  I'm remorseful that our country is

12:15:36  15   in the state that it's in.  I'm truly remorseful for

12:15:39  16   that.  I just hope and pray we can come together as a

12:15:43  17   country.

12:15:43  18       I mean, everybody come together, you know?  I know

12:15:47  19   that's probably a hope that might not ever happen, but I

12:15:50  20   do feel like we're closer coming together as one with a,

12:15:54  21   you know, with a vision, so...

12:15:57  22       And with that, I apologize to the Court that we've

12:16:00  23   had to go through all this time, and I think that's all

12:16:06  24   I've got to say, sir.

12:16:11  25            MR. WENDELSDORF:  Thanks, Mike.

12:16:12   1        Thank you, Your Honor.

12:16:12   2              THE COURT:  All right.  Very well.  We will

12:16:13   3    take a 15-minute recess, and I'll come back and

12:16:16   4    impose -- is there -- well, before I do that, anything

12:16:18   5    further from the government?

12:16:19   6              MS. ALLEN:  Your Honor, I'm sure it's not lost

12:16:21   7    on you, but I just wanted to thank Deputy Chief Lloyd

12:16:25   8    for also being here and present today in addition to

12:16:27   9    Sergeant Nichols who is here.

12:16:28  10              THE COURT:  Yes.  Thank you for your presence,

12:16:31  11    sir.

12:16:32  12        We'll take a 15-minute recess, and then I'll come

12:16:36  13    back.

12:35:29  14              (Court in recess, 12:16 p.m.)

12:35:30  15              (After recess, 12:35 p.m.)

12:35:44  16              DEPUTY COURTROOM CLERK:  We are back on the

12:35:46  17    record in Criminal Matter 21-87, United States of

12:35:52  18    America v. Defendant One, Michael Spark.

12:35:55  19              THE COURT:  All right.  Okay.  I have assessed

12:36:17  20    the particular facts of this case in light of the

12:36:20  21    relevant 3553 factors that Congress has told me I have

12:36:27  22    to consider, and I want to provide my thoughts for the

12:36:31  23    record, for the attorneys, for Mr. Sparks, and for the

12:36:37  24    other witnesses of the case who are here about my

12:36:42  25    considerations regarding the nature of the offense and

12:36:47  1    Mr. Sparks' history and characteristics and all the

12:36:52  2    different things that Congress has told me I have to

12:36:56  3    consider when crafting a sentence for a particular

12:37:02  4    defendant.

12:37:03  5         Let's begin with my considerations with regard to

12:37:06  6    the nature of the offense.  And this is something that

12:37:12  7    in all these January 6 cases, you know, the parties and

12:37:19  8    the Judge wrestle with, and it was part of your

12:37:26  9    arguments to me today, which is I have to look at the

12:37:30  10   overall event to some extent, but then I really have to

12:37:35  11   look at what the particular defendant did or did not do

12:37:38  12   as part of my consideration about the offense.

12:37:45  13        Mr. -- the overall event that happened is relevant,

12:37:49  14   but really when I hone in on a sentence, I have to also

12:37:56  15   look specifically at what Mr. Sparks did.

12:38:01  16        So let me just say a few things about the overall

12:38:05  17   event of January 6 insofar as I have to consider that

12:38:09  18   event as part of the nature and circumstances of the

12:38:17  19   offense.

12:38:19  20        So, you know, Mr. Sparks, our Constitution and our

12:38:26  21   laws preserve rights for all of us that people in many

12:38:28  22   other countries would do just about anything for; and

12:38:32  23   that many Americans who came before us all died for.

12:38:38  24   And that's true, you mentioned earlier, you think our

12:38:41  25   country has some serious problems.  I'm maybe I'm

12:38:46  1    understating that, and that may well be.  I think

12:38:50  2    probably a lot of us would like to see our country

12:38:53  3    grapple with certain challenges differently.

12:38:59  4        But in any event, none of that changes that

12:39:03  5    function of our Congress and -- of our Constitution and

12:39:08  6    our laws.  And flowing from that is the fact that you

12:39:15  7    have the right to vote for whoever you want to vote for

12:39:19  8    President.

12:39:20  9        You have the First Amendment right to absolutely

12:39:23  10   speak out in favor of your candidate, put up signs,

12:39:27  11   convince your friends and neighbors to vote for that

12:39:30  12   person.  If you don't like how an election is being

12:39:33  13   conducted, you can speak out about that, too.  You can

12:39:39  14   call or write elected officials in your state, you can

12:39:48  15   try to get election laws changed, you can engage in

12:39:50  16   peaceful protests.  If you think you've been wronged and

12:39:54  17   you have a case, you can file a lawsuit in federal court

12:39:57  18   or state court, and many people did those things back --

12:40:01  19   in connection with that election.

12:40:04  20       But the freedom we have also means that we have

12:40:08  21   responsibilities, too.  And what a person can't do under

12:40:14  22   any circumstances is lead a mob that used violence and

12:40:20  23   the threat of violence into the Capitol to disrupt

12:40:25  24   Congress's ability to fulfill its role to process the

12:40:29  25   certification of the electoral vote for president.

12:40:40  1      But that's what you did that day and there was

12:40:43  2   nothing patriotic about it.  And I can't emphasize

12:40:49  3   enough how it doesn't matter that you either didn't like

12:40:55  4   how the election result went or maybe more to the point,

12:40:59  5   think that -- still do think -- and it's your right to

12:41:03  6   have whatever views you would like, but you

12:41:10  7   can't because you don't like the way the outcome of the

12:41:13  8   election -- because you didn't like the outcome of the

12:41:16  9   election or because you think that the election had

12:41:19  10   problems with it.

12:41:25  11      We have ways of dealing with that through the law,

12:41:29  12   but none of that matters.  None of that gives you or

12:41:32  13   anyone else a license to do what you did that day.  I

12:41:37  14   mean, that's the bottom line.

12:41:41  15      So, and what happened that day, you heard Sergeant

12:41:45  16   Nichols talk about this.  I mean, what happened that

12:41:51  17   day, it damaged property, it injured people, but it was

12:41:56  18   also a blow against the customs and practices that help

12:42:01  19   support the rule of law and the Constitution.

12:42:05  20      It snapped our previously unbroken tradition we had

12:42:09  21   of the peaceful transfer of power.  And as far as that

12:42:13  22   being an unbroken tradition, as far as that being a

12:42:19  23   perfect score on that point, we can't get that back.

12:42:27  24   It's gone.  And hopefully we can restore it, and it's

12:42:41  25   important that it be restored.

12:42:43   1          But so from my perspective what happened that day

12:42:46   2     in the aggregate was more than extremely serious.  I

12:42:51   3     said many times, it was a national disgrace.

12:42:55   4          So let's turn to -- from the big picture to the

12:42:59   5     picture that describes what you did that day.  And I

12:43:11   6     think I should start off by saying -- maybe I didn't

12:43:13   7     have this in my notes.  I'll get to it somewhere, but

12:43:16   8     you were not convicted of assaulting any officer, you

12:43:25   9     didn't have a weapon.  And so there's a lot to be

12:43:28  10     said -- some things to be said for things that you

12:43:30  11     didn't do.

12:43:34  12          But it seems clear -- but we'll start with the

12:43:39  13     obvious.  You were the first one in the building, and

12:43:45  14     that, I think it's undeniable -- I looked at the -- you

12:43:50  15     know, I think it's undeniable that the first person to

12:43:54  16     do that would have an emboldening and an encouraging

12:44:04  17     effect on everyone -- everyone who at least was sort of

12:44:08  18     in your vicinity.

12:44:10  19          And certainly it also -- and your very able counsel

12:44:16  20     made the point that there was more than one place in

12:44:19  21     which rioters entered the building that day, and that is

12:44:21  22     true.  But, of course, we don't really know what would

12:44:24  23     have happened at those other breach points if the folks

12:44:27  24     inside the Capitol hadn't -- had to come to defend

12:44:30  25     against your initial breach.

12:44:34  1          So no one's saying, I don't think, that what

12:44:41  2     happened here you -- you know, that no one would have

12:44:44  3     gotten in the building without you that day, but to say

12:44:47  4     it wasn't a material key point in the mob's taking of

12:44:51  5     the Capitol, I think is just ignoring the obvious.

12:45:03  6          The other -- and you can see this, and the

12:45:05  7     government pointed this out, and it is true, it's right

12:45:08  8     there on the video, there is a person who looks like

12:45:10  9     he's about to go in.  And then somebody else:  Don't go

12:45:13  10    in.  The person hesitates, maybe because of what someone

12:45:17  11    said, maybe because there was an officer right there.

12:45:22  12    But you went through and then he went through and then

12:45:28  13    many, many more people went through.

12:45:33  14         And then, you know, you got to a place with a

12:45:38  15    standoff with the officers right outside the Senate

12:45:42  16    Chamber.  And, you know, there aren't -- there weren't

12:45:49  17    that many people there.  And that created that -- being

12:45:53  18    at that time and at that place, again, even despite the

12:46:00  19    fact that we don't have you assaulting anyone, created a

12:46:05  20    real danger -- we haven't -- I've skipped over the

12:46:09  21    danger to the officers you created, and I shouldn't have

12:46:14  22    done that.

12:46:15  23         But, obviously, you penetrating the building the

12:46:18  24    way you did and looking at the evidence in the case,

12:46:22  25    even if you didn't intend to pose a threat to them, even

12:46:26  1    if you didn't intend to harm them, and I don't see

12:46:31  2    evidence of that, what you enabled certainly did

12:46:39  3    create -- helped enable, certainly did pose a threat to

12:46:42  4    these officers.  So I shouldn't skip over that.

12:46:50  5        But we skip ahead to the scene in the Ohio Clock

12:46:55  6    Corridor.  That's very early on and your very able

12:46:59  7    counsel, again, mentioned that you -- it was not until

12:47:02  8    the -- it was as quick as 20 minutes later or so that

12:47:06  9    you leave the building.  Okay.

12:47:08  10   But being present at that time and at that place

12:47:14  11   just on the other side of the wall from the Senate and

12:47:17  12   the Vice President with a shouting, screaming mob of

12:47:21  13   people helped create a real danger to those people.

12:47:28  14   Again, even if -- we've talked about the limits on sort

12:47:35  15   of what you did that day.

12:47:36  16       So I think the idea that -- I'll talk about this in

12:47:41  17   a moment, the idea that the when and where you entered

12:47:44  18   the Capitol isn't relevant I think is just -- you know,

12:47:51  19   I've got to consider that as context.  That's important.

12:47:56  20       You entered the building two hours later, wander in

12:48:01  21   and wander out.  This is a different case.  It just is.

12:48:06  22       And last, you know, when we talk about your role

12:48:10  23   and what the evidence showed here, the jury found in the

12:48:17  24   case beyond a reasonable doubt that you intended to

12:48:21  25   obstruct or interfere with the certification of the

12:48:25  1     electoral college vote.

12:48:27  2        Now, even though the count that you were charged

12:48:33  3     with, the government dismissed the count that

12:48:36  4     specifically charged you with that.  You know, on all

12:48:41  5     the evidence in front of me, I do find to a

12:48:44  6     preponderance of the evidence, and to be clear, I would

12:48:47  7     find it beyond a reasonable doubt as well, but for

12:48:51  8     sentencing purposes to a preponderance, that you had

12:48:55  9     that intent, too.  And that matters.

12:49:00  10       Why do I find that?  We've talked about the

12:49:04  11    statements on -- in the context of the obstruction

12:49:08  12    count.  We talked about the statements on social media.

12:49:10  13    I'm not going to walk through all of them, and in

12:49:14  14    talking with Ms. Allen about it, I tried to sort of make

12:49:19  15    clear that maybe these statements weren't as dramatic as

12:49:25  16    she made them out to be.

12:49:28  17       But the reality is, I mean, you know, you're

12:49:33  18    talking about just days before January 6 dragging --

12:49:39  19    dragging -- it's time to drag them out of Congress; the

12:49:44  20    votes were stolen; you'll have time to fight for what

12:49:47  21    you believe in; as for me, I believe in the

12:49:50  22    Constitution, so I will die for it.  And then the last

12:49:55  23    exhibit where you're talking really in the context of

12:49:59  24    January 6 about dragging Congress out on their face.

12:50:03  25       So, again, when I'm trying to assess what your

12:50:06  1    intent was, those things, those statements very close in

12:50:10  2    time matter.

12:50:15  3         I do think whether you talk about what you were

12:50:17  4    wearing as a bulletproof vest or not, there was

12:50:19  5    something bulky under your clothing that you were

12:50:24  6    wearing that I think, again, suggests that you were

12:50:31  7    prepared for some kind of confrontation.  Again,

12:50:36  8    inferentially that describes that kind of intent.

12:50:40  9         You mentioned to me about the statement about

12:50:43  10   walking to the Capitol, and I found earlier that it was

12:50:46  11   to a preponderance that the government had proved that

12:50:49  12   you had said the statement about all it's going to take

12:50:52  13   is one person to go.

12:50:53  14        You said -- you talked to me earlier and said it

12:50:56  15   wasn't you.  And, you know, I think probably considering

12:51:01  16   what you said to me, maybe that puts the needle back

12:51:06  17   where the government hasn't quite proved that to a

12:51:09  18   preponderance, and so I'm not going to consider that as

12:51:11  19   part of this litany of evidence.

12:51:18  20        So I sort of amend my earlier finding about whether

12:51:21  21   the government could prove that to a preponderance,

12:51:24  22   given what you said to me, and I won't consider that.

12:51:32  23        But I think, again, the statements on social media,

12:51:34  24   the bulky protection under your clothing, I think the

12:51:40  25   effort, the sheer effort it took for you to be one of

12:51:41  1    the first people -- to be the first person in, to get

12:51:47  2    all the way through all the barricades and protections

12:51:53  3    for the Capitol that were set up, that was a tremendous

12:51:57  4    effort.

12:51:59  5         And you're turning around and waving on the crowd,

12:52:05  6    as the one photo the government indicated, your

12:52:08  7    celebration with Mr. Howe on the terrace, then you being

12:52:16  8    the first one in the building.  You're proceeding to the

12:52:18  9    clock -- the Ohio Clock Corridor, your refusal to leave

12:52:24  10   despite the orders of the police.

12:52:29  11        These are just not the actions and the statements

12:52:31  12   of someone simply wanting to be heard or wanting to

12:52:35  13   watch something.  There were a million different ways

12:52:42  14   for you to be heard.  And after all, what was happening

12:52:44  15   on the floor of Congress was on TV literally.

12:52:47  16        So I, you know, we'll get to your characteristics

12:52:51  17   as an offender, and it's clear this behavior is not

12:52:55  18   reflected in the rest of your life.  And that's what

12:52:58  19   makes a case like this so difficult and so tragic.

12:53:05  20        But the reality is, the behavior you engaged in

12:53:09  21   that day, again, to include an intent to obstruct or

12:53:13  22   interfere with that proceeding, that important

12:53:16  23   constitutional proceeding, the reality is it's pretty

12:53:20  24   dark behavior.  And you posed a threat to whether our

12:53:24  25   constitutional process will proceed or whether a mob

12:53:30  1    would interfere with that process.  And that's, in

12:53:33  2    summary, is a very serious nature of the offense that I

12:53:43  3    have to consider.

12:53:45  4         Your characteristics as an offender -- you know, in

12:53:49  5    so many ways, I read every single letter that your

12:53:54  6    community, your family, your friends wrote.  I read the

12:53:59  7    letter you wrote to me.  I'll just get a few basics out

12:54:10  8    of the way.

12:54:10  9         You're 47.  You and your wife -- or maybe about 47.

12:54:16  10   You have your two, six-year-old twins, you have an

12:54:24  11   18-year-old stepdaughter and an older daughter.  You're

12:54:28  12   in good physical health.  You haven't -- you don't

12:54:34  13   report any mental or emotional issues, no addiction

12:54:38  14   issues.

12:54:40  15        And as where I start out for many defendants, you

12:54:45  16   were convicted of driving under the influence a ways

12:54:52  17   ago, but nothing that -- nothing else and nothing else

12:54:53  18   that would give you a criminal history score.  That's a

12:54:57  19   credit to you.

12:54:57  20        You have a high school diploma, you've owned your

12:55:01  21   own business.  And, again, I said, I've read all the

12:55:06  22   letters about your role in the community as somebody

12:55:16  23   who's -- I want to just look at my notes -- someone

12:55:21  24   who's religious and God-fearing and hardworking and a

12:55:27  25   family man and a help to others in the community;

12:55:31  1   someone who's a coach, someone who can be counted on to

12:55:35  2   help the elderly and youth, someone who can be counted

12:55:39  3   on to help coworkers in need.

12:55:42  4        You know, as far as I can tell, in all the real

12:55:50  5   ways matter, you were and are living the American Dream.

12:55:57  6   And there's many, many people in all walks of life who

12:56:07  7   would trade places with you and your job and family and

12:56:14  8   place in your community in a heartbeat.

12:56:18  9        I will say, though, that it's the fact that there

12:56:26  10  isn't any obvious explanation in all of this, again, for

12:56:33  11  what you did that day; that is so tragic to me.

12:56:41  12       You weren't driven by, you know, an addiction,

12:56:45  13  mental illness, or anything that seemed lacking in your

12:56:52  14  life.  And, you know, I read the letter you wrote to me,

12:56:58  15  I heard your statement to me today.  You know, there

12:57:03  16  were numerous times before -- earlier when you've said,

12:57:09  17  including your statement, I'll go again given the

12:57:12  18  opportunity.

12:57:12  19       I think, honestly, I don't think you appreciate --

12:57:20  20  and I appreciate the fact that you said what you said

12:57:22  21  about the officers here today, but I don't really think

12:57:25  22  you appreciate the full gravity of what happened that

12:57:35  23  day, and frankly the full seriousness of what you did.

12:57:42  24  And so I have to -- I take that into account here when

12:57:47  25  I'm trying to figure out what to do.

12:57:49  1        Because one of the things I have to do -- one of

12:57:53  2    the things I have to consider is deterrence, general

12:57:56  3    deterrence, deterrence for everyone -- for everyone to

12:58:01  4    know what happened that day can't happen again, and

12:58:04  5    specific deterrence, to make sure that you understand

12:58:10  6    that it was, you know, absolutely unacceptable to

12:58:18  7    conduct yourself the way you did that day.

12:58:23  8        And, again, I circle back to this, I know in your

12:58:25  9    statement to me, you talked about a serious concern of

12:58:29  10   yours about corruption in government, right, and

12:58:37  11   election fairness and election integrity.  I got, you

12:58:44  12   know, I say this -- I mean, let's just put it this way:

12:58:49  13   None of that can be used as a basis to excuse what

12:58:55  14   happened that day.  It's just -- plain and simple.

12:59:03  15       There are ways of trying to get at problems you

12:59:05  16   perceive with our government, but trying to interfere

12:59:13  17   with the constitutional machinery of the peaceful

12:59:16  18   transfer of power is just not one of them.

12:59:19  19       I know you -- again, and in your statement to me,

12:59:22  20   you said you were there -- you were not there to

12:59:26  21   obstruct or to interfere but only to be heard -- be

12:59:31  22   heard, make your voice heard, or to observe what was

12:59:34  23   happening.  And on that score, I just -- I don't --

12:59:37  24   that's what I find and I just don't believe that, given

12:59:42  25   the evidence.

12:59:46  1          So the next factor I have to consider is a sentence

12:59:49  2     that reflects the seriousness of the offense.  It has to

12:59:55  3     promote respect for the law.  It has to provide just

12:59:57  4     punishment for offense.  The sentence should also afford

13:00:02  5     adequate deterrence to criminal conduct, protect the

13:00:05  6     public from future crimes of the defendant, and promote

13:00:08  7     rehabilitation.

13:00:09  8          And I think all of these weigh in favor of a

13:00:17  9     sentence of incarceration.  This was a very serious

13:00:21  10    offense.  I think you showed a deep disrespect for the

13:00:25  11    law and for the functioning of the Constitution.  As I

13:00:27  12    mentioned, I think general and specific deterrence plays

13:00:30  13    a role here for all the reasons I've described.  What

13:00:36  14    happened on January 6 just cannot happen again

13:00:40  15    regardless of our differences -- not our differences,

13:00:44  16    our society, the way our -- regardless of whatever

13:00:49  17    contentious issues our country has to grapple with.

13:00:54  18          So turning to the types of sentences available.

13:00:58  19    I've talked about -- we've talked about the guidelines

13:01:01  20    say 15 to 21 months.  Probation recommends 21, the top

13:01:05  21    of the guidelines.  The government recommends a

13:01:11  22    substantial either variance or departure upward of

13:01:17  23    57 months.  And you say 12 months of home confinement,

13:01:24  24    no imprisonment.

13:01:25  25          I also have to consider unwanted sentence

13:01:29   1    disparities, and I've looked at the cases you all have

13:01:32   2    cited.  It's hard to -- you know, it is hard to -- no

13:01:38   3    case is exactly alike and it's hard to compare, but I've

13:01:41   4    looked at those cases, and I've also looked at the need

13:01:46   5    to provide restitution that the government alleges be

13:01:51   6    $2,000.

13:01:52   7       So after considering all of the 3553(a) factors,

13:01:58   8    and considering what is sufficient but not greater than

13:02:01   9    necessary to comply with the purposes of sentencing, I'm

13:02:05  10    going to depart significantly upward, and in the

13:02:10  11    alternative, very significantly upward.  And I'm going

13:02:15  12    to explain my reasoning.

13:02:18  13       So for all the reasons I'll explain below, I do

13:02:22  14    find that a departure is warranted under Guideline

13:02:25  15    Section 5K2.7, which allows for a departure when an

13:02:30  16    offense results in, quote, "a significant disruption of

13:02:34  17    a governmental function," close quote, and the

13:02:38  18    guidelines do not reflect the appropriate punishment for

13:02:41  19    the offense.

13:02:42  20       In such circumstances, quote, "The Court may

13:02:46  21    increase the sentence above the authorized guideline

13:02:49  22    range to, one, reflect the nature and extent of the

13:02:54  23    disruption, and, two, the importance of the governmental

13:02:59  24    function affected.

13:03:02  25       For the same reasons a departure would be warranted

1    under 5K2.2, which provide that the Court may depart

2    upward to reflect the actual seriousness of the offense

3    based on conduct, did not enter into the determination

4    of the applicable guidelines range.

5        So I'm going to explain why, as I must do for a

6    variance, that Mr. Sparks' conduct was, quote, "more

7    harmful or egregious than the typical case represented

8    by the otherwise applicable guidelines range," close

9    quote, and the guidelines calculation, quote, "does not

10   fully account for the criminal conduct," close quote.

11       First the guideline range of 15 to 21 months,

12   driven by the only other felony conviction for a

13   violation -- the only felony conviction here for a

14   violation of 18 United States Code, Section 231(a)(3)

15   does not account for the defendant's intent to obstruct,

16   not just law enforcement officers doing their duty under

17   that statute, but a proceeding, or for the purposes of

18   5K2.7, a governmental function.

19       And not any proceeding, but one foundational to our

20   country's governance, the proceeding employed by

21   Congress to facilitate the peaceful transfer of power

22   from one President to the next, certification of the

23   electoral college vote.

24       This peaceful transfer of power is fundamental to

25   our constitutional order and to the rule of law.  The

13:04:39  1   attack that day broke the tradition we had of the

13:04:43  2   peaceful transfer of power and showed that, indeed,

13:04:47  3   violence could be used to interfere with that transfer

13:04:51  4   of power even if just for a few hours.

13:04:56  5       But what a dangerous precedent the attack on

13:04:59  6   January 6 set.  What a Pandora's Box it opened.

13:05:05  7       We still don't no how corrosive it will prove to be

13:05:08  8   to our constitutional order, at least until we have

13:05:10  9   reestablished the practice of a peaceful transfer of

13:05:15  10  power.

13:05:16  11      That Mr. Sparks intended to interfere or obstruct

13:05:20  12  with the electoral college vote certification, which the

13:05:24  13  jury found, and which, as I said, I find to a

13:05:27  14  preponderance of the evidence for sentencing purposes

13:05:29  15  plays an important role in explaining why his conduct

13:05:32  16  was, quote, "more harmful or egregious than the typical

13:05:36  17  case represented by the otherwise applicable guidelines

13:05:39  18  range," close quote, and why the guidelines calculation,

13:05:43  19  quote, "does not fully account for the criminal

13:05:46  20  conduct," closed quote.

13:05:47  21      The typical person convicted of 18 United States

13:05:50  22  Code, Section 231(a)(3) engaged in nothing at all like

13:05:54  23  the attack on the Capitol and the certification of the

13:05:59  24  electoral college vote going on inside the Capitol on

13:06:04  25  January 6.

13:06:05   1          So the situation presented by the defendant's

13:06:07   2   conduct in this specific case involving an intentional

13:06:10   3   effort to disrupt the peaceful transfer of power is

13:06:13   4   simply not present in the typical Section 231(a)(3)

13:06:19   5   conviction.

13:06:20   6          Now, that the government dismissed the count

13:06:28   7   charging the defendant with violations of 18 United

13:06:33   8   States Code, Section 1512(c)(2) of the Supreme Court's

13:06:36   9   ruling in *Fischer* does not mean that I cannot consider

13:06:40  10   at sentencing the evidence that establishes that the

13:06:42  11   defendant intended to obstruct Congress' certification

13:06:45  12   of the electoral vote in determining whether the

13:06:48  13   Section 231(a)(3) conviction and the resulting guideline

13:06:52  14   range fully accounts for the criminal conduct.

13:06:56  15          Moreover, that our circuit in the *Brock* case for

13:07:00  16   guidelines purposes held that the certification did not

13:07:04  17   involve the administration of justice, and so the two

13:07:07  18   guideline enhancements that use that phrase "do not

13:07:10  19   apply" does not mean that I can't take into account at

13:07:13  20   sentencing that if anything the certification is a more

13:07:16  21   important proceeding than the typical one from which the

13:07:20  22   administration of justice enhancements were to apply.

13:07:23  23          If a single criminal prosecution is obstructed,

13:07:26  24   that is serious; but if the basic constitutional

13:07:30  25   machinery of our country that governs the peaceful

13:07:35  1    transfer of power is interfered with, then that is

13:07:39  2    orders of magnitude more serious.

13:07:41  3         Second the guideline range of 15 to 21 months does

13:07:44  4    not reflect Mr. Sparks' specific role in obstructing the

13:07:49  5    certification process, another reason why his conduct

13:07:51  6    was more harmful or egregious than the typical case

13:07:56  7    represented by the otherwise applicable guideline range

13:07:59  8    and why the guidelines calculation does not fully

13:08:01  9    account for the criminal conduct.

13:08:08  10        I mentioned this before, but I think the reality is

13:08:10  11   I do not agree with the defendant's argument in his

13:08:13  12   sentencing memo that the when or how he entered the

13:08:15  13   Capitol is not important in this case.

13:08:18  14        To the contrary, I must consider the totality of

13:08:24  15   his conduct that day.  And after watching a fellow

13:08:27  16   rioter smash a window with a police shield, Mr. Sparks

13:08:30  17   was the very first rioter to enter the Capitol that day,

13:08:36  18   emboldening those behind him and paving the way for

13:08:39  19   countless rioters to stream inside.

13:08:46  20        And just as importantly, he was one of only a small

13:08:49  21   handful of others out of the many that were present in

13:08:52  22   and around the Capitol that day to reach a corridor

13:08:57  23   right next to where members of the United States Senate

13:08:59  24   and the Vice President were still present before they

13:09:02  25   could be evacuated.

13:09:05 1      Now, true, as we've mentioned, Mr. Sparks did not

13:09:08 2  have anything that could be used as a weapon.  He did

13:09:12 3  not assault or say anything overtly threatening to the

13:09:18 4  officers.  But on the other hand, he withstood pepper

13:09:23 5  spray from Officer Nichols after charging through the

13:09:25 6  window, and in the Ohio Clock Corridor, he was at or

13:09:29 7  near the front of the mob, shouting and angry, perhaps

13:09:35 8  -- you look at the video, even trying to inch past the

13:09:39 9  officers.

13:09:39 10     The officers asked him to leave, but instead, he

13:09:43 11  maintained the standoff with them in the corridor for

13:09:47 12  about ten minutes or so.

13:09:52 13     The specific role Mr. Sparks played in breaching

13:09:54 14  the building and helping to bring the mob to the

13:09:57 15  precipice of engaging directly with members of Congress

13:10:01 16  and the Vice President is another reason why a variance

13:10:03 17  is warranted here.

13:10:05 18     Third, although if there were no other factors that

13:10:08 19  warranted a variance, I don't think this would do so

13:10:11 20  alone, but my conclusion that an upward variance is

13:10:15 21  warranted and the extent of that variance is underscored

13:10:21 22  by what I think of as, I think, by Mr. Sparks' lack of

13:10:26 23  full remorse and lack of full acknowledgment that what

13:10:30 24  he did was wrong that day.  And I do think I need to

13:10:36 25  deter him and others from engaging in this kind of

13:10:39  1    behavior again.

13:10:40  2        And, fourth, I think a variance is warranted by the

13:10:45  3    need to avoid unwanted sentence disparities.

13:10:48  4        Although no two cases are identical, I've

13:10:51  5    identified several other defendants who were situated

13:10:55  6    somewhat similarly to Mr. Sparks.  Doug Jensen who was

13:11:01  7    also, at least in the way he presented himself, a leader

13:11:06  8    of the mob in the Ohio Clock Corridor, went to trial on

13:11:12  9    similar charges to Mr. Sparks, and I sentenced him to

13:11:15  10   55 months of incarceration.

13:11:17  11       To be fair, Mr. Jensen was also sentenced for

13:11:21  12   assault, although it was an assault by threatening

13:11:26  13   conduct, not because he made contact with an officer,

13:11:29  14   and for a 1512 obstruction offense.

13:11:32  15       But Mr. Jensen's overall conduct was actually

13:11:36  16   fairly similar to Mr. Sparks', even if Mr. Jensen wasn't

13:11:40  17   the first one in the building.

13:11:42  18       And as I believe I noted at the time, if not for

13:11:47  19   mitigating health issues not applicable here, I would

13:11:51  20   have sentenced Mr. Jensen more severely.

13:11:54  21       Mr. Sparks' codefendant Mr. Howe was sentenced to

13:11:58  22   50 months.  His conduct, including assaulting officers,

13:12:02  23   was more serious than Mr. Sparks' in that sense.  And

13:12:05  24   like Mr. Jensen, one of his charges was for a 1512

13:12:10  25   violation.  And he had a criminal history category of 2,

13:12:15  1    not 1.  But Mr. Howe didn't lead the rioters into the

13:12:21  2    building as Mr. Sparks did.  He was not present in the

13:12:23  3    Ohio Clock Corridor in that sensitive time and place so

13:12:27  4    close to our elected officials.  And importantly, unlike

13:12:32  5    Mr. Sparks, Mr. Howe took responsibility for his

13:12:38  6    actions.

13:12:38  7         In any event, these comparators show that similarly

13:12:42  8    situated defendants have received sentences far more

13:12:45  9    than the guidelines would otherwise call for here, even

13:12:53  10   if, again, in part that was because of a 1512 charge.

13:13:01  11   That is not at issue here.

13:13:04  12        But for all these reasons, I am going to depart and

13:13:11  13   vary upward.

13:13:12  14        Before I get to that specific sentence, let me also

13:13:15  15   say, I'm going to impose restitution in the amount of

13:13:19  16   $2,000.  I did look closely at this and what I have to

13:13:26  17   do as far as -- what I have to find as far as

13:13:31  18   restitution goes.

13:13:33  19        I mean, I think the standard here is I just have to

13:13:35  20   be able to make a reasoned judgment in a case in which

13:13:39  21   you have sort of more than one cause of damage -- or

13:13:46  22   more than one cause of the loss like you have here.

13:13:52  23        The government -- I did -- I'll take -- the

13:13:56  24   government cited a loss amount that's basically almost

13:14:03  25   $3 million in its sentencing memo.  I went and looked at

13:14:07  1    the most recent update the government -- a press release

13:14:10  2    the government issued back in May of 2024.  I'll just

13:14:15  3    take judicial notice of the information in this press

13:14:19  4    release that talks about how many -- the loss amount,

13:14:24  5    which is now slightly greater, and how many defendants

13:14:27  6    have been charged.

13:14:29  7         You know, it looks like to me, just to kind of

13:14:32  8    ballpark this, that if you take -- there are approaching

13:14:40  9    or around 1,500 people having been charged.  And if you

13:14:42  10   take the 3 million and divide it by 1,500, you get

13:14:47  11   2,000, as it turns out.

13:14:49  12        Now, that doesn't account for certain other

13:14:51  13   variables.  All those people were not charged or did

13:14:54  14   not -- were not convicted of felonies and people who are

13:14:59  15   being convicted of felonies are being asked to make

13:15:03  16   more -- pay $2,000; generally, in misdemeanors, I think

13:15:15  17   only $500.

13:15:16  18        So even if you pump that number up to 2,000, add

13:15:21  19   another 500 people who may be charged, you're still

13:15:24  20   looking at $1,500 per person.

13:15:27  21        So I think, you know, ballparking this and

13:15:29  22   considering that the defendant here was convicted of

13:15:34  23   felonies and by virtue of being the first person in the

13:15:37  24   building, probably, again, putting aside people who

13:15:49  25   personally destroyed things with their -- directly,

13:15:51  1   about $2,000 seems to be a reasonable amount in terms of

13:15:54  2   the loss amount and the number of people who had been

13:15:56  3   charged in these cases.

13:15:59  4       So I think I can make a reasoned judgment.  That

13:16:02  5   and the fact that anyone else who has pled guilty to

13:16:04  6   these offenses, felonies, has paid $2,000, I think I can

13:16:09  7   make a reasoned judgment that that is an appropriate

13:16:12  8   amount of restitution.

13:16:21  9       All right.  So, Mr. Wendelsdorf, can I ask you and

13:16:22  10  Mr. Sparks to approach the podium, please.

13:16:37  11      Can I ask -- Mr. Wendelsdorf, just so we don't have

13:16:39  12  to get into this later and I can write it down now, does

13:16:44  13  he have -- in terms of service of a sentence, where --

13:16:47  14  does he have a particular facility in mind or a

13:16:49  15  particular place where I would say as close to wherever

13:16:53  16  as possible?

13:16:55  17      As you know, I can't -- as counsel knows, I can't

13:16:58  18  tell the Bureau of Prisons where to put the defendant,

13:17:02  19  but I can recommend.

13:17:04  20          MR. WENDELSDORF:  As close to Elizabethtown,

13:17:07  21  Kentucky, as possible.

          22          THE COURT:  Yes.

13:17:08  23          MR. WENDELSDORF:  It's somewhat complicated,

13:17:08  24  there are no federal institutions in the Western

13:17:11  25  District of Kentucky, but there are several in the

13:17:15   1       Eastern.

13:17:15   2               THE COURT:  Okay.  So just as close to

13:17:17   3       Elizabethtown?

13:17:19   4               MR. WENDELSDORF:  Yes.  Yes, Your Honor.

13:17:20   5               THE COURT:  Okay.  All right.  Very well.  So

13:17:41   6       for all the reasons, I am going to depart significantly

13:17:44   7       upward, and in the alternative vary significantly upward

13:17:48   8       and sentence Mr. Sparks to 53 months of incarceration

13:17:52   9       and three years of supervised release and $2,000 in

13:17:57  10       restitution.

13:17:59  11           He'll report, of course not today, but as directed

13:18:01  12       by the probation office, and I will recommend that he

13:18:05  13       serve his sentence as close to Elizabethtown, Kentucky,

13:18:10  14       as possible.

13:18:12  15               MR. WENDELSDORF:  Thank you, Judge.

13:18:13  16               THE COURT:  Pursuant to the Sentencing Reform

13:18:15  17       Act of 1984 and in consideration of the provisions of 18

13:18:20  18       United States Code, Section 3553, as well as the

13:18:23  19       advisory sentencing guidelines, it's the judgment of the

13:18:26  20       Court that you, Michael Sparks, are hereby committed to

13:18:29  21       the custody of the Bureau of Prisons for concurrent

13:18:33  22       terms of 54 [sic] months on Count 2, 12 months on each

13:18:39  23       of Counts 10 and 11, and six months on each of Counts 12

13:18:44  24       and 14.

13:18:45  25           You are further sentenced to serve concurrent terms

13:18:48  1   of 36 months, or three years, of supervised release on

13:18:52  2   Count 2, and 12 months, or one year, on Counts 10 and

13:18:57  3   11.

13:18:57  4         In addition, you are ordered to pay a special

13:19:01  5   assessment of $100 on Count 2, $25 each -- on each of

13:19:07  6   Counts 10 and 11, and $10 on each Counts 12 and 14, for

13:19:11  7   a total of $170 in accordance with 18 United States

8   Code, Section 3013.

13:19:18  9         While on supervision, you shall abide by the

13:19:20  10  following mandatory conditions as well as all

13:19:23  11  discretionary conditions recommended by the probation

13:19:26  12  office in Part D, sentencing options of the presentence

13:19:30  13  report which are imposed to establish the basic

13:19:34  14  expectations for your conduct while on supervision.

13:19:37  15        The mandatory conditions include, one, you must not

13:19:39  16  commit another federal, state, or local crime.

13:19:42  17        Two, you must not unlawfully possess a controlled

13:19:47  18  substance.

13:19:48  19        Three, you must refrain from any unlawful use of a

13:19:50  20  control substance.  You must submit to one drug test

13:19:54  21  within 15 days of placement on supervision and provide

13:19:57  22  at least two periodic drug tests thereafter, as

13:20:02  23  determined by the Court.

13:20:02  24        Four, you must cooperate in the collection of DNA

13:20:06  25  as directed by the probation officer.

13:20:08  1    And, five, you must make restitution in accordance

13:20:10  2    with 18 United States Code, Sections 3663 and 3663(a) or

13:20:15  3    any other statute authorizing a sentence of

13:20:18  4    restitution.

13:20:19  5    You shall comply with the following special

13:20:22  6    conditions:

13:20:22  7    Financial information disclosure.  You must provide

13:20:26  8    the probation officer access to any requested financial

13:20:30  9    information and authorize the release of any financial

13:20:32  10   information until your financial obligations have been

13:20:35  11   satisfied.

13:20:35  12   The probation office may share financial

13:20:39  13   information with the United States Attorney's Office.

13:20:42  14   Financial restrictions.  You must not incur new

13:20:45  15   credit charges or open additional lines of credit

13:20:47  16   without the approval of the probation officer until your

13:20:50  17   financial obligations have been satisfied.

13:20:54  18   Location restriction.  You must not knowingly enter

13:20:57  19   the United States Capitol Building or onto surrounding

13:21:02  20   grounds, known as Capitol Square, and consisting of the

13:21:05  21   square block bounded by Constitution Avenue, Northwest

13:21:07  22   and Northeast, to First Street, Northeast and Southeast,

13:21:13  23   to Independence Avenue, Southeast and Southwest, to

13:21:17  24   First Street, Southwest and Northwest, comprising the

13:21:18  25   property under any circumstances without first obtaining

13:21:21    1    the permission of the probation officer and/or the

13:21:26    2    Court.

13:21:26    3        Location restriction.  You must not knowingly enter

13:21:29    4    the District of Columbia without obtaining the

13:21:32    5    permission of the probation officer and/or the Court.

13:21:35    6        I do find that you do not have the ability to pay a

13:21:37    7    fine and, therefore, I waive imposition of fine in this

13:21:40    8    case.  And you are ordered to make restitution to an

13:21:44    9    amount of $2,000 to the Architect of the Capitol.

13:21:48   10        I do determine that you do not have the ability to

13:21:51   11    pay interest and, therefore, I waive any interest or

13:21:54   12    penalties that may accrue on any balance.

13:21:57   13        Restitution payments shall be made to the Clerk of

13:22:00   14    the Court for the United States District Court, District

13:22:03   15    of Columbia, for disbursement to the following victim:

13:22:06   16        Victim name, Architect of the Capitol, Office of

13:22:10   17    the Chief Financial Officer, Ford House Office Building,

13:22:14   18    Room H2-205B, Washington, D.C. 20515.  The amount of

13:22:22   19    loss is $2,000.

13:22:22   20        The financial obligations are immediately payable

13:22:25   21    to the Clerk of the Court for U.S. District Court, 333

13:22:30   22    Constitution Avenue, Northwest, Washington, D.C. 20001.

13:22:33   23        Within 30 days of any change of address you shall

13:22:37   24    notify the Clerk of the Court of the change until such

13:22:39   25    time as the financial obligation is paid in full.

13:22:42  1          The probation office shall release the presentence

13:22:46  2     investigation report to all appropriate agencies, which

13:22:48  3     includes the United States Probation Office in the

13:22:51  4     approved district of residence in order to execute the

13:22:55  5     sentence of the Court.

13:22:59  6          Mr. Sparks, you have the right to appeal your

13:23:01  7     convictions of guilt to the U.S. Court of Appeals for

13:23:04  8     the D.C. Circuit, and you also have a statutory right to

13:23:09  9     appeal your sentence to the D.C. Circuit under certain

13:23:14  10    circumstances.

13:23:16  11         Any notice of appeal must be filed within 14 days

13:23:19  12    of the entry of judgment or within 14 days of the filing

13:23:22  13    of a notice of appeal by the government.

13:23:24  14         If you are unable to afford the cost of an appeal,

13:23:28  15    you may request permission from the Court to file an

13:23:31  16    appeal without cost to you.  And on appeal, you may also

13:23:35  17    apply for court-appointed counsel.

13:23:37  18         Are there any objections to the sentence imposed

13:23:40  19    that are not already noted on the record?

13:23:43  20         From the government.

13:23:45  21          MS. ALLEN:  No, Your Honor.  Can I ask two

13:23:50  22    points of clarification?

13:23:51  23         When you were announcing the reasons for --

13:23:54  24          THE COURT:  Ms. Allen, can you move your mouth

13:23:56  25    closer to the microphone?  I can hear you but I don't

13:24:00   1    know if everyone can.

13:24:02   2          MS. ALLEN:  I believe I heard Your Honor in the

13:24:05   3    written portion of the ruling mention that Mr. Jensen's

13:24:09   4    sentence imposed was 55 months.  I believe it was

13:24:13   5    60 months.  In the event that Your Honor is publishing

13:24:16   6    written findings, which I know the government has asked

13:24:19   7    you to do, if that point could be clarified.

13:24:24   8          THE COURT:  You are -- if I said that --

13:24:26   9    correct, it was 60, as I have it here.

13:24:29  10       Yes, so that was -- I just misspoke.  It was

13:24:32  11    60 months.  You are correct.

13:24:33  12          MS. ALLEN:  Thank you.  And one question, I'm

13:24:35  13    not sure if I heard whether the sentence imposed here

13:24:37  14    today was 53 months or 54 months.

13:24:40  15          MR. WENDELSDORF:  I'm with that, too.  I

13:24:42  16    thought originally it was 53.

13:24:46  17          THE COURT:  53 is what I meant to say.

         18          MS. ALLEN:  Okay.

13:24:48  19          THE COURT:  53 months.

13:24:49  20       And the other thing just while I'm thinking of it

13:24:52  21    that I thought you were going to ask is, and it would be

13:24:56  22    the same sentence regardless of the two guideline

13:25:01  23    calculation issues that we discussed here today, which

13:25:04  24    are the obstruction and the grouping issues.

13:25:10  25          MR. WENDELSDORF:  I understand.

13:25:12  1          THE COURT:  Any further -- Mr. Wendelsdorf, any

13:25:16  2   further objections that have not already been noted?

13:25:21  3          MR. WENDELSDORF:  No further objections, Judge.

13:25:23  4          THE COURT:  Okay.  Mr. Sparks, let me just say

13:25:27  5   this to you.  Obviously, you've got -- you're going to

13:25:36  6   have to pay your debt here, and you will -- on the other

13:25:43  7   side of that, you have a lot of things and life to look

13:25:51  8   forward to, and you'll be in my prayers as you pay your

13:25:57  9   debt.

13:25:57  10      Is there anything further from the government?

13:26:00  11          MS. ALLEN:  No, Your Honor.

13:26:00  12          THE COURT:  Anything further from you,

13:26:02  13   Mr. Wendelsdorf?

13:26:02  14          MR. WENDELSDORF:  No, Your Honor.  Thank you.

13:26:03  15          THE COURT:  Ms. Harris, you're looking at me

13:26:05  16   like there's something from you.

13:26:07  17          DEPUTY COURTROOM CLERK:  The previous

13:26:08  18   indictments need to be dismissed on motion by the

13:26:11  19   government.

13:26:11  20          THE COURT:  I did not even -- yes.

13:26:13  21          MS. ALLEN:  Thank you, Your Honor.

13:26:17  22      In addition to our prior motion, the government

13:26:19  23   moves to dismiss the remaining counts from the prior

13:26:22  24   indictments.

13:26:23  25          THE COURT:  All right.  And that -- without

13:26:25  1        opposition, that motion will be granted.

13:26:31  2               Good luck, and the parties are dismissed.

13:26:34  3               (Court in recess, 1:26 p.m.)

13:26:54  4                          - - - -

          5

          6

          7                          CERTIFICATE

          8

          9        This document is hereby certified to be a true and

         10          correct transcript of the foregoing proceedings.

         11

         12

         13          /s/ Chandra R. Kean, RMR          August 29, 2024

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

## $

**$1,500** [1] - 99:20
**$10** [1] - 102:6
**$100** [1] - 102:5
**$100,000** [1] - 42:17
**$170** [2] - 42:22, 102:7
**$2,000** [9] - 42:21,
  91:6, 98:16, 99:16,
  100:1, 100:6, 101:9,
  104:9, 104:19
**$25** [1] - 102:5
**$250,000** [1] - 42:16
**$5,000** [1] - 42:17
**$500** [1] - 99:17
**$75,000** [1] - 42:19

## /

**/s** [1] - 108:13

## 0

**0** [1] - 40:9

## 1

**1** [3] - 40:15, 51:2,
  98:1
**1,500** [2] - 99:9, 99:10
**10** [11] - 11:17, 17:19,
  41:25, 42:4, 42:13,
  42:16, 43:3, 43:5,
  101:23, 102:2, 102:6
**10:23** [1] - 2:2
**11** [10] - 11:17, 41:25,
  42:4, 42:14, 42:16,
  43:3, 43:6, 101:23,
  102:3, 102:6
**111(a)** [1] - 58:7
**12** [11] - 11:18, 42:1,
  42:5, 42:17, 43:3,
  43:6, 90:23, 101:22,
  101:23, 102:2, 102:6
**12-month** [1] - 66:11
**12:16** [1] - 77:14
**12:35** [1] - 77:15
**131** [1] - 3:20
**132** [1] - 3:20
**134** [1] - 3:12
**135** [1] - 3:12
**136** [1] - 3:20
**139** [1] - 3:20
**14** [12] - 11:18, 11:22,
  40:14, 42:1, 42:5,
  42:17, 43:3, 43:6,
  101:24, 102:6,
  105:11, 105:12
**140** [1] - 3:20
**15** [7] - 40:15, 41:21,
  66:13, 90:20, 92:11,

95:3, 102:21
**15-minute** [2] - 77:3,
  77:12
**1512** [5] - 47:11,
  50:14, 97:14, 97:24,
  98:10
**1512(c)(2** [1] - 94:8
**16** [1] - 70:25
**1752** [10] - 13:8, 13:13,
  14:7, 15:19, 15:21,
  16:16, 17:17, 17:23,
  18:8, 20:7
**1752(a)(1** [1] - 14:2
**1752(a)(2** [1] - 14:2
**18** [11] - 4:24, 14:1,
  24:2, 43:18, 43:21,
  92:14, 93:21, 94:7,
  101:17, 102:7, 103:2
**18-year-old** [1] - 87:11
**18th** [1] - 23:9
**1984** [1] - 101:17
**1:26** [1] - 108:3

## 2

**2** [12] - 11:16, 41:24,
  42:3, 42:11, 42:13,
  42:16, 43:1, 43:5,
  97:25, 101:22,
  102:2, 102:5
**2,000** [2] - 99:11,
  99:18
**20** [5] - 26:9, 70:8,
  70:12, 70:23, 83:8
**20001** [1] - 104:22
**2016** [1] - 74:22
**2020** [3] - 33:19,
  74:12, 75:3
**2021** [2] - 51:2, 62:5
**2024** [5] - 5:6, 29:22,
  51:18, 99:2, 108:13
**20515** [1] - 104:18
**20th** [1] - 5:5
**21** [8] - 40:15, 41:21,
  66:13, 66:15, 90:20,
  92:11, 95:3
**21-87** [2] - 2:4, 77:17
**22** [2] - 27:17, 27:18
**22nd** [1] - 39:19
**231** [12] - 13:7, 13:12,
  15:20, 16:10, 16:12,
  17:9, 17:14, 17:23,
  18:6, 20:9, 20:12,
  20:13
**231(a)(3** [6] - 14:2,
  14:4, 92:14, 93:22,
  94:4, 94:13
**24** [2] - 27:14, 46:10
**24th** [1] - 39:19
**25** [1] - 32:15

**26** [1] - 12:11
**29** [2] - 6:2, 108:13
**293** [1] - 33:10
**2:00** [1] - 24:2
**2:13** [1] - 69:17
**2:28** [1] - 70:7
**2:33** [1] - 70:8
**2A2.4** [3] - 16:14,
  17:12, 17:19
**2B2.3** [3] - 16:17,
  16:25, 17:18
**2B2.3(a** [1] - 15:22
**2B2.3(b)(1)(A** [1] -
  15:23
**2B2.3(c** [1] - 16:2
**2J1.2** [1] - 61:5
**2X1.1** [1] - 16:4
**2X5.1** [2] - 16:11,
  16:13

## 3

**3** [5] - 20:23, 46:12,
  60:9, 98:25, 99:10
**30** [1] - 104:23
**301** [1] - 33:8
**3013** [1] - 102:8
**304** [2] - 33:8, 33:9
**305** [1] - 33:8
**31** [1] - 52:4
**325** [1] - 38:3
**332** [1] - 38:3
**333** [2] - 38:5, 104:21
**335** [1] - 38:5
**35** [4] - 6:9, 9:17, 10:8,
  11:1
**3553** [2] - 77:21,
  101:18
**3553(a** [3] - 44:19,
  57:3, 91:7
**3553(a)** [3] - 4:25,
  43:21, 56:21
**36** [1] - 102:1
**3663** [1] - 103:2
**3663(a** [1] - 103:2
**3C1.1** [5] - 22:6, 31:6,
  32:13, 36:8, 40:6
**3D1.2** [4] - 13:22,
  15:11, 20:22, 21:21
**3D1.2(a** [3] - 14:20,
  15:8, 17:22
**3D1.2(b** [1] - 17:23
**3D1.2(b)** [1] - 14:20
**3D1.2(c** [2] - 15:9,
  18:6
**3D1.2(c)** [1] - 17:21
**3rd** [1] - 50:17

**4** [5] - 15:22, 28:14,
  50:20, 59:24, 60:15
**414** [1] - 59:23, 59:25
**47** [1] - 87:9
**4D** [3] - 28:15, 28:16,
  37:1
**4th** [1] - 59:18

## 5

**5** [3] - 20:23, 21:12,
  21:20
**50** [1] - 97:22
**500** [1] - 99:19
**53** [5] - 101:8, 106:14,
  106:16, 106:17,
  106:19
**54** [2] - 101:22, 106:14
**55** [2] - 97:10, 106:4
**57** [2] - 57:18, 90:23
**57-month** [1] - 58:12
**58** [1] - 16:9
**59** [3] - 16:15, 17:3,
  17:6
**5K2.14** [1] - 41:8
**5K2.2** [1] - 92:1
**5K2.21(2)** [1] - 41:8
**5K2.7** [3] - 41:8,
  91:15, 92:18

## 6

**6** [31] - 15:25, 16:19,
  17:18, 22:16, 23:10,
  26:6, 26:14, 29:7,
  32:23, 38:5, 47:16,
  50:21, 51:10, 51:20,
  60:13, 60:16, 62:1,
  62:25, 64:2, 65:17,
  65:25, 66:6, 67:1,
  70:25, 78:7, 78:17,
  84:18, 84:24, 90:14,
  93:6, 93:25
**60** [4] - 58:12, 106:5,
  106:9, 106:11
**64** [1] - 17:13
**6th** [3] - 22:13, 51:22,
  58:15

## 7

**7,500** [1] - 42:19
**713** [1] - 33:8

## 8

**8** [2] - 50:9, 50:25

## 9

**9th** [2] - 22:21, 23:1

## A

**a.m** [1] - 2:2
**abide** [1] - 102:9
**ability** [3] - 79:24,
  104:6, 104:10
**able** [4] - 39:22, 81:19,
  83:6, 98:20
**absolute** [1] - 59:9
**absolutely** [3] - 21:2,
  79:9, 89:6
**accept** [2] - 11:4,
  56:15
**accepted** [2] - 19:9,
  48:21
**access** [1] - 103:8
**accordance** [2] -
  102:7, 103:1
**accordingly** [2] -
  14:15, 14:19
**account** [32] - 22:22,
  23:5, 23:7, 23:21,
  24:3, 24:6, 24:7,
  24:9, 24:12, 24:15,
  24:17, 24:19, 24:23,
  25:1, 31:11, 32:5,
  35:11, 37:24, 37:25,
  51:3, 55:10, 55:19,
  56:18, 56:23, 58:5,
  88:24, 92:10, 92:15,
  93:19, 94:19, 95:9,
  99:12
**accountable** [1] -
  64:21
**accounted** [1] - 57:9
**accounts** [2] - 31:15,
  94:14
**accrue** [1] - 104:12
**accurate** [2] - 11:3,
  12:17
**accurately** [1] - 43:9
**acknowledge** [1] -
  64:22
**acknowledgment** [1] -
  96:23
**Act** [1] - 101:17
**act** [6] - 14:7, 14:16,
  17:13, 17:24, 18:20,
  37:9
**acting** [2] - 56:11,
  71:2
**action** [4] - 23:7,
  23:20, 27:17, 38:22
**actions** [8] - 51:11,
  62:9, 64:9, 64:15,
  64:23, 65:1, 86:11,
  98:6

**activities** [1] - 24:18

**acts** [3] - 14:16, 17:25, 35:4

**actual** [1] - 92:2

**add** [3] - 6:19, 12:15, 99:18

**added** [2] - 15:22, 29:22

**addiction** [2] - 87:13, 88:12

**addition** [6] - 40:23, 43:19, 44:7, 77:8, 102:4, 107:22

**additional** [2] - 40:17, 103:15

**additionally** [1] - 72:10

**address** [4] - 19:17, 59:13, 72:10, 104:23

**adds** [1] - 8:9

**adequate** [2] - 44:4, 90:5

**adherence** [1] - 61:4

**adjust** [1] - 18:7

**adjusted** [1] - 17:18

**adjustment** [7] - 15:14, 19:24, 21:3, 21:9, 25:10, 28:23, 38:16

**adjusts** [1] - 15:18

**administration** [5] - 25:3, 36:10, 39:2, 94:17, 94:22

**admitted** [2] - 26:17, 38:12

**ado** [1] - 44:17

**adopts** [1] - 18:3

**adversely** [1] - 14:5

**advisory** [1] - 101:19

**advocated** [1] - 51:2

**affect** [3] - 26:4, 28:10, 37:6

**affected** [3] - 62:3, 65:18, 91:24

**affecting** [1] - 14:5

**afford** [3] - 44:4, 90:4, 105:14

**aftermath** [1] - 63:7

**age** [1] - 31:16

**agencies** [1] - 105:2

**Agent** [3] - 53:23, 53:25, 56:3

**agent** [1] - 23:22

**aggravating** [1] - 4:17

**aggregate** [1] - 81:2

**agitated** [1] - 52:22

**agitator** [1] - 52:10

**ago** [1] - 87:17

**agree** [12] - 9:17, 16:18, 25:22, 26:25,

30:16, 37:7, 48:8, 68:1, 68:10, 68:15, 69:7, 95:11

**agreement** [3] - 11:13, 31:9, 32:10

**agrees** [1] - 16:16

**ahead** [6] - 8:13, 26:8, 26:18, 46:2, 53:8, 83:5

**alike** [1] - 91:3

**alleges** [1] - 91:5

**Allen** [10] - 2:6, 2:18, 8:5, 20:3, 21:19, 35:1, 43:15, 46:13, 84:14, 105:24

**ALLEN** [53] - 2:16, 2:21, 2:23, 3:5, 3:24, 5:9, 5:12, 7:3, 20:4, 21:2, 21:11, 22:7, 25:11, 27:8, 28:16, 28:20, 30:15, 30:19, 30:21, 30:25, 40:22, 43:16, 44:21, 44:25, 45:3, 46:16, 47:10, 47:14, 47:21, 47:24, 48:1, 48:8, 48:16, 48:19, 48:23, 49:24, 50:1, 50:5, 59:22, 59:24, 60:2, 60:4, 60:8, 60:14, 61:1, 61:19, 77:6, 105:21, 106:2, 106:12, 106:18, 107:11, 107:21

**allowed** [1] - 73:1

**allowing** [1] - 61:23

**allows** [1] - 91:15

**almost** [10] - 39:11, 41:16, 47:17, 53:8, 57:25, 58:1, 58:23, 73:25, 98:24

**alone** [4] - 28:22, 31:11, 38:15, 96:20

**alternate** [2] - 48:15, 48:19

**alternative** [2] - 91:11, 101:7

**amend** [1] - 85:20

**amended** [1] - 10:8

**Amendment** [2] - 35:15, 79:9

**America** [2] - 2:4, 77:18

**American** [5] - 62:16, 64:6, 74:6, 74:13, 88:5

**Americans** [2] - 62:13, 78:23

**amount** [10] - 8:1, 42:20, 98:15, 98:24,

99:4, 100:1, 100:2, 100:8, 104:9, 104:18

**analogous** [2] - 16:13, 34:6

**analysis** [2] - 13:14, 18:3

**analytic** [1] - 30:8

**analytically** [1] - 30:9

**anger** [1] - 35:19

**angry** [3] - 35:22, 52:22, 96:7

**animal** [1] - 21:4

**animals** [1] - 20:2

**announced** [1] - 45:4

**announcing** [1] - 105:23

**answer** [1] - 50:21

**answered** [1] - 53:3

**Antifa** [1] - 73:24

**anyway** [2] - 6:4, 11:1

**apologize** [3] - 68:22, 68:24, 76:22

**app** [2] - 31:19, 37:11

**appeal** [7] - 105:6, 105:9, 105:11, 105:13, 105:14, 105:16

**Appeals** [1] - 105:7

**appeared** [2] - 55:9, 71:18, 71:21

**applicable** [14] - 15:15, 15:18, 16:10, 17:12, 17:17, 41:20, 42:1, 42:5, 43:7, 92:4, 92:8, 93:17, 95:7, 97:19

**application** [7] - 16:25, 17:21, 25:24, 25:25, 36:17, 61:3

**Application** [3] - 20:23, 21:12, 21:20

**applied** [3] - 31:7, 38:17, 61:5

**applies** [4] - 4:15, 11:10, 26:24, 36:8

**apply** [14] - 12:8, 16:1, 16:4, 16:12, 16:23, 25:10, 31:6, 34:15, 39:23, 40:6, 72:2, 94:19, 94:22, 105:17

**applying** [2] - 21:17, 32:7

**appointed** [1] - 105:17

**appreciate** [4] - 65:11, 88:19, 88:20, 88:22

**approach** [1] - 100:10

**approaches** [1] - 52:25

**approaching** [1] - 99:8

**appropriate** [8] - 4:22, 12:20, 12:23, 16:16, 58:12, 91:18, 100:7, 105:2

**appropriately** [1] - 15:4

**approval** [1] - 103:16

**approved** [1] - 105:4

**apps** [3] - 31:17, 31:23, 32:6

**Architect** [2] - 104:9, 104:16

**architects** [1] - 48:12

**argue** [9] - 13:7, 15:6, 26:10, 26:11, 29:5, 40:3, 40:4, 41:15, 50:6

**argued** [4] - 40:16, 40:18, 46:23, 69:19

**arguing** [3] - 15:2, 42:24, 68:6

**argument** [15] - 18:12, 18:22, 19:6, 19:7, 19:12, 19:20, 20:5, 20:18, 20:19, 26:7, 26:11, 30:15, 41:14, 41:16, 95:11

**arguments** [7] - 11:12, 40:7, 43:19, 44:18, 44:19, 47:11, 78:9

**Arizona** [1] - 33:16

**armed** [2] - 45:19, 70:21

**arms** [2] - 50:24, 51:1

**array** [2] - 55:13, 55:17

**arrest** [2] - 23:22, 37:22

**arrested** [1] - 23:24

**arrived** [1] - 57:23

**article** [6] - 47:11, 47:19, 48:17, 49:11, 49:23, 50:2

**aside** [5] - 13:3, 33:12, 40:18, 41:3, 99:24

**assault** [6] - 19:1, 58:6, 58:11, 96:3, 97:12

**assaulted** [2] - 53:23, 70:21

**assaulting** [4] - 32:22, 81:8, 82:19, 97:22

**assertions** [1] - 13:10

**assess** [1] - 84:25

**assessed** [1] - 77:19

**assessment** [2] - 42:22, 102:5

**assume** [1] - 72:9

**assuming** [2] - 41:18, 72:8

**assured** [1] - 70:3

**attachments** [1] - 3:14

**attack** [6] - 62:1, 63:5, 64:5, 93:1, 93:5, 93:23

**attacked** [3] - 53:20, 62:13, 63:14

**attacking** [1] - 70:15

**attempt** [4] - 25:5, 30:12, 30:21, 39:20

**attempted** [2] - 18:19, 36:10

**attempting** [2] - 25:2, 36:25

**attempts** [2] - 30:8, 30:17

**attorney** [2] - 5:14, 5:15

**Attorney's** [1] - 103:13

**attorneys** [1] - 77:23

**August** [2] - 5:5, 108:13

**authority** [1] - 12:11

**authorize** [1] - 103:9

**authorized** [1] - 91:21

**authorizing** [1] - 103:3

**available** [2] - 44:13, 90:18

**Avenue** [3] - 103:21, 103:23, 104:22

**avoid** [3] - 23:24, 44:13, 97:3

**aware** [1] - 22:18

**awareness** [1] - 63:9

**B**

**background** [1] - 55:13

**Baker** [1] - 2:8

**balance** [1] - 104:12

**ballpark** [1] - 99:8

**ballparking** [1] - 99:21

**barricades** [1] - 86:2

**base** [1] - 15:21

**based** [11] - 4:16, 8:24, 9:2, 13:10, 30:13, 44:18, 60:20, 61:10, 61:11, 92:3

**bases** [1] - 34:9

**basic** [2] - 94:24, 102:13

**basics** [1] - 87:7

**basis** [5] - 37:15, 38:15, 47:2, 48:20, 89:13

**battle** [2] - 52:10, 52:11

**battles** [1] - 64:8

**beanie** [1] - 71:14

**bear** [2] - 50:25, 63:25
**bearing** [1] - 50:24
**beaten** [1] - 62:16
**became** [3] - 50:16, 70:1, 70:13
**began** [1] - 50:10
**begin** [2] - 2:24, 78:5
**behaved** [1] - 58:23
**behavior** [4] - 86:17, 86:20, 86:24, 97:1
**behind** [10] - 50:5, 52:24, 53:20, 53:22, 54:6, 56:13, 57:23, 58:2, 61:6, 95:18
**beings** [1] - 19:4
**belief** [1] - 35:6
**believes** [1] - 74:7
**below** [1] - 91:13
**benign** [2] - 33:7, 33:22
**better** [2] - 37:11, 73:14
**between** [12] - 8:23, 9:4, 13:2, 27:18, 28:6, 28:9, 28:17, 39:17, 39:19, 42:18, 57:20, 58:4
**beyond** [5] - 4:21, 9:10, 64:4, 83:24, 84:7
**Bible** [1] - 56:12
**Biden** [1] - 51:19
**big** [1] - 81:4
**bike** [1] - 54:16
**bit** [1] - 57:16
**black** [1] - 71:14
**block** [2] - 24:5, 103:21
**bloodbath** [1] - 59:9
**blow** [1] - 80:18
**blue** [1] - 62:17
**bottom** [1] - 80:14
**bought** [1] - 51:8
**bounded** [1] - 103:21
**bounds** [1] - 68:19
**Box** [1] - 93:6
**breach** [6] - 67:7, 67:17, 68:1, 69:14, 81:23, 81:25
**breached** [1] - 62:5
**breaches** [1] - 69:3
**breaching** [1] - 96:13
**bread** [1] - 73:8
**break** [5] - 16:7, 35:5, 53:7, 54:8, 73:8
**bring** [3] - 32:20, 59:18, 96:14
**Brock** [4] - 57:14, 60:24, 61:3, 94:15

**broke** [3] - 67:18, 67:20, 93:1
**broken** [1] - 58:20
**brothers** [1] - 61:14
**brought** [1] - 59:17
**Building** [3] - 17:8, 103:19, 104:17
**building** [26] - 7:15, 15:24, 45:10, 52:3, 53:19, 54:19, 62:6, 67:15, 67:17, 67:23, 68:5, 69:16, 70:14, 70:19, 70:22, 81:13, 81:21, 82:3, 82:23, 83:9, 83:20, 86:8, 96:14, 97:17, 98:2, 99:24
**bulky** [2] - 85:5, 85:24
**bulletproof** [5] - 45:12, 46:15, 46:19, 46:25, 85:4
**bump** [1] - 71:9
**burden** [8] - 32:11, 34:24, 37:15, 39:11, 63:11, 64:6, 66:19, 66:21
**Bureau** [2] - 100:18, 101:21
**Bush** [1] - 47:14
**business** [3] - 14:9, 14:11, 87:21

**C**

**calculate** [1] - 11:22
**calculated** [1] - 41:19
**calculates** [1] - 40:9
**calculation** [7] - 40:20, 57:12, 61:11, 92:9, 93:18, 95:8, 106:23
**calm** [2] - 52:8, 52:16
**camera** [4] - 8:19, 8:24, 9:6, 75:18
**canceling** [1] - 31:10
**candidate** [1] - 79:10
**cannot** [2] - 90:14, 94:9
**Capitol** [45] - 8:11, 10:21, 17:8, 29:7, 29:10, 45:4, 45:9, 47:23, 50:11, 56:13, 59:3, 61:25, 62:2, 62:5, 62:11, 63:1, 64:7, 66:8, 67:3, 67:8, 68:20, 69:3, 69:9, 69:13, 70:8, 70:12, 75:11, 75:12, 75:13, 75:16, 79:23, 81:24, 82:5, 83:18,

85:10, 86:3, 93:23, 93:24, 95:13, 95:17, 95:22, 103:19, 103:20, 104:9, 104:16
**capture** [1] - 61:9
**caretaker** [1] - 56:12
**carried** [2] - 66:20, 66:21
**carry** [1] - 63:12
**carrying** [2] - 71:17, 71:20
**case** [45] - 4:16, 5:15, 7:5, 8:9, 8:15, 9:15, 11:10, 13:22, 14:4, 14:7, 15:18, 17:7, 18:23, 21:14, 22:8, 28:2, 29:21, 29:23, 32:14, 34:4, 43:10, 52:7, 55:4, 66:16, 66:17, 66:23, 69:9, 72:2, 77:20, 77:24, 79:17, 82:24, 83:21, 83:24, 86:19, 91:3, 92:7, 93:17, 94:2, 94:15, 95:6, 95:13, 98:20, 104:8
**cases** [12] - 14:22, 15:2, 15:3, 40:1, 55:11, 55:19, 58:15, 78:7, 91:1, 91:4, 97:4, 100:3
**cast** [1] - 72:1
**category** [2] - 40:9, 97:25
**Category** [2] - 40:11, 40:14
**caught** [1] - 22:19
**caused** [2] - 29:3, 67:7
**celebrated** [2] - 54:21, 54:24
**celebration** [1] - 86:7
**censored** [1] - 51:4
**certain** [5] - 58:3, 58:4, 79:3, 99:12, 105:9
**certainly** [12] - 7:7, 9:22, 23:17, 34:22, 40:5, 46:20, 50:5, 50:7, 50:10, 81:19, 83:2, 83:3
**CERTIFICATE** [1] - 108:7
**certification** [12] - 26:15, 46:7, 47:8, 79:25, 83:25, 92:22, 93:12, 93:23, 94:11, 94:16, 94:20, 95:5
**certified** [1] - 108:9
**certify** [1] - 49:20

**cetera** [2] - 49:9
**chain** [1] - 62:10
**challenges** [2] - 63:16, 79:3
**Chamber** [3] - 52:14, 58:22, 82:16
**chamber** [1] - 52:14
**chambers** [1] - 70:17
**Chandra** [1] - 108:13
**change** [6] - 11:4, 50:8, 58:11, 75:23, 104:23, 104:24
**changed** [7] - 57:10, 57:12, 57:16, 57:19, 61:7, 74:22, 79:15
**changes** [2] - 10:25, 79:4
**Chansley** [2] - 70:10, 71:19
**chaos** [1] - 62:7
**characteristic** [5] - 15:4, 15:13, 19:24, 21:3, 21:9
**characteristics** [5] - 44:9, 55:14, 78:1, 86:16, 87:4
**charge** [3] - 13:12, 64:19, 98:10
**charged** [9] - 27:1, 39:15, 84:2, 84:4, 99:6, 99:9, 99:13, 99:19, 100:3
**charges** [12] - 13:10, 13:13, 14:12, 15:7, 15:10, 17:22, 18:5, 32:7, 57:10, 97:9, 97:24, 103:15
**charging** [2] - 94:7, 96:5
**chat** [1] - 32:1
**chats** [3] - 31:14, 33:11, 33:14
**check** [1] - 6:4
**cheering** [1] - 58:1
**Chief** [4] - 52:25, 53:4, 77:7, 104:17
**children** [1] - 75:25
**choice** [2] - 59:2, 59:4
**chokepoint** [1] - 54:5
**chose** [1] - 74:3
**Chow** [2] - 53:23, 56:3
**Chow's** [1] - 53:25
**Christmas** [1] - 46:10
**circle** [2] - 10:5, 89:8
**Circuit** [3] - 57:13, 105:8, 105:9
**circuit** [1] - 94:15
**circumstances** [9] - 8:8, 27:3, 39:14, 44:8, 78:18, 79:22,

91:20, 103:25, 105:10
**circumstantial** [2] - 9:12, 39:8
**cite** [1] - 28:12
**cited** [5] - 6:17, 14:22, 32:14, 91:2, 98:24
**cites** [1] - 38:1
**citing** [1] - 20:11
**citizen** [2] - 65:21, 74:6
**civil** [7] - 13:12, 17:9, 17:15, 17:17, 18:15, 20:15, 51:2
**claiming** [1] - 25:14
**claims** [2] - 52:2, 52:9
**clarification** [2] - 6:14, 105:22
**clarified** [1] - 106:7
**classic** [1] - 17:20
**clear** [12] - 7:9, 18:15, 20:5, 25:9, 38:6, 50:1, 60:14, 61:3, 81:12, 84:6, 84:15, 86:17
**clearly** [11] - 7:21, 18:7, 26:25, 28:3, 28:7, 29:24, 32:24, 36:1, 50:20, 71:24
**Clerk** [4] - 42:22, 104:13, 104:21, 104:24
**CLERK** [3] - 2:3, 77:16, 107:17
**client** [3] - 6:6, 6:12, 6:14
**Clinton** [1] - 35:16
**Clock** [8] - 52:21, 69:17, 70:6, 83:5, 86:9, 96:6, 97:8, 98:3
**clock** [1] - 86:9
**close** [13] - 15:15, 17:12, 37:19, 85:1, 91:17, 92:8, 92:10, 93:18, 98:4, 100:15, 100:20, 101:2, 101:13
**closed** [1] - 93:20
**closely** [1] - 98:16
**closer** [3] - 45:2, 76:20, 105:25
**closing** [1] - 22:22
**clothing** [2] - 85:5, 85:24
**clowns** [1] - 46:9
**coach** [1] - 88:1
**Code** [9] - 4:24, 14:1, 43:21, 92:14, 93:22, 94:8, 101:18, 102:8,

103:2
**codefendant** [5] - 28:2, 28:6, 29:23, 39:15, 97:21
**coined** [1] - 35:15
**colleague** [1] - 67:2
**colleagues** [2] - 62:3, 63:6
**collection** [1] - 102:24
**collective** [3] - 64:12, 65:24, 66:4
**college** [6] - 46:6, 47:7, 84:1, 92:23, 93:12, 93:24
**Columbia** [2] - 104:4, 104:15
**combine** [2] - 23:18, 41:12
**coming** [4] - 18:12, 33:17, 71:9, 76:20
**commence** [1] - 36:25
**commenced** [1] - 36:24
**commendable** [1] - 55:7
**Commentary** [1] - 20:23
**commentary** [1] - 25:24
**commerce** [1] - 20:15
**commit** [6] - 4:8, 16:3, 16:22, 18:19, 35:4, 102:16
**commitment** [1] - 35:6
**committed** [4] - 16:3, 16:22, 18:19, 101:20
**common** [7] - 14:1, 14:13, 14:14, 14:17, 14:18, 15:3, 18:1
**communication** [1] - 31:18
**communications** [2] - 33:23, 35:21
**community** [8] - 3:16, 55:6, 63:22, 65:3, 87:6, 87:22, 87:25, 88:8
**comparator** [2] - 55:11, 55:19
**comparators** [1] - 98:7
**compare** [1] - 91:3
**comparison** [1] - 8:22
**completely** [3] - 31:22, 65:17, 74:12
**complicated** [1] - 100:23
**comply** [4] - 43:23, 44:10, 91:9, 103:5
**compound** [1] - 67:24

**comprise** [1] - 13:8
**comprises** [1] - 13:8
**comprising** [1] - 103:24
**concealing** [2] - 36:20, 36:21
**concept** [2] - 36:2, 61:8
**conceptually** [1] - 18:24
**concern** [1] - 89:9
**concerned** [3] - 55:24, 56:1, 71:12
**conclusion** [5] - 6:3, 6:5, 9:2, 24:25, 96:20
**concurrent** [2] - 101:21, 101:25
**concussion** [1] - 53:24
**conditions** [4] - 102:10, 102:11, 102:15, 103:6
**conduct** [44] - 14:5, 14:8, 14:10, 15:12, 15:19, 15:23, 18:6, 22:12, 36:13, 36:16, 36:17, 36:19, 38:25, 44:5, 44:15, 51:25, 55:21, 57:8, 57:16, 58:9, 61:7, 65:24, 65:25, 66:7, 67:1, 67:13, 89:7, 90:5, 92:3, 92:6, 92:10, 93:15, 93:20, 94:2, 94:14, 95:5, 95:9, 95:15, 97:13, 97:15, 97:22, 102:14
**conducted** [1] - 79:13
**Confederate** [2] - 53:15, 71:21
**conferring** [1] - 72:15
**Confide** [1] - 31:19
**confidential** [1] - 31:18
**confinement** [1] - 90:23
**confront** [1] - 62:4
**confrontation** [5] - 73:11, 73:19, 73:21, 73:24, 85:7
**confronted** [1] - 69:19
**confused** [1] - 20:20
**Congress** [23] - 4:24, 11:14, 13:13, 13:23, 20:6, 35:13, 43:18, 43:20, 47:20, 48:5, 48:21, 50:18, 50:22, 55:25, 77:21, 78:2, 79:5, 84:19, 84:24,

86:15, 92:21, 96:15
**Congress'** [1] - 94:11
**Congress's** [1] - 79:24
**Congressional** [1] - 70:16
**connected** [2] - 14:17, 17:25
**connection** [2] - 5:20, 79:19
**conscience** [1] - 64:12
**consequence** [1] - 64:9
**consequences** [5] - 4:7, 5:3, 59:5, 63:18, 64:20
**consider** [21] - 9:25, 22:11, 41:5, 43:17, 43:20, 44:8, 44:12, 64:25, 72:4, 77:22, 78:3, 78:17, 83:19, 85:18, 85:22, 87:3, 89:2, 90:1, 90:25, 94:9, 95:14
**consideration** [2] - 78:12, 101:17
**considerations** [2] - 77:25, 78:5
**considered** [3] - 15:11, 18:24, 28:9
**considering** [10] - 4:16, 8:7, 17:10, 17:11, 40:5, 43:19, 85:15, 91:7, 91:8, 99:22
**consistent** [1] - 10:20
**consisting** [1] - 103:20
**conspicuously** [1] - 9:19
**conspiracy** [1] - 74:24
**conspirators** [1] - 32:20
**constate** [1] - 63:8
**constitute** [2] - 14:12, 21:8
**constitutes** [2] - 17:20, 35:24
**constituting** [2] - 14:18, 18:1
**Constitution** [7] - 78:20, 79:5, 80:19, 84:22, 90:11, 103:21, 104:22
**constitutional** [6] - 86:23, 86:25, 89:17, 92:25, 93:8, 94:24
**contact** [1] - 97:13
**content** [5] - 25:15, 26:8, 26:22, 33:3,

35:10
**contentious** [1] - 90:17
**contents** [1] - 26:21
**contest** [1] - 35:8
**context** [9] - 22:23, 37:8, 37:12, 37:17, 60:12, 60:13, 83:19, 84:11, 84:23
**continues** [1] - 51:14
**contrary** [1] - 95:14
**control** [1] - 102:20
**controlled** [1] - 102:17
**conversation** [3] - 7:8, 7:12, 8:6
**convicted** [7] - 58:6, 81:8, 87:16, 93:21, 99:14, 99:15, 99:22
**conviction** [9] - 12:13, 36:12, 36:14, 50:14, 58:10, 92:12, 92:13, 94:5, 94:13
**convictions** [1] - 105:7
**convince** [1] - 79:11
**cooperate** [1] - 102:24
**cope** [1] - 63:19
**copy** [1] - 31:1
**correct** [7] - 21:23, 42:25, 47:20, 65:17, 106:9, 106:11, 108:10
**correction** [1] - 43:8
**corridor** [2] - 95:22, 96:11
**Corridor** [6] - 52:21, 83:6, 86:9, 96:6, 97:8, 98:3
**corrosive** [1] - 93:7
**corruption** [1] - 89:10
**cost** [2] - 105:14, 105:16
**costs** [1] - 64:11
**counsel** [7] - 4:20, 9:8, 72:15, 81:19, 83:7, 100:17, 105:17
**Count** [9] - 11:16, 41:24, 42:3, 42:11, 42:16, 43:1, 101:22, 102:2, 102:5
**count** [13] - 13:7, 15:20, 16:9, 16:10, 17:14, 17:23, 18:7, 18:15, 42:8, 84:2, 84:3, 84:12, 94:6
**counted** [3] - 30:17, 88:1, 88:2
**counting** [6] - 6:12, 7:18, 10:9, 49:9, 56:4, 56:6

**countless** [2] - 62:10, 95:19
**countries** [1] - 78:22
**country** [9] - 74:8, 75:5, 76:10, 76:14, 76:17, 78:25, 79:2, 90:17, 94:25
**country's** [1] - 92:20
**Counts** [15] - 11:17, 11:18, 41:25, 42:1, 42:4, 42:5, 42:13, 42:16, 42:17, 43:3, 101:23, 102:2, 102:6
**counts** [14] - 12:13, 13:8, 13:21, 15:2, 15:12, 15:15, 15:19, 15:22, 16:16, 17:18, 17:23, 18:8, 42:12, 107:23
**couple** [1] - 23:9
**course** [8] - 22:12, 25:8, 27:21, 29:9, 35:7, 40:1, 81:22, 101:11
**Court** [42] - 2:2, 3:2, 18:3, 24:21, 25:19, 27:10, 27:20, 32:14, 33:8, 33:18, 34:14, 34:18, 42:22, 51:23, 56:24, 57:11, 57:18, 58:17, 59:13, 65:19, 66:9, 66:22, 66:25, 67:6, 69:12, 72:4, 76:22, 77:14, 91:20, 92:1, 101:20, 102:23, 104:2, 104:5, 104:14, 104:21, 104:24, 105:5, 105:7, 105:15
**court** [5] - 19:8, 79:17, 79:18, 105:17, 108:3
**COURT** [96] - 2:11, 2:17, 2:22, 3:3, 3:6, 3:9, 3:25, 4:2, 5:10, 5:13, 5:17, 5:22, 6:20, 6:23, 7:23, 10:3, 12:5, 12:22, 12:25, 17:1, 17:5, 18:10, 19:15, 19:19, 20:24, 21:10, 21:13, 22:5, 25:8, 25:22, 28:15, 28:19, 30:7, 30:18, 30:20, 30:24, 31:8, 34:3, 34:22, 36:6, 40:25, 41:2, 43:15, 43:17, 44:23, 45:1, 46:13, 46:22, 47:1, 47:13, 47:18, 47:22, 47:25, 48:2, 48:14, 48:17, 48:22,

48:25, 49:25, 50:4,
59:14, 59:23, 59:25,
60:3, 60:7, 60:11,
60:17, 61:15, 61:20,
65:11, 65:14, 67:20,
67:24, 68:4, 68:16,
69:6, 72:6, 72:14,
72:18, 77:2, 77:10,
77:19, 100:22,
101:2, 101:5,
101:16, 105:24,
106:8, 106:17,
106:19, 107:1,
107:4, 107:12,
107:15, 107:20,
107:25
**Court's** [1] - 94:8
**court-appointed** [1] -
105:17
**courtroom** [1] - 19:21
**COURTROOM** [3] -
2:3, 77:16, 107:17
**courts** [2] - 19:8,
33:12
**covered** [4] - 36:16,
36:17, 36:18, 36:19
**coworkers** [1] - 88:3
**crafting** [1] - 78:3
**create** [3] - 13:2, 83:3,
83:13
**created** [3] - 82:17,
82:19, 82:21
**credibility** [1] - 54:25
**credit** [3] - 87:19,
103:15
**creeping** [2] - 53:7,
53:11
**crime** [1] - 102:16
**crimes** [5] - 4:6, 4:8,
44:6, 65:5, 90:6
**Criminal** [4] - 2:3,
40:10, 40:14, 77:17
**criminal** [14] - 4:16,
14:17, 18:1, 40:8,
40:10, 44:5, 87:18,
90:5, 92:10, 93:19,
94:14, 94:23, 95:9,
97:25
**critical** [1] - 52:20
**cross** [8] - 16:2,
16:21, 17:10, 17:11,
20:1, 21:4, 21:5,
21:7
**cross-reference** [8] -
16:2, 16:21, 17:10,
17:11, 20:1, 21:4,
21:5, 21:7
**crowd** [8] - 52:12,
52:16, 54:13, 57:23,
58:2, 67:16, 68:5,

86:5
**crucial** [1] - 59:3
**culpability** [2] - 52:3,
55:1
**culpable** [4] - 25:19,
67:2, 67:4, 69:13
**curse** [1] - 73:22
**custody** [1] - 101:21
**customs** [1] - 80:18

**D**

**D.C** [6] - 32:20, 57:13,
104:18, 104:22,
105:8, 105:9
**Dale** [1] - 55:18
**damage** [2] - 64:7,
98:21
**damaged** [1] - 80:17
**danger** [4] - 62:11,
82:20, 82:21, 83:13
**dangerous** [1] - 93:5
**dark** [1] - 86:24
**data** [1] - 34:21
**date** [2] - 27:15, 50:13
**dated** [1] - 27:16
**daughter** [1] - 87:11
**day's** [1] - 63:5
**days** [15] - 22:13,
23:6, 23:9, 24:10,
27:19, 30:4, 38:4,
46:2, 70:24, 75:7,
84:18, 102:21,
104:23, 105:11,
105:12
**deactivate** [2] - 37:20
**deactivates** [1] - 37:23
**deadly** [1] - 58:21
**dealing** [2] - 21:5,
80:11
**death** [3] - 24:20,
24:22, 74:11
**deaths** [1] - 63:25
**debate** [2] - 49:14,
50:6
**debt** [2] - 107:6, 107:9
**December** [4] - 39:19,
46:9, 46:10, 50:10
**decertification** [1] -
33:16
**decertify** [1] - 33:20
**decide** [4] - 9:9, 49:15,
49:18, 49:20
**decided** [2] - 57:11,
57:13
**decision** [5] - 4:8,
7:16, 14:24, 64:19,
73:15
**decisions** [1] - 7:6
**decisive** [1] - 9:14

**declare** [1] - 70:2
**dedicated** [1] - 63:23
**deem** [1] - 16:16
**deems** [2] - 16:10,
16:14
**deep** [3] - 64:1, 64:25,
90:10
**deeply** [3] - 62:2,
62:20, 74:10
**defend** [2] - 64:17,
81:24
**DEFENDANT** [3] -
5:16, 5:21, 72:22
**defendant** [25] - 2:4,
2:8, 2:9, 3:14, 18:19,
22:12, 25:18, 28:20,
32:8, 32:17, 33:15,
36:8, 36:9, 42:7,
44:6, 44:10, 72:15,
77:18, 78:4, 78:11,
90:6, 94:7, 94:11,
99:22, 100:18
**Defendant** [1] - 17:7
**defendant's** [7] -
13:17, 36:14, 39:15,
60:24, 92:15, 94:1,
95:11
**defendants** [10] -
44:14, 55:2, 55:9,
57:22, 60:21, 61:13,
87:15, 97:5, 98:8,
99:5
**defending** [1] - 65:9
**defense** [2] - 3:25,
54:19
**defer** [1] - 41:11
**defies** [2] - 55:3
**defined** [1] - 36:1
**defines** [2] - 26:2,
37:2
**delaying** [1] - 14:4
**delete** [5] - 24:23,
28:5, 30:22, 30:23,
31:3
**deleted** [23] - 22:8,
24:3, 24:4, 24:6,
27:3, 27:11, 27:22,
28:2, 29:14, 30:4,
30:11, 31:15, 31:21,
32:11, 32:17, 32:19,
33:1, 33:4, 34:7,
34:8, 34:14, 35:8,
39:17
**deletes** [1] - 37:24
**deleting** [5] - 25:1,
28:4, 29:1, 32:5,
35:22
**deletion** [1] - 37:10
**deletions** [1] - 26:12
**deliberating** [1] -

57:15
**deliver** [1] - 64:22
**demand** [1] - 12:19
**democracy** [3] -
22:25, 64:13, 65:6
**Democrat** [1] - 74:9
**demonstrate** [1] - 57:7
**demonstrates** [1] -
50:3
**denies** [1] - 28:21
**depart** [4] - 91:10,
92:1, 98:12, 101:6
**departure** [13] - 4:18,
41:8, 41:12, 41:13,
42:24, 43:11, 43:19,
44:20, 66:24, 90:22,
91:14, 91:15, 91:25
**departures** [4] - 43:4,
40:18, 41:3, 41:5
**dependent** [1] - 37:8
**Deputy** [3] - 52:25,
53:4, 77:7
**DEPUTY** [3] - 2:3,
77:16, 107:17
**described** [5] - 18:14,
55:6, 57:20, 60:22,
90:13
**describes** [2] - 81:5,
85:8
**describing** [2] - 55:11,
55:13
**description** [1] - 47:15
**desperate** [1] - 46:8
**desperately** [1] -
52:16
**despite** [2] - 82:18,
86:10
**destroyed** [2] - 70:22,
99:25
**destroying** [3] - 36:19,
36:21, 36:23
**destruction** [1] -
70:15
**detailed** [1] - 47:15
**deter** [1] - 96:25
**determination** [5] -
11:8, 26:5, 28:11,
37:6, 92:3
**determine** [3] - 4:10,
4:14, 104:10
**determined** [4] - 16:6,
16:25, 41:3, 102:23
**determining** [1] -
94:12
**deterrence** [7] - 44:4,
89:2, 89:3, 89:5,
90:5, 90:12
**deterrent** [1] - 65:5
**devastated** [1] - 63:22
**devices** [1] - 32:9

**die** [4] - 25:25, 26:1,
56:9, 84:22
**died** [1] - 78:23
**difference** [1] - 7:5
**differences** [3] - 58:4,
90:15
**different** [13] - 13:11,
15:7, 15:10, 19:2,
21:4, 51:24, 51:25,
65:23, 78:2, 83:21,
86:13
**differently** [1] - 79:3
**difficult** [1] - 86:19
**diploma** [1] - 87:20
**direct** [3] - 39:6, 64:8,
64:16
**directed** [2] - 101:11,
102:25
**directing** [1] - 36:20
**directive** [1] - 15:9
**directly** [6] - 6:12,
24:9, 53:19, 61:18,
63:14, 73:1, 96:15,
99:25
**directs** [1] - 16:13
**disagree** [2] - 34:25,
67:1
**disagreeing** [1] -
68:18
**disbursement** [1] -
104:15
**disclosure** [1] - 103:7
**discretionary** [1] -
102:11
**discussed** [3] - 36:15,
51:7, 106:23
**disgrace** [1] - 81:3
**dismiss** [1] - 107:23
**dismissed** [6] - 15:1,
50:14, 84:3, 94:6,
107:18, 108:2
**disorder** [6] - 13:12,
17:9, 17:15, 17:17,
18:15, 20:15
**disparities** [3] - 44:14,
91:1, 97:3
**disparity** [1] - 13:2
**dispute** [2] - 5:23, 7:7
**disputes** [4] - 5:24,
7:2, 7:4, 57:5
**disrespect** [1] - 90:10
**disrupt** [3] - 14:8,
79:23, 94:3
**disruption** [3] - 13:13,
91:16, 91:23
**disrupts** [1] - 14:10
**distance** [1] - 74:19
**distinction** [2] - 28:8,
28:17
**District** [5] - 100:25,

104:4, 104:14, 104:21
**district** [1] - 105:4
**divide** [1] - 99:10
**DNA** [1] - 102:24
**docket** [3] - 3:4, 3:12, 3:20
**document** [2] - 36:23, 108:9
**documents** [1] - 3:22
**Donald** [2] - 49:20, 50:24
**done** [5] - 23:4, 23:15, 32:4, 67:1, 82:22
**Door** [1] - 70:7
**double** [1] - 6:4
**double-check** [1] - 6:4
**doubt** [3] - 9:10, 83:24, 84:7
**Doug** [7] - 52:24, 53:10, 55:12, 57:21, 57:25, 58:13, 97:6
**Douglas** [1] - 71:15
**down** [7] - 16:8, 19:11, 23:5, 49:2, 52:16, 52:17, 100:12
**downward** [1] - 66:18
**dozens** [1] - 24:16
**drag** [5] - 35:18, 46:9, 46:11, 50:22, 84:19
**dragging** [4] - 50:17, 84:18, 84:19, 84:24
**dramatic** [1] - 84:15
**draw** [1] - 27:10
**drawn** [5] - 23:16, 25:1, 29:13, 58:24, 59:7
**Dream** [1] - 88:5
**drilled** [1] - 49:2
**driven** [2] - 88:12, 92:12
**driving** [1] - 87:16
**drops** [1] - 71:21
**drug** [2] - 102:20, 102:22
**dual** [1] - 39:1
**due** [1] - 42:22
**during** [6] - 13:12, 17:9, 17:15, 17:16, 52:20, 62:1
**duty** [3] - 62:1, 65:20, 92:16

**E**

**e.g** [1] - 36:23
**ear** [1] - 32:3
**early** [4] - 50:9, 50:25, 51:17, 83:6
**earshot** [1] - 8:7

**Eastern** [1] - 101:1
**effect** [2] - 22:9, 81:17
**effects** [1] - 64:4
**effort** [8] - 10:21, 23:15, 28:5, 31:3, 85:25, 86:4, 94:3
**efforts** [1] - 50:8
**egregious** [4] - 71:25, 92:7, 93:16, 95:6
**eight** [5] - 8:18, 9:4, 61:4, 69:2, 69:20
**either** [13] - 2:13, 2:14, 2:19, 7:1, 17:22, 20:14, 20:25, 31:5, 32:1, 59:6, 71:21, 80:3, 90:22
**elderly** [1] - 88:2
**elected** [3] - 64:18, 79:14, 98:4
**election** [19] - 33:13, 33:18, 33:19, 46:4, 47:6, 49:15, 49:19, 50:9, 74:12, 75:1, 79:12, 79:15, 79:19, 80:4, 80:8, 80:9, 89:11
**elections** [1] - 75:2
**electoral** [3] - 33:10, 46:6, 47:7, 79:25, 84:1, 92:23, 93:12, 93:24, 94:12
**electors** [4] - 48:15, 48:20, 48:21, 49:22
**elements** [2] - 18:16, 18:18
**eligible** [3] - 42:7, 42:10, 43:2
**Elizabethtown** [3] - 100:20, 101:3, 101:13
**Ellipse** [1] - 45:9
**eloquently** [1] - 65:19
**elsewhere** [1] - 37:2
**embodies** [1] - 15:12
**embolden** [1] - 52:11
**emboldening** [2] - 81:16, 95:18
**Emily** [1] - 2:6
**emotional** [3] - 62:24, 65:1, 87:13
**emphasize** [1] - 80:2
**emphasizes** [1] - 10:11
**employed** [1] - 92:20
**enable** [1] - 83:3
**enabled** [1] - 83:2
**encouraging** [1] - 81:16
**encrypted** [4] - 32:17, 32:19, 32:25, 34:21

**encryption** [2] - 31:20, 32:1
**end** [4] - 11:10, 21:19, 31:20, 63:24
**ended** [2] - 39:14, 54:4
**endured** [1] - 63:19
**enforcement** [8] - 18:21, 20:8, 23:15, 58:24, 62:15, 62:18, 63:21, 92:16
**engage** [1] - 79:15
**engaged** [4] - 22:13, 51:24, 86:20, 93:22
**engaging** [3] - 70:15, 96:15, 96:25
**enhanced** [1] - 38:16
**enhancement** [5] - 12:3, 12:5, 12:6, 25:16, 34:10
**enhancements** [3] - 61:6, 94:18, 94:22
**enraged** [1] - 70:13
**ensure** [2] - 43:22, 65:5
**enter** [5] - 7:14, 67:15, 92:3, 95:17, 103:18, 104:3
**entered** [11] - 17:7, 52:3, 67:3, 67:18, 69:9, 70:5, 70:9, 81:21, 83:17, 83:20, 95:12
**entering** [3] - 52:23, 69:16, 70:17
**entire** [3] - 24:6, 62:3, 65:2
**entirely** [3] - 32:9, 33:7, 67:6
**entitled** [1] - 72:11
**entry** [2] - 62:9, 105:12
**environment** [1] - 51:4
**ephemeral** [3] - 31:19, 31:20, 32:1
**equivalent** [1] - 40:2
**errs** [1] - 13:21
**especially** [1] - 12:10
**essential** [1] - 64:21
**essentially** [1] - 41:9
**establish** [1] - 102:13
**establishes** [1] - 94:10
**et** [2] - 49:9
**evacuated** [2] - 52:15, 52:19, 95:25
**Eve** [1] - 46:10
**evening** [2] - 22:16, 24:3
**event** [9] - 57:6, 65:18,

78:10, 78:13, 78:17, 78:18, 79:4, 98:7, 106:5
**events** [5] - 23:10, 62:12, 62:25, 64:2, 70:20
**eventually** [2] - 37:25, 54:9
**ever-present** [1] - 63:9
**evidence** [58] - 6:22, 7:9, 7:19, 8:9, 9:12, 9:15, 9:18, 9:19, 9:20, 22:8, 23:14, 24:11, 24:14, 24:18, 24:21, 24:24, 26:2, 26:3, 26:15, 27:4, 27:5, 27:24, 28:7, 28:11, 29:1, 30:10, 30:11, 30:13, 30:22, 31:6, 33:3, 36:21, 37:2, 37:3, 37:4, 38:2, 39:3, 39:6, 39:8, 46:24, 47:10, 52:7, 55:3, 67:10, 68:10, 69:15, 69:16, 70:19, 82:24, 83:2, 83:23, 84:5, 84:6, 85:19, 89:25, 93:14, 94:10
**evident** [1] - 70:1
**evidentiary** [1] - 5:11
**exact** [4] - 28:12, 32:13, 57:25, 58:1
**exactly** [10] - 16:7, 24:12, 25:11, 35:24, 39:22, 47:15, 48:16, 58:23, 59:4, 91:3
**example** [6] - 14:24, 31:19, 33:9, 34:11, 34:12, 34:17
**examples** [3] - 36:16, 38:1, 40:6
**exception** [1] - 43:11
**exchanged** [1] - 25:7
**exculpatory** [2] - 28:18, 29:6
**excuse** [2] - 55:1, 89:13
**execute** [1] - 105:4
**Exhibit** [2] - 33:8, 59:25
**exhibit** [2] - 59:16, 59:19, 84:23
**exhibits** [4] - 3:17, 38:3, 44:21, 60:8
**exit** [1] - 70:11
**expectations** [1] - 102:14
**expecting** [2] - 5:10, 73:23

**experienced** [1] - 63:25
**experiences** [1] - 63:11
**explain** [3] - 91:12, 91:13, 92:5
**explained** [1] - 72:13
**explaining** [1] - 93:15
**explanation** [1] - 88:10
**expressly** [1] - 16:11
**extend** [1] - 64:4
**extended** [1] - 76:1
**extent** [4] - 29:25, 78:10, 91:22, 96:21
**extraordinary** [1] - 72:1
**extreme** [1] - 62:23
**extremely** [1] - 81:2

**F**

**F'ing** [1] - 10:10
**face** [7] - 4:7, 46:11, 50:22, 59:6, 62:23, 71:16, 84:24
**Facebook** [27] - 22:21, 23:4, 23:7, 23:12, 23:21, 24:10, 24:12, 24:17, 24:22, 25:1, 26:12, 30:22, 31:10, 34:2, 34:7, 35:3, 35:10, 37:18, 37:21, 37:24, 38:3, 38:4, 40:2, 51:6, 51:18, 60:10
**faced** [1] - 59:4
**facially** [1] - 50:2
**facilitate** [1] - 92:21
**facility** [2] - 32:25, 100:14
**facing** [1] - 53:11
**fact** [35] - 6:11, 8:24, 11:6, 12:16, 14:9, 15:3, 18:5, 19:23, 27:11, 27:25, 29:13, 29:19, 33:11, 33:24, 34:21, 35:6, 35:14, 37:4, 37:8, 39:16, 39:20, 45:22, 50:13, 51:8, 55:19, 58:6, 58:10, 62:13, 68:25, 71:8, 79:6, 82:19, 88:9, 88:20, 100:5
**factor** [1] - 90:1
**factors** [8] - 4:17, 4:24, 43:18, 43:20, 44:19, 77:21, 91:7, 96:18
**facts** [7] - 6:17, 11:5,

22:14, 26:3, 37:3, 68:18, 77:20
**factual** [3] - 5:8, 5:24, 7:2
**fair** [7] - 4:23, 6:24, 8:1, 34:16, 61:12, 68:16, 97:11
**fairly** [3] - 19:7, 26:12, 97:16
**fairness** [1] - 89:11
**faith** [2] - 22:24, 33:25
**fall** [2] - 66:8, 71:23
**false** [1] - 49:22
**families** [2] - 55:24, 56:2
**family** [12] - 55:22, 55:23, 56:3, 56:7, 56:11, 73:5, 75:6, 75:25, 76:1, 87:6, 87:25, 88:7
**fantasy** [1] - 67:9
**far** [15] - 11:20, 12:9, 41:22, 42:6, 42:15, 43:4, 43:5, 64:20, 73:16, 80:21, 80:22, 88:4, 98:8, 98:17
**far-reaching** [1] - 64:20
**fashion** [1] - 4:23
**Faulknerian** [1] - 68:23
**favor** [2] - 79:10, 90:8
**FBI** [14] - 22:19, 23:21, 24:8, 24:10, 29:10, 29:18, 29:25, 30:3, 30:5, 70:24, 70:25, 71:7, 71:11
**fearing** [1] - 87:24
**feat** [1] - 54:20
**federal** [6] - 4:6, 20:13, 20:14, 79:17, 100:24, 102:16
**federally** [2] - 14:6, 20:16
**fellow** [5] - 53:14, 54:8, 62:13, 65:2, 95:15
**felonies** [4] - 99:14, 99:15, 99:23, 100:6
**felony** [6] - 16:4, 16:22, 16:23, 92:12, 92:13
**few** [8] - 37:21, 37:23, 38:2, 38:4, 44:21, 78:16, 87:7, 93:4
**fight** [2] - 45:13, 84:20
**fighting** [1] - 70:14
**figure** [2] - 8:14, 88:25
**file** [2] - 79:17, 105:15
**filed** [4] - 5:5, 5:19,

5:20, 105:11
**filing** [2] - 2:25, 105:12
**filled** [1] - 24:20
**final** [2] - 5:4, 17:3
**financial** [4] - 64:11, 103:7, 103:8, 103:9, 103:10, 103:12, 103:14, 103:17, 104:20, 104:25
**Financial** [1] - 104:17
**findings** [3] - 11:6, 57:6, 106:6
**fine** [4] - 42:15, 42:18, 104:7
**fines** [1] - 42:15
**firearm** [1] - 51:9
**fired** [1] - 59:7
**first** [27] - 4:9, 7:25, 8:11, 10:4, 11:14, 13:21, 20:5, 22:1, 44:17, 62:4, 62:6, 67:15, 67:23, 68:4, 68:14, 68:20, 71:13, 81:13, 81:15, 86:1, 86:8, 92:11, 95:17, 97:17, 99:23, 103:25
**First** [3] - 79:9, 103:22, 103:24
**Fischer** [3] - 57:11, 60:24, 94:9
**fist** [1] - 71:8
**five** [7] - 11:16, 42:7, 42:10, 42:11, 43:2, 43:3, 103:1
**flag** [2] - 53:15, 71:21
**flags** [2] - 62:16, 62:17
**flawed** [1] - 13:15
**flip** [1] - 26:19
**floor** [1] - 86:15
**flowing** [1] - 79:6
**fluid** [1] - 36:2
**folks** [3] - 49:4, 49:7, 81:23
**follow** [1] - 45:22
**followed** [5] - 46:2, 47:4, 51:25, 61:17, 66:12
**followers** [1] - 70:3
**following** [10] - 6:7, 7:11, 22:13, 23:25, 45:6, 50:8, 71:3, 102:10, 103:5, 104:15
**footage** [1] - 32:21
**force** [3] - 33:24, 56:1, 62:6
**Ford** [1] - 104:17
**forefront** [1] - 68:14
**foregoing** [1] - 108:10

**foreseen** [1] - 73:19
**forever** [1] - 71:18
**forget** [2] - 35:14, 96:14
**forgetting** [1] - 26:25
**forth** [3] - 4:24, 13:17, 22:5
**forward** [3] - 53:7, 53:11, 107:8
**fought** [1] - 53:18
**foundational** [1] - 92:19
**four** [2] - 4:3, 102:24
**fourth** [2] - 52:24, 97:2
**fragility** [1] - 64:13
**framework** [2] - 11:10, 43:9
**frankly** [1] - 88:23
**fraud** [1] - 49:19
**freedom** [1] - 79:20
**friend** [1] - 50:19
**friends** [5] - 22:17, 45:8, 45:13, 79:11, 87:6
**front** [12] - 18:14, 19:6, 49:11, 53:9, 54:10, 54:13, 54:14, 54:16, 65:9, 71:13, 84:5, 96:7
**fulfill** [1] - 79:24
**full** [5] - 88:22, 88:23, 96:23, 104:25
**fully** [4] - 92:10, 93:19, 94:14, 95:8
**function** [7] - 14:6, 19:4, 20:16, 79:5, 91:17, 91:24, 92:18
**functioning** [1] - 90:11
**functions** [4] - 14:3, 14:9, 14:11, 14:14
**fundamental** [1] - 92:24
**future** [2] - 44:5, 90:6

## G

**game** [1] - 73:7
**gear** [5] - 32:18, 32:19, 33:12, 52:11
**general** [2] - 89:2, 90:12
**generally** [3] - 19:9, 38:20, 99:16
**Georgia** [1] - 33:16
**given** [11] - 9:15, 21:19, 39:13, 39:14, 39:16, 39:18, 51:13, 85:22, 88:17, 89:24
**glasses** [1] - 12:24

**goals** [1] - 56:20
**God** [1] - 87:24
**God-fearing** [1] - 87:24
**Goodman** [7] - 53:16, 70:24, 71:1, 71:3, 71:7, 71:8, 71:11
**gosh** [1] - 49:18
**governance** [1] - 92:20
**government** [76] - 2:6, 3:14, 3:18, 3:19, 3:23, 4:20, 5:7, 5:20, 7:1, 8:4, 9:24, 11:21, 12:10, 12:12, 12:16, 13:7, 13:15, 13:24, 14:9, 14:10, 14:13, 14:14, 15:1, 15:6, 15:8, 16:1, 16:15, 18:4, 18:11, 19:3, 21:22, 22:1, 22:20, 27:25, 31:13, 32:9, 32:11, 34:6, 34:9, 34:13, 34:25, 37:14, 38:1, 40:21, 41:7, 41:9, 42:20, 44:18, 64:6, 66:15, 67:4, 67:14, 68:19, 69:1, 77:5, 82:7, 84:3, 85:11, 85:17, 85:21, 86:6, 89:10, 89:16, 90:21, 91:5, 94:6, 98:23, 98:24, 99:1, 99:2, 105:13, 105:20, 106:6, 107:10, 107:19, 107:22
**government's** [7] - 19:5, 19:14, 21:21, 37:15, 39:11, 69:15, 70:18
**governmental** [4] - 14:3, 91:17, 91:23, 92:18
**governs** [1] - 94:25
**grant** [1] - 67:23
**granted** [1] - 108:1
**grapple** [2] - 79:3, 90:17
**gravity** [2] - 57:17, 88:22
**great** [2] - 22:19
**greater** [7] - 16:5, 16:24, 43:23, 58:16, 91:8, 99:5
**green** [2] - 45:24, 67:7
**grounds** [3] - 15:24, 26:17, 103:20
**group** [14] - 7:20, 12:14, 12:17, 13:8,

13:9, 14:19, 15:7, 15:11, 17:22, 18:6, 45:8, 68:9, 71:10, 71:12
**grouped** [1] - 15:5
**grouping** [10] - 11:20, 11:25, 12:2, 13:6, 13:14, 13:21, 14:23, 14:24, 21:23, 106:24
**guess** [6] - 11:23, 20:25, 25:22, 41:15, 49:20, 67:24
**Guideline** [1] - 91:14
**guideline** [27] - 15:18, 16:10, 16:11, 16:13, 16:17, 17:12, 17:17, 18:7, 21:8, 21:22, 26:25, 40:13, 40:15, 41:19, 60:25, 61:4, 66:16, 66:23, 72:4, 91:21, 92:11, 94:13, 94:18, 95:3, 95:7, 106:22
**guidelines** [59] - 4:15, 4:18, 5:23, 11:8, 11:20, 12:7, 12:8, 12:19, 13:3, 15:15, 18:24, 19:25, 20:21, 21:6, 21:15, 21:18, 25:20, 28:9, 28:13, 30:17, 40:8, 41:5, 41:6, 42:2, 42:4, 42:9, 42:12, 42:18, 43:5, 43:7, 43:9, 44:7, 56:17, 57:1, 57:5, 57:9, 57:12, 60:20, 61:8, 61:11, 61:16, 61:17, 66:13, 72:1, 72:3, 90:19, 90:21, 91:18, 92:4, 92:8, 92:9, 93:17, 93:18, 94:16, 95:8, 98:9, 101:19
**guilt** [3] - 66:4, 66:5, 105:7
**guilty** [5] - 4:5, 20:13, 44:15, 71:24, 100:5

## H

**H2-205B** [1] - 104:18
**hallway** [3] - 52:13, 52:23, 53:9
**hand** [1] - 96:4
**handful** [1] - 95:21
**hang** [1] - 35:18
**hard** [5] - 57:21, 63:12, 91:2, 91:3
**hardly** [1] - 34:1
**hardworking** [1] - 87:24

**harm** [2] - 14:13, 83:1
**harmful** [4] - 57:8, 92:7, 93:16, 95:6
**Harris** [1] - 107:15
**hat** [1] - 71:14
**hate** [1] - 74:14
**hatred** [1] - 62:21
**haunting** [1] - 63:10
**headed** [1] - 45:9
**health** [4] - 63:1, 63:16, 87:12, 97:19
**hear** [12] - 4:19, 6:25, 18:10, 20:3, 22:2, 33:18, 44:17, 44:25, 61:21, 65:15, 75:14, 105:25
**heard** [24] - 4:21, 6:21, 7:1, 7:13, 10:17, 10:24, 12:21, 19:10, 52:9, 67:10, 74:3, 75:8, 75:9, 75:18, 76:7, 80:15, 86:12, 86:14, 88:15, 89:21, 89:22, 106:2, 106:13
**hearing** [8] - 4:3, 4:9, 5:11, 41:11, 41:12, 41:17, 72:23, 72:24
**hearings** [1] - 58:14
**heartbeat** [1] - 88:8
**heartbreaking** [1] - 63:17
**heartland** [1] - 72:3
**heavily** [1] - 64:12
**heavy** [1] - 63:10
**heightened** [2] - 63:8, 64:7
**held** [2] - 64:21, 94:16
**help** [8] - 76:5, 76:9, 76:13, 80:18, 87:25, 88:2, 88:3
**helped** [3] - 76:10, 83:3, 83:13
**helpful** [1] - 34:12
**helping** [1] - 96:14
**hereby** [2] - 101:20, 108:9
**heroic** [1] - 59:2
**hesitated** [1] - 45:18
**hesitates** [1] - 82:10
**hidden** [1] - 64:21
**hide** [5] - 23:12, 23:14, 23:15, 37:20, 37:21
**high** [3] - 35:18, 63:3, 87:20
**highlighted** [2] - 20:25, 21:15
**highly** [1] - 37:8
**Hillary** [1] - 35:16
**himself** [2] - 52:11, 97:7

**hinder** [1] - 28:12
**hindered** [3] - 73:3, 76:10, 76:11
**hindrance** [4] - 28:24, 29:4, 29:24, 76:11
**history** [7] - 4:16, 40:9, 44:9, 71:19, 78:1, 87:18, 97:25
**History** [2] - 40:10, 40:14
**hold** [2] - 25:20, 62:21
**holding** [1] - 53:15
**holes** [1] - 22:3
**holistically** [1] - 22:12
**home** [3] - 56:8, 66:11, 90:23
**hone** [1] - 78:14
**honest** [2] - 75:3, 75:23
**honestly** [1] - 88:19
**honor** [1] - 62:18
**Honor** [58] - 2:16, 2:24, 3:8, 3:24, 5:9, 5:16, 5:21, 6:16, 6:21, 7:3, 13:5, 14:13, 16:8, 17:4, 17:20, 18:9, 20:4, 21:2, 25:11, 29:21, 31:10, 35:25, 40:22, 40:24, 43:13, 43:16, 44:21, 45:3, 45:15, 45:17, 46:16, 48:8, 50:15, 53:25, 54:21, 55:2, 55:8, 55:9, 55:18, 56:22, 56:25, 57:5, 57:6, 58:14, 64:25, 65:16, 68:24, 69:15, 71:6, 77:1, 77:6, 101:4, 105:21, 106:2, 106:5, 107:11, 107:14, 107:21
**Honor's** [2] - 7:5, 66:20
**honorable** [1] - 61:22
**hook** [2] - 20:12, 20:13
**hope** [3] - 49:21, 76:16, 76:19
**hopefully** [1] - 80:24
**horns** [1] - 71:17
**horrendous** [1] - 66:1
**horrible** [2] - 65:18, 65:25
**hospital** [1] - 56:5
**hours** [6] - 30:4, 37:21, 37:23, 70:14, 83:20, 93:4
**House** [6] - 49:16, 49:18, 58:22, 70:17,

71:4, 104:17
**Howe** [25] - 25:13, 27:16, 28:1, 29:6, 29:9, 29:11, 29:15, 29:17, 29:22, 31:4, 33:4, 39:14, 45:8, 53:20, 53:22, 54:9, 58:18, 68:8, 70:10, 86:7, 97:21, 98:1, 98:5
**Howell's** [2] - 25:6, 29:25
**hug** [1] - 54:24
**Hughes** [2] - 55:15, 61:14
**human** [1] - 19:4
**hurt** [1] - 73:3
**hyperbole** [2] - 35:12, 35:18

## I

**idea** [3] - 54:25, 83:16, 83:17
**identical** [2] - 57:25, 97:4
**identified** [4] - 5:24, 6:1, 22:17, 97:5
**ignore** [1] - 15:9
**ignored** [1] - 58:24
**ignores** [1] - 69:1
**ignoring** [1] - 82:5
**illegality** [1] - 50:3
**illegitimate** [1] - 33:19
**illness** [1] - 88:13
**illuminating** [1] - 22:15
**illustrates** [1] - 32:16
**imagine** [1] - 57:21
**immediately** [2] - 22:17, 104:20
**impact** [7] - 2:25, 3:19, 51:11, 54:1, 63:1, 64:2, 64:23
**impede** [4] - 14:8, 25:2, 36:10, 39:2
**impeded** [3] - 17:16, 20:8, 36:9
**impedes** [1] - 14:10
**impeding** [3] - 16:14, 17:15, 18:20
**implication** [1] - 30:18
**importance** [1] - 91:23
**important** [14] - 15:14, 22:14, 27:12, 30:3, 38:19, 47:11, 56:20, 69:8, 80:25, 83:19, 86:22, 93:15, 94:21, 95:13
**importantly** [2] -

95:20, 98:4
**impose** [7] - 5:2, 25:15, 41:23, 43:22, 57:18, 77:4, 98:15
**imposed** [12] - 11:14, 44:1, 44:10, 56:19, 58:13, 61:2, 61:12, 65:4, 102:13, 105:18, 106:4, 106:13
**imposition** [1] - 104:7
**impressive** [2] - 55:12, 55:17
**imprisonment** [1] - 90:24
**incarceration** [4] - 66:11, 90:9, 97:10, 101:8
**inch** [1] - 96:8
**include** [3] - 43:25, 86:21, 102:15
**includes** [2] - 30:8, 105:3
**including** [10] - 3:15, 27:25, 45:8, 53:14, 53:22, 56:25, 63:6, 64:17, 88:17, 97:22
**incorrect** [2] - 14:25, 30:16
**incorrectly** [1] - 61:5
**increase** [1] - 91:21
**increasing** [1] - 31:17
**increasingly** [1] - 46:8
**incur** [1] - 103:14
**indeed** [1] - 93:2
**Independence** [1] - 103:23
**independent** [1] - 13:16
**indicate** [2] - 35:4, 35:5
**indicated** [4] - 3:19, 23:3, 66:21, 86:6
**indicates** [1] - 23:14
**indication** [1] - 9:1
**indictment** [1] - 48:13
**indictments** [2] - 107:18, 107:24
**individual** [7] - 66:3, 66:4, 66:5, 69:3, 71:13, 71:16, 71:20
**individuals** [3] - 56:24, 56:25, 71:11
**ineligible** [2] - 42:13, 43:6
**inference** [3] - 23:16, 27:10, 29:13
**inferences** [1] - 30:13
**inferentially** [1] - 85:8
**infiltrated** [1] - 74:10

**influence** [4] - 26:4, 28:10, 37:6, 87:16
**information** [10] - 26:3, 37:3, 37:5, 39:22, 40:4, 99:3, 103:7, 103:9, 103:10, 103:13
**informed** [1] - 37:22
**inherent** [1] - 13:18
**inherently** [1] - 37:11
**initial** [1] - 81:25
**injured** [1] - 80:17
**injury** [1] - 58:16
**inside** [5] - 53:21, 69:11, 81:24, 93:24, 95:19
**insofar** [3] - 61:1, 68:6, 78:17
**Inspector** [3] - 53:3, 53:4, 53:10
**Instagram** [1] - 31:25
**instant** [1] - 36:12
**instead** [2] - 33:4, 96:10
**institution** [1] - 63:13
**institutions** [2] - 65:8, 100:24
**integrity** [1] - 89:11
**intend** [2] - 82:25, 83:1
**intended** [5] - 18:20, 47:16, 83:24, 93:11, 94:11
**intending** [1] - 61:8
**intensely** [1] - 52:20
**intensity** [1] - 63:5
**intent** [15] - 14:8, 16:3, 16:22, 17:8, 24:18, 26:16, 35:4, 35:5, 38:13, 38:21, 84:9, 85:1, 85:8, 86:21, 92:15
**intention** [2] - 10:23, 73:4
**intentional** [1] - 94:2
**intentions** [2] - 73:10, 75:11
**interest** [5] - 20:14, 22:19, 22:24, 104:11
**interesting** [1] - 31:16
**interfere** [11] - 46:4, 46:6, 47:5, 47:7, 83:25, 86:22, 87:1, 89:16, 89:21, 93:3, 93:11
**interfered** [4] - 20:9, 20:15, 20:16, 95:1
**interference** [2] - 14:2, 14:13
**interfering** [2] - 18:21,

48:2
**interstate** [1] - 20:15
**interview** [1] - 70:25
**interviewed** [2] - 28:20, 29:17
**introduced** [1] - 51:8
**invading** [1] - 70:16
**investigation** [16] - 22:9, 24:15, 25:4, 25:19, 28:8, 28:25, 29:2, 29:4, 29:8, 29:24, 32:12, 33:6, 36:11, 36:22, 36:24, 105:2
**involve** [6] - 13:22, 14:15, 15:7, 15:10, 17:24, 94:17
**involved** [5] - 13:11, 17:14, 18:5, 74:20, 74:25
**involvement** [3] - 28:21, 30:1, 55:6
**involving** [1] - 94:2
**irregularities** [1] - 49:9
**issue** [7] - 11:16, 12:21, 13:6, 26:5, 28:10, 37:6, 98:11
**issued** [1] - 99:2
**issues** [6] - 87:13, 87:14, 90:17, 97:19, 106:23, 106:24
**itself** [3] - 14:14, 54:19, 54:20

**J**

**J6-case** [1] - 32:18
**Jacob** [1] - 71:19
**January** [48] - 22:13, 22:16, 22:21, 23:1, 23:9, 23:10, 24:2, 26:14, 27:14, 27:17, 27:18, 29:7, 32:23, 38:4, 39:19, 46:12, 47:16, 50:11, 50:17, 50:20, 50:21, 51:2, 51:10, 51:20, 51:22, 58:15, 59:18, 59:24, 60:9, 60:13, 60:15, 60:16, 62:1, 62:25, 64:2, 65:17, 65:25, 66:6, 67:1, 70:25, 78:7, 78:17, 84:18, 84:24, 90:14, 93:6, 93:25
**Jennings** [2] - 70:10, 71:15
**Jensen** [12] - 52:25, 53:10, 55:12, 57:21, 57:25, 58:6, 58:13,

97:6, 97:11, 97:16, 97:20, 97:24
**Jensen's** [3] - 58:10, 97:15, 106:3
**job** [3] - 65:23, 66:2, 88:7
**Joe** [1] - 75:20
**join** [1] - 71:5
**Joshua** [1] - 55:15
**Judge** [12] - 10:2, 12:21, 19:14, 22:4, 35:11, 40:24, 61:22, 65:23, 67:8, 78:8, 101:15, 107:3
**judges** [1] - 19:8
**judgment** [5] - 98:20, 100:4, 100:7, 101:19, 105:12
**judicial** [3] - 33:25, 36:22, 99:3
**July** [1] - 59:17
**jumped** [3] - 26:8, 55:16, 58:20
**jurisdictional** [1] - 20:12
**jurisdictions** [1] - 48:13
**jury** [5] - 24:16, 46:23, 57:14, 83:23, 93:13
**Justice** [1] - 36:3
**justice** [10] - 25:3, 25:16, 31:12, 32:7, 35:23, 36:11, 39:2, 64:22, 94:17, 94:22
**justifies** [1] - 66:23
**justify** [1] - 66:20

**K**

**Kean** [1] - 108:13
**keep** [5] - 4:4, 29:15, 54:12, 54:23
**Kelly** [1] - 61:23
**Kentucky** [3] - 100:21, 100:25, 101:13
**kept** [4] - 53:6, 59:9, 59:10, 71:8
**Kevin** [1] - 71:22
**key** [1] - 82:4
**kind** [6] - 10:5, 25:12, 85:7, 85:8, 96:25, 99:7
**kinds** [1] - 44:12
**knowing** [1] - 27:13
**knowingly** [3] - 18:19, 103:18, 104:3
**knowledge** [2] - 26:15, 38:14
**known** [1] - 103:20
**knows** [2] - 9:8,

100:17

**L**

**lack** [3] - 37:10, 96:22, 96:23
**lacking** [1] - 88:13
**landing** [2] - 54:2, 54:4
**landslide** [1] - 33:10
**lapse** [1] - 56:14
**large** [1] - 68:9
**last** [7] - 4:22, 5:1, 54:19, 59:16, 59:19, 83:22, 84:22
**lasting** [1] - 64:1
**launch** [1] - 2:13
**Laura** [1] - 47:14
**law** [19] - 18:21, 20:7, 23:15, 25:21, 35:5, 35:7, 44:2, 58:24, 62:14, 62:18, 63:21, 65:7, 73:9, 80:11, 80:19, 90:3, 90:11, 92:16, 92:25
**lawful** [2] - 48:4, 48:11
**lawlessness** [1] - 62:21
**lawmakers** [1] - 50:18
**Lawn** [1] - 53:19
**laws** [3] - 78:21, 79:6, 79:15
**lawsuit** [1] - 79:17
**lay** [4] - 11:12, 12:10, 21:22, 41:19
**lays** [2] - 11:9, 12:16
**lead** [8] - 59:8, 64:19, 67:16, 68:5, 68:8, 68:13, 79:22, 98:1
**leader** [2] - 56:12, 67:8, 97:7
**leading** [1] - 26:14
**learning** [1] - 36:24
**least** [4] - 81:17, 93:8, 97:7, 102:22
**leave** [4] - 53:2, 83:9, 86:9, 96:10
**led** [3] - 62:10, 63:17, 68:20
**ledgers** [1] - 36:23
**left** [4] - 45:8, 56:12, 63:21, 70:8
**legal** [2] - 32:9, 64:8
**length** [1] - 57:20
**less** [4] - 25:19, 51:4, 67:2, 69:13
**lessened** [1] - 57:17
**letter** [5] - 3:15, 71:15, 87:5, 87:7, 88:14
**letters** [5] - 3:16, 55:5,

55:13, 55:17, 87:22
**level** [10] - 11:22, 15:21, 15:25, 16:5, 16:19, 16:24, 17:18, 17:19, 40:14, 68:21
**levels** [2] - 15:22, 18:8
**license** [1] - 80:13
**lied** [1] - 29:18
**life** [7] - 55:23, 58:16, 65:18, 86:18, 88:6, 88:14, 107:7
**light** [4] - 4:23, 45:24, 67:7, 77:20
**likelihood** [1] - 33:5
**likely** [2] - 32:12, 35:25
**limits** [1] - 83:14
**line** [10] - 53:8, 53:12, 53:20, 54:7, 54:9, 54:11, 54:17, 54:19, 62:17, 80:14
**lines** [2] - 65:9, 103:15
**lingered** [1] - 70:13
**listened** [1] - 8:23
**litany** [1] - 85:19
**literally** [4] - 37:21, 70:5, 70:14, 86:15
**live** [2] - 25:23, 26:1
**lives** [6] - 62:11, 63:19, 63:23, 64:16, 64:23, 65:19
**living** [1] - 88:5
**Lloyd** [6] - 52:25, 53:3, 53:4, 53:10, 77:7
**local** [1] - 102:16
**location** [2] - 103:18, 104:3
**look** [16] - 37:8, 37:12, 38:19, 39:10, 49:10, 61:14, 66:22, 74:5, 78:9, 78:11, 78:15, 87:23, 96:8, 98:16, 107:7
**looked** [7] - 12:9, 20:20, 81:14, 91:1, 91:4, 98:25
**looking** [7] - 8:2, 10:22, 74:4, 75:2, 82:24, 99:20, 107:15
**looks** [4] - 7:5, 57:24, 82:8, 99:7
**looming** [1] - 51:17
**loss** [6] - 58:16, 98:22, 98:24, 99:4, 100:2, 104:19
**losses** [1] - 63:21
**lost** [3] - 22:23, 22:24, 77:6
**love** [2] - 75:5

**loved** [1] - 56:7
**lower** [3] - 52:3, 55:1, 58:5
**luck** [1] - 108:2
**luckily** [1] - 73:25

**M**

**machinery** [2] - 89:17, 94:25
**magnitude** [1] - 95:2
**maintained** [1] - 96:11
**male** [3] - 71:13, 71:16, 71:20
**mall** [1] - 8:1
**man** [4] - 56:11, 59:2, 75:18, 87:25
**mandatory** [3] - 42:21, 102:10, 102:15
**manner** [1] - 71:2
**manual** [1] - 21:15
**marshaled** [1] - 55:5
**matches** [1] - 9:11
**material** [26] - 24:15, 26:2, 27:4, 28:7, 28:9, 28:24, 29:2, 29:3, 29:8, 29:24, 30:11, 32:12, 32:24, 33:14, 34:1, 34:14, 35:3, 36:21, 37:2, 37:3, 38:8, 38:9, 38:10, 38:15, 40:4, 82:4
**materiality** [4] - 34:25, 35:8, 35:20, 39:12
**materials** [1] - 3:22
**Matter** [2] - 2:4, 77:17
**matter** [9] - 5:5, 5:11, 11:14, 18:23, 19:23, 49:6, 80:3, 85:2, 88:5
**matters** [2] - 80:12, 84:9
**maximum** [3] - 11:15, 11:17, 42:15
**mean** [21] - 8:11, 47:9, 48:1, 48:4, 48:14, 49:4, 60:11, 61:14, 68:13, 68:17, 75:14, 75:22, 76:18, 80:14, 80:16, 84:17, 89:12, 94:9, 94:19, 98:19
**meaning** [1] - 33:2
**means** [2] - 37:4, 79:20
**meant** [2] - 62:17, 106:17
**measures** [1] - 64:8
**mechanics** [1] - 2:14
**media** [7] - 22:24,

23:2, 37:10, 59:16, 67:14, 84:12, 85:23
**meet** [1] - 56:20
**member** [1] - 35:13
**members** [6] - 47:20, 48:5, 55:25, 56:3, 95:23, 96:15
**memo** [4] - 12:11, 52:2, 95:12, 98:25
**memoranda** [1] - 3:13
**memorandum** [14] - 13:15, 13:18, 13:19, 13:25, 14:21, 14:22, 19:14, 32:15, 51:15, 51:23, 52:5, 58:8, 66:10
**memories** [1] - 63:10
**mental** [6] - 62:24, 63:1, 63:16, 64:25, 87:13, 88:13
**mention** [1] - 106:3
**mentioned** [8] - 12:1, 44:11, 78:24, 83:7, 85:9, 90:12, 95:10, 96:1
**mere** [1] - 31:10
**merely** [2] - 10:23, 35:11
**message** [3] - 31:21, 60:4, 60:15
**messages** [22] - 25:6, 25:12, 25:15, 27:11, 27:16, 27:22, 28:1, 28:4, 28:6, 29:5, 29:14, 30:2, 31:4, 31:14, 32:18, 32:19, 33:4, 33:7, 34:13, 35:2, 39:16, 39:17
**messaging** [1] - 31:23
**Messenger** [1] - 31:25
**metal** [1] - 54:16
**Michael** [10] - 2:5, 45:3, 62:5, 64:9, 64:15, 65:1, 66:2, 66:6, 77:18, 101:20
**microphone** [3] - 2:18, 44:23, 105:25
**middle** [1] - 54:3
**might** [8] - 24:20, 27:23, 40:3, 48:25, 49:1, 49:3, 56:8, 76:19
**Mike** [1] - 76:25
**million** [3] - 86:13, 98:25, 99:10
**mind** [8] - 4:4, 7:14, 45:7, 73:25, 74:22, 100:14
**minimum** [1] - 26:15
**minutes** [8] - 54:5,

69:20, 70:5, 70:8, 70:12, 70:23, 83:8, 96:12
**miracle** [4] - 58:15, 58:19, 59:1
**miraculously** [1] - 59:10
**misdemeanor** [1] - 55:2
**misdemeanors** [1] - 99:16
**misspoke** [1] - 106:10
**mistake** [1] - 74:5
**mitigating** [2] - 4:17, 97:19
**Mittal** [1] - 2:7
**mob** [16] - 6:11, 10:9, 10:10, 10:11, 45:25, 54:16, 62:21, 65:25, 67:8, 68:20, 79:22, 83:12, 86:25, 96:7, 96:14, 97:8
**mob's** [1] - 82:4
**modestly** [1] - 58:5
**moment** [13] - 13:4, 19:20, 40:19, 41:4, 41:18, 46:1, 52:20, 58:1, 58:19, 59:3, 59:5, 59:12, 83:17
**momentary** [1] - 56:14
**months** [29] - 11:19, 40:15, 41:21, 46:2, 51:18, 57:18, 58:12, 66:13, 66:15, 90:20, 90:23, 92:11, 95:3, 97:10, 97:22, 101:8, 101:22, 101:23, 102:1, 102:2, 106:4, 106:5, 106:11, 106:14, 106:19
**moreover** [1] - 94:15
**morning** [3] - 2:11, 2:16, 2:17
**most** [11] - 11:12, 16:13, 21:25, 31:13, 52:3, 52:22, 59:10, 63:17, 67:4, 71:12, 99:1
**mother** [1] - 51:13
**motion** [3] - 107:18, 107:22, 108:1
**motivated** [1] - 24:23
**mouth** [1] - 105:24
**move** [2] - 42:23, 105:24
**moves** [1] - 107:23
**moving** [1] - 33:20
**MR** [40] - 3:8, 4:1, 6:16, 6:21, 10:2, 12:3, 12:20, 12:24,

13:5, 17:3, 17:6, 19:13, 19:18, 22:4, 31:9, 34:19, 34:24, 40:23, 41:1, 43:13, 46:20, 46:23, 65:16, 67:22, 68:3, 68:15, 68:22, 69:8, 72:13, 72:16, 72:21, 76:25, 100:20, 100:23, 101:4, 101:15, 106:15, 106:25, 107:3, 107:14
**MS** [53] - 2:16, 2:21, 2:23, 3:5, 3:24, 5:9, 5:12, 7:3, 20:4, 21:2, 21:11, 22:7, 25:11, 27:8, 28:16, 28:20, 30:15, 30:19, 30:21, 30:25, 40:22, 43:16, 44:21, 44:25, 45:3, 46:16, 47:10, 47:14, 47:21, 47:24, 48:1, 48:8, 48:16, 48:19, 48:23, 49:24, 50:1, 50:5, 59:22, 59:24, 60:2, 60:4, 60:8, 60:14, 61:1, 61:19, 77:6, 105:21, 106:2, 106:12, 106:18, 107:11, 107:21
**must** [19] - 15:10, 21:14, 43:17, 43:22, 44:8, 65:7, 92:5, 95:14, 102:15, 102:17, 102:19, 102:20, 102:24, 103:1, 103:7, 103:14, 103:18, 104:3, 105:11

**N**

**name** [2] - 61:24, 104:16
**Nation** [4] - 62:3, 62:14, 62:17, 64:24
**national** [1] - 81:3
**nature** [10] - 32:1, 33:22, 44:8, 61:7, 71:10, 77:25, 78:6, 78:18, 87:2, 91:22
**near** [2] - 29:7, 96:7
**necessarily** [1] - 38:7
**necessary** [2] - 43:23, 91:9
**need** [17] - 23:23, 43:25, 44:10, 44:13, 44:15, 45:1, 49:7, 50:22, 50:25, 56:19, 71:5, 76:4, 88:3, 91:4, 96:24, 97:3,

107:18
**needle** [1] - 85:16
**needs** [1] - 7:16
**negate** [1] - 38:24
**neighbor** [2] - 73:6, 73:7
**neighbors** [1] - 79:11
**never** [12] - 32:2, 65:6, 73:4, 73:10, 73:21, 73:22, 74:18, 74:20, 75:10, 75:13, 75:15
**new** [1] - 103:14
**news** [6] - 22:18, 46:3, 46:5, 47:4, 47:6, 49:5
**next** [7] - 11:8, 23:19, 41:4, 51:7, 90:1, 92:22, 95:23
**Nichols** [12] - 3:1, 56:6, 59:4, 59:12, 61:24, 65:17, 67:5, 69:1, 72:24, 77:9, 80:16, 96:5
**NICHOLS** [2] - 61:22, 65:13
**nobody** [2] - 76:9
**none** [7] - 35:21, 62:7, 69:4, 79:4, 80:12, 89:13
**noon** [1] - 23:11
**normal** [1] - 27:1
**normally** [1] - 15:21
**Northeast** [2] - 103:22
**Northwest** [3] - 103:21, 103:24, 104:22
**Note** [6] - 20:23, 21:12, 21:20, 26:6, 28:14, 37:1
**note** [3] - 25:24, 25:25, 59:19
**noted** [3] - 97:18, 105:19, 107:2
**notes** [4] - 16:21, 36:17, 81:7, 87:23
**nothing** [14] - 6:18, 35:17, 35:23, 40:23, 49:13, 63:4, 69:24, 70:22, 80:2, 87:17, 93:22
**notice** [3] - 99:3, 105:11, 105:13
**notify** [1] - 104:24
**notwithstanding** [1] - 50:13
**November** [2] - 50:9, 50:25
**nowhere** [1] - 29:6
**number** [10] - 6:8, 6:9, 31:17, 33:22, 37:18,

107:18, 99:18, 100:2
**Numbers** [1] - 3:12
**numerous** [1] - 88:16

**O**

**object** [6] - 46:18, 48:5, 48:6, 49:1, 49:4
**objected** [1] - 46:20
**objecting** [2] - 47:19, 47:20
**objection** [3] - 5:7, 40:17, 40:19
**objections** [6] - 4:12, 4:13, 48:20, 105:18, 107:2, 107:3
**objective** [2] - 14:17, 18:1
**obligation** [1] - 104:25
**obligations** [4] - 55:22, 103:10, 103:17, 104:20
**observe** [3] - 10:17, 10:23, 89:22
**observer** [1] - 52:8
**observing** [1] - 70:20
**obsessively** [1] - 46:1
**obstruct** [11] - 17:8, 25:2, 35:23, 36:10, 39:2, 83:25, 86:21, 89:21, 92:15, 93:11, 94:11
**obstructed** [4] - 17:16, 20:8, 36:9, 94:23
**obstructing** [5] - 14:4, 16:14, 17:14, 18:20, 95:4
**obstruction** [17] - 13:1, 13:11, 21:24, 25:16, 27:1, 27:2, 28:23, 31:12, 32:6, 32:7, 35:24, 38:20, 39:8, 49:13, 84:11, 97:14, 106:24
**obstructive** [5] - 22:9, 36:13, 37:11, 38:23, 38:24
**obstructs** [1] - 25:19
**obtaining** [2] - 103:25, 104:4
**obvious** [4] - 9:2, 81:13, 82:5, 88:10
**obviously** [10] - 4:5, 36:1, 57:10, 58:3, 61:15, 69:7, 72:8, 72:11, 82:23, 107:5
**occasion** [1] - 68:23

**occurred** [2] - 15:23, 66:7
**offender** [2] - 86:17, 87:4
**offenders** [1] - 69:13
**offense** [50] - 5:3, 11:22, 15:3, 15:13, 15:19, 15:21, 15:25, 16:3, 16:4, 16:5, 16:19, 16:21, 16:22, 16:23, 16:24, 17:18, 17:19, 18:8, 18:16, 18:18, 19:23, 20:10, 20:12, 21:3, 21:7, 21:8, 25:4, 36:12, 36:14, 40:14, 44:1, 44:3, 44:9, 44:16, 56:19, 71:24, 71:25, 77:25, 78:6, 78:12, 78:19, 87:2, 90:2, 90:4, 90:10, 91:16, 91:19, 92:2, 97:14
**offenses** [6] - 11:15, 18:25, 19:2, 20:7, 29:18, 100:6
**offer** [1] - 11:24
**Office** [5] - 2:8, 103:13, 104:16, 104:17, 105:3
**office** [7] - 3:11, 46:9, 56:1, 101:12, 102:12, 103:12, 105:1
**Officer** [5] - 53:16, 70:24, 71:7, 96:5, 104:17
**officer** [17] - 18:21, 18:25, 45:19, 61:21, 66:14, 73:2, 73:7, 73:22, 73:23, 81:8, 82:11, 97:13, 102:25, 103:8, 103:16, 104:1, 104:5
**officers** [35] - 7:22, 13:12, 16:15, 17:9, 17:15, 17:16, 18:17, 20:8, 32:22, 52:15, 53:13, 54:23, 56:2, 58:25, 62:16, 63:2, 63:18, 63:23, 64:17, 65:2, 65:8, 65:20, 71:5, 73:6, 73:12, 73:20, 82:15, 82:21, 83:4, 88:21, 92:16, 96:4, 96:9, 96:10, 97:22
**offices** [1] - 70:16
**official** [5] - 14:9, 14:11, 28:15, 36:22, 36:24

**officials** [3] - 64:18, 79:14, 98:4
**Ohio** [8] - 52:21, 69:17, 70:6, 83:5, 86:9, 96:6, 97:8, 98:3
**old** [1] - 87:10
**older** [1] - 87:11
**once** [3] - 31:21, 32:2, 70:3
**one** [80] - 6:2, 6:7, 6:8, 7:10, 7:19, 8:9, 11:17, 13:8, 13:17, 13:18, 15:12, 23:18, 27:8, 32:6, 33:14, 33:22, 34:8, 35:12, 36:8, 37:7, 37:18, 38:21, 38:22, 39:1, 41:24, 42:3, 42:7, 42:10, 42:25, 43:2, 45:5, 45:14, 46:14, 47:10, 49:16, 50:6, 52:22, 57:16, 59:2, 59:3, 59:16, 59:19, 59:20, 59:21, 59:22, 60:9, 61:16, 67:23, 68:4, 68:20, 70:21, 74:3, 75:19, 76:20, 81:13, 81:20, 82:2, 85:13, 85:25, 86:6, 86:8, 89:1, 89:18, 91:22, 92:19, 92:22, 94:21, 95:20, 97:17, 97:24, 98:21, 98:22, 102:2, 102:15, 102:20, 106:12
**One** [2] - 2:5, 77:18
**one's** [1] - 82:1
**ongoing** [1] - 64:8
**open** [2] - 48:10, 103:15
**opened** [1] - 93:6
**operating** [1] - 43:10
**opined** [1] - 47:14
**opportunity** [3] - 13:6, 51:13, 88:18
**opposition** [1] - 108:1
**options** [1] - 102:12
**order** [7] - 2:2, 20:12, 52:17, 52:18, 92:25, 93:8, 105:4
**ordered** [2] - 102:4, 104:8
**orderly** [1] - 14:8, 14:10
**orders** [3] - 53:1, 86:10, 95:2
**ordinarily** [1] - 15:25, 16:18, 41:4
**originally** [1] - 106:16

**otherwise** [4] - 92:8, 93:17, 95:7, 98:9
**outcome** [3] - 49:15, 80:7, 80:8
**outside** [4] - 52:13, 58:22, 70:19, 82:15
**outstanding** [1] - 4:12
**overall** [6] - 8:8, 8:9, 78:10, 78:13, 78:16, 97:15
**overtly** [1] - 96:3
**own** [4] - 63:18, 69:15, 70:18, 87:21
**owned** [1] - 87:20

## P

**p.m** [5] - 24:2, 69:17, 77:14, 77:15, 108:3
**Page** [3] - 12:11, 32:15, 52:4
**page** [2] - 22:21, 51:18
**paid** [2] - 100:6, 104:25
**painful** [3] - 62:12, 62:20, 64:1
**painted** [3] - 67:4, 71:17, 71:22
**Pandora's** [1] - 93:6
**pans** [3] - 8:19, 8:25, 9:6
**paper** [1] - 19:11
**papers** [1] - 5:19
**paragraph** [2] - 17:2, 21:11
**Paragraph** [10] - 6:2, 6:9, 9:17, 10:8, 16:9, 16:15, 17:3, 17:6, 17:13, 20:23
**Parlor** [2] - 51:3, 51:5
**part** [23] - 5:1, 7:8, 10:3, 11:6, 14:18, 15:14, 18:1, 39:9, 46:16, 48:3, 48:4, 48:23, 54:3, 55:23, 60:20, 61:15, 61:17, 64:9, 78:8, 78:12, 78:18, 85:19, 98:10
**Part** [1] - 102:12
**participating** [1] - 7:13
**particular** [13] - 12:13, 19:22, 37:9, 37:10, 39:21, 48:6, 49:11, 60:12, 77:20, 78:3, 78:11, 100:14, 100:15
**particularly** [2] - 12:18, 60:13
**parties** [4] - 13:3,

40:11, 78:7, 108:2
**partner** [1] - 54:18
**passive** [1] - 56:11
**past** [3] - 20:20, 54:22, 96:8
**path** [1] - 49:12
**paths** [1] - 52:1
**patriotic** [1] - 80:2
**pause** [1] - 11:23
**paving** [1] - 95:18
**pay** [6] - 99:16, 102:4, 104:6, 104:11, 107:6, 107:8
**payable** [1] - 104:20
**payments** [1] - 104:13
**peaceful** [12] - 48:9, 52:8, 56:10, 79:16, 80:21, 89:17, 92:21, 92:24, 93:2, 93:9, 94:3, 94:25
**peacefully** [3] - 70:8, 70:11, 70:19
**penalties** [2] - 41:20, 104:12
**penalty** [1] - 12:2
**Pence** [1] - 70:2
**penetrating** [1] - 82:23
**people** [38] - 7:19, 7:21, 28:1, 31:13, 46:3, 46:11, 47:5, 47:19, 47:22, 48:4, 48:5, 48:11, 49:5, 51:12, 51:24, 55:20, 56:6, 62:14, 63:15, 64:6, 68:9, 74:24, 76:11, 78:21, 79:18, 80:17, 82:13, 82:17, 83:13, 86:1, 88:6, 99:9, 99:13, 99:14, 99:19, 99:24, 100:2
**people's** [1] - 74:13
**pepper** [1] - 96:4
**per** [2] - 74:20, 99:20
**perceive** [1] - 89:16
**perfect** [1] - 80:23
**perfectly** [1] - 10:19
**performance** [1] - 14:6
**perhaps** [2] - 59:10, 96:7
**period** [1] - 9:4
**periodic** [1] - 102:22
**permanently** [2] - 24:4, 37:24
**permission** [2] - 104:1, 104:5, 105:15
**person** [22] - 6:7, 7:11, 8:12, 36:20, 38:21, 45:5, 45:14, 62:4,

68:13, 68:14, 71:22, 74:6, 79:12, 79:21, 81:15, 82:8, 82:10, 85:13, 86:1, 93:21, 99:20, 99:23
**personal** [1] - 64:4
**personally** [3] - 73:3, 73:18, 99:25
**perspective** [3] - 52:6, 69:2, 81:1
**pertinent** [1] - 36:13
**Pezzola** [1] - 67:18
**phone** [8] - 24:1, 27:13, 27:19, 27:23, 28:4, 30:5, 34:21, 60:5
**photo** [1] - 86:6
**phrase** [1] - 94:18
**physical** [3] - 62:23, 69:25, 87:12
**physically** [2] - 32:22, 73:22
**pick** [1] - 45:2
**picture** [2] - 81:4, 81:5
**piece** [3] - 9:14, 47:10, 51:19
**place** [13] - 10:22, 11:23, 14:23, 58:1, 66:25, 67:12, 81:20, 82:14, 82:18, 83:10, 88:8, 98:3, 100:15
**placed** [1] - 64:5
**placement** [1] - 102:21
**places** [2] - 40:10, 88:7
**placing** [1] - 69:11
**plain** [1] - 89:14
**plainly** [1] - 14:12
**plan** [4] - 14:18, 18:2, 68:7, 68:9
**planned** [1] - 32:20
**planning** [1] - 35:19
**plans** [3] - 35:21, 38:7, 50:11
**play** [1] - 12:13
**played** [3] - 45:16, 64:9, 96:13
**plays** [3] - 12:18, 90:12, 93:15
**pled** [1] - 100:5
**plus** [2] - 61:4, 61:5
**podium** [2] - 2:20, 100:10
**point** [24] - 8:22, 9:19, 10:16, 13:25, 25:12, 26:1, 26:20, 30:9, 32:16, 34:5, 35:1, 38:12, 38:19, 39:25, 41:17, 49:10, 67:5,

70:4, 80:4, 80:23, 81:20, 82:4, 106:7
**pointed** [10] - 2:18, 16:17, 19:3, 21:20, 35:25, 51:14, 56:25, 58:8, 58:17, 82:7
**pointing** [3] - 53:6, 53:13, 53:16
**points** [3] - 40:10, 81:23, 105:22
**poke** [1] - 22:2
**police** [26] - 13:11, 32:22, 45:19, 52:15, 53:8, 53:12, 53:13, 53:20, 54:6, 54:22, 56:2, 63:1, 65:20, 69:20, 69:22, 70:15, 71:5, 73:5, 73:6, 73:11, 73:19, 73:21, 73:22, 86:10, 95:16
**Police** [2] - 59:3, 61:25
**policy** [1] - 44:7
**political** [3] - 46:3, 47:4, 71:10
**politics** [2] - 74:18, 74:21
**portion** [1] - 106:3
**pose** [2] - 82:25, 83:3
**posed** [1] - 86:24
**position** [2] - 6:18, 36:7
**possess** [1] - 102:17
**possible** [5] - 43:11, 59:2, 100:16, 100:21, 101:14
**possibly** [1] - 73:24
**post** [1] - 22:23
**posted** [4] - 22:21, 23:1, 51:18, 60:9
**posting** [1] - 50:10
**posts** [5] - 24:16, 26:14, 35:2, 35:9, 35:13
**potential** [1] - 63:9
**potentially** [1] - 30:10
**Potter** [1] - 36:3
**power** [9] - 80:21, 89:18, 92:21, 92:24, 93:2, 93:4, 93:10, 94:3, 95:1
**practice** [1] - 93:9
**practices** [1] - 80:18
**pray** [1] - 76:16
**prayers** [1] - 107:8
**pre** [1] - 60:24
**pre-Brock** [1] - 60:24
**pre-Fischer** [1] - 60:24
**precedent** [1] - 93:5
**preceding** [1] - 60:5

**precipice** [1] - 96:15
**precisely** [2] - 15:17, 17:15
**predicted** [1] - 45:23
**preliminary** [2] - 2:15, 11:14
**preparation** [1] - 73:16
**prepared** [8] - 9:24, 19:17, 45:13, 46:1, 62:7, 63:4, 72:23, 85:7
**preponderance** [12] - 8:17, 9:9, 9:11, 10:12, 37:16, 39:24, 84:6, 84:8, 85:11, 85:18, 85:21, 93:14
**presence** [2] - 9:3, 77:10
**present** [14] - 2:6, 2:7, 2:8, 2:9, 29:9, 29:11, 63:9, 64:16, 77:8, 83:10, 94:4, 95:21, 95:24, 98:2
**presented** [3] - 52:7, 94:1, 97:7
**presentence** [12] - 3:10, 4:10, 5:4, 5:19, 5:25, 10:7, 11:2, 11:5, 11:6, 11:9, 102:12, 105:1
**preserve** [2] - 24:9, 78:21
**preserved** [1] - 24:11
**presided** [1] - 67:12
**president** [1] - 79:25
**President** [12] - 35:15, 49:21, 51:19, 52:18, 70:1, 70:2, 75:14, 79:8, 83:12, 92:22, 95:24, 96:16
**press** [2] - 99:1, 99:3
**pressure** [1] - 63:3
**pretrial** [1] - 51:7
**pretty** [2] - 35:17, 86:23
**prevailed** [1] - 34:9
**prevented** [1] - 29:19
**previous** [1] - 107:17
**previously** [1] - 80:20
**Prisons** [2] - 100:18, 101:21
**private** [1] - 24:5
**Probation** [2] - 2:7, 105:3
**probation** [21] - 3:11, 12:7, 42:6, 42:7, 42:11, 42:13, 42:25, 43:2, 43:3, 66:14, 90:20, 101:12,

102:11, 102:25, 103:8, 103:12, 103:16, 104:1, 104:5, 105:1
**problems** [3] - 78:25, 80:10, 89:15
**proceed** [3] - 4:3, 29:23, 86:25
**proceeding** [17] - 4:6, 10:22, 18:17, 19:3, 36:22, 48:3, 48:4, 48:6, 50:12, 86:8, 86:22, 86:23, 92:17, 92:19, 92:20, 94:21
**proceedings** [2] - 20:6, 108:10
**PROCEEDINGS** [1] - 2:1
**process** [6] - 26:16, 48:7, 79:24, 86:25, 87:1, 95:5
**procuring** [1] - 36:20
**product** [2] - 61:16, 61:17
**profound** [2] - 63:1, 63:21, 64:23
**projected** [1] - 14:6
**promote** [4] - 44:2, 44:6, 90:3, 90:6
**promulgated** [1] - 16:12
**proof** [1] - 31:22
**property** [2] - 80:17, 103:25
**prosecution** [10] - 22:10, 25:4, 32:13, 32:25, 33:15, 34:1, 35:3, 35:25, 36:11, 94:23
**protect** [6] - 44:5, 63:13, 63:15, 64:14, 65:7, 90:5
**protected** [1] - 20:16
**protecting** [1] - 63:24
**protection** [1] - 85:24
**protections** [1] - 86:2
**protest** [2] - 70:6, 75:7
**protests** [1] - 79:16
**protocol** [1] - 31:24
**protocols** [1] - 31:17
**prove** [6] - 9:24, 27:2, 37:16, 39:12, 85:21, 93:7
**proved** [2] - 85:11, 85:17
**proven** [1] - 10:12
**provide** [9] - 31:25, 44:2, 44:16, 77:22, 90:3, 91:5, 92:1, 102:21, 103:7

**provided** [1] - 24:17
**provides** [2] - 15:9, 16:2
**providing** [1] - 31:18
**provisions** [1] - 101:17
**proximity** [1] - 37:19
**PSR** [22] - 11:21, 13:7, 13:14, 13:20, 13:21, 13:24, 15:6, 15:8, 15:17, 16:1, 16:9, 16:10, 16:14, 16:15, 16:20, 17:4, 17:7, 18:4, 21:22, 40:9, 46:17, 46:18
**psychological** [2] - 63:7, 64:5
**public** [2] - 44:5, 90:6
**publishing** [1] - 106:5
**pump** [1] - 99:18
**punishment** [3] - 44:3, 90:4, 91:18
**purpose** [1] - 18:20
**purposes** [9] - 43:23, 43:25, 44:11, 49:6, 84:8, 91:9, 92:17, 93:14, 94:16
**pursuant** [1] - 101:16
**pushing** [1] - 54:16
**put** [9] - 9:20, 19:11, 22:25, 25:9, 40:18, 76:2, 79:10, 89:12, 100:18
**puts** [2] - 13:24, 85:16
**putting** [5] - 13:3, 22:5, 41:3, 62:11, 99:24

**Q**

**qualify** [1] - 39:24
**questions** [2] - 48:10, 59:15
**quibble** [2] - 40:3, 40:11
**quick** [2] - 59:15, 83:8
**quintessential** [1] - 66:16
**quirk** [1] - 12:12
**quit** [1] - 70:5
**quite** [4] - 38:8, 43:5, 54:20, 85:17
**quote** [22] - 14:5, 14:7, 15:12, 15:16, 16:2, 16:20, 17:6, 17:11, 17:12, 23:12, 51:19, 91:6, 91:17, 91:20, 92:6, 92:9, 92:10, 93:16, 93:18, 93:19, 93:20

**R**

**racks** [1] - 54:17
**raise** [1] - 2:15
**raised** [1] - 6:2
**range** [13] - 4:15, 40:13, 40:15, 41:19, 42:2, 91:22, 92:4, 92:8, 92:11, 93:18, 94:14, 95:3, 95:7
**rather** [2] - 10:10, 71:2
**rational** [1] - 61:6
**reach** [1] - 95:22
**reached** [1] - 22:17
**reaching** [1] - 54:22, 64:20
**reaction** [1] - 62:10
**read** [7] - 31:21, 51:21, 51:22, 87:5, 87:6, 87:21, 88:14
**reading** [2] - 17:2, 66:9
**ready** [1] - 45:11
**real** [5] - 33:17, 48:20, 82:20, 83:13, 88:4
**reality** [5] - 55:3, 84:17, 86:20, 86:23, 95:10
**really** [14] - 7:4, 7:15, 10:25, 13:2, 24:25, 49:6, 57:21, 61:6, 61:11, 78:10, 78:14, 81:22, 84:23, 88:21
**reason** [7] - 20:24, 38:21, 38:24, 39:4, 49:19, 95:5, 96:16
**reasonable** [7] - 9:10, 27:9, 29:12, 30:13, 83:24, 84:7, 100:1
**reasoned** [3] - 98:20, 100:4, 100:7
**reasoning** [1] - 91:12
**reasons** [18] - 13:16, 31:7, 32:21, 37:14, 38:22, 39:1, 41:9, 48:25, 49:1, 49:3, 57:18, 58:9, 90:13, 91:13, 91:25, 98:12, 101:6, 105:23
**recalled** [2] - 71:3, 71:8
**received** [5] - 3:1, 3:3, 3:9, 3:13, 98:8
**receiving** [2] - 24:22, 39:4
**recent** [1] - 99:1
**recess** [5] - 77:3, 77:12, 77:14, 77:15, 108:3
**recognition** [1] -

51:11
**recommend** [2] - 100:19, 101:12
**recommendation** [2] - 3:11, 5:5
**recommended** [3] - 42:18, 66:14, 102:11
**recommends** [2] - 90:20, 90:21
**reconcile** [1] - 63:12
**record** [9] - 3:21, 6:17, 25:9, 38:3, 41:20, 75:17, 77:17, 77:23, 105:19
**records** [1] - 44:14
**recovered** [5] - 27:25, 32:2, 33:1, 35:10, 37:25
**reentered** [1] - 70:7
**reestablished** [1] - 93:9
**refer** [2] - 32:14, 33:8
**reference** [12] - 13:20, 16:2, 16:21, 17:10, 17:11, 20:1, 20:22, 21:4, 21:5, 21:7, 33:23, 33:24
**references** [1] - 15:1
**referring** [3] - 50:21, 68:25, 71:1
**reflect** [7] - 11:2, 44:1, 65:4, 91:18, 91:22, 92:2, 95:4
**reflected** [1] - 86:18
**reflects** [1] - 90:2
**reflexively** [1] - 28:21
**Reform** [1] - 101:16
**refrain** [1] - 102:19
**refusal** [1] - 86:9
**regain** [1] - 52:17
**regard** [17] - 5:25, 6:2, 7:24, 7:25, 9:17, 11:25, 21:22, 23:7, 23:12, 26:20, 37:18, 38:20, 43:10, 44:18, 44:20, 69:12, 78:5
**regarding** [6] - 10:24, 18:13, 32:18, 32:19, 34:2, 77:25
**regardless** [6] - 8:12, 21:18, 57:4, 90:15, 90:16, 106:22
**rehabilitation** [2] - 44:6, 90:7
**rejects** [1] - 18:3
**related** [1] - 36:13
**relating** [1] - 23:1
**release** [1] - 41:22, 41:23, 41:25, 42:3, 42:5, 66:12, 99:1,

99:4, 101:9, 102:1, 103:9, 105:1
**relevant** [10] - 32:24, 35:20, 38:11, 38:13, 43:18, 43:20, 77:21, 78:13, 83:18
**relied** [1] - 34:18
**religious** [1] - 87:24
**rely** [1] - 55:23
**remain** [1] - 5:25
**remained** [1] - 70:12
**remaining** [1] - 41:20, 42:12, 107:23
**remains** [1] - 49:21
**remarked** [1] - 36:3
**remembered** [1] - 71:18
**remembering** [1] - 51:20
**reminder** [2] - 62:20, 64:1
**reminding** [1] - 64:12
**remorse** [5] - 51:10, 56:15, 76:3, 76:4, 96:23
**remorseful** [6] - 76:4, 76:6, 76:8, 76:13, 76:14, 76:15
**report** [20] - 3:10, 4:11, 4:12, 5:4, 5:8, 5:19, 5:25, 6:4, 6:5, 10:7, 11:2, 11:5, 11:6, 11:9, 23:23, 23:24, 87:13, 101:11, 102:13, 105:19
**represent** [1] - 62:17
**represented** [3] - 92:7, 93:17, 95:7
**Republican** [1] - 74:9
**Republicans** [1] - 49:17
**request** [3] - 60:18, 60:19, 105:15
**requested** [1] - 103:8
**require** [1] - 6:13
**required** [1] - 5:2
**requirement** [1] - 29:3
**requires** [2] - 4:22, 6:14
**residence** [1] - 105:4
**resolution** [1] - 7:4
**resolve** [1] - 4:13
**resolved** [1] - 57:5
**respect** [12] - 16:4, 16:23, 23:20, 25:3, 25:6, 25:12, 25:20, 36:11, 44:2, 67:5, 73:9, 90:3
**respond** [1] - 13:6

**response** [2] - 19:13, 60:15
**responsibilities** [1] - 79:21
**responsibility** [3] - 56:15, 66:5, 98:5
**rest** [5] - 6:7, 7:11, 45:5, 45:22, 45:24, 71:10, 86:18
**restitution** [11] - 42:20, 44:16, 91:5, 98:15, 98:18, 100:8, 101:10, 103:1, 103:4, 104:8, 104:13
**restore** [1] - 80:24
**restored** [1] - 80:25
**restricted** [1] - 15:24
**restriction** [2] - 103:18, 104:3
**restrictions** [1] - 103:14
**result** [4] - 4:7, 15:24, 16:18, 80:4
**resulted** [1] - 28:24, 53:23
**resulting** [4] - 16:5, 16:24, 63:16, 94:13
**results** [2] - 50:9, 91:16
**retirees** [1] - 73:6
**return** [1] - 49:7
**review** [1] - 3:22
**reviewed** [3] - 3:10, 4:10, 45:17
**reviewing** [1] - 24:19
**rhetoric** [3] - 46:8, 50:16, 51:5
**rights** [1] - 78:21
**riling** [2] - 57:23, 58:2
**rioter** [4] - 52:24, 53:9, 95:16, 95:17
**rioters** [15] - 52:17, 52:22, 53:1, 53:5, 53:14, 54:6, 54:8, 54:13, 55:15, 58:22, 59:10, 62:5, 81:21, 95:19, 98:1
**ripple** [1] - 64:4
**risked** [1] - 64:17
**RMR** [1] - 108:13
**role** [7] - 79:24, 83:22, 87:22, 90:13, 93:15, 95:4, 96:13
**Room** [1] - 104:18
**room** [1] - 27:23
**routine** [1] - 28:3
**routinely** [2] - 28:3, 32:8
**rule** [5] - 8:13, 35:7, 65:7, 80:19, 92:25

**ruled** [1] - 33:19
**ruling** [4] - 11:1, 41:1, 94:9, 106:3
**rulings** [1] - 66:21
**run** [2] - 9:1, 68:22
**run-on** [1] - 68:22
**running** [1] - 54:12
**runs** [1] - 14:1

**S**

**sacrifices** [2] - 62:18, 64:13
**safe** [3] - 51:4, 59:9, 59:10
**safely** [1] - 45:21
**Sandlin** [9] - 32:16, 32:17, 32:22, 34:3, 34:5, 34:20, 36:4, 39:25, 40:1
**satisfied** [3] - 5:14, 103:11, 103:17
**save** [1] - 27:23
**saw** [12] - 24:16, 45:18, 58:21, 59:4, 59:8, 67:10, 69:15, 69:18, 71:6
**scaffolding** [2] - 53:21, 54:4
**scale** [1] - 63:4
**scares** [1] - 74:10
**scene** [2] - 9:1, 83:5
**scenes** [1] - 50:5
**scheme** [2] - 14:18, 18:2
**school** [1] - 87:20
**score** [3] - 80:23, 87:18, 89:23
**Scott** [2] - 2:9, 76:3
**screaming** [1] - 83:12
**screen** [1] - 50:15
**screenshot** [1] - 31:22
**scum** [1] - 51:19
**se** [1] - 74:20
**sealed** [1] - 2:24
**Second** [1] - 35:15
**second** [10] - 4:14, 13:9, 13:18, 19:12, 20:18, 39:9, 52:24, 60:17, 71:16, 95:3
**secondly** [1] - 33:23
**seconds** [2] - 8:18, 9:4
**section** [2] - 37:4, 54:3
**Section** [11] - 4:25, 43:21, 57:3, 91:15, 92:14, 93:22, 94:4, 94:8, 94:13, 101:18, 102:8

**Sections** [1] - 103:2
**security** [1] - 64:7
**see** [13] - 8:2, 12:9, 36:4, 42:8, 50:15, 50:19, 53:10, 58:9, 69:1, 79:2, 82:6, 83:1
**Seefried** [3] - 53:15, 70:10, 71:22
**seeing** [3] - 62:19, 74:2, 74:23
**seeks** [1] - 42:20
**self** [2] - 23:25, 27:15
**self-surrender** [1] - 23:25
**self-surrendered** [1] - 27:15
**semiautomatic** [1] - 51:9
**Senate** [7] - 49:18, 52:13, 70:7, 70:17, 82:15, 83:11, 95:23
**senator** [1] - 49:16
**senators** [3] - 52:14, 52:19, 55:25
**sense** [4] - 25:17, 31:21, 67:16, 97:23
**sensitive** [1] - 98:3
**sent** [1] - 41:5
**sentence** [44] - 4:22, 4:23, 5:2, 5:20, 11:15, 21:19, 41:21, 43:22, 43:25, 44:4, 44:10, 44:13, 56:19, 57:4, 57:7, 57:18, 58:5, 58:12, 61:10, 61:12, 65:4, 66:11, 66:14, 67:25, 72:5, 78:3, 78:14, 90:1, 90:4, 90:9, 90:25, 91:21, 97:3, 98:14, 100:13, 101:8, 101:13, 103:3, 105:5, 105:9, 105:18, 106:4, 106:13, 106:22
**sentenced** [9] - 55:18, 56:24, 57:2, 60:21, 97:9, 97:11, 97:20, 97:21, 101:25
**sentences** [6] - 44:12, 61:2, 67:25, 68:23, 90:18, 98:8
**sentencing** [46] - 2:12, 3:10, 3:13, 4:2, 4:15, 4:18, 5:4, 10:3, 11:7, 11:9, 13:17, 13:19, 13:25, 14:21, 14:22, 19:14, 25:20, 32:15, 36:12, 43:24, 45:18,

51:15, 51:22, 52:2, 52:4, 55:10, 56:17, 56:20, 57:1, 57:9, 58:8, 58:14, 58:18, 60:19, 60:25, 66:10, 84:8, 91:9, 93:14, 94:10, 94:20, 95:12, 98:25, 101:19, 102:12
**Sentencing** [1] - 101:16
**separate** [3] - 18:4, 20:5, 69:3
**separately** [1] - 41:17
**SERGEANT** [2] - 61:22, 65:13
**sergeant** [3] - 56:6, 59:12, 65:17
**Sergeant** [9] - 2:25, 59:3, 61:24, 65:11, 65:22, 67:5, 69:1, 77:9, 80:15
**series** [1] - 60:8
**serious** [11] - 4:6, 71:24, 74:8, 78:25, 81:2, 87:2, 89:9, 90:9, 94:24, 95:2, 97:23
**seriousness** [8] - 4:4, 44:1, 55:21, 56:18, 65:4, 88:23, 90:2, 92:2
**serve** [4] - 64:24, 65:5, 101:13, 101:25
**served** [2] - 48:12, 61:24
**service** [2] - 65:12, 100:13
**set** [10] - 4:24, 13:17, 33:12, 43:18, 43:20, 55:5, 57:22, 62:9, 86:3, 93:6
**sets** [1] - 51:25
**settings** [1] - 24:4
**settle** [1] - 52:16
**several** [8] - 4:6, 14:22, 24:10, 33:21, 54:5, 63:18, 97:5, 100:25
**severe** [1] - 62:24
**severely** [1] - 97:20
**SG2X1.1** [1] - 16:23
**shall** [6] - 28:22, 102:9, 103:5, 104:13, 104:23, 105:1
**Shalvey** [1] - 55:18
**share** [2] - 15:3, 103:12
**shared** [1] - 47:12

**sheer** [1] - 85:25
**Sherry** [1] - 2:8
**shield** [1] - 95:16
**shirt** [1] - 71:14
**shocking** [1] - 62:20
**short** [2] - 9:3, 17:13
**shouted** [4] - 6:11, 10:9, 10:10, 45:19
**shouting** [3] - 53:13, 83:12, 96:7
**show** [8] - 27:4, 32:11, 34:8, 34:13, 34:25, 44:22, 76:4, 98:7
**showed** [5] - 29:6, 60:5, 83:23, 90:10, 93:2
**shown** [2] - 51:10, 70:18
**shows** [5] - 33:21, 33:22, 33:23, 33:24, 69:16
**shredding** [1] - 36:23
**shut** [1] - 23:5
**sic** [1] - 101:22
**side** [9] - 2:13, 2:14, 26:19, 69:21, 69:23, 71:5, 74:3, 83:11, 107:7
**sides** [1] - 41:15
**Signal** [1] - 31:24
**significant** [2] - 64:5, 91:16
**significantly** [4] - 91:10, 91:11, 101:6, 101:7
**signs** [1] - 79:10
**similar** [5] - 44:14, 44:15, 60:9, 97:9, 97:16
**similarities** [3] - 57:20, 57:22, 58:3
**similarly** [4] - 55:8, 61:13, 97:6, 98:7
**simple** [1] - 89:14
**simply** [8] - 10:8, 24:5, 24:21, 25:16, 41:12, 69:5, 86:12, 94:4
**single** [3] - 15:11, 87:5, 94:23
**situated** [4] - 55:9, 61:13, 97:5, 98:8
**situation** [7] - 28:22, 30:10, 34:7, 37:9, 40:1, 40:2, 94:1
**situations** [2] - 40:5, 63:3
**six** [5] - 11:18, 11:19, 87:10, 101:23
**six-year-old** [1] - 87:10

**skip** [2] - 83:4, 83:5
**skipped** [1] - 82:20
**slate** [1] - 48:19
**slice** [1] - 31:5
**slide** [1] - 60:5
**slightly** [1] - 99:5
**small** [1] - 95:20
**smash** [1] - 95:16
**Snapchat** [1] - 31:24
**snapped** [1] - 80:20
**snooping** [1] - 31:14
**so..** [1] - 76:21
**social** [6] - 22:24, 23:2, 37:10, 59:16, 84:12, 85:23
**society** [2] - 66:3, 90:16
**solicitations** [1] - 23:2
**solidarity** [1] - 71:9
**solution** [1] - 35:16
**someone** [5] - 10:9, 10:11, 27:1, 82:10, 86:12, 87:23, 88:1, 88:2
**somewhat** [2] - 97:6, 100:23
**somewhere** [4] - 27:18, 31:1, 39:18, 81:7
**Sonia** [1] - 2:7
**soon** [1] - 33:17
**sorry** [7] - 11:18, 26:18, 59:17, 59:25, 67:9, 75:25, 76:2
**sort** [19] - 2:13, 10:17, 11:22, 22:11, 22:23, 23:3, 28:3, 28:17, 28:21, 39:5, 41:12, 41:16, 48:23, 68:17, 81:17, 83:14, 84:14, 85:20, 98:21
**Southeast** [2] - 103:22, 103:23
**Southwest** [2] - 103:23, 103:24
**Spark** [1] - 77:18
**sparks** [1] - 57:23
**Sparks** [100] - 2:5, 2:10, 2:12, 3:15, 4:2, 5:13, 7:8, 7:9, 7:19, 8:7, 8:17, 8:20, 8:21, 8:25, 9:5, 9:21, 10:1, 10:13, 17:7, 17:16, 22:8, 22:16, 23:20, 23:23, 24:3, 24:8, 24:20, 25:2, 25:7, 25:14, 27:13, 27:20, 28:3, 29:12, 29:14, 30:3, 45:4, 45:11, 45:14, 45:21, 45:22,

46:1, 50:8, 51:3, 51:8, 52:2, 52:21, 53:3, 53:7, 53:11, 53:17, 54:2, 54:9, 54:12, 54:15, 54:18, 55:5, 55:16, 55:22, 55:24, 56:10, 57:21, 58:19, 58:23, 59:8, 62:5, 64:9, 66:2, 66:6, 66:25, 67:12, 67:14, 67:22, 69:4, 69:9, 69:16, 70:3, 70:18, 71:2, 71:12, 71:23, 72:5, 72:9, 77:23, 78:15, 78:20, 93:11, 95:16, 96:1, 96:13, 97:6, 97:9, 98:2, 98:5, 100:10, 101:8, 101:20, 105:6, 107:4
**Sparks'** [21] - 10:15, 23:10, 29:18, 33:25, 35:6, 35:11, 37:20, 40:8, 51:21, 54:25, 58:9, 60:5, 64:15, 65:1, 78:1, 92:6, 95:4, 96:22, 97:16, 97:21, 97:23
**sparks'** [2] - 24:12, 57:12
**speaker** [2] - 9:7, 9:13
**speaking** [2] - 38:20, 73:18
**speaks** [2] - 8:21, 9:5
**spear** [1] - 71:18
**special** [4] - 42:21, 56:3, 102:4, 103:5
**Special** [2] - 53:23, 53:25
**specific** [12] - 15:13, 19:23, 21:3, 21:8, 35:17, 35:22, 89:5, 90:12, 94:2, 95:4, 96:13, 98:14
**specifically** [9] - 20:22, 21:7, 23:11, 46:5, 47:6, 47:9, 60:23, 78:15, 84:4
**spectrum** [5] - 66:7, 66:25, 67:12, 69:11, 71:23
**speculate** [1] - 33:5
**speech** [1] - 45:9
**spend** [3] - 8:1, 10:14, 10:20
**spent** [1] - 8:14
**spirit** [1] - 53:17
**spits** [1] - 40:13
**split** [1] - 49:14
**spray** [1] - 96:5

**Square** [1] - 103:20
**square** [1] - 103:21
**staff** [1] - 70:16
**stairs** [6] - 53:18, 53:21, 54:3, 54:5, 54:14, 57:24
**standard** [2] - 29:1, 98:19
**standing** [5] - 7:20, 28:22, 31:11, 54:10, 70:19
**standoff** [3] - 52:21, 82:15, 96:11
**stark** [2] - 62:20, 64:1
**start** [4] - 32:7, 81:6, 81:12, 87:15
**started** [3] - 74:22, 74:23, 74:25
**state** [11] - 7:14, 16:20, 25:21, 49:8, 63:8, 73:6, 74:9, 76:15, 79:14, 79:18, 102:16
**statement** [25] - 2:25, 3:19, 7:25, 8:16, 8:17, 8:19, 9:5, 9:22, 10:1, 10:4, 10:16, 10:19, 23:17, 26:3, 37:3, 37:4, 46:18, 60:9, 72:8, 85:9, 85:12, 88:15, 88:17, 89:9, 89:19
**statements** [11] - 5:8, 44:8, 51:5, 71:3, 71:9, 84:11, 84:12, 84:15, 85:1, 85:23, 86:11
**States** [22] - 2:4, 2:7, 4:24, 13:19, 14:1, 14:21, 32:15, 43:21, 61:25, 62:2, 77:17, 92:14, 93:21, 94:8, 95:23, 101:18, 102:7, 103:2, 103:13, 103:19, 104:14, 105:3
**statistics** [1] - 63:20
**statute** [6] - 41:23, 42:6, 42:9, 42:16, 92:17, 103:3
**statutes** [1] - 43:4
**statutory** [4] - 11:9, 11:15, 43:9, 105:8
**step** [7] - 4:9, 4:14, 4:19, 4:22, 5:1, 19:20, 41:4
**stepdaughter** [1] - 87:11
**steps** [2] - 4:3, 24:9
**Stewart** [1] - 36:3

**still** [14] - 5:25, 15:11, 18:5, 26:23, 29:7, 30:11, 49:21, 52:14, 69:12, 80:5, 93:7, 95:24, 99:19
**stolen** [1] - 84:20
**storming** [2] - 47:22, 62:11
**straightforward** [1] - 26:12
**stream** [1] - 95:19
**Street** [2] - 103:22, 103:24
**strengthened** [1] - 52:12
**strict** [2] - 61:3, 67:16
**strikes** [1] - 10:19
**strong** [3] - 18:22, 23:18, 24:17
**strongly** [1] - 53:1
**structure** [2] - 53:21, 54:4
**struggled** [1] - 63:7
**stuck** [1] - 54:6
**study** [1] - 56:12
**studying** [1] - 74:25
**subject** [1] - 20:9
**submit** [2] - 69:12, 102:20
**submitted** [3] - 3:18, 12:10, 72:9
**substance** [2] - 102:18, 102:20
**substantial** [2] - 56:22, 90:22
**succeeded** [1] - 54:9
**successful** [3] - 25:5, 25:10, 31:3
**successfully** [2] - 25:18, 29:18
**sufficient** [5] - 28:23, 31:6, 31:11, 43:22, 91:8
**suggest** [1] - 58:11
**suggested** [1] - 27:3
**suggests** [2] - 9:12, 85:6
**suicides** [1] - 63:20
**summary** [1] - 87:2
**supervised** [8] - 41:22, 41:23, 41:25, 42:2, 42:4, 66:12, 101:9, 102:1
**supervision** [3] - 102:9, 102:14, 102:21
**support** [11] - 3:16, 6:18, 31:11, 55:6, 55:13, 55:17, 57:7, 65:8, 69:22, 71:4,

80:19
**supported** [3] - 27:24, 46:4, 47:5
**supports** [2] - 27:9, 61:7
**suppose** [1] - 61:2
**supposed** [1] - 21:18
**supposedly** [1] - 33:14
**Supreme** [3] - 33:18, 57:11, 94:8
**surface** [1] - 50:6
**surrender** [1] - 23:25
**surrendered** [2] - 27:15, 27:18
**surrounding** [1] - 103:19
**surveillance** [1] - 32:10
**switch** [1] - 12:24
**sworn** [2] - 63:13, 63:15
**symbols** [2] - 62:14, 62:17, 62:19
**system** [1] - 33:25

---

# T

**talks** [3] - 49:22, 55:22, 99:4
**target** [1] - 20:7
**targeted** [2] - 28:5, 63:15
**tattooed** [1] - 71:22
**tear** [1] - 71:21
**technically** [1] - 19:25
**Telegram** [1] - 31:24
**temporal** [1] - 37:19
**temporarily** [1] - 54:6
**ten** [3] - 61:25, 70:24, 96:12
**tend** [4] - 26:4, 28:10, 37:5, 68:23
**tense** [1] - 52:21
**term** [5] - 12:4, 35:15, 66:11, 66:12, 66:13
**terms** [8] - 19:24, 42:2, 53:1, 68:12, 100:1, 100:13, 101:22, 101:25
**terrace** [1] - 86:7
**Terrace** [3] - 54:15, 54:22, 57:24
**terrorizing** [1] - 70:16
**test** [2] - 45:21, 102:20
**testified** [1] - 74:5
**testify** [1] - 74:4
**testimony** [3] - 54:1, 72:25, 75:9
**tests** [1] - 102:22

**tethered** [1] - 60:19
**text** [17] - 25:6, 26:10, 26:20, 27:11, 27:16, 27:22, 28:1, 28:4, 28:5, 29:5, 29:14, 30:2, 39:16, 39:17, 56:7, 60:4, 60:14
**texted** [1] - 23:11
**texts** [2] - 26:21, 39:9
**THE** [99] - 2:11, 2:17, 2:22, 3:3, 3:6, 3:9, 3:25, 4:2, 5:10, 5:13, 5:16, 5:17, 5:21, 5:22, 6:20, 6:23, 7:23, 10:3, 12:5, 12:22, 12:25, 17:1, 17:5, 18:10, 19:15, 19:19, 20:24, 21:10, 21:13, 22:5, 25:8, 25:22, 28:15, 28:19, 30:7, 30:18, 30:20, 30:24, 31:8, 34:3, 34:22, 36:6, 40:25, 41:2, 43:15, 43:17, 44:23, 45:1, 46:13, 46:22, 47:1, 47:13, 47:18, 47:22, 47:25, 48:2, 48:14, 48:17, 48:22, 48:25, 49:25, 50:4, 59:14, 59:23, 59:25, 60:3, 60:7, 60:11, 60:17, 61:15, 61:20, 65:11, 65:14, 67:20, 67:24, 68:4, 68:16, 69:6, 72:6, 72:14, 72:18, 72:22, 77:2, 77:10, 77:19, 100:22, 101:2, 101:5, 101:16, 105:24, 106:8, 106:17, 106:19, 107:1, 107:4, 107:12, 107:15, 107:20, 107:25
**themselves** [3] - 20:21, 21:6, 70:17
**then-Inspector** [1] - 53:4
**theories** [4] - 46:3, 46:5, 47:4, 47:6
**theory** [1] - 30:12
**thereafter** [2] - 29:22, 102:22
**therefore** [3] - 15:4, 104:7, 104:11
**thin** [1] - 62:16
**thinking** [2] - 59:21, 106:20
**third** [6] - 4:19, 21:11, 52:23, 52:24, 71:20,

96:18
**thirteen** [1] - 70:5
**thoughts** [2] - 11:24, 77:22
**thread** [1] - 14:1
**threat** [6] - 39:5, 64:16, 79:23, 82:25, 83:3, 86:24
**threatening** [3] - 71:2, 96:3, 97:12
**threats** [6] - 23:2, 24:20, 24:22, 35:22, 62:23, 63:9
**three** [11] - 14:12, 17:22, 18:5, 41:24, 42:3, 61:5, 66:12, 71:11, 101:9, 102:1, 102:19
**three-year** [1] - 66:12
**thwart** [3] - 32:9, 32:12, 35:25
**thwarting** [1] - 33:5
**tied** [2] - 60:23, 61:1
**timeline** [1] - 67:16
**timing** [2] - 27:12, 39:18
**Timothy** [1] - 61:22
**tip** [1] - 53:17
**tired** [1] - 23:4
**today** [17] - 4:3, 7:6, 11:16, 18:13, 34:1, 49:3, 56:16, 61:23, 72:10, 72:24, 77:8, 78:9, 88:15, 88:21, 101:11, 106:14, 106:23
**today's** [2] - 4:6, 4:9
**together** [5] - 13:22, 54:10, 76:16, 76:18, 76:20
**toll** [4] - 62:24, 63:10, 64:5, 65:1
**took** [8] - 23:6, 23:20, 27:17, 29:10, 55:19, 62:21, 85:25, 98:5
**top** [5] - 54:2, 54:14, 54:24, 57:24, 90:20
**total** [5] - 11:22, 15:25, 16:18, 42:22, 102:7
**totality** [1] - 95:14
**totally** [1] - 51:25
**tough** [1] - 76:1
**tout** [1] - 67:14
**toward** [1] - 30:17
**Tower** [2] - 69:17, 70:6
**trade** [1] - 88:7
**tradition** [3] - 80:20, 80:22, 93:1

**tragedy** [1] - 58:21
**tragic** [4] - 52:18, 64:20, 86:19, 88:11
**tragically** [1] - 63:16
**trained** [1] - 63:3
**transaction** [3] - 14:16, 17:14, 17:24
**transactions** [2] - 14:17, 17:25
**transcript** [1] - 108:10
**transfer** [9] - 80:21, 89:18, 92:21, 92:24, 93:2, 93:3, 93:9, 94:3, 95:1
**transpired** [1] - 76:8
**trauma** [1] - 63:19
**treasonous** [1] - 51:19
**treated** [1] - 15:13
**tremendous** [1] - 86:3
**trial** [16] - 6:17, 7:19, 9:21, 26:17, 29:21, 38:12, 45:16, 46:21, 46:24, 51:8, 51:16, 51:17, 52:7, 67:11, 69:18, 97:8
**trials** [1] - 67:11
**tried** [4] - 14:23, 54:8, 54:23, 84:14
**triggering** [1] - 62:7
**true** [10] - 67:6, 69:5, 71:6, 74:16, 74:24, 78:24, 81:22, 82:7, 96:1, 108:9
**truly** [4] - 10:15, 74:6, 74:10, 76:15
**Trump** [9] - 33:9, 33:10, 35:15, 49:21, 50:19, 50:24, 70:2, 75:14
**truth** [3] - 75:10, 75:22, 75:24
**try** [2] - 9:24, 79:15
**trying** [12] - 8:2, 8:14, 23:14, 28:12, 52:16, 53:7, 71:8, 84:25, 88:25, 89:15, 89:16, 96:8
**turn** [5] - 5:13, 52:12, 58:20, 62:19, 81:4
**turning** [2] - 86:5, 90:18
**turns** [2] - 20:21, 99:11
**TV** [1] - 86:15
**tweets** [1] - 35:12
**twins** [1] - 87:10
**two** [36] - 5:24, 6:9, 11:11, 13:1, 13:2, 13:15, 14:16, 15:22, 17:25, 20:1, 20:5,

20:17, 22:7, 27:19, 36:13, 38:18, 39:17, 40:7, 47:3, 51:24, 51:25, 54:21, 57:22, 58:4, 59:15, 67:25, 83:20, 87:10, 91:23, 94:17, 97:4, 102:17, 102:22, 105:21, 106:22
**type** [2] - 21:4, 31:24
**types** [1] - 90:18
**typical** [6] - 92:7, 93:16, 93:21, 94:4, 94:21, 95:6
**tyranny** [3] - 50:18, 50:23, 74:7

## U

**U.S** [4] - 16:23, 33:8, 104:21, 105:7
**ultimately** [1] - 49:15
**unable** [3] - 34:13, 63:19, 105:14
**unacceptable** [1] - 89:6
**unavailable** [1] - 39:3
**unbeknownst** [1] - 24:8
**unbroken** [2] - 80:20, 80:22
**uncertain** [1] - 53:1
**unconscious** [1] - 56:4
**uncover** [1] - 29:10
**uncovering** [1] - 29:19
**undeniable** [2] - 81:14, 81:15
**under** [41] - 4:18, 14:19, 15:7, 15:11, 15:22, 15:23, 17:22, 18:6, 19:25, 21:5, 26:5, 28:10, 37:6, 41:8, 41:22, 42:6, 42:9, 42:12, 42:15, 42:18, 43:1, 43:5, 43:6, 43:10, 48:12, 50:5, 56:20, 57:3, 58:7, 61:5, 79:21, 85:5, 85:24, 87:16, 91:14, 92:1, 92:16, 103:25, 105:9
**underpinning** [1] - 48:24
**underscore** [1] - 35:6
**underscored** [1] - 96:21
**underscores** [1] - 33:25
**understating** [1] -

79:1
**understood** [2] - 18:12, 51:4
**undisputed** [2] - 45:12, 46:14
**undo** [1] - 39:7
**unfolding** [1] - 10:18
**unique** [1] - 71:25
**United** [22] - 2:4, 2:7, 4:24, 13:19, 14:1, 14:21, 32:15, 43:21, 61:25, 62:2, 77:17, 92:14, 93:21, 94:7, 95:23, 101:18, 102:7, 103:2, 103:13, 103:19, 104:14, 105:3
**unlawful** [2] - 64:15, 102:19
**unlawfully** [1] - 102:17
**unless** [2] - 23:13, 28:24
**unlike** [2] - 66:3, 98:4
**UNM1** [3] - 71:1, 71:3, 71:8
**unsuccessful** [1] - 30:21
**unwanted** [4] - 23:2, 44:13, 90:25, 97:3
**up** [34] - 2:19, 2:21, 9:1, 9:24, 20:25, 21:14, 26:14, 31:23, 33:12, 39:14, 42:11, 43:3, 45:2, 49:14, 53:16, 53:9, 53:18, 54:12, 56:5, 57:23, 58:2, 59:17, 59:18, 72:16, 72:19, 73:16, 74:17, 75:7, 75:14, 75:16, 76:6, 79:10, 86:3, 99:18
**update** [1] - 99:1
**uphold** [1] - 65:7
**Upper** [3] - 54:15, 54:22, 57:24
**upset** [1] - 19:16
**upward** [10] - 57:7, 66:24, 90:22, 91:10, 91:11, 92:2, 96:20, 98:13, 101:7
**upwardly** [2] - 15:18, 18:7
**urge** [3] - 64:25, 66:22, 72:4
**useful** [1] - 21:25
**user** [1] - 24:4
**users** [1] - 24:5
**USSG** [1] - 17:12
**usual** [1] - 2:14

**utility** [1] - 66:9
**utilizes** [1] - 32:8
**utmost** [1] - 73:9

## V

**vacation** [1] - 75:7
**vague** [1] - 6:10
**variables** [1] - 99:13
**variance** [14] - 41:10, 41:14, 41:15, 44:19, 56:23, 66:18, 90:22, 92:6, 96:16, 96:19, 96:20, 96:21, 97:2
**variances** [1] - 42:24
**various** [1] - 26:14
**vary** [3] - 57:7, 98:13, 101:7
**verbal** [1] - 69:24
**verbally** [1] - 69:19
**version** [1] - 51:21
**vest** [5] - 45:12, 46:15, 46:19, 46:25, 85:4
**Vice** [5] - 52:18, 70:1, 83:12, 95:24, 96:16
**vicinity** [1] - 81:18
**victim** [10] - 2:25, 3:18, 13:23, 14:14, 14:15, 17:24, 18:15, 19:2, 104:15, 104:16
**victims** [3] - 13:11, 15:7, 15:10, 18:4, 18:13, 20:6, 20:17, 44:16
**Victor** [2] - 59:4, 61:24
**video** [10] - 3:17, 8:1, 9:23, 32:21, 45:15, 71:14, 75:18, 82:8, 96:8
**view** [8] - 13:23, 14:12, 14:19, 17:20, 35:11, 35:23, 67:6, 69:19
**views** [1] - 80:6
**vigilance** [1] - 63:8
**violation** [4] - 65:6, 92:13, 92:14, 97:25
**violations** [1] - 94:7
**violence** [5] - 33:24, 70:15, 79:22, 79:23, 93:3
**violent** [2] - 35:4, 50:16
**violently** [1] - 63:14
**virtue** [1] - 99:23
**visible** [1] - 64:20
**vision** [1] - 76:21
**voice** [7] - 9:11, 10:17, 10:24, 52:9, 75:8, 76:6, 89:22

**voices** [1] - 8:23
**voluntarily** [1] - 27:13
**vote** [12] - 49:16, 49:17, 74:13, 79:7, 79:11, 79:25, 84:1, 92:23, 93:12, 93:24, 94:12
**voted** [1] - 74:20
**votes** [6] - 6:12, 7:18, 10:10, 33:11, 48:6, 84:20

## W

**waiting** [2] - 52:15, 59:12
**waive** [2] - 104:7, 104:11
**walk** [1] - 84:13
**walked** [1] - 70:6
**walking** [3] - 75:12, 75:15, 85:10
**walks** [1] - 88:6
**wall** [1] - 83:11
**wander** [2] - 83:20, 83:21
**wants** [1] - 27:20
**war** [1] - 51:2
**warden** [1] - 73:7
**warrant** [4] - 4:17, 23:22, 28:23, 37:22
**warranted** [6] - 91:14, 91:25, 96:17, 96:19, 96:21, 97:2
**Washington** [2] - 104:18, 104:22
**watch** [1] - 86:13
**watching** [1] - 95:15
**wave** [1] - 62:7
**waving** [1] - 86:5
**ways** [8] - 22:7, 34:6, 80:11, 86:13, 87:5, 87:16, 88:5, 89:15
**weapon** [3] - 59:7, 81:9, 96:2
**weapons** [4] - 32:18, 32:19, 58:24, 62:19
**wearing** [7] - 46:19, 46:24, 52:10, 71:14, 71:17, 85:4, 85:6
**weeks** [2] - 23:10, 46:2
**weigh** [2] - 64:11, 90:8
**weight** [1] - 63:24
**weird** [1] - 12:12
**well-being** [1] - 64:24
**well-worn** [2] - 19:7
**Wendelsdorf** [20] - 2:9, 3:7, 5:22, 9:18, 12:1, 17:1, 20:11,

20:19, 22:2, 31:8, 38:6, 43:12, 46:17, 65:14, 72:7, 72:19, 100:9, 100:11, 107:1, 107:13
**WENDELSDORF** [40] - 3:8, 4:1, 6:16, 6:21, 10:2, 12:3, 12:20, 12:24, 13:5, 17:3, 17:6, 19:13, 19:18, 22:4, 31:9, 34:19, 34:24, 40:23, 41:1, 43:13, 46:20, 46:23, 65:16, 67:22, 68:3, 68:15, 68:22, 69:8, 72:13, 72:16, 72:21, 76:25, 100:20, 100:23, 101:4, 101:15, 106:15, 106:25, 107:3, 107:14
**Wendelsdorf's** [1] - 30:15
**West** [4] - 53:19, 54:15, 54:22, 57:24
**Western** [1] - 100:24
**WhatsApp** [1] - 31:24
**whispering** [1] - 32:3
**whole** [5] - 33:15, 53:18, 74:2, 74:3
**wife** [4] - 23:10, 37:20, 75:25, 87:9
**willfully** [1] - 36:9
**win** [1] - 33:10
**window** [5] - 58:20, 67:19, 67:20, 95:16, 96:6
**Wing** [1] - 70:7
**Wisconsin** [2] - 33:17, 33:18
**wish** [4] - 4:20, 74:4, 74:14, 74:15
**withstood** [1] - 96:4
**witness** [1] - 29:17
**witnesses** [1] - 77:24
**woke** [1] - 56:4
**word** [2] - 37:11, 68:12
**words** [2] - 32:13, 35:22
**works** [1] - 27:6
**world** [2] - 27:1, 60:24
**worlds** [1] - 52:6
**worn** [1] - 19:7
**worse** [2] - 35:12, 58:9
**wrestle** [1] - 78:8
**write** [2] - 79:14, 100:12
**written** [3] - 57:6, 106:3, 106:6

**wronged** [1] - 79:16
**wrote** [5] - 3:15, 4:21, 87:6, 87:7, 88:14

## Y

**year** [7] - 11:17, 29:10, 41:24, 42:3, 66:12, 87:10, 102:2
**years** [13] - 11:16, 11:18, 41:24, 42:3, 42:7, 42:11, 43:2, 43:3, 51:14, 61:25, 75:4, 101:9, 102:1
**years'** [1] - 42:10
**yelling** [3] - 7:21, 53:6, 53:12
**yourself** [2] - 71:6, 89:7
**youth** [1] - 88:2

## Z

**zero** [2] - 75:10, 75:11