```
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2
         - - - - - - - - - - - - - - - x
 3       THE UNITED STATES OF AMERICA,
                                        Criminal Action No.
 4                   Plaintiff,         1:21-cr-00034-CRC
                                        Wednesday, September 4, 2024
 5       vs.                            10:19 a.m.

 6       THOMAS ROBERTSON,

 7                   Defendant.
         - - - - - - - - - - - - - - - x
 8

 9       _____

10                    TRANSCRIPT OF RESENTENCING
            HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
11                   UNITED STATES DISTRICT JUDGE

12       _____

         APPEARANCES:
13
         For the United States:      ELIZABETH ANN ALOI, ESQ.
14                                   GREGORY ROSEN, ESQ.
                                     UNITED STATES ATTORNEY'S OFFICE
15                                   555 4th Street, NW
                                     Washington, DC 20530
16                                   (202) 252-6782

17

         For Defendant Robertson:    MARK M ROLLINS, ESQ.
18                                   ROLLINS & CHAN
                                     419 Seventh Street, NW
19                                   Washington, DC 20004
                                     (202) 455-5610
20
         Court Reporter:             Lisa A. Moreira, RDR, CRR
21                                   Official Court Reporter
                                     U.S. Courthouse, Room 6718
22                                   333 Constitution Avenue, NW
                                     Washington, DC  20001
23                                   202-354-3187

24

25
```

<pre>
 1                    P R O C E E D I N G S
 2            THE COURTROOM DEPUTY:  Your Honor, we are on the
 3    record for Criminal Case 21-34, Defendant 1, *United States*
 4    *of America v. Thomas Robertson*.
 5            Counsel, please approach and identify yourselves
 6    for the record starting with the government.
 7            MR. ALOI:  Good morning, Your Honor; Liz Aloi for
 8    the United States.  And with me at counsel table is Gregory
 9    Rosen, who has not entered an appearance but is supervising
10    the Capitol riot cases.
11            THE COURT:  Okay.  Very well.  Good to see you,
12    Ms. Aloi.
13            MR. ROLLINS:  Good morning, Your Honor; Mark
14    Rollins on behalf of my client, Mr. Robertson.  I would ask
15    the Court's permission to have appellate counsel, Tim Cone,
16    who has been working with me, to be at counsel's table with
17    me even though he has not entered his appearance.
18            THE COURT:  That's fine.
19            MR. ROLLINS:  Thank you.
20            THE COURT:  Good to see you, Mr. Rollins.
21            Mr. Robertson, good to see you.
22            THE DEFENDANT:  Good morning, sir.
23            THE PROBATION OFFICER:  Good morning, Your Honor;
24    Sherry Baker on behalf of the probation office.
25            THE COURT:  Good morning, Ms. Baker.
</pre>

1          All right.  We are here for Mr. Robertson's

2    resentencing.  Just to set the stage, the resentencing

3    follows remand by the D.C. Circuit in light of *U.S. v. Brock*

4    where the Circuit rejected the application of two of the

5    guidelines enhancements that the Court applied to the Count

6    1 base offense level at the original sentencing as well as

7    *U.S. v. Fischer* where the Circuit narrowed the application

8    of 18 USC 1512(c)(2) in the context of the certification of

9    the 2020 vote.

10          Following that remand, the government has

11   indicated that it would move for the dismissal of that

12   charge against Mr. Robertson of which he was convicted at

13   trial.

14          So, Ms. Aloi, do you want to make that motion off

15   the bat, and then we can go from there?

16          MR. ALOI:  Yes, Your Honor.  The government moves

17   to dismiss Count 1 of the indictment.

18          THE COURT:  Okay.  So moved.

19          With that, I will proceed to resentence

20   Mr. Robertson on the remaining counts of conviction, which

21   are Count 2, civil disorder; Count 3, entering or remaining

22   in a restricted building with a dangerous weapon; Count 4,

23   disorderly conduct in a restricted area with a dangerous

24   weapon; Count 5, disorderly conduct in a Capitol building;

25   and Count 6, obstruction of justice under 1512(c)(2), which

1    was not affected by the *Fischer* case.  All of those counts

2    are felonies except for Count 5, which is a Class B

3    misdemeanor.

4            The Court has reviewed the new sentencing memos

5    submitted by both sides as well as a revised sentencing

6    guideline calculation prepared by the probation office

7    reflected in a memo of July 25th.

8            Just one note on resentencings in this circuit.

9    The Court is not authorized to engage in a de novo review of

10   the facts and the evidence in the case.  Rather, the Court

11   is confined at resentencing to any facts and circumstances

12   that have changed as a result of the remand as well as any

13   facts that may have materialized since the remand that did

14   not exist at the original sentencing.  And the D.C. Circuit

15   has been fairly clear that de novo sentencing is not

16   permitted in this circuit except under very limited

17   circumstances.

18           Mr. Rollins, any additional materials from the

19   defense?  I did not see anything submitted along with your

20   memo.

21           MR. ROLLINS:  No, Your Honor.

22           THE COURT:  Okay.  And, Ms. Aloi, anything else

23   for the Court's written consideration?

24           MR. ALOI:  No, Your Honor, although in the

25   government's allocution today we may wish to use some of the

1    original sentencing exhibits.

2             THE COURT:  That's fine.

3             Okay.  Let's move on to the calculation of the

4    sentencing guidelines range in light of the remand.  This

5    may take a little bit of time.  There are a couple of moving

6    parts here.  Why don't I start with the calculations that

7    probation has made in connection with the resentencing.

8             Because the government had not disavowed Count 1,

9    the probation office included Count 1 in its revised

10   calculations.  It grouped Counts 1, 3, and 6, which led to a

11   base offense level of 14 pursuant to the guideline at 2J1.2.

12            The probation office increased that guideline by

13   two points because Mr. Robertson was an organizer or leader

14   of the offense under Section 3B1.1(c) of the guidelines, and

15   another two points for obstruction of justice concerning his

16   destruction or instructions to destroy the cell phones at

17   issue in the case.  So that was a two-point enhancement

18   under 3C1.1.

19            That led to an adjusted offense level of 18 on

20   that group; plus a one-point increase for multiple counts,

21   leading to an adjusted offense level of 19, which results in

22   a guidelines range of 30 to 37 months.  And that was the

23   driving group based on probation's calculations.

24            Ms. Baker, now that Count 1 is no longer in play,

25   how does --

1          THE PROBATION OFFICER:  Good morning.

2          THE COURT:  There two issues, I guess.

3          One is -- I'll tell you what.  Before we get to

4    you, Ms. Baker, why don't I go through the government's

5    proposed calculation, and then I'll have Ms. Baker respond

6    to that.  Okay?

7          Okay.  The government, as its practice, has done a

8    calculation of each offense of conviction prior to grouping.

9    You will correct me if I'm wrong, Ms. Baker, but it is the

10   calculation for Count 6, the obstruction of justice count

11   involving the cell phone, that drives the government's

12   ultimate guidelines recommendation.

13         Is that right, Ms. Aloi?

14         MR. ALOI:  Yes, Your Honor.

15         THE COURT:  Okay.  So under the government's

16   calculation, the Count 6 conviction carries a base offense

17   level of 14.  The government proposes a two-point increase

18   for organizer or leader under 3B1.1(c), plus an additional

19   two specific offense level increases that were not applied

20   at the original sentencing.

21         I looked back, Ms. Aloi, at the government's

22   sentencing memo the first time around, and while those

23   enhancements were not discussed, to my knowledge, I believe

24   the government did raise them in its sentencing memo.  Is

25   that correct?

 1          MR. ALOI:  That's correct, Your Honor.

 2          THE COURT:  Okay.  So I don't think we have an

 3   issue of the government raising a new proposed enhancement

 4   on resentencing that it did not raise at sentencing.

 5          Mr. Rollins, you should feel free to comment on

 6   that, if you'd like, but from my perspective, there was no

 7   waiver issue here.  So assuming no waiver -- and I'll give

 8   you a chance to comment -- the government proposes a three-

 9   level enhancement under 2J1.2(b)(3) for substantial

10   administration -- substantial interference with the

11   administration of justice.

12          Now that was the enhancement that the Circuit in

13   *Brock* said did not apply in connection with the

14   certification because the certification did not involve the

15   administration of justice.  But the government presses it

16   here -- and I believe the first time around as well -- in

17   connection with the destruction of the cell phones.  All

18   right.

19          And I'll give Ms. Aloi an opportunity to weigh in

20   on that.

21          The government also proposes a separate two-level

22   enhancement under 2J1.2(b)(3)(B) because the obstruction

23   involved a, quote, especially probative record; namely the

24   cell phone.

25          And if those three enhancements are applied to the

1     base offense level of 14, that results in an adjusted

2     offense level 21.  That becomes the operative offense level.

3     Offense level 21 at Criminal History 1 -- Mr. Robertson had

4     no prior criminal history -- that results in an advisory

5     sentencing guidelines range of 37 to 46.

6              Did I get that right, Ms. Aloi?

7              MR. ALOI:  Yes, Your Honor.

8              THE COURT:  Why don't we stop there, and I'll ask

9     Ms. Baker for probation's position on the government's

10    calculation of the range for Count 6.

11             So, in other words, Ms. Baker, I don't think

12    probation considered those two enhancements for substantial

13    interference with the administration of justice as it

14    relates to the cell phone or the two-level enhancement for

15    especially probative record.

16             Do you want to be heard on those two issues?

17             THE PROBATION OFFICER:  Yes, Your Honor.

18             THE COURT:  Okay.

19             THE PROBATION OFFICER:  Your Honor --

20             THE COURT:  And by the way, in advance of

21    sentencing, when the Court is planning to consider any

22    guidelines issues that have not been fully aired in the

23    papers, I try to give advance notice to the parties, and the

24    Court did that in this case.

25             Go ahead.

1          THE PROBATION OFFICER:  Good morning, Your Honor.

2          Your assessment is correct.  When the probation

3     office prepared the memo with the revised calculations,

4     probation had determined that Count 1 was still the

5     prevailing -- the driving guideline.  The two enhancements

6     were removed basically under the *Brock* decision.  That was

7     2J1.2(b)(1)(B) and 2J1.2(b)(2).

8          But upon further review of the government's recent

9     sentencing memorandum, specifically where it stated that

10    phones were believed to have contained communications with a

11    neighbor conspirator which were never recovered, this

12    interfered with a criminal investigation or prosecution of

13    the case versus interfering with a criminal proceeding,

14    which is what we were initially looking at.

15         So with that being said, the probation office does

16    believe that the plus-three is applicable.  Also, too, that

17    the plus-two, because the offense involves selection of any

18    essential or especially probative record or document, that

19    that also applies.  At the time, probation -- when we were

20    looking at Count 1, we had applied a 3C1.1 obstruction of

21    justice, and we looked at that being -- or account for that

22    particular information.

23         But considering the fact that the plus-two does

24    apply, we do not believe that 3C1 applies as the government

25    indicated in their memorandum.

1     So with that being said, Your Honor, we do believe

2     that Count 6 is the driving or prevailing guideline now that

3     we removed Count 1.  That will get us a base offense level

4     of 14.

5           With the 14, we then have the plus-three under

6     (b)(2), and then we also have plus-two under (b)(3) as well

7     as the aggravating role.  And if I'm not mistaken, that gets

8     us to a total offense level of 21.

9           THE COURT:  Okay.  Thank you.

10          Ms. Aloi, do you want to -- do you have anything

11    to add before I hear from Mr. Rollins?

12          MR. ALOI:  Yes, Your Honor.  The government would

13    like to be heard on the enhancements.

14          THE COURT:  Yes.

15          Okay.  I understand the rationale for your

16    recommendation to apply both of those increases but, I must

17    say, not a lot of case law cited.  Did you not come up with

18    anything, or is this -- are these relatively rarely imposed?

19          MR. ALOI:  Well, I'm prepared to give you some

20    case law today, if that is helpful.

21          THE COURT:  Okay.

22          MR. ALOI:  And if I could turn on the ELMO.  I

23    think it would be -- some of the context, I think, for these

24    particular adjustments and enhancement may have -- may be

25    lost because we were not focused on it in the original

1   sentencing proceeding.  So I just want to take a brief

2   moment to remind the Court of the facts surrounding the

3   obstruction because I think it's particularly probative

4   here.

5           THE COURT:  Okay.

6           MR. ALOI:  So this defendant, Defendant Robertson,

7   successfully recruited two other men to his efforts to

8   overturn the election results.  One was his co-defendant,

9   Jacob Fracker, who was his subordinate officer at the police

10  department.

11          (To the courtroom deputy) Thank you so much.

12          And if you recall, the investigation started

13  because Defendant Robertson and Mr. Fracker had taken a

14  selfie of themselves in the Crypt, and that was what united

15  them as co-defendants, and that was the focus of the

16  investigation.

17          The other individual who was recruited by

18  Defendant Robertson was his neighbor, an individual named

19  Pat.  All three men fully participated in the events of

20  January 6th.

21          And I just want to show now -- this image will be

22  familiar to you.  This is the picture -- one of the pictures

23  from the trial and was used at sentencing, and

24  here you can actually see three men behind -- two men behind

25  Mr. Robertson, both wearing gas masks.  One to the left and

1    one to the right.  And so it is now our understanding, which

2    wasn't completely clear to the government at the time, that

3    the third individual, Pat, was there and is one of those

4    three men.

5         So as Mr. Fracker told the jury at trial,

6    Defendant Robertson made all the plans for all three men,

7    recruited them, brought them food --

8         THE COURT:  And just so we're clear, I think that

9    you need to stick to the evidence that was at trial --

10        MR. ALOI:  Yes.  This is --

11        THE COURT:  -- not something --

12        MR. ALOI:  This is at trial.

13        THE COURT:  -- that the government --

14        MR. ALOI:  That's correct, Your Honor.

15        THE COURT:  Well, you said you didn't know at

16   trial that the third person was Pat.

17        MR. ALOI:  And that is precisely why the

18   obstruction here had a substantial impact on the

19   administration of justice.

20        So as Fracker told the jury, the three men were

21   all involved, and as the evidence at trial both showed,

22   Robertson and Fracker used their phones to communicate with

23   each other and document their crimes on January 6th.

24        We know this because they're seen in other video

25   using their phones and taking pictures, and Mr. Fracker also

1    told us as much.

2          So because they were police officers, Defendant

3    Robertson and Mr. Fracker were notified of the warrants for

4    their arrest and invited to self-surrender, and because

5    Defendant Robertson was a police officer, he knew that his

6    phone, if on his person, was going to be searched incident

7    to arrest.  And so on the day -- and Mr. Fracker told us

8    this -- on the day he was to self-surrender, the defendant

9    summoned Mr. Fracker to his house and took his phones and

10   put them in what was described as an ammo can.  Mr. Fracker

11   never saw his phone again.

12         And as we saw at trial, we know precisely why that

13   was.  We saw the text messages in which Mr. Robertson had

14   documented that the phones were, in fact, destroyed.

15         "Anything that may have been problematic was

16   destroyed."

17         "Including my old phone."

18         "Took a lake swim."

19         "And later had a tragic boating accident."

20         "They asked for my phone but I'm not a retard."

21   His words, not mine.

22         And so those were the circumstances surrounding

23   the obstruction.

24         And so the reason why these enhancements apply is

25   related directly to these circumstances.

1      The first is the three-level enhancement for

2  substantial interference with the administration of justice.

3  Robertson used his police training to foil the collection of

4  evidence not just in his possession but also Mr. Fracker's

5  photo and video evidence related to the communications.

6      The missing evidence had a meaningful effect on

7  the investigation and prosecution of Robertson's and

8  Fracker's own criminal conduct, but perhaps most

9  significantly impeded the government's ability to collect

10  evidence relevant to the investigation of the third co-

11  conspirator, Pat.

12      The government has never recovered contemporaneous

13  communications between Mr. Robertson and Pat, and they were

14  likely to exist on the destroyed phones.

15      THE COURT:  Has Pat been charged?

16      MR. ALOI:  Your Honor, Pat has not been charged.

17      Because the government never had access to the

18  phones, we didn't even learn about Pat's participation in

19  the conspiracy until right before trial.  We learned of it

20  right before trial when Mr. Fracker came in and decided to

21  cooperate with the government at the eleventh hour.  He

22  agreed to plead guilty.  He told us about the obstruction,

23  and he told us about Pat's participation.

24      And just another word about Pat.

25      As the Court no doubt recalls, Mr. Robertson was

1    found to be in violation of conditions of his release for

2    several reasons, but one of them included having firearms at

3    his home.  He was ordered to get rid of his guns, which he

4    did by delivering them to a neighbor, Pat, who we now

5    understand was the very same person who he had been with at

6    the attack at the Capitol on January 6th.

7          But at the time that was happening, the government

8    had no visibility on that, and so we did not know that at

9    the time that Robertson removed his guns to Pat, that Pat

10   had been his co-conspirator in the underlying offense.  And

11   key to the information here, Pat allowed Mr. Robertson to

12   have access to his firearms, which was one of the reasons

13   why he was in violation of the Court's orders.

14         And so I think that context here is important to

15   understanding just to what extent the obstruction affected

16   the government's investigation and specifically the criminal

17   investigation of the attack at the Capitol and Mr. Robertson

18   and his co-conspirators.  And *Brock* makes quite clear that

19   this type of -- that type of investigation falls squarely

20   into what is an official proceeding for those purposes.

21         So for those reasons, the obstruction

22   substantially interfered with the administration of

23   justice, both as it relates to the criminal charges against

24   Mr. Robertson and Fracker, but also as it relates to

25   defendant Pat.

1          Turning to the second -- the two-point

2    enhancement.  The second enhancement is a two-point

3    enhancement for the destruction of special probative

4    tangible objects.  And we did note this in our original

5    sentencing memo.  We cited that they were particularly

6    probative because they documented what had occurred on

7    January 6th.

8          There's actually not a lot of case law in what it

9    means to be especially probative or essential, but the 11th

10   Circuit gives some guidance.  The 11th Circuit has held that

11   "essential" means absolutely necessary, and especially

12   probative records are those that would furnish, establish,

13   or contribute towards proof of a fact.

14          And I have two citations for that, if that is

15   helpful.  *United States v. Juarez Samayoa*, 827 F. 967, the

16   11th Circuit, 2020, and that's actually a quote in that case

17   citing *United States v. Mathews*, 874 F. 3d 698, and that's

18   in the 11th Circuit from 2017.

19          The Eastern District of New York has similarly

20   applied it where the destroyed evidence was material to the

21   criminal investigation, and here, under both of those

22   standards, the destroyed evidence squarely fits into

23   especially probative evidence.  Under these definitions it

24   could not have been more probative.  There were videos,

25   photos, location data, and communications all documenting

1    the conspirators' participation in the crime.  And we know

2    they existed, again, because the evidence showed that you

3    could see them using their phones on January 6th.

4          So while the government was able to attain some of

5    this evidence that was presumably destroyed because it had,

6    for example, been uploaded to Facebook, the government was

7    not able to recover communications between the co-

8    conspirators of the full universe of photos, videos, and

9    location data that was available.

10          So that is very different, for example, than

11   somebody who deletes a single Facebook post or something

12   like that.  These phones were especially probative of the

13   underlying crime.  So I think it's fair to say -- and I

14   think on top of that it's very fair to say that the

15   destroyed evidence may actually have proved essential to the

16   prosecution of Pat.

17          THE COURT:  Okay.  Hold on.  Remind me where the

18   communications that you just showed came from.  If the FBI

19   didn't have the phone, they obviously got communications

20   somehow.

21          MR. ALOI:  We were able to obtain a set of -- I

22   don't actually know offhand, but I can certainly supplement

23   our presentation.  Some of the communications from a later

24   image of a phone that was obtained by Mr. Robertson --

25          THE COURT:  I remember he got a new phone, and he

1    was able to recover some of the communications.

2         MR. ALOI:  And I actually think these

3    communications were made -- you can see the date on here.

4    They were made after the fact, and so they were not made

5    prior to the destruction of the old phones.

6         THE COURT:  Okay.  And the government, I assume,

7    could have sought process to obtain Pat's phone.

8         MR. ALOI:  That's right, Your Honor, but,

9    remember, we didn't even know about Pat's existence until

10   right before trial because there's several months between

11   when the activity occurred when we understood that a

12   neighbor was in possession of the firearms named Pat and

13   when we learned that Pat was actually at the Capitol on

14   January 6th.

15        By the time we learned of that information, it was

16   January of 2022.  So it was a full -- almost a full year

17   later from -- actually, it was a full year later from when

18   the offense occurred, and at that point the trial date was

19   already set, and we were moving forward with these two

20   conspirators so it would have needed to be a separate

21   proceeding.

22        I just -- a word about the aggravating role

23   adjustment because that also was not specifically applied to

24   Count 6 at the prior sentencing.  I think it was not because

25   we didn't advocate for it, but it was because it was

 1    overtaken by other events.

 2              THE COURT:  This is 3B1.1(c)?

 3              MR. ALOI:  Yes.

 4         So as this Court noted at the first sentencing

 5    hearing, that particular role adjustment is written in the

 6    disjunctive.  He could be an organizer, a leader, a

 7    supervisor, or manager to receive it, and the government's

 8    position is that it's appropriate here.

 9              The relevant factors for this Court to consider

10    when applying the enhancement or the adjustment include the

11    exercise of decision-making authority, the nature of the

12    participation in the offense, the recruitment of

13    accomplices, the claimed right of the fruits of the crime,

14    the degree of participation, the organizing, the nature and

15    scope, et cetera.  That's all in the comment in 3B1.1.

16              Here the defendant's conduct actually checks

17    multiple of those boxes.  He recruited an accomplice, and he

18    organized the offense.  He exercised a great deal of control

19    over Mr. Fracker, who considered him a mentor and a father

20    figure.

21              He clearly was the organizer.  He did not just

22    destroy his phone.  He summoned Mr. Fracker to his home for

23    the purpose of destroying Mr. Fracker's phone, too.

24              This is important because a manager or supervisor

25    must exercise some control over others, and here the

1    evidence at trial clearly showed that the hierarchical

2    relationship that Mr. Robertson and Mr. Fracker had in the

3    police environment carried over to their criminal

4    conspiracy.

5            So that's all I prepared on those particular

6    enhancements.  I'm happy to answer any additional questions

7    the Court might have.

8            THE COURT:  No.

9            Mr. Rollins.

10           MR. ROLLINS:  Yes.  So I'm not going to spend a

11   lot of time on the other two issues.  I think that the

12   destruction of the cell phones, I think it kind of speaks

13   for itself, and I'm not going to go -- I mean, it lessens my

14   credibility, I think, if I attack that issue.

15           THE COURT:  So just so I'm clear, you're not

16   objecting to the two levels for specially probative record

17   regarding the cell phone.

18           MR. ROLLINS:  Yes, because the jury found that --

19   I mean, I think that issue was pretty flushed out at trial

20   regarding the destruction of the cell phones.

21           What I want to focus on is -- and the appellate

22   counsel wanted me to make sure that I was crystal clear

23   regarding the substantial interference and the government

24   sort of trying to bring in new evidence at this point, as

25   this Court has clearly stated that this is not a de novo

1    hearing.

2              THE COURT:  Okay.

3              MR. ROLLINS:  So the --

4              THE COURT:  Let me just pause for a second

5    because...

6              Okay.  Go ahead.

7              MR. ROLLINS:  And this is not a de novo hearing,

8    yet I think the government, in its first five minutes of

9    speaking today, had sort of stated that this third man --

10   and now we're speaking of a third man as the basis for why

11   there was a substantial interference with their case.  And

12   what they're essentially saying is adding this additional --

13   because this -- granted, they raised it sort of briefly in

14   their memorandum.  I don't think we -- I've gone through the

15   transcript.  I don't think we had a full discussion about

16   it.

17             But now the government's coming in today to say

18   but for the destruction or him getting rid of the cell

19   phones, there would not have been -- I mean, it caused a

20   substantial interference with the administration of justice.

21   And that is something I believe is new that the government

22   is trying to present today.

23             In fact, I believe this neighbor was actually

24   called to the trial.  The government knew of these issues.

25   They had the ability to subpoena his phone records.  They

1   had the ability to get to those phone records.

2          And I think the Court's questions regarding, well,

3   how did we even get those cell phone records to begin with,

4   the government elected to charge two weeks before this case

5   was going to trial those additional count -- that additional

6   Count 6. They chose two weeks before -- roughly two weeks --

7   and said we're going to add this additional charge because

8   they sat down and spoke with Mr. Fracker, and Mr. Fracker

9   gave them that information about the neighbor.

10          So they had the ability, if this was so critical

11   and the resolution of the phones was so critical to their

12   case and that somehow what they're claiming today is that

13   because the phones -- because he got rid of the phones, that

14   this somehow prematurely stopped their investigation into

15   the neighbor because everything else we've already known.

16   But that's an additional fact that they're trying to raise

17   today, is that this -- getting rid of the phones was -- it

18   caused the premature termination of their investigation into

19   the neighbor.

20          And I know that this is probably the first time

21   this Court has heard that because I don't think that was

22   ever raised at trial or at sentencing; that somehow they

23   were going after the neighbor.  I believe we were going to

24   call the neighbor as a witness.  There was an issue

25   regarding his Fifth Amendment, and I think he did have

1    counsel at some point.

2         But the reason why I think the plus-three -- and

3    literally, we are arguing and we're putting the weight of

4    our argument on this plus-three, which is this substantial

5    interference with justice.  And I think that the -- what the

6    case law suggests, as well as the notes and the sentencing

7    documents indicate, is that there must be this premature

8    improper termination of a felony investigation, something

9    that has caused them to stop.  And it was substantial that

10   it caused them to stop, and they could not pursue an

11   investigation because of that.

12        What actually has changed since -- I mean, the

13   cell phones hasn't caused any additional charges or less

14   charges to be filed.  The government -- or the termination

15   of the cell phones did not cause any additional charges,

16   lesser charges, and the government hasn't presented anything

17   other than today to say that we would have charged or we

18   could have charged the neighbor, which is completely

19   speculation as to what was on the cell phones.  But they're

20   basically saying if we had had the cell phones, we would

21   have been able to make these additional charges.  And

22   because we don't have these cell phones, it substantially

23   interfered with the administration of justice because we

24   didn't have it so we couldn't make out these charges.  It's

25   completely speculation.

 1          I would ask the Court not to engage in that.  I

 2     think that we had -- and just in terms of the organizer or

 3     aggravated offense, those discussions we had at sentencing

 4     regarding his role, and I think there was a back-and-forth

 5     regarding whether Mr. Robertson was a leader, and I think

 6     that we eventually came to the conclusion that while he may

 7     have been an organizer, to suggest he was a leader I think

 8     was a little far-fetched.  But we didn't take any position

 9     when the Court said that, yes, he was probably in some realm

10     of it.  Because he had packed the lunches and everything

11     else, he was an organizer.

12          THE COURT:  Okay.  So then to summarize, you don't

13     dispute addition of the plus-two for especially probative

14     record or plus-two as organizer or leader, but you do object

15     to the addition of the plus-three for substantial

16     interference.

17          MR. ROLLINS:  Yes.

18          THE COURT:  So if my math is correct, then your

19     recommendation is Level 18, which is 21 minus 3.

20          MR. ROLLINS:  Yes.

21          THE COURT:  Okay.  Which differs from your

22     sentencing memo, which was 17, I believe, but I'll take your

23     word here.  So 18 would result in whatever that results in.

24          MR. ROLLINS:  I think -- okay.  I think we were

25     more in line with what probation had originally reported.  I

1    thought we were at 19, but -- our scoring was almost

2    identical.  It was identical to probation's scoring

3    initially.

4              THE COURT:  Okay.  But whatever it says in your

5    memo --

6              MR. ROLLINS:  Right.

7              THE COURT:  -- you're urging an 18 at 1, which is

8    27 to 33.

9              MR. ROLLINS:  Yes.

10             THE COURT:  Okay.

11             MR. ROLLINS:  And I don't want that to be lost in

12   terms of -- again, we would just reiterate that as the Court

13   had indicated, this was not a de novo hearing, and the

14   government has today kind of asked to add additional issues

15   here to sort of say that they would have been able to

16   prosecute the neighbor but for the fact that the cell phones

17   were removed.  And I will stand by that argument.

18             THE COURT:  Okay.  Ms. Aloi, do you want to

19   briefly respond to that last point, which is notwithstanding

20   what the government would have done had it known that

21   information, at the very least -- you know, sentencing in

22   this case took place in August of '22 -- you were aware of

23   Pat's involvement at least pre -- a couple of weeks

24   pretrial.  That was --

25             MR. ALOI:  Yes, Your Honor.

1          THE COURT:  -- March/April '22.  You still had

2     five months to get his records.

3          MR. ALOI:  That's right, Your Honor, we -- and I'm

4     not going to stand before you today and reveal the details

5     of a covert investigation.  I will simply note that the

6     government has never recovered the communications between

7     the defendant and Pat and Mr. Fracker for that matter, which

8     he would know to exist because of what Mr. Fracker told us

9     about Mr. Robertson's organization.  And, for example, they

10    met up at the end of the day together to drive home.  Those

11    types of communications must have existed in order for that

12    to happen.

13         The government has never received them, and the

14    government has never charged Pat.

15         I would also just note that --

16         THE COURT:  But yes -- I don't dispute any of

17    that, but assuming all of that is true, how does that

18    nevertheless fit into the very cabined review that this

19    Court has to take at resentencing?  I have to consider facts

20    that are made relevant as a result of the remand or facts

21    that were not in existence --

22         MR. ALOI:  Yes, Your Honor.

23         THE COURT:  -- facts about issues that were not in

24    existence at the time of the first sentencing.

25         MR. ALOI:  Yes, Your Honor.

1          Substantial interference includes the premature

2    improper termination, as you've -- as has just been

3    identified, or the unnecessary expenditure of government

4    resources.

5          Had the government had access to the phone in

6    January, when Mr. Robertson was arrested, the government

7    would have known at the outset that Pat was a co-

8    conspirator, and the government could have avoided the

9    fiasco of Mr. Robertson turning his firearms over to a co-

10   conspirator in this case.  It could have potentially avoided

11   all the investigation and resources that have gone into the

12   firearms investigation, and Pat could have been joined in

13   the indictment of the other two co-conspirators to lead to

14   an efficient prosecution and investigation of this matter.

15         Instead, what happened is a couple of months

16   before trial -- it was -- I don't recall.  I think it was

17   around January 15th.  Trial ultimately went in April.  I

18   think there was some wiggle room in the calendar there.  The

19   government had to go back and figure out whether or not it

20   could join Mr. -- this Pat in its indictment and invested a

21   significant amount of time and resources in that effort.

22         Plus, during the trial of this, as you are well

23   aware, Pat was here, but we didn't know the full scope of

24   his activity at that point.  And in a world of limited

25   resources, the trial team was focused on this case and

1    understood that it would have to bring a second case against

2    Pat to proceed because of the delay caused by his discovery

3    because we did not have access to the phones.

4            THE COURT:  Okay.  So obviously a fair amount of

5    new argument this morning.  What I'd like to do is proceed

6    to the 3553(a) factors, then we'll take a break, let me

7    consult some of the case law that you've cited, relook at

8    those guidelines provisions, consult with my counsel, and

9    we'll make a guidelines determination after the 3553(a)

10   discussion and prior to sentencing.  Okay?

11           All right.  So with that, Ms. Aloi, do you want to

12   address the 3553(a) factors?  Obviously I was here the first

13   time around.  I made findings, and --

14           MR. ALOI:  Your Honor, the government wishes to be

15   heard on both the 3553(a) factors and our request in the

16   sentencing memo for an upward departure.  I can do that in

17   however order you wish.

18           THE COURT:  The floor is yours.

19           MR. ALOI:  Okay.

20           So I will not endeavor to go into great detail

21   here, but Defendant Robertson, as Your Honor is well aware,

22   was a police sergeant in Rocky Mount, Virginia, when he

23   joined the mob which attacked the U.S. Capitol to destruct

24   [sic] the peaceful transition of power.  As the evidence

25   showed, he used his law enforcement training to block

1    Metropolitan Police officers attempting to hold back the

2    mob.  Ultimately he made contact with at least two of those

3    officers.

4           The defendant's goal was to participate in an open

5    armed rebellion on January 6th.  These are his words.

6    They're not mine.  Just to remind the Court -- may I please

7    have the ELMO? -- of some of the defendant's statements.

8    "I'm prepared" -- calling for an open armed rebellion.  This

9    is December 19, 2020.  He's prepared to start one, and there

10    was a ben --

11           THE COURT:  Ms. Aloi, if you could just slow down

12    just a bit.

13           MR. ALOI:  Sorry.

14           He's prepared to start an open armed rebellion.

15    He knows a bunch of like-minded and trained individuals.

16           That ultimately proved true.  He found another

17    police officer, also trained, to join him on January 6th.

18           He was convicted at trial of all six counts with

19    which he was charged, and when he was arrested, he showed an

20    utter disregard for the rule of law flagrantly disregarding

21    the conditions of his release and trafficking in firearms.

22           And Your Honor found at the sentencing hearing the

23    defendant's conduct was of the utmost seriousness, and the

24    87-month sentence he received was not greater than necessary

25    to comply with the purposes of sentencing.

1       The same is true today.  Nothing the Courts did in

2  *Fischer* or *Brock* changes that fact.  As one of your

3  colleagues, Judge Lamberth, appropriately noted, *Fischer*

4  does not dictate the Court's application of the 3553(a)

5  factors because the Court may still consider the defendant's

6  conduct, and to reduce a defendant's sentence would require

7  the Court to take a drastically different view of that

8  conduct.

9       As I'll get into a moment, we do think *Fischer* has

10  an impact on what the Court should perceive as or what is

11  the relevance of the upward departures available to the

12  Court under the sentencing guidelines.

13       And here, not only is an upward variance

14  appropriate under the 3553(a) factors, as Your Honor

15  actually already suggested at the first sentencing hearing,

16  but an upward departure is warranted because the defendant's

17  conduct resulted in the significant disruption of a

18  government function.

19       It is not hyperbole to call what happened on

20  January 6th a crime of historic magnitude.  As judges of

21  this district have repeatedly and clearly stated, January

22  6th was an unprecedented disruption of the nation's most

23  sacred function, conducting the peaceful transition of

24  power.

25       The damage done to the country on January 6th must

1    be reflected in the seriousness of the sentences imposed on

2    those who caused the damage.  It must not be treated as just

3    another crime.  And right now, at this moment in time, the

4    need for deterrence is at an all-time high.  So for this

5    reason, the government asks the Court to resentence the

6    defendant to 87 months incarceration.

7          I first want to turn to just briefly the upward

8    departure.

9          THE COURT:  Okay.

10         MR. ALOI:  So it's quite clear that the guidelines

11   now, as recalculated, do not meaningfully account for what

12   Robertson actually did.  In addition to the specific offense

13   characteristics and adjustments we just described, given the

14   new guidelines calculation, an upward departure is wholly

15   supported under Section 5K2.7 because the guidelines do not

16   meaningfully account for what Robertson intended to do and

17   actually did accomplish.

18         The guidelines expressly state that an upward

19   departure is warranted when an offense results in a

20   significant disruption of a governmental function, and the

21   guidelines do not reflect the appropriate punishment for the

22   offense.  In such circumstances, the Court may increase the

23   sentence above the authorized guideline to reflect the

24   nature and extent of the disruption and the importance of

25   the governmental function affected.  Defendant Robertson's

1    conduct squarely fits this criteria.

2          I just want to quickly take each factor for the

3    Court to consider in turn.

4          First, to apply this departure, the Court must

5    find that the offense resulted in a significant disruption

6    of the government function.  There really can be no doubt

7    that this is true.  The certification of the electoral votes

8    was a critical government function required for the

9    transition of power.

10          Defendant Robertson was an avid and willing

11   participant in an unprecedented crime.  He joined the mob

12   that threatened the lives of legislators and their staffers,

13   interrupted the certification, injured more than 100 police

14   officers, and resulted in more than $2.9 million of damage

15   to the Capitol.

16          His offenses specifically targeted the peaceful

17   transfer of power, an essential government function and one

18   of the fundamental and foundational principles of our

19   democracy.

20          Like every member of the mob, the defendant, to

21   quote the D.C. Circuit's decision in *Brock*, endangered our

22   democratic processes and temporarily derailed Congress's

23   constitutional work.

24          In other words, even the D.C. Circuit's holding in

25   *Brock* acknowledges that interference with the election

1    certification significantly disrupted a government function.

2    This is not seriously in dispute.

3          And the first judge, Judge Kelly, to sentence a

4    defendant following a post-*Fischer* dismissal of the 1512

5    count noted in the sentencing hearing that the certification

6    of the electoral vote is foundational to our country's

7    governance.  So that's the first factor for the Court to

8    find to apply the departure.

9          The second is that the Court must find the

10   guidelines do not affect the appropriate punishment for the

11   offense.  This, too, is true.

12         So as a general matter, the fact that the

13   guidelines do not reflect the punishment is exemplified by

14   the *Brock* decision.  The discussion of the meaning of the

15   administration of justice demonstrates the Sentencing

16   Commission failed to anticipate anything like the January

17   6th riot when drafting the guidelines.

18         And the Supreme Court's decision in *Fischer*

19   demonstrates that even the criminal code lacks the

20   appropriate tools to fully address this crime.  As Justice

21   Coney Barrett noted in her *Fischer* dissent, who could blame

22   Congress for the failure of imagination.

23         But -- that's generally how it applies.

24         But specifically, as it relates to this defendant

25   and this defendant's conduct, the guidelines do not in any

1    way account for Defendant Robertson's intent on January 6th.

2    Robertson's specific intent to disrupt a government function

3    is not adequately captured.  It is not captured by the

4    Section 231 conviction, and it's not captured by the Section

5    752 conviction or the misdemeanor conviction.

6          There can be no doubt that it was Robertson's

7    intent to disrupt the election certification.  The jury

8    verdict made that clear as did his own statements and that

9    of his co-defendant.

10         And this Court found at sentencing that the jury

11   was correct in finding that at least one of your motivations

12   was to interfere with what was going on in Congress that

13   day.

14         So nothing in Robertson's guidelines reflects

15   those facts.  The guidelines, in contrast, would treat this

16   as a run-of-the-mill obstruction, which it was not.

17   Robertson would face the same offense level if his crimes

18   had not endangered the democratic process or interfered with

19   the peaceful transition of power.  There's no specific

20   offense characteristic in the guidelines for attacking

21   democracy and/or abandoning the rule of law.

22         And importantly, not one of the offenses of

23   conviction captures Robertson's intent to use force against

24   the United States to attack our democracy.

25         For this reason, an upward departure under 5K2.7

1    is appropriate, and that's wholly consistent with Judge

2    Kelly's decision in the *Sparks* case, which we submitted to

3    the Court as supplemental authority last week.

4             Your Honor, I can move on to the 3553(a) factors

5    unless you have questions about that.

6             THE COURT:  No.  Why don't we pause there.

7             I guess what I'm struggling with is I don't

8    disagree with you that an upward departure or upward

9    variance would be justified by 5K2.2 or, as you say, 5K2.7.

10   The question, though, is, you know, if we were writing on a

11   blank slate, if we were all back -- if we were writing on a

12   blank slate and we were all back at sentencing two years

13   ago, and probation had calculated the correct guideline in

14   the D.C. Circuit's eyes, and we argued about that, and we

15   came up with your recommendation of, you know, 37 to 43 or

16   whatever your recommendation is, would you have been

17   advocating, honestly, for an upward departure of over double

18   that range to 87, or I think your original recommendation

19   first time around was 96 months?

20             MR. ALOI:  Your Honor, I don't know what --

21             THE COURT:  And, in other words -- let me state it

22   differently.

23             I mean, it seems to me that the guidelines range

24   is a 3553(a) factor that the Court always must consider and,

25   in fact, start with regardless of everything else.  Right?

1    So that guideline range plays an independent role in the

2    Court's determination of what an appropriate sentence is,

3    right, for a variety of reasons.

4            And so if we were sitting here -- you know, if

5    *Fischer* had never been decided, if *Brock* had never been

6    decided, and the calculations were correct in view of the

7    D.C. Circuit the first time around, right, and we were

8    confronting a range of -- you know, if I accept your

9    calculation, if we were confronting the range of 37 to 46

10   months, could the Court really justify an upward enhancement

11   based on those provisions you just clicked through to 87

12   months?

13           MR. ALOI:  Your Honor, if the -- if we were in

14   that posture --

15           THE COURT:  Right.

16           MR. ALOI:  -- I am reasonably confident I would

17   have stood before you and said something along the lines of

18   that guidelines calculation does not account for the

19   substantial interference with the administration of justice.

20           THE COURT:  Fine.  Let's assume I said those exact

21   words.  So then the question is how much of an upward

22   departure is appropriate given that the -- you know, one of

23   the factors being the guidelines range of 37 to 46.

24           MR. ALOI:  Your Honor, you yourself said at

25   sentencing that as it relates to this defendant an upward

1    variance -- you were mentally applying an upward variance

2    because you believed the eight points to be significant, and

3    you yourself landed on 87 months as what is not more greater

4    than necessary.

5         And nothing about the defendant's conduct has

6    changed.  Nothing he did changed.  And the sentencing

7    guidelines are just one of the 3553(a) factors that you are

8    to consider.

9         So we stand here today to tell you that an 87-

10   month sentence was appropriate, and it would have been just

11   as appropriate had the guidelines not been calculated.

12        THE COURT:  Okay.

13        MR. ALOI:  There's no reason to second-guess that

14   decision based on the *Fischer* and *Brock* decisions because

15   what the *Fischer* and *Brock* decisions tell you is that an

16   upward departure is warranted because it now fits squarely

17   into the conduct contemplated by the upward departure.

18        THE COURT:  Okay.  So, I mean, obviously we're in

19   an alternate reality.  I'm asking you to imagine an

20   alternate reality.  But you're telling me that the

21   government would have recommended a 96-month sentence had we

22   originally calculated the range at 37 to 46?

23        MR. ALOI:  I'm telling you that the government

24   would have -- you know, I don't speak for the government,

25   but in this case, as the prosecuting attorney, I would have

1   advocated for an upward variance under the 3553(a) factors

2   because -- and I would have advocated for an upward

3   departure based on the failure to account for the

4   substantial interference of the administration of justice.

5        This is an unprecedented crime.  This is not the

6   destruction of a cell phone that had some pictures on it,

7   right?  This is the destruction of a cell phone that

8   documented an attempt at an armed rebellion.

9        Again, not my words.  This defendant's words.

10       And so I think it's fair to say that the

11  sentencing guidelines just did not and do not contemplate

12  that.

13       But your job is to look at the totality of the

14  circumstances and all of the factors that go into it.

15       THE COURT:  Agreed.

16       MR. ALOI:  So with that, I can turn to the 3553(a)

17  factors.

18       So, you know, as discussed at sentencing, we

19  previously noted that there were several aggravating factors

20  unique to this defendant that warrant an upward variance

21  that may straddle several of them, and this Court actually

22  agreed.  You noted that but for the aggravating factors you

23  might have given a below guidelines sentence because you

24  were troubled by the eight-point bump.

25       That same reasoning actually requires you to give

1    an above guidelines sentence today.

2            I just want to go over some of the evidence that

3    the Court heard that is illustrative of the ways that the

4    defendant's conduct warrants an upward variance.  With

5    regard to the nature and circumstances of the offense, the

6    defendant called for violence immediately starting after the

7    election.  I'd like to remind the Court that in the original

8    sentencing submission the defendant blamed his

9    radicalization on a person suffering from a terminal illness

10   that he did not even know about at the time that he started

11   making his calls for violence.

12           And just a note about the seriousness of the

13   offense.  At the prior sentencing, the Court did find that

14   the defendant was threatening, but described no actual

15   violence.

16           I disagree.  I think what happened that day was an

17   attack on democracy, and, as this Court found, the defendant

18   advocated for an armed rebellion and counterinsurgency, and

19   he came with the intent to do violence.  And that is

20   exemplified by his own words.

21           I can share some of the slides on that, which you

22   previously saw.  I know you're very familiar with them.

23           "A legitimate republic stands on 4 boxes.  The

24   soapbox, the ballot box, the jury box, and then the

25   cartridge box...I cannot speak for others, but being

1    disenfranchised by fraud is my hard line.  I've spent most

2    of my adult life fighting a counterinsurgency.  I'm about to

3    become part of one..."  That is what he came to do on

4    January 6th, a counterinsurgency, a cartridge box.  And it's

5    also exemplified by his own actions, bringing the gas masks

6    and the stick and whatnot.

7           And so the fact that he -- you know, the record

8    reflects that he did actually strike two of the officers

9    with the stick, but the fact that he wasn't himself more

10   violent is just a consequence of the mob that day.

11          So just also -- okay.  So that's the nature and

12   circumstances of the offense.

13          With regard to the history and characteristics of

14   this defendant, the record was quite clear that truth has no

15   meaning to him.  Nothing about the programming he did in

16   jail over the last three years changes that.  If you recall,

17   in the original sentencing submission the defendant

18   mentioned military service, but exaggerated the number of

19   years he had actually served our country.

20          He also has a track record of lying about his

21   military service to his employer, his friends in the news

22   media.  He claimed to be an Army Ranger, but he is not.  He

23   actually used that Army Ranger status in his application to

24   the Rocky Mount Police Department.  In other words, he was

25   given a badge and a gun under false pretenses.  He lied

1   about his military awards which is itself a crime if used to

2   his own benefit.

3          And he only ever made excuses for his conduct.  He

4   blamed his wife's absence, even while he cavorted with other

5   women.  He blamed a friend who was sick, which is just

6   wildly inappropriate, and he blamed Mr. Fracker for

7   destroying the phones even though the text messages and the

8   jury verdict state otherwise.

9          In the resentencing memo, the defendant cites only

10  two factors for this Court's consideration:  the renewed

11  guidelines analysis and the defendant's purported good deeds

12  in prison.  The latter, I suggest, the Court should take

13  with a grain of salt.  He has a long history of exaggerating

14  his achievements, and to the extent he's used his time

15  wisely in prison, it would be appropriately reflected in

16  good time credit to his sentence.

17         The same -- I appreciate that he may have used his

18  time productively in prison, but the same could have been

19  said of him before his January 6th crimes.  And just as

20  today, the defense argued then that his good conduct

21  warrants leniency, when it does not.

22         With regard to the deterrence, Your Honor yourself

23  questioned whether you could have any confidence that he

24  wouldn't continue to commit crimes given all of the ways in

25  which he thumbed his nose at the rule of law.  At

1   sentencing, Your Honor described the defendant's post-arrest

2   conduct.  This is unaffected by *Fischer* or *Brock* as an

3   aggravating factor.  And you questioned whether you could

4   have any confidence that the defendant would not reoffend

5   suggesting that this was maybe the primary consideration to

6   take into account.

7          You also noted that in addition to his post-arrest

8   conduct, his post-arrest statements -- totally separate,

9   again, from the conduct -- requires specific deterrence.

10         As Your Honor stated to the defendant at

11  sentencing, you know, "I read the defendant's post-offense

12  statements, and it really seems like you think of partisan

13  politics as war, and that's just not the right way to think

14  about it.  And you continue to believe that these conspiracy

15  theories about" --

16         THE COURT:  Slow down.

17         THE COURT REPORTER:  Can you slow down, please.

18         MS. ALOI:  I'm sorry.

19         "And you continue to believe these conspiracy

20  theories about the election being stolen despite any

21  evidence of that whatsoever, and I sincerely believe that

22  you would likely answer a call to duty if you were called to

23  do something like this again.  And that's the biggest

24  consideration that this Court has to consider."  Those were

25  your words from the sentencing transcript at 63.

1      The defendant's calls for violence after the

2  arrest and the charges, they were also not limited to big

3  picture political conflict.  They also included calls to

4  violence against the very agents who investigated this case.

5      If you recall, there were text messages between

6  Mr. Robertson and his friend Deacon -- the same Deacon who

7  submitted a letter to the Court stating Robertson's good

8  character -- and they called for more violence against the

9  law enforcement officers who investigated Mr. Robertson.

10      A significant sentence continues to be necessary

11  to keep this defendant from offending again.  Nothing in the

12  defendant's sentencing materials suggests he is any less

13  likely to offend today than he was on January 6th.

14      And finally, with regard to the need to promote

15  the rule of law, he has shown that he has no respect for

16  this Court's orders.  His disregard for them is actually

17  well documented.

18      I won't go into them in great detail, but it's

19  worth reminding the Court that he shipped firearms using a

20  federal firearms license in Virginia while under felony

21  indictment.  Your Honor found probable cause that he

22  committed a 922(n) violation, and a lab report confirmed he

23  possessed an explosive device at his home after being

24  ordered not to.

25      And finally, with the need to avoid sentencing

1   disparities, this Court already benchmarked Mr. Robertson's

2   sentence against that of Mr. Reffitt.  And Mr. Reffitt has

3   not been resentenced yet, but I would just note that Judge

4   Friedman [sic] already has indicated in prior hearings that

5   that sentence of 87 months was supported by the 3553(a)

6   factors, and at least two recent defendants sentenced in the

7   post-*Fischer* environment received upward departures

8   consistent with 5K2.7.  That's Michael Sparks, whose

9   transcript I shared with the Court earlier, and Dan Wilson

10  in Case No. 23-cr-427.

11          So just in sum, the defendant's conduct was more

12  harmful and egregious than the guidelines reflect.  The

13  guidelines do not appropriately account for his intent to

14  disrupt a core government function through armed and violent

15  violence.  And in Your Honor's own words, he was not a

16  bystander who got caught up in a crowd.  He was an active

17  and willing participant who was there for the purpose of

18  disrupting the count.  Even having time to reflect, he

19  continued to advocate for violence including violence

20  against law enforcement, and Your Honor found he had an oath

21  to uphold the law, and he violated that oath.

22          And for all these reasons, the Court should impose

23  a sentence of 87 months.

24          THE COURT:  Okay.  Let me just ask you one

25  question --

1          MR. ALOI:  Yes.

2          THE COURT:  -- that sort of dovetails with my

3     comments previously.

4          Is the government aware of any case, January 6th

5     case, where a Court has departed on a percentage basis from

6     the range here to where the government is recommending I go?

7          MR. ALOI:  No, Your Honor.  The government is not

8     aware of that.  I think Your Honor has the privilege of

9     being, like, the first or second.  This is actually, I

10    think, the first resentencing --

11         THE COURT:  Right.

12         MR. ALOI:  -- of somebody so --

13         THE COURT:  Put aside the resentencings after

14    *Brock* and *Fischer*.  Now if we were here before, right, and a

15    range is, say -- midpoint of the range is 40 months, 42

16    months, has the government recommended a sentence of over 80

17    months in any case that you're aware of, or a similar

18    percentage upward departure?

19         MR. ALOI:  I'm not aware of a percentage.

20         THE COURT:  Okay.  Obviously you've recommended

21    upward departures in many cases, but, you know, it seems to

22    me you're asking -- unless -- based on where we are after

23    these appellate cases, you know, you're asking for a pretty

24    substantial upward departure.

25         MR. ALOI:  Yes, a pretty substantial -- we are

1    asking for an upward departure that is significant, but it

2    is significant because this Court already found --

3              THE COURT:  I understand.

4              MR. ALOI:  -- that the 87-month sentence is

5    appropriate.  The guidelines are just one of the factors for

6    the Court to consider, and the guidelines absolutely do not

7    account for this defendant's intent to disrupt a government

8    function and start an armed rebellion against our democracy.

9              THE COURT:  Understood.  Okay.  Thank you.

10             Mr. Rollins.

11             MR. ROLLINS:  So I guess, addressing the first

12   position, the government's position of upward departure --

13             THE COURT:  Which frankly you don't address in

14   your memo.  I'm coming up with these arguments.

15             MR. ROLLINS:  I was actually baffled that they

16   would have requested an upward departure given the facts of

17   this case.  And I understand, and I think most of it has to

18   do with the fact --

19             THE COURT:  The facts haven't changed,

20   Mr. Rollins.

21             MR. ROLLINS:  Right.

22             THE COURT:  The only thing that has changed is we

23   have a new guidelines calculation, okay, and we have his

24   experience being incarcerated.

25             MR. ROLLINS:  Right.  So the facts haven't

1    changed, and we've probably -- in this courthouse there has

2    been probably 150 of the, I think, three or four of these

3    cases now to trial, and they haven't changed.  And the facts

4    of this case aren't even as egregious as some of the others.

5           The only differing fact I can figure out for why

6    the government has taken a position of asking for an upward

7    departure -- and let's just be clear where this case started

8    at and the history and characteristics of Mr. Robertson.

9    He's a police officer on January 5th and, I think, 12 years

10   prior to that; and on January 7th, shortly thereafter, he's

11   no longer an officer because of his actions that took place

12   on January 6th.

13          The actions that took place on January 6th is that

14   he and a neighbor and another police officer got into a car.

15   They went to the Capitol and engaged in really bad behavior.

16   And I guess that's an understatement.

17          But what was proven at trial and one of the big

18   issues here was that stick, the walking stick that he was

19   walking with and that he had at port arms at the time that

20   the officers were coming through in a single file formation.

21   And that stick hit one of the officers while he was in port

22   arms position.  That was our civil disorder charge.

23          And looking at other cases with the same civil

24   disorder charge, the same charge for a lot of them, and most

25   of them did not have an assault basis behind it, and

1    government did not allege that there was some type of an

2    assault.  In fact, the officer on the stand indicated that

3    it could have or may have been an accident.

4              So we have a civil disorder charge.

5              We then have the dangerous weapon, entering the

6    building with that same stick, and that was adjudged by the

7    jury to find that that was a dangerous weapon.  Okay.  We

8    concede that.  That's happened.

9              So now he's guilty of the offense of civil

10   disorder, which is a five-year felony, and then you have the

11   other two, which are more serious.

12             But looking at what his actions were that day --

13   and I think what the government's most upset with is the

14   language that he used.  And as we stated in our first

15   sentencing hearing, it's mostly just boastful and a man

16   talking trying to be more boastful or trying to be something

17   greater than what he was at the time.

18             He goes in the building.  He takes a photo.  He

19   doesn't go onto the Senate floor.  He doesn't go -- he

20   doesn't go -- I think he stayed within that entire -- I

21   think he was in the building for a few minutes and stayed in

22   the -- the stadium hall.  I can't remember the actual hall.

23   But he stays in there for that short period of time, and

24   then he leaves.

25             And the government believes, and based on the

1    other facts where we have people who were in leadership

2    roles who put this thing together who the government didn't

3    advocate for -- I mean, their sentences weren't this high.

4    We have people who have assaulted police officers, readily

5    assaulted, thrown things at them, whose sentences weren't

6    this high.  The government did not come into this Court and

7    ask for an 87-month sentence for individuals who assaulted

8    police officers.

9            So Mr. Robertson, which is why I still -- I was a

10   little baffled with the mere fact that now that it seems as

11   though they're a little upset that the 1512 charges were

12   taken away because of *Fischer* and then that eight-point

13   enhancement was taken away from *Brock*, that they then

14   somehow say, well, they still think that he was this

15   mastermind and that you should go above and beyond the

16   guidelines scores.

17           The nature and circumstances of this case I just

18   laid out, and I don't think that's in dispute.  He said bad

19   things.  He went back home; he said bad things.  He went on

20   Facebook; he made all types of statements.

21           Probably the worst thing he did was Count 6, and

22   frankly because -- that is the obstruction charge which I

23   would figure the government would have come in here and just

24   blown that up out of proportion because that affects the

25   rule of law.  It's that Count 6.  That affects the rule of

1    law.

2         Everything else was on video.  Everything else he

3    did was all on video, and we saw it.

4         But that's not where the government went.  The

5    government went with this:  This man is trying to overthrow

6    democracy.

7         While he made choices, followed bad leaders, did

8    bad things that day, this specific man was not trying to

9    overthrow democracy.  Regardless of what his statements said

10   and what he said, we have a man that has dedicated his life

11   to public service, and she has -- the government has tried

12   to even corrupt that and say that he is not a good man even

13   though he spent his entire life doing that.

14        And that goes to the history and characteristics

15   of Mr. Robertson.

16        The deterrence.  The government -- the Court is

17   aware where we all have these sheets of what other judges

18   have sentenced to in this court and what has been

19   appropriate given the exact same charges.  There have been

20   very few that have gone above and beyond the guidelines.

21   And those few that did had a lot to do with egregious

22   assaultive behavior and leadership roles, and that's where I

23   saw that this case doesn't fit any of those elements, where

24   there was assaultive conduct and there was some type of

25   significant leadership role.  None of that was here for

1        Mr. Robertson.

2              Everything -- I stated briefly in the memorandum,

3     and maybe it was a little scarce, who this man has become.

4     But everything that could be taken from a man has been taken

5     from this man.  He's lost his job.  He's lost his family.

6     He lost his wife.  His two kids are still around.  His two

7     kids, his daughter routinely -- you know, she converses with

8     him on the regular.  But you'll find now he is a broken man,

9     a man that has been broken.

10             He's served over three years, and I know the

11    Court's concern at the time -- I've read the transcript over

12    and over again, and the Court's concern was that this man is

13    going to go out there and that there was a possibility that

14    this could happen again, and that if you gave him the tools,

15    and he would go right back out there and do that again.

16             I would suggest that is not proper -- that is not

17    so anymore.  That is not even a slim possibility as this man

18    has been completely broken from his actions on January 6th.

19             The guideline scores have been appropriate, and

20    they've been appropriately filed in most of these cases, and

21    frankly there was nothing in this case that suggests that

22    this Court should go downward or upward.

23             In other words, I could ask -- I could see why the

24    government could ask --

25             THE COURT:  But, Mr. Rollins, I made extensive

1    findings the last time.  Okay?  I agree with you on the

2    point eight.  I thought that it -- the eight-point increase.

3    I thought that it overstated the conduct that he engaged in,

4    but I found lots of other aggravating factors, which we've

5    talked about today, not the least of which was his post-

6    arrest statements and conduct.  Okay?  And I came out the

7    way that I did.

8              As Mr. Cone will tell you, this is not sentencing

9    de novo, and so I can't -- we're stuck with those findings,

10   all right.

11             You have to tell me what has changed as a result

12   of the remand or conduct that he has engaged in since the

13   first sentence that affects those findings and my

14   determination then that an 87-month sentence was

15   appropriate.  Okay?

16             I know your feelings on how good of a guy he is,

17   and how this was a mistake, and how he's a broken man.  But

18   frankly, that's not really relevant to the legal issue, the

19   legal question, that the Court has to resolve today.

20             MR. ROLLINS:  So, I mean, looking at the conduct

21   of what happened on that day, I mean, just his conduct is

22   what the Court should look at.

23             THE COURT:  Okay.

24             MR. ROLLINS:  But what I'm asking the Court to do

25   is -- essentially what the government is asking this Court

1    to do is essentially say that the *Brock* and the *Fischer*

2    decisions really didn't change anything.  That literally had

3    no change on what he was found guilty on.  And those are

4    significant points because what the -- if we take what

5    *Fischer* is basically saying, is that that 1512 did not

6    apply, his actions weren't disruptive of that.

7          So the government asking you to essentially apply

8    and say that Congress did not -- it wasn't a law in the

9    books to sort of penalize him for what he did on that day,

10   and there was no law on the books, and we're now asking you

11   to now make that decision for -- essentially for the rule-

12   makers, for the law makers; to sort of say, well, they

13   didn't make -- they didn't come up with the rule to describe

14   what his actions were, and therefore I have to sort of come

15   up with my own rationale of why the sentence should be

16   substantially increased.  And I think that would -- that

17   would be wrong here because his actions do not constitute

18   what the government's essentially alleging, that this man

19   was somehow an architect in trying to destroy democracy, and

20   I don't think that that's so here.

21          Am I not addressing the Court's questions?

22   Because I want to make sure that I'm clear, and I know I've

23   kind of gone all over the place, but...

24          THE COURT:  Well, I'm -- I engaged Ms. Aloi in a

25   conversation about where we would have been had the range

1    been originally calculated at 37 to 46.  And the government

2    comes in and says, "Your Honor, I think that understates his

3    culpability for a variety of reasons that we've discussed

4    today.  I think an upward departure is in order."

5            Assume I agreed with them.  Why should the Court

6    go -- not go to 86 but go to someplace else in your view?

7            MR. ROLLINS:  So, I mean, the Court's concern, on

8    rereading the transcript, is that at the time -- and you

9    went low on that guidelines score, but I think you went

10   low -- you actually looked at the history and

11   characteristics of him.  You saw he had a zero criminal

12   history score, and that was one of the reasons why you went

13   low on the guidelines.  And you recognized the fact that he

14   was getting this large eight-point hit for having the weapon

15   while engaged in the 1512, and so you gave this -- but there

16   is nothing that you initially said in the initial sentencing

17   that would even come close or the government's arguments

18   even come close to what was addressed in the original

19   sentencing.

20           I mean, this position of essentially they would

21   have had to have gone -- I mean, if the guidelines scores

22   were 87 to 96 or something in that range, they would have

23   had to have -- basically what they're saying to the Court

24   today is we would have requested 140 months, I mean, because

25   we think those guidelines were not appropriate.

1            So I don't -- again, I guess reading the

2    transcript, reading what happened at the original

3    sentencing, none of this was sort of -- that was not their

4    argument.  That was not their position, that somehow the

5    guidelines score did not apply.

6            They weren't making this argument that the

7    guidelines scores didn't apply.  They were high on the

8    guidelines, but I don't think they were trying to go above

9    and beyond.

10            THE COURT:  Okay.

11            MR. ROLLINS:  And today and their memo just kind

12    of -- it's incredulous.

13            So I would ask the Court not to consider their

14    request for upward because it essentially would make the

15    *Fischer* and -- in other words, those decisions would make no

16    difference here because that's essentially what they're

17    saying.  Those decisions make no difference because there

18    was no rule of law -- there was no law in place to show, and

19    we're asking this Court to put itself as the rule -- a law

20    maker and make the decision.

21            THE COURT:  Okay.  Thank you.

22            MR. ROLLINS:  Thank you.

23            THE COURT:  Mr. Robertson, anything you want to

24    tell me before I take a break and impose your sentence?

25            THE DEFENDANT:  Do you want me to stand up, sir?

1          THE COURT:  Come on up with Mr. Rollins.

2          How have you been?

3          THE DEFENDANT:  Fine, sir.  How are you?

4          THE COURT:  Doing okay.

5          THE DEFENDANT:  Good.  Your Honor, January 6th was

6     a bad day, and my participation in that allowed bad things

7     to happen that should not have happened.  I've had a lot of

8     time to reflect upon that.  I've talked with family members.

9     I've talked with friends.  I've talked through everything

10    like that.

11          And I realize the positions that I was taking on

12    that day were wrong, and I now see that there were people

13    harmed.  Both strangers and members of my family were harmed

14    that should not have been harmed that day, and I am sorry

15    for that.  I stand here in front of you very sorry for what

16    occurred on that day.

17          I know your greatest concern at the last

18    sentencing, and appropriately so, was that you didn't think

19    that I was properly dissuaded from the behavior that I had

20    done before, and I might have been likely to do that again.

21    I stand in front of you right now, and I can assure you I'm

22    dissuaded.

23          This has taken everything from me in my life with

24    the exception of my family and very few friends, and I just

25    want to go back to my peaceful existence and live on my

 1    mountain and try to rebuild the life that I can in this.

 2           So you -- I promise you, you do not have a concern

 3    that you had in that initial sentencing about me going out

 4    and reoffending in this instance again.

 5           THE COURT:  Okay.  Thank you.

 6           THE DEFENDANT:  Thank you.

 7           THE COURT:  All right.  We're going to take about

 8    a 15- or 20-minute recess.

 9           Mr. Marshal, will you leave him here, or do you

10    want to take him down?

11           THE U.S. MARSHAL:  Leave him here.

12           THE COURT:  All right.  We'll reconvene at, say,

13    10 minutes to noon.

14           (Recess taken)

15           THE COURTROOM DEPUTY:  Your Honor, we're back on

16    the record for Criminal Case 21-34, Defendant 1, *United*

17    *States of America v. Thomas Robertson*.

18           THE COURT:  Okay.  Thanks for your patience.

19           Mr. Robertson, Mr. Rollins, please approach.

20           Okay.  So we discussed all of the relevant

21    sentencing factors at the last hearing.  This sentencing is

22    not designed to be a complete redo of the last time so I

23    will not repeat everything that I said then now.  But I do

24    adopt and incorporate my prior findings except as to the

25    guidelines calculation.

1          The question before me is whether the changed

2     guideline calculation or any new facts that have

3     materialized since the prior sentencing should affect that

4     original sentence.  And relatedly, should I use my authority

5     to vary upwards from the new calculated range.

6          Before I get there, however, I do need to

7     calculate the range.

8          So I agree with the government that Count 6 drives

9     the analysis.  The base offense level for Count 6 is 14.

10    Under Guideline 2J1.2(a), a two-level enhancement for the

11    existence of a probative record has not been disputed.  The

12    Court also finds a two-level enhancement for a role

13    adjustment because Mr. Robertson was the leader and

14    organizer of the obstruction offense as evidenced by his

15    recruitment of Mr. Fracker and direction of Mr. Fracker.

16         That leaves the three-level enhancement for

17    substantial administration of justice under 2J1.2(b)(2).

18         The Court finds that the enhancement applies, but

19    I do remain concerned that its application -- I mean, it

20    applies based on the text and the purpose of the

21    enhancement.  I am concerned, however, that it may be

22    outside the scope of resentencing given that the government

23    knew of Pat's existence at the time of the first sentencing

24    and could have made the same arguments that it's making now

25    here.

1          Now, there may be a good reason the government did

2     not make those arguments because Count 1 sort of drove the

3     bus in terms of the calculations, and so, you know, I think

4     it is unclear whether that -- whether consideration of that

5     enhancement now is outside the scope of the resentencing.

6          But I will apply the government's adjusted

7     calculation, which is adjusted offense level 21 at 1, which

8     results in an advisory sentencing guidelines range of 37 to

9     46.

10          For the record, however, I would have imposed the

11     same sentence had I rejected that additional three levels

12     and accepted the defense's recommendation of a guidelines

13     range of 27 to 33 months.

14          So with that, proceeding to the sentencing, as I

15     said, the question is whether there are any new facts or

16     circumstances that should alter the Court's previous

17     sentence, and relatedly whether I should use my authority to

18     vary or depart upwards from the new guidelines range.

19          So let me just pause there to review what my

20     thinking was the last time around.

21          I indicated that the eight-level enhancement to

22     the Count 1 guideline or offense level overstated the

23     seriousness of Mr. Robertson's offense.  So I disregarded in

24     large respect that enhancement that *Brock* has now said we

25     must disregard entirely.  And that enhancement is off the

1    table anyway because Count 1 has been dismissed in light of

2    *Fischer*.

3           But I did not vary downward the first time around

4    due to the presence of a number of aggravating factors:

5    your planning of the offense; your purpose in coming to

6    D.C.; the historical significance and seriousness of the

7    disruption of the certification and the effect that it had

8    on our democratic principles; perhaps most importantly in my

9    mind, your post-arrest statements about harming law

10   enforcement who might have come for those guns that you had

11   accumulated and your accumulation of the large number of

12   firearms that you had access to, which, in my view, likely

13   constituted a separate federal offense; and finally, your

14   general lack of remorse and acceptance of responsibility

15   above and beyond your decision to go to trial.  And I

16   explained all of that then.

17          And that's how I arrived back then at 87 months,

18   which was the low end of the guidelines range in place at

19   the time.

20          Now the range is 37 to 46.  Right?  Considering

21   all the 3553(a) factors, I agree with the government that an

22   upward variance is warranted from that range on two grounds.

23          First, under Guideline Section 5K2.7, which allows

24   for a departure or variance when the offense results in a

25   significant disruption of a government function and where

1     the current guideline does not reflect the appropriate

2     punishment for that offense.

3           And the reason for that is, you know, as we talked

4     about the last time, clearly your conduct resulted in a

5     significant disruption of a government function, namely

6     halting of the certification, which is a constitutionally

7     required function of the Congress every four years as part

8     of the peaceful transfer of power.  And that is so

9     regardless of whether Section 1512(c)(2) applies and whether

10    the certification involves technically an administration of

11    justice or the administration of justice.

12          The Court also departs upwardly from the

13    guidelines range under 5K2.2, which permits an upward

14    departure where conduct or the relevant conduct is more

15    harmful or egregious than the typical case represented by

16    the otherwise applicable guidelines range; and, therefore,

17    the guidelines range does not fully account for the criminal

18    conduct.

19          I agree with the government that in a typical

20    civil disorder case or a typical obstruction case, which are

21    the two driving charges here, you know, your conduct, based

22    on all of the factors we have talked about, puts this case

23    outside the heartland of those typical cases.  Again, your

24    planning, bringing gas masks, MREs, dangerous weapons to the

25    scene, your purpose in coming, which was explicitly to be

1    part of a counterinsurgency, again, the historical

2    significance of the certification and the effect that your

3    conduct had on our democratic principles and the country

4    more generally, this is not just hyperbole.  These are very

5    real harms that not just you, but including you, caused on

6    January 6th.

7            And, again, perhaps most significantly your post-

8    arrest statements about harming law enforcement officers and

9    your accumulation of an arsenal of firearms, again, all make

10   this case outside the typical case that would carry a 37- to

11   46-month range.

12           Now, the Court can also consider other facts; what

13   you've done in jail.

14           I've read your memo, Mr. Rollins.

15           You know, I applaud you for engaging in the

16   programs that you have in prison.  I encourage you to

17   continue to do that.  But frankly, I would expect all

18   defendants to do those sorts of things.  That's what they're

19   there for, and that's why we call it rehabilitation for --

20   to give folks an opportunity to participate in those

21   programs.

22           So that leads to the final question.  What should

23   the upward variance be?

24           I decided last time that an 87-month sentence

25   would be a reasonable one based on all of the sentencing

1   factors that I had to consider at that time.  The only one

2   of those factors that has really changed here is the

3   guidelines range.  Okay?  And if I'm being honest with you

4   and with the government, which is what I always try to do,

5   if we were writing on a blank slate and everyone had agreed

6   back then that the correct guidelines was 37 to 46, I would

7   be hard-pressed to impose an upward variance of the

8   magnitude that would get me back up to 87.  Okay?

9            And frankly, I doubt if the government would have

10   recommended a variance at that level.  And that's because

11   the guidelines play a number of roles, but it -- they play

12   an independent role in grounding and tethering district

13   court sentences.  Right?  And so that's why we have to start

14   with the guidelines and justify going above them or below

15   them.  Right?  And there are lots of reasons for that, and

16   one of them is to avoid unnecessary, undue disparities.

17   Right?

18            And if Courts were to say, look, I think a

19   departure is necessary here or warranted but then just can

20   pick and choose a number at their choosing, I think that

21   contributes to disparities.  Right?  And the guidelines sort

22   of tether that, and they provide some gravity to that

23   process.  Right?   And I chose 87 in part last time because

24   that was a guidelines sentence.

25            Now, the guidelines sentence is something much

1    different.  Right?  And so I have to consider what those

2    guidelines are in determining what an appropriate departure

3    from them is in this case.

4          That is not science.  It's more art.  And while I

5    find that an 87-month sentence was perfectly appropriate and

6    reasonable to accomplish all of the purposes of sentencing

7    last time, including that guidelines number, I don't find

8    that that remains the case given the new guideline.

9          So with that, pursuant to the Sentencing Reform

10   Act of 1984 and in consideration of the provisions of 18 USC

11   3553, as well as the advisory sentencing guidelines, it is

12   the judgment of the Court that you, Thomas Robertson, are

13   hereby committed to the custody of the Bureau of Prisons for

14   concurrent terms of 72 months on Counts 3, 4, and 6, 60

15   months on Count 2, and six months on Count 5.

16         You are further sentenced to serve terms of 36

17   months of supervised release as to Counts 2, 3, 4, and 6.

18         In addition, you are ordered to pay a special

19   assessment of $100 on Counts 2, 3, 4, and 6 and $10 on Count

20   5 for a total of $410 in accordance with 18 USC 3013.

21         The Court finds, as it did last time, that you do

22   not have the ability to pay a fine and therefore waives the

23   imposition of a fine in this case.

24         All of the conditions of supervision imposed at

25   the initial sentence will remain in place.

1         Pursuant to 18 USC 3742, you have the right to

2    appeal the verdict and sentence.  If you choose to appeal

3    you must file any appeal within 14 days after the Court

4    enters judgment.  If you are unable to afford the cost of an

5    appeal, you may request permission from the Court to file an

6    appeal without cost to you.

7         As defined in 28 USC 2255, you also have the right

8    to challenge the conviction entered or sentence imposed if

9    new and currently unavailable information becomes available

10   to you or on a claim that you received ineffective

11   assistance of counsel in entering a plea of guilty to the

12   offenses of conviction or in connection with sentencing.  If

13   you are unable to afford the cost of an appeal, you may

14   request permission from the Court to file an appeal without

15   cost to you.

16         Any other objections to the sentence, Ms. Aloi?

17         MR. ALOI:  Not from the government, Your Honor.

18         THE COURT:  Mr. Rollins?

19         MR. ROLLINS:  We just didn't hear whether it was

20   concurrent.  It was all concurrent?

21         THE COURT:  Concurrent, yes.

22         And let me say, I mean, obviously we're here in

23   the context of January 6th, but, you know, in fashioning

24   sentences in these cases, the Court does keep in mind, you

25   know, white collar cases and fraud cases and gun cases and

1   drug cases.  And in terms of, you know, the purposes of the

2   guidelines and cabining the extent of departures upwards or

3   downwards from the guidelines, I think the same principles

4   apply here, or should apply here, as they would apply in any

5   other case, and the Court has endeavored to, you know, make

6   that approach uniform across cases.  All right?

7           Mr. Robertson, good luck to you the second time.

8   I assume I won't see you a third time, but continue to take

9   advantage of all these programs and put this behind you when

10  you get out.  Okay?

11          All right.  We're adjourned.

12          Counsel, just for the record, there was a

13  restitution imposed the last time.  That will stay the same,

14  I assume.  It has not been satisfied, I take it.

15          MR. ALOI:  Yes, Your Honor, it was $2,000 to the

16  Architect of the Capitol.

17          THE COURT:  All right.  We'll reimpose the $2,000

18  in restitution.

19          (Whereupon the hearing was

20           concluded at 12:16 p.m.)

21

22

23

24

25

1        **CERTIFICATE OF OFFICIAL COURT REPORTER**

2

3              I, LISA A. MOREIRA, RDR, CRR, do hereby

4     certify that the above and foregoing constitutes a true and

5     accurate transcript of my stenographic notes and is a full,

6     true and complete transcript of the proceedings to the best

7     of my ability.

8         Dated this 7th day of September, 2024.

9

10                              /s/Lisa A. Moreira, RDR, CRR
                                Official Court Reporter
11                              United States Courthouse
                                Room 6718
12                              333 Constitution Avenue, NW
13                              Washington, DC 20001

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$10** [1] - 64:19
**$100** [1] - 64:19
**$2,000** [2] - 66:15, 66:17
**$410** [1] - 64:20

**'**

**'22** [2] - 25:22, 26:1

**/**

**/s/Lisa** [1] - 67:10

**1**

**1** [17] - 2:3, 3:6, 3:17, 5:8, 5:9, 5:10, 5:24, 8:3, 9:4, 9:20, 10:3, 25:7, 57:16, 59:2, 59:7, 59:22, 60:1
**10** [1] - 57:13
**100** [1] - 32:13
**10:19** [1] - 1:5
**11th** [4] - 16:9, 16:10, 16:16, 16:18
**12** [1] - 47:9
**12:16** [1] - 66:20
**14** [7] - 5:11, 6:17, 8:1, 10:4, 10:5, 58:9, 65:3
**140** [1] - 54:24
**15** [1] - 57:8
**150** [1] - 47:2
**1512** [4] - 33:4, 49:11, 53:5, 54:15
**1512(c)(2** [3] - 3:8, 3:25, 61:9
**15th** [1] - 27:17
**17** [1] - 24:22
**18** [8] - 3:8, 5:19, 24:19, 24:23, 25:7, 64:10, 64:20, 65:1
**19** [3] - 5:21, 25:1, 29:9
**1984** [1] - 64:10
**1:21-cr-00034-CRC** [1] - 1:4

**2**

**2** [4] - 3:21, 64:15, 64:17, 64:19
**2.9** [1] - 32:14
**20-minute** [1] - 57:8
**20001** [2] - 1:22, 67:13
**20004** [1] - 1:19
**2017** [1] - 16:18
**202** [2] - 1:16, 1:19

**202-354-3187** [1] - 1:23
**2020** [3] - 3:9, 16:16, 29:9
**2022** [1] - 18:16
**2024** [2] - 1:4, 67:8
**20530** [1] - 1:15
**21** [5] - 8:2, 8:3, 10:8, 24:19, 59:7
**21-34** [2] - 2:3, 57:16
**2255** [1] - 65:7
**23-cr-427** [1] - 44:10
**231** [1] - 34:4
**252-6782** [1] - 1:16
**25th** [1] - 4:7
**27** [2] - 25:8, 59:13
**28** [1] - 65:7
**2J1.2** [1] - 5:11
**2J1.2(a** [1] - 58:10
**2J1.2(b)(1)(B** [1] - 9:7
**2J1.2(b)(2)** [2] - 9:7, 58:17
**2J1.2(b)(3** [1] - 7:9
**2J1.2(b)(3)(B** [1] - 7:22

**3**

**3** [6] - 3:21, 5:10, 24:19, 64:14, 64:17, 64:19
**30** [1] - 5:22
**3013** [1] - 64:20
**33** [2] - 25:8, 59:13
**333** [1] - 1:22, 67:12
**3553** [1] - 64:11
**3553(a** [13] - 28:6, 28:9, 28:12, 28:15, 30:4, 30:14, 35:4, 35:24, 37:7, 38:1, 38:16, 44:5, 60:21
**36** [1] - 64:16
**37** [1] - 5:22, 8:5, 35:15, 36:9, 36:23, 37:22, 54:1, 59:8, 60:20, 62:10, 63:6
**3742** [1] - 65:1
**3B1.1** [1] - 19:15
**3B1.1(c** [3] - 5:14, 6:18, 19:2
**3C1** [1] - 9:24
**3C1.1** [2] - 5:18, 9:20
**3d** [1] - 16:17

**4**

**4** [6] - 1:4, 3:22, 39:23, 64:14, 64:17, 64:19
**40** [1] - 45:15
**419** [1] - 1:18
**42** [1] - 45:15

**43** [1] - 35:15
**455-5610** [1] - 1:19
**46** [8] - 8:5, 36:9, 36:23, 37:22, 54:1, 59:9, 60:20, 63:6
**46-month** [1] - 62:11
**4th** [1] - 1:15

**5**

**5** [4] - 3:24, 4:2, 64:15, 64:20
**555** [1] - 1:15
**5K2.2** [2] - 35:9, 61:13
**5K2.7** [5] - 31:15, 34:25, 35:9, 44:8, 60:23
**5th** [1] - 47:9

**6**

**6** [15] - 3:25, 5:10, 6:10, 6:16, 8:10, 10:2, 18:24, 22:6, 49:21, 49:25, 58:8, 58:9, 64:14, 64:17, 64:19
**60** [1] - 64:14
**63** [1] - 42:25
**6718** [2] - 1:21, 67:12
**698** [1] - 16:17
**6th** [23] - 11:20, 12:23, 15:6, 16:7, 17:3, 18:14, 29:5, 29:17, 30:20, 30:22, 30:25, 33:17, 34:1, 40:4, 41:19, 43:13, 45:4, 47:12, 47:13, 51:18, 56:5, 62:6, 65:23

**7**

**72** [1] - 64:14
**752** [1] - 34:5
**7th** [2] - 47:10, 67:8

**8**

**80** [1] - 45:16
**827** [1] - 16:15
**86** [1] - 54:6
**87** [11] - 31:6, 35:18, 36:11, 37:3, 37:9, 44:5, 44:23, 54:22, 60:17, 63:8, 63:23
**87-month** [6] - 29:24, 46:4, 49:7, 52:14, 62:24, 64:5
**874** [1] - 16:17

**9**

**922(n** [1] - 43:22
**96** [2] - 35:19, 54:22
**96-month** [1] - 37:21
**967** [1] - 16:15

**A**

**a.m** [1] - 1:5
**abandoning** [1] - 34:21
**ability** [6] - 14:9, 21:25, 22:1, 22:10, 64:22, 67:7
**able** [6] - 17:4, 17:7, 17:21, 18:1, 23:21, 25:15
**absence** [1] - 41:4
**absolutely** [2] - 16:11, 46:6
**accept** [1] - 36:8
**acceptance** [1] - 60:14
**accepted** [1] - 59:12
**access** [5] - 14:17, 15:12, 27:5, 28:3, 60:12
**accident** [2] - 13:19, 48:3
**accomplice** [1] - 19:17
**accomplices** [1] - 19:13
**accomplish** [2] - 31:17, 64:6
**accordance** [1] - 64:20
**account** [10] - 9:21, 31:11, 31:16, 34:1, 36:18, 38:3, 42:6, 44:13, 46:7, 61:17
**accumulated** [1] - 60:11
**accumulation** [2] - 60:11, 62:9
**accurate** [1] - 67:5
**achievements** [1] - 41:14
**acknowledges** [1] - 32:25
**Act** [1] - 64:10
**Action** [1] - 1:3
**actions** [8] - 40:5, 47:11, 47:13, 48:12, 51:18, 53:6, 53:14, 53:17
**active** [1] - 44:16
**activity** [2] - 18:11, 27:24
**actual** [2] - 39:14, 48:22

**add** [3] - 10:11, 22:7, 25:14
**adding** [1] - 21:12
**addition** [5] - 24:13, 24:15, 31:12, 42:7, 64:18
**additional** [13] - 4:18, 6:18, 20:6, 21:12, 22:5, 22:7, 22:16, 23:13, 23:15, 23:21, 25:14, 59:11
**address** [3] - 28:12, 33:20, 46:13
**addressed** [1] - 54:18
**addressing** [2] - 46:11, 53:21
**adequately** [1] - 34:3
**adjourned** [1] - 66:11
**adjudged** [1] - 48:6
**adjusted** [5] - 5:19, 5:21, 8:1, 59:6, 59:7
**adjustment** [4] - 18:23, 19:5, 19:10, 58:13
**adjustments** [2] - 10:24, 31:13
**administration** [15] - 7:10, 7:11, 7:15, 8:13, 12:19, 14:2, 15:22, 21:20, 23:23, 33:15, 36:19, 38:4, 58:17, 61:10, 61:11
**adopt** [1] - 57:24
**adult** [1] - 40:2
**advance** [2] - 8:20, 8:23
**advantage** [1] - 66:9
**advisory** [3] - 8:4, 59:8, 64:11
**advocate** [3] - 18:25, 44:19, 49:3
**advocated** [3] - 38:1, 38:2, 39:18
**advocating** [1] - 35:17
**affect** [2] - 33:10, 58:3
**affected** [3] - 4:1, 15:15, 31:25
**affects** [3] - 49:24, 49:25, 52:13
**afford** [2] - 65:4, 65:13
**agents** [1] - 43:4
**aggravated** [1] - 24:3
**aggravating** [7] - 10:7, 18:22, 38:19, 38:22, 42:3, 52:4, 60:4
**ago** [1] - 35:13
**agree** [4] - 52:1, 58:8, 60:21, 61:19
**agreed** [5] - 14:22, 38:15, 38:22, 54:5,

63:5

**ahead** [2] - 8:25, 21:6
**aired** [1] - 8:22
**all-time** [1] - 31:4
**allege** [1] - 48:1
**alleging** [1] - 53:18
**allocution** [1] - 4:25
**allowed** [2] - 15:11, 56:6
**allows** [1] - 60:23
**almost** [2] - 18:16, 25:1
**Aloi** [14] - 2:7, 2:12, 3:14, 4:22, 6:13, 6:21, 7:19, 8:6, 10:10, 25:18, 28:11, 29:11, 53:24, 65:16
**ALOI** [44] - 1:13, 2:7, 3:16, 4:24, 6:14, 7:1, 8:7, 10:12, 10:19, 10:22, 11:6, 12:10, 12:12, 12:14, 12:17, 14:16, 17:21, 18:2, 18:8, 19:3, 25:25, 26:3, 26:22, 26:25, 28:14, 28:19, 29:13, 31:10, 35:20, 36:13, 36:16, 36:24, 37:13, 37:23, 38:16, 42:18, 45:1, 45:7, 45:12, 45:19, 45:25, 46:4, 65:17, 66:15
**alter** [1] - 59:16
**alternate** [2] - 37:19, 37:20
**Amendment** [1] - 22:25
**America** [2] - 2:4, 57:17
**AMERICA** [1] - 1:3
**ammo** [1] - 13:10
**amount** [2] - 27:21, 28:4
**analysis** [2] - 41:11, 58:9
**ANN** [1] - 1:13
**answer** [2] - 20:6, 42:22
**anticipate** [1] - 33:16
**anyway** [1] - 60:1
**appeal** [7] - 65:2, 65:3, 65:5, 65:6, 65:13, 65:14
**appearance** [2] - 2:9, 2:17
**APPEARANCES** [1] - 1:12
**appellate** [3] - 2:15, 20:21, 45:23
**applaud** [1] - 62:15

**applicable** [2] - 9:16, 61:16
**application** [5] - 3:4, 3:7, 30:4, 40:23, 58:19
**applied** [6] - 3:5, 6:19, 7:25, 9:20, 16:20, 18:23
**applies** [6] - 9:19, 9:24, 33:23, 58:18, 58:20, 61:9
**apply** [14] - 7:13, 9:24, 10:16, 13:24, 32:4, 33:8, 53:6, 53:7, 55:5, 55:7, 59:6, 66:4
**applying** [2] - 19:10, 37:1
**appreciate** [1] - 41:17
**approach** [3] - 2:5, 57:19, 66:6
**appropriate** [18] - 19:8, 30:14, 31:21, 33:10, 33:20, 35:1, 36:2, 36:22, 37:10, 37:11, 46:5, 50:19, 51:19, 52:15, 54:25, 61:1, 64:2, 64:5
**appropriately** [1] - 30:3, 41:15, 44:13, 51:20, 56:18
**April** [1] - 27:17
**Architect** [1] - 66:16
**architect** [1] - 53:19
**area** [1] - 3:23
**argued** [2] - 35:14, 41:20
**arguing** [1] - 23:3
**argument** [5] - 23:4, 25:17, 28:5, 55:4, 55:6
**arguments** [4] - 46:14, 54:17, 58:24, 59:2
**armed** [7] - 29:5, 29:8, 29:14, 38:8, 39:18, 44:14, 46:8
**arms** [2] - 47:19, 47:22
**Army** [2] - 40:22, 40:23
**arrest** [9] - 13:4, 13:7, 42:1, 42:7, 42:8, 43:2, 52:6, 60:9, 62:8
**arrested** [2] - 27:6, 29:19
**arrived** [1] - 60:17
**arsenal** [1] - 62:9
**art** [1] - 64:4
**aside** [1] - 45:13
**assault** [2] - 47:25,

48:2
**assaulted** [3] - 49:4, 49:5, 49:7
**assaultive** [2] - 50:22, 50:24
**assessment** [2] - 9:2, 64:19
**assistance** [1] - 65:11
**assume** [5] - 18:6, 36:20, 54:5, 66:8, 66:14
**assuming** [2] - 7:7, 26:17
**assure** [1] - 56:21
**attack** [5] - 15:6, 15:17, 20:14, 34:24, 39:17
**attacked** [1] - 28:23
**attacking** [1] - 34:20
**attain** [1] - 17:4
**attempt** [1] - 38:8
**attempting** [1] - 29:1
**attorney** [1] - 37:25
**ATTORNEY'S** [1] - 1:14
**August** [1] - 25:22
**authority** [4] - 19:11, 35:3, 58:4, 59:17
**authorized** [2] - 4:9, 31:23
**available** [3] - 17:9, 30:11, 65:9
**Avenue** [2] - 1:22, 67:12
**avid** [1] - 32:10
**avoid** [2] - 43:25, 63:16
**avoided** [2] - 27:8, 27:10
**awards** [1] - 41:1
**aware** [8] - 25:22, 27:23, 28:21, 45:4, 45:8, 45:17, 45:19, 50:17

## B

**b)(2** [1] - 10:6
**b)(3** [1] - 10:6
**back-and-forth** [1] - 24:4
**bad** [7] - 47:15, 49:18, 49:19, 50:7, 50:8, 56:6
**badge** [1] - 40:25
**baffled** [2] - 46:15, 49:10
**Baker** [8] - 2:24, 2:25, 5:24, 6:4, 6:5, 6:9, 8:9, 8:11

**ballot** [1] - 39:24
**Barrett** [1] - 33:21
**base** [6] - 3:6, 5:11, 6:16, 8:1, 10:3, 58:9
**based** [5] - 5:23, 36:11, 37:14, 38:3, 45:22, 48:25, 58:20, 61:21, 62:25
**basis** [3] - 21:10, 45:5, 47:25
**bat** [1] - 3:15
**because..** [1] - 21:5
**become** [2] - 40:3, 51:3
**becomes** [2] - 8:2, 65:9
**BEFORE** [1] - 1:10
**begin** [1] - 22:3
**behalf** [2] - 2:14, 2:24
**behavior** [3] - 47:15, 50:22, 56:19
**behind** [4] - 11:24, 47:25, 66:9
**believes** [1] - 48:25
**below** [2] - 38:23, 63:14
**ben** [1] - 29:10
**benchmarked** [1] - 44:1
**benefit** [1] - 41:2
**best** [1] - 67:6
**between** [5] - 14:13, 17:7, 18:10, 26:6, 43:5
**beyond** [4] - 49:15, 50:20, 55:9, 60:15
**big** [2] - 43:2, 47:17
**biggest** [1] - 42:23
**bit** [2] - 5:5, 29:12
**blame** [1] - 33:21
**blamed** [4] - 39:8, 41:4, 41:5, 41:6
**blank** [3] - 35:11, 35:12, 63:5
**block** [1] - 28:25
**blown** [1] - 49:24
**boastful** [2] - 48:15, 48:16
**boating** [1] - 13:19
**books** [2] - 53:9, 53:10
**box** [3] - 39:24, 40:4
**box...I** [1] - 39:25
**boxes** [2] - 19:17, 39:23
**break** [2] - 28:6, 55:24
**brief** [1] - 11:1
**briefly** [4] - 21:13, 25:19, 31:7, 51:2
**bring** [2] - 20:24, 28:1

**bringing** [2] - 40:5, 61:24
**Brock** [16] - 3:3, 7:13, 9:6, 15:18, 30:2, 32:21, 32:25, 33:14, 36:5, 37:14, 37:15, 42:2, 45:14, 49:13, 53:1, 59:24
**broken** [4] - 51:8, 51:9, 51:18, 52:17
**brought** [1] - 12:7
**building** [5] - 3:22, 3:24, 48:6, 48:18, 48:21
**bump** [1] - 38:24
**bunch** [1] - 29:15
**Bureau** [1] - 64:13
**bus** [1] - 59:3
**but..** [1] - 53:23
**bystander** [1] - 44:16

## C

**cabined** [1] - 26:18
**cabining** [1] - 66:2
**calculate** [1] - 58:7
**calculated** [5] - 35:13, 37:11, 37:22, 54:1, 58:5
**calculation** [14] - 4:6, 5:3, 6:5, 6:8, 6:10, 6:16, 8:10, 31:14, 36:9, 36:18, 46:23, 57:25, 58:2, 59:7
**calculations** [6] - 5:6, 5:10, 5:23, 9:3, 36:6, 59:3
**calendar** [1] - 27:18
**cannot** [1] - 39:25
**Capitol** [9] - 2:10, 3:24, 15:6, 15:17, 18:13, 28:23, 32:15, 47:15, 66:16
**captured** [2] - 34:3, 34:4
**captures** [1] - 34:23
**car** [1] - 47:14
**carried** [1] - 20:3
**carries** [1] - 6:16
**carry** [1] - 62:10
**cartridge** [2] - 39:25, 40:4
**Case** [3] - 2:3, 44:10, 57:16
**case** [40] - 4:1, 4:10, 5:17, 8:24, 9:13, 10:17, 10:20, 16:8, 16:16, 21:11, 22:4, 22:12, 23:6, 25:22, 27:10, 27:25, 28:1,

28:7, 35:2, 37:25, 43:4, 45:4, 45:5, 45:17, 46:17, 47:4, 47:7, 49:17, 50:23, 51:21, 61:15, 61:20, 61:22, 62:10, 64:3, 64:8, 64:23, 66:5
**cases** [13] - 2:10, 45:21, 45:23, 47:3, 47:23, 51:20, 61:23, 65:24, 65:25, 66:1, 66:6
**caught** [1] - 44:16
**caused** [8] - 21:19, 22:18, 23:9, 23:10, 23:13, 28:2, 31:2, 62:5
**cavorted** [1] - 41:4
**cell** [18] - 5:16, 6:11, 7:17, 7:24, 8:14, 20:12, 20:17, 20:20, 21:18, 22:3, 23:13, 23:15, 23:19, 23:20, 23:22, 25:16, 38:6, 38:7
**certainly** [1] - 17:22
**CERTIFICATE** [1] - 67:1
**certification** [12] - 3:8, 7:14, 32:7, 32:13, 33:1, 33:5, 34:7, 60:7, 61:6, 61:10, 62:2
**certify** [1] - 67:4
**cetera** [1] - 19:15
**challenge** [1] - 65:8
**CHAN** [1] - 1:18
**chance** [1] - 7:8
**change** [2] - 53:2, 53:3
**changed** [11] - 4:12, 23:12, 37:6, 46:19, 46:22, 47:1, 47:3, 52:11, 58:1, 63:2
**changes** [2] - 30:2, 40:16
**character** [1] - 43:8
**characteristic** [1] - 34:20
**characteristics** [5] - 31:13, 40:13, 47:8, 50:14, 54:11
**charge** [8] - 3:12, 22:4, 22:7, 47:22, 47:24, 48:4, 49:22
**charged** [6] - 14:15, 14:16, 23:17, 23:18, 26:14, 29:19
**charges** [11] - 15:23, 23:13, 23:14, 23:15, 23:16, 23:21, 23:24,

43:2, 49:11, 50:19, 61:21
**checks** [1] - 19:16
**choices** [1] - 50:7
**choose** [2] - 63:20, 65:2
**choosing** [1] - 63:20
**chose** [2] - 22:6, 63:23
**CHRISTOPHER** [1] - 1:10
**Circuit** [10] - 3:3, 3:4, 3:7, 4:14, 7:12, 16:10, 16:16, 16:18, 36:7
**circuit** [2] - 4:8, 4:16
**Circuit's** [3] - 32:21, 32:24, 35:14
**circumstances** [10] - 4:11, 4:17, 13:22, 13:25, 31:22, 38:14, 39:5, 40:12, 49:17, 59:16
**citations** [1] - 16:14
**cited** [3] - 10:17, 16:5, 28:7
**cites** [1] - 41:9
**citing** [1] - 16:17
**civil** [6] - 3:21, 47:22, 47:23, 48:4, 48:9, 61:20
**claim** [1] - 65:10
**claimed** [2] - 19:13, 40:22
**claiming** [1] - 22:12
**Class** [1] - 4:2
**clear** [11] - 4:15, 12:2, 12:8, 15:18, 20:15, 20:22, 31:10, 34:8, 40:14, 47:7, 53:22
**clearly** [5] - 19:21, 20:1, 20:25, 30:21, 61:4
**clicked** [1] - 36:11
**client** [1] - 2:14
**close** [2] - 54:17, 54:18
**co** [10] - 11:8, 11:15, 14:10, 15:10, 15:18, 17:7, 27:7, 27:9, 27:13, 34:9
**co-conspirator** [1] - 15:10
**co-conspirators** [2] - 15:18, 27:13
**co-defendant** [2] - 11:8, 34:9
**co-defendants** [1] - 11:15
**code** [1] - 33:19
**collar** [1] - 65:25

**colleagues** [1] - 30:3
**collect** [1] - 14:9
**collection** [1] - 14:3
**COLUMBIA** [1] - 1:1
**coming** [5] - 21:17, 46:14, 47:20, 60:5, 61:25
**comment** [3] - 7:5, 7:8, 19:15
**comments** [1] - 45:3
**Commission** [1] - 33:16
**commit** [1] - 41:24
**committed** [2] - 43:22, 64:13
**communicate** [1] - 12:22
**communications** [12] - 9:10, 14:5, 14:13, 16:25, 17:7, 17:18, 17:19, 17:23, 18:1, 18:3, 26:6, 26:11
**complete** [2] - 57:22, 67:6
**completely** [4] - 12:2, 23:18, 23:25, 51:18
**comply** [1] - 29:25
**concede** [1] - 48:8
**concern** [5] - 51:11, 51:12, 54:7, 56:17, 57:2
**concerned** [2] - 58:19, 58:21
**concerning** [1] - 5:15
**concluded** [1] - 66:20
**conclusion** [1] - 24:6
**concurrent** [4] - 64:14, 65:20, 65:21
**conditions** [3] - 15:1, 29:21, 64:24
**conduct** [31] - 3:23, 3:24, 14:8, 19:16, 29:23, 30:6, 30:8, 30:17, 32:1, 33:25, 37:5, 37:17, 39:4, 41:3, 41:20, 42:2, 42:8, 42:9, 44:11, 50:24, 52:3, 52:6, 52:12, 52:20, 52:21, 61:4, 61:14, 61:18, 61:21, 62:3
**conducting** [1] - 30:23
**cone** [1] - 52:8
**Cone** [1] - 2:15
**Coney** [1] - 33:21
**confidence** [2] - 41:23, 42:4
**confident** [1] - 36:16
**confined** [1] - 4:11
**confirmed** [1] - 43:22

**conflict** [1] - 43:3
**confronting** [2] - 36:8, 36:9
**Congress** [4] - 33:22, 34:12, 53:8, 61:7
**Congress's** [1] - 32:22
**connection** [4] - 5:7, 7:13, 7:17, 65:12
**consequence** [1] - 40:10
**consider** [13] - 8:21, 19:9, 26:19, 30:5, 32:3, 35:24, 37:8, 42:24, 46:6, 55:13, 62:12, 63:1, 64:1
**consideration** [6] - 4:23, 41:10, 42:5, 42:24, 59:4, 64:10
**considered** [2] - 8:12, 19:19
**considering** [2] - 9:23, 60:20
**consistent** [2] - 35:1, 44:8
**conspiracy** [4] - 14:19, 20:4, 42:14, 42:19
**conspirator** [5] - 9:11, 14:11, 15:10, 27:8, 27:10
**conspirators** [4] - 15:18, 17:8, 18:20, 27:13
**conspirators'** [1] - 17:1
**constitute** [1] - 53:17
**constituted** [1] - 60:13
**constitutes** [1] - 67:4
**Constitution** [2] - 1:22, 67:12
**constitutional** [1] - 32:23
**constitutionally** [1] - 61:6
**consult** [2] - 28:7, 28:8
**contact** [1] - 29:2
**contained** [1] - 9:10
**contemplate** [1] - 38:11
**contemplated** [1] - 37:17
**contemporaneous** [1] - 14:12
**context** [4] - 3:8, 10:23, 15:14, 65:23
**continue** [5] - 41:24, 42:14, 42:19, 62:17, 66:8
**continued** [1] - 44:19
**continues** [1] - 43:10

**contrast** [1] - 34:15
**contribute** [1] - 16:13
**contributes** [1] - 63:21
**control** [2] - 19:18, 19:25
**conversation** [1] - 53:25
**converses** [1] - 51:7
**convicted** [2] - 3:12, 29:18
**conviction** [9] - 3:20, 6:8, 6:16, 34:4, 34:5, 34:23, 65:8, 65:12
**COOPER** [1] - 1:10
**cooperate** [1] - 14:21
**core** [1] - 44:14
**correct** [10] - 6:9, 6:25, 7:1, 9:2, 12:14, 24:18, 34:11, 35:13, 36:6, 63:6
**corrupt** [1] - 50:12
**cost** [4] - 65:4, 65:6, 65:13, 65:15
**counsel** [8] - 2:5, 2:8, 2:15, 20:22, 23:1, 28:8, 65:11, 66:12
**counsel's** [1] - 2:16
**count** [4] - 6:10, 22:5, 33:5, 44:18
**Count** [30] - 3:5, 3:17, 3:21, 3:22, 3:24, 3:25, 4:2, 5:8, 5:9, 5:24, 6:10, 6:16, 8:10, 9:4, 9:20, 10:2, 10:3, 18:24, 22:6, 49:21, 49:25, 58:8, 58:9, 59:2, 59:22, 60:1, 64:15, 64:19
**counterinsurgency** [4] - 39:18, 40:2, 40:4, 62:1
**country** [3] - 30:25, 40:19, 62:3
**country's** [1] - 33:6
**Counts** [4] - 5:10, 64:14, 64:17, 64:19
**counts** [4] - 3:20, 4:1, 5:20, 29:18
**couple** [3] - 5:5, 25:23, 27:15
**court** [2] - 50:18, 63:13
**COURT** [80] - 1:1, 2:11, 2:18, 2:20, 2:25, 3:18, 4:22, 5:2, 6:2, 6:15, 7:2, 8:8, 8:18, 8:20, 10:9, 10:14, 10:21, 11:5, 12:8, 12:11, 12:13, 12:15, 14:15, 17:17,

17:25, 18:6, 19:2, 20:8, 20:15, 21:2, 21:4, 24:12, 24:18, 24:21, 25:4, 25:7, 25:10, 25:18, 26:1, 26:16, 26:23, 28:4, 28:18, 29:11, 31:9, 35:6, 35:21, 36:15, 36:20, 37:12, 37:18, 38:15, 42:16, 42:17, 44:24, 45:2, 45:11, 45:13, 45:20, 46:3, 46:9, 46:13, 46:19, 46:22, 51:25, 52:23, 53:24, 55:10, 55:21, 55:23, 56:1, 56:4, 57:5, 57:7, 57:12, 57:18, 65:18, 65:21, 66:17, 67:1

**Court** [72] - 1:20, 1:21, 3:5, 4:4, 4:9, 4:10, 8:21, 8:24, 11:2, 14:25, 19:4, 19:9, 20:7, 20:25, 22:21, 24:1, 24:9, 25:12, 26:19, 29:6, 30:5, 30:7, 30:10, 30:12, 31:5, 31:22, 32:3, 32:4, 33:7, 33:9, 34:10, 35:3, 35:24, 36:10, 38:21, 39:3, 39:7, 39:13, 39:17, 41:12, 42:24, 43:7, 43:19, 44:1, 44:9, 44:22, 45:5, 46:2, 46:6, 49:6, 50:16, 51:22, 52:19, 52:22, 52:24, 52:25, 54:5, 54:23, 55:13, 55:19, 58:12, 58:18, 61:12, 62:12, 64:12, 64:21, 65:3, 65:5, 65:14, 65:24, 66:5, 67:11

**Court's** [14] - 2:15, 4:23, 15:13, 22:2, 30:4, 33:18, 36:2, 41:10, 43:16, 51:11, 51:12, 53:21, 54:7, 59:16

**courthouse** [1] - 47:1

**Courthouse** [2] - 1:21, 67:11

**courtroom** [1] - 11:11

**COURTROOM** [2] - 2:2, 57:15

**Courts** [2] - 30:1, 63:18

**covert** [1] - 26:5

**credibility** [1] - 20:14

**credit** [1] - 41:16

**crime** [9] - 17:1, 17:13, 19:13, 30:20, 31:3, 32:11, 33:20, 38:5, 41:1

**crimes** [4] - 12:23, 34:17, 41:19, 41:24

**criminal** [11] - 8:4, 9:12, 9:13, 14:8, 15:16, 15:23, 16:21, 20:3, 33:19, 54:11, 61:17

**Criminal** [4] - 1:3, 2:3, 8:3, 57:16

**criteria** [1] - 32:1

**critical** [3] - 22:10, 22:11, 32:8

**crowd** [1] - 44:16

**CRR** [3] - 1:20, 67:3, 67:10

**Crypt** [1] - 11:14

**crystal** [1] - 20:22

**culpability** [1] - 54:3

**current** [1] - 61:1

**custody** [1] - 64:13

# D

**D.C** [7] - 3:3, 4:14, 32:21, 32:24, 35:14, 36:7, 60:6

**damage** [3] - 30:25, 31:2, 32:14

**Dan** [1] - 44:9

**dangerous** [5] - 3:22, 3:23, 48:5, 48:7, 61:24

**data** [2] - 16:25, 17:9

**date** [2] - 18:3, 18:18

**Dated** [1] - 67:8

**daughter** [1] - 51:7

**days** [1] - 65:3

**DC** [4] - 1:15, 1:19, 1:22, 67:13

**de** [6] - 4:9, 4:15, 20:25, 21:7, 25:13, 52:9

**Deacon** [1] - 43:6

**deal** [1] - 19:18

**December** [1] - 29:9

**decided** [4] - 14:20, 36:5, 36:6, 62:24

**decision** [10] - 9:6, 19:11, 32:21, 33:14, 33:18, 35:2, 37:14, 53:11, 55:20, 60:15

**decision-making** [1] - 19:11

**decisions** [5] - 37:14, 37:15, 53:2, 55:15, 55:17

**dedicated** [1] - 50:10

**deeds** [1] - 41:11

**defendant** [23] - 11:6, 11:8, 13:8, 15:25, 26:7, 31:6, 31:25, 32:20, 33:4, 33:24, 34:9, 36:25, 38:20, 39:6, 39:8, 39:14, 39:17, 40:14, 40:17, 41:9, 42:4, 42:10, 43:11

**Defendant** [13] - 1:7, 1:17, 2:3, 11:6, 11:13, 11:18, 12:6, 13:2, 13:5, 28:21, 32:10, 34:1, 57:16

**DEFENDANT** [5] - 2:22, 55:25, 56:3, 56:5, 57:6

**defendant's** [18] - 19:16, 29:4, 29:7, 29:23, 30:5, 30:6, 30:16, 33:25, 37:5, 38:9, 39:4, 41:11, 42:1, 42:11, 43:1, 43:12, 44:11, 46:7

**defendants** [3] - 11:15, 44:6, 62:18

**defense** [2] - 4:19, 41:20

**defense's** [1] - 59:12

**defined** [1] - 65:7

**definitions** [1] - 16:23

**degree** [1] - 19:14

**delay** [1] - 28:2

**deletes** [1] - 17:11

**delivering** [1] - 15:4

**democracy** [8] - 32:19, 34:21, 34:24, 39:17, 46:8, 50:6, 50:9, 53:19

**democratic** [4] - 32:22, 34:18, 60:8, 62:3

**demonstrates** [2] - 33:15, 33:19

**depart** [1] - 59:18

**departed** [1] - 45:5

**Department** [1] - 40:24

**department** [1] - 11:10

**departs** [1] - 61:12

**departure** [25] - 28:16, 30:16, 31:8, 31:14, 31:19, 32:4, 33:8, 34:25, 35:8, 35:17, 36:22, 37:16, 37:17, 38:3, 45:18, 45:24, 46:1, 46:12, 46:16, 47:7, 54:4, 60:24,

61:14, 63:19, 64:2

**departures** [4] - 30:11, 44:7, 45:21, 66:2

**DEPUTY** [2] - 2:2, 57:15

**deputy** [1] - 11:11

**derailed** [1] - 32:22

**describe** [1] - 53:13

**described** [4] - 13:10, 31:13, 39:14, 42:1

**designed** [1] - 57:22

**despite** [1] - 42:20

**destroy** [3] - 5:16, 19:22, 53:19

**destroyed** [7] - 13:14, 13:16, 14:14, 16:20, 16:22, 17:5, 17:15

**destroying** [2] - 19:23, 41:7

**destruct** [1] - 28:23

**destruction** [9] - 5:16, 7:17, 16:3, 18:5, 20:12, 20:20, 21:18, 38:6, 38:7

**detail** [2] - 28:20, 43:18

**details** [1] - 26:4

**determination** [3] - 28:9, 36:2, 52:14

**determined** [1] - 9:4

**determining** [1] - 64:2

**deterrence** [4] - 31:4, 41:22, 42:9, 50:16

**device** [1] - 43:23

**dictate** [1] - 30:4

**difference** [2] - 55:16, 55:17

**different** [3] - 17:10, 30:7, 64:1

**differently** [1] - 35:22

**differing** [1] - 47:5

**differs** [1] - 24:21

**direction** [1] - 58:15

**directly** [1] - 13:25

**disagree** [2] - 35:8, 39:16

**disavowed** [1] - 5:8

**discovery** [1] - 28:2

**discussed** [4] - 6:23, 38:18, 54:3, 57:20

**discussion** [3] - 21:15, 28:10, 33:14

**discussions** [1] - 24:3

**disenfranchised** [1] - 40:1

**disjunctive** [1] - 19:6

**dismiss** [1] - 3:17

**dismissal** [2] - 3:11, 33:4

**dismissed** [1] - 60:1

**disorder** [6] - 3:21, 47:22, 47:24, 48:4, 48:10, 61:20

**disorderly** [2] - 3:23, 3:24

**disparities** [3] - 44:1, 63:16, 63:21

**dispute** [4] - 24:13, 26:16, 33:2, 49:18

**disputed** [1] - 58:11

**disregard** [3] - 29:20, 43:16, 59:25

**disregarded** [1] - 59:23

**disregarding** [1] - 29:20

**disrupt** [4] - 34:2, 34:7, 44:14, 46:7

**disrupted** [1] - 33:1

**disrupting** [1] - 44:18

**disruption** [8] - 30:17, 30:22, 31:20, 31:24, 32:5, 60:7, 60:25, 61:5

**disruptive** [1] - 53:6

**dissent** [1] - 33:21

**dissuaded** [2] - 56:19, 56:22

**District** [1] - 16:19

**DISTRICT** [3] - 1:1, 1:1, 1:11

**district** [2] - 30:21, 63:12

**document** [2] - 9:18, 12:23

**documented** [4] - 13:14, 16:6, 38:8, 43:17

**documenting** [1] - 16:25

**documents** [1] - 23:7

**done** [5] - 6:7, 25:20, 30:25, 56:20, 62:13

**double** [1] - 35:17

**doubt** [4] - 14:25, 32:6, 34:6, 63:9

**dovetails** [1] - 45:2

**down** [5] - 22:8, 29:11, 42:16, 42:17, 57:10

**downward** [2] - 51:22, 60:3

**downwards** [1] - 66:3

**drafting** [1] - 33:17

**drastically** [1] - 30:7

**drive** [1] - 26:10

**drives** [2] - 6:11, 58:8

**driving** [4] - 5:23, 9:5, 10:2, 61:21

**drove** [1] - 59:2

**drug** [1] - 66:1

**due** [1] - 60:4
**during** [1] - 27:22
**duty** [1] - 42:22

## E

**Eastern** [1] - 16:19
**effect** [3] - 14:6, 60:7, 62:2
**efficient** [1] - 27:14
**effort** [1] - 27:21
**efforts** [1] - 11:7
**egregious** [4] - 44:12, 47:4, 50:21, 61:15
**eight** [7] - 37:2, 38:24, 49:12, 52:2, 54:14, 59:21
**eight-level** [1] - 59:21
**eight-point** [4] - 38:24, 49:12, 52:2, 54:14
**elected** [1] - 22:4
**election** [5] - 11:8, 32:25, 34:7, 39:7, 42:20
**electoral** [2] - 32:7, 33:6
**elements** [1] - 50:23
**eleventh** [1] - 14:21
**ELIZABETH** [1] - 1:13
**ELMO** [2] - 10:22, 29:7
**employer** [1] - 40:21
**encourage** [1] - 62:16
**end** [2] - 26:10, 60:18
**endangered** [2] - 32:21, 34:18
**endeavor** [1] - 28:20
**endeavored** [1] - 66:5
**enforcement** [5] - 28:25, 43:9, 44:20, 60:10, 62:8
**engage** [2] - 4:9, 24:1
**engaged** [5] - 47:15, 52:3, 52:12, 53:24, 54:15
**engaging** [1] - 62:15
**enhancement** [23] - 5:17, 7:3, 7:9, 7:12, 7:22, 8:14, 10:24, 14:1, 16:2, 16:3, 19:10, 36:10, 49:13, 58:10, 58:12, 58:16, 58:18, 58:21, 59:5, 59:21, 59:24, 59:25
**enhancements** [8] - 3:5, 6:23, 7:25, 8:12, 9:5, 10:13, 13:24, 20:6
**entered** [3] - 2:9, 2:17, 65:8
**entering** [3] - 3:21,

48:5, 65:11
**enters** [1] - 65:4
**entire** [2] - 48:20, 50:13
**entirely** [1] - 59:25
**environment** [2] - 20:3, 44:7
**especially** [8] - 7:23, 8:15, 9:18, 16:9, 16:11, 16:23, 17:12, 24:13
**ESQ** [3] - 1:13, 1:14, 1:17
**essential** [5] - 9:18, 16:9, 16:11, 17:15, 32:17
**essentially** [9] - 21:12, 52:25, 53:1, 53:7, 53:11, 53:18, 54:20, 55:14, 55:16
**establish** [1] - 16:12
**et** [1] - 19:15
**events** [2] - 11:19, 19:1
**eventually** [1] - 24:6
**evidence** [18] - 4:10, 12:9, 12:21, 14:4, 14:5, 14:6, 14:10, 16:20, 16:22, 16:23, 17:2, 17:5, 17:15, 20:1, 20:24, 28:24, 39:2, 42:21
**evidenced** [1] - 58:14
**exact** [2] - 36:20, 50:19
**exaggerated** [1] - 40:18
**exaggerating** [1] - 41:13
**example** [3] - 17:6, 17:10, 26:9
**except** [3] - 4:2, 4:16, 57:24
**exception** [1] - 56:24
**excuses** [1] - 41:3
**exemplified** [3] - 33:13, 39:20, 40:5
**exercise** [2] - 19:11, 19:25
**exercised** [1] - 19:18
**exhibits** [1] - 5:1
**exist** [3] - 4:14, 14:14, 26:8
**existed** [2] - 17:2, 26:11
**existence** [6] - 18:9, 26:21, 26:24, 56:25, 58:11, 58:23
**expect** [1] - 62:17
**expenditure** [1] - 27:3

**experience** [1] - 46:24
**explained** [1] - 60:16
**explicitly** [1] - 61:25
**explosive** [1] - 43:23
**expressly** [1] - 31:18
**extensive** [1] - 51:25
**extent** [4] - 15:15, 31:24, 41:14, 66:2
**eyes** [1] - 35:14

## F

**face** [1] - 34:17
**Facebook** [3] - 17:6, 17:11, 49:20
**fact** [17] - 9:23, 13:14, 16:13, 18:4, 21:23, 22:16, 25:16, 30:2, 33:12, 35:25, 40:7, 40:9, 46:18, 47:5, 48:2, 49:10, 54:13
**factor** [4] - 32:2, 33:7, 35:24, 42:3
**factors** [24] - 19:9, 28:6, 28:12, 28:15, 30:5, 30:14, 35:4, 36:23, 37:7, 38:1, 38:14, 38:17, 38:19, 38:22, 41:10, 44:6, 46:5, 52:4, 57:21, 60:4, 60:21, 61:22, 63:1, 63:2
**facts** [16] - 4:10, 4:11, 4:13, 11:2, 26:19, 26:20, 26:23, 34:15, 46:16, 46:19, 46:25, 47:3, 49:1, 58:2, 60:2
**failed** [1] - 33:16
**failure** [2] - 33:22, 38:3
**fair** [4] - 17:13, 17:14, 28:4, 38:10
**fairly** [1] - 4:15
**falls** [1] - 15:19
**false** [1] - 40:25
**familiar** [2] - 11:22, 39:22
**family** [4] - 51:5, 56:8, 56:13, 56:24
**far** [1] - 24:8
**far-fetched** [1] - 24:8
**fashioning** [1] - 65:23
**father** [1] - 19:19
**FBI** [1] - 17:18
**federal** [2] - 43:20, 60:13
**feelings** [1] - 52:16
**felonies** [1] - 4:2
**felony** [3] - 23:8, 43:20, 48:10

**fetched** [1] - 24:8
**few** [4] - 48:21, 50:20, 50:21, 56:24
**fiasco** [1] - 27:9
**Fifth** [1] - 22:25
**fighting** [1] - 40:2
**figure** [4] - 19:20, 27:19, 47:5, 49:23
**file** [4] - 47:20, 65:3, 65:5, 65:14
**filed** [2] - 23:14, 51:20
**final** [1] - 62:22
**finally** [3] - 43:14, 43:25, 60:13
**findings** [5] - 28:13, 52:1, 52:9, 52:13, 57:24
**fine** [4] - 2:18, 5:2, 36:20, 56:3, 64:22, 64:23
**firearms** [10] - 15:2, 15:12, 18:12, 27:9, 27:12, 29:21, 43:19, 43:20, 60:12, 62:9
**first** [23] - 6:22, 7:16, 14:1, 19:4, 21:8, 22:20, 26:24, 28:12, 30:15, 31:7, 32:4, 33:3, 33:7, 35:19, 36:7, 45:9, 45:10, 46:11, 48:14, 52:13, 58:23, 60:3, 60:23
**Fischer** [19] - 3:7, 4:1, 30:2, 30:3, 30:9, 33:4, 33:18, 33:21, 36:5, 37:14, 37:15, 42:2, 44:7, 45:14, 49:12, 53:1, 53:5, 55:15, 60:2
**fit** [2] - 26:18, 50:23
**fits** [3] - 16:22, 32:1, 37:16
**five** [3] - 21:8, 26:2, 48:10
**five-year** [1] - 48:10
**flagrantly** [1] - 29:20
**floor** [2] - 28:18, 48:19
**flushed** [1] - 20:19
**focus** [2] - 11:15, 20:21
**focused** [2] - 10:25, 27:25
**foil** [1] - 14:3
**folks** [1] - 62:20
**followed** [1] - 50:7
**following** [2] - 3:10, 33:4
**follows** [1] - 3:3
**food** [1] - 12:7
**FOR** [1] - 1:1

**force** [1] - 34:23
**foregoing** [1] - 67:4
**formation** [1] - 47:20
**forth** [1] - 24:4
**forward** [1] - 18:19
**foundational** [2] - 32:18, 33:6
**four** [2] - 47:2, 61:7
**Fracker** [22] - 11:9, 11:13, 12:5, 12:20, 12:22, 12:25, 13:3, 13:7, 13:9, 13:10, 14:20, 15:24, 19:19, 19:22, 20:2, 22:8, 26:7, 26:8, 41:6, 58:15
**Fracker's** [3] - 14:4, 14:8, 19:23
**frankly** [4] - 46:13, 49:22, 51:21, 52:18, 62:17, 63:9
**fraud** [2] - 40:1, 65:25
**free** [1] - 7:5
**Friedman** [1] - 44:4
**friend** [2] - 41:5, 43:6
**friends** [3] - 40:21, 56:9, 56:24
**front** [2] - 56:15, 56:21
**fruits** [1] - 19:13
**full** [7] - 17:8, 18:16, 18:17, 21:15, 27:23, 67:5
**fully** [4] - 8:22, 11:19, 33:20, 61:17
**function** [14] - 30:18, 30:23, 31:20, 31:25, 32:6, 32:8, 32:17, 33:1, 34:2, 44:14, 46:8, 60:25, 61:5, 61:7
**fundamental** [1] - 32:18
**furnish** [1] - 16:12

## G

**gas** [3] - 11:25, 40:5, 61:24
**general** [2] - 33:12, 60:14
**generally** [2] - 33:23, 62:4
**given** [9] - 31:13, 36:22, 38:23, 40:25, 41:24, 46:16, 50:19, 58:22, 64:8
**goal** [1] - 29:4
**governance** [1] - 33:7
**government** [80] - 2:6, 3:10, 3:16, 5:8, 6:7,

6:17, 6:24, 7:3, 7:8, 7:15, 7:21, 9:24, 10:12, 12:2, 12:13, 14:12, 14:17, 14:21, 15:7, 17:4, 17:6, 18:6, 20:23, 21:8, 21:21, 21:24, 22:4, 23:14, 23:16, 25:14, 25:20, 26:6, 26:13, 26:14, 27:3, 27:5, 27:6, 27:8, 27:19, 28:14, 30:18, 31:5, 32:6, 32:8, 32:17, 33:1, 34:2, 37:21, 37:23, 37:24, 44:14, 45:4, 45:6, 45:7, 45:16, 46:7, 47:6, 48:1, 48:25, 49:2, 49:6, 49:23, 50:4, 50:5, 50:11, 50:16, 51:24, 52:25, 53:7, 54:1, 58:8, 58:22, 59:1, 60:21, 60:25, 61:5, 61:19, 63:4, 63:9, 65:17
**government's** [16] - 4:25, 6:4, 6:11, 6:15, 6:21, 8:9, 9:8, 14:9, 15:16, 19:7, 21:17, 46:12, 48:13, 53:18, 54:17, 59:6
**governmental** [2] - 31:20, 31:25
**grain** [1] - 41:13
**granted** [1] - 21:13
**gravity** [1] - 63:22
**great** [3] - 19:18, 28:20, 43:18
**greater** [3] - 29:24, 37:3, 48:17
**greatest** [1] - 56:17
**GREGORY** [1] - 1:14
**Gregory** [1] - 2:8
**grounding** [1] - 63:12
**grounds** [1] - 60:22
**group** [2] - 5:20, 5:23
**grouped** [1] - 5:10
**grouping** [1] - 6:8
**guess** [6] - 6:2, 35:7, 37:13, 46:11, 47:16, 55:1
**guidance** [1] - 16:10
**guideline** [13] - 4:6, 5:11, 5:12, 9:5, 10:2, 31:23, 35:13, 36:1, 51:19, 58:2, 59:22, 61:1, 64:8
**Guideline** [2] - 58:10, 60:23
**guidelines** [65] - 3:5,

5:4, 5:14, 5:22, 6:12, 8:5, 8:22, 28:8, 28:9, 30:12, 31:10, 31:14, 31:15, 31:18, 31:21, 33:10, 33:13, 33:17, 33:25, 34:14, 34:15, 34:20, 35:23, 36:18, 36:23, 37:7, 37:11, 38:11, 38:23, 39:1, 41:11, 44:12, 44:13, 46:5, 46:6, 46:23, 49:16, 50:20, 54:9, 54:13, 54:21, 54:25, 55:5, 55:7, 55:8, 57:25, 59:8, 59:12, 59:18, 60:18, 61:13, 61:16, 61:17, 63:3, 63:6, 63:11, 63:14, 63:21, 63:24, 63:25, 64:2, 64:7, 64:11, 66:2, 66:3
**guilty** [4] - 14:22, 48:9, 53:3, 65:11
**gun** [2] - 40:25, 65:25
**guns** [3] - 15:3, 15:9, 60:10
**guy** [1] - 52:16

## H

**hall** [2] - 48:22
**halting** [1] - 61:6
**happy** [1] - 20:6
**hard** [2] - 40:1, 63:7
**hard-pressed** [1] - 63:7
**harmed** [1] - 56:13, 56:14
**harmful** [2] - 44:12, 61:15
**harming** [1] - 60:9, 62:8
**harms** [1] - 62:5
**hear** [2] - 10:11, 65:19
**heard** [5] - 8:16, 10:13, 22:21, 28:15, 39:3
**hearing** [10] - 19:5, 21:1, 21:7, 25:13, 29:22, 30:15, 33:5, 48:15, 57:21, 66:19
**hearings** [1] - 44:4
**heartland** [1] - 61:23
**held** [1] - 16:10
**HELD** [1] - 1:10
**helpful** [2] - 10:20, 16:15
**hereby** [1] - 64:13, 67:3
**hierarchical** [1] - 20:1
**high** [4] - 31:4, 49:3,

49:6, 55:7
**himself** [1] - 40:9
**historic** [1] - 30:20
**historical** [2] - 60:6, 62:1
**History** [1] - 8:3
**history** [7] - 8:4, 40:13, 41:13, 47:8, 50:14, 54:10, 54:12
**hit** [2] - 47:21, 54:14
**hold** [2] - 17:17, 29:1
**holding** [1] - 32:24
**home** [5] - 15:3, 19:22, 26:10, 43:23, 49:19
**honest** [1] - 63:3
**honestly** [1] - 35:17
**Honor** [42] - 2:2, 2:7, 2:13, 2:23, 3:16, 4:21, 4:24, 6:14, 7:1, 8:7, 8:17, 8:19, 9:1, 10:1, 10:12, 12:14, 14:16, 18:8, 25:25, 26:3, 26:22, 26:25, 28:14, 28:21, 29:22, 30:14, 35:4, 35:20, 36:13, 36:24, 41:22, 42:1, 42:10, 43:21, 44:20, 45:7, 45:8, 54:2, 56:5, 57:15, 65:17, 66:15
**Honor's** [1] - 44:15
**HONORABLE** [1] - 1:10
**hour** [1] - 14:21
**house** [1] - 13:9
**hyperbole** [2] - 30:19, 62:4

## I

**identical** [2] - 25:2
**identified** [1] - 27:3
**identify** [1] - 2:5
**illness** [1] - 39:9
**illustrative** [1] - 39:3
**image** [1] - 11:21, 17:24
**imagination** [1] - 33:22
**imagine** [1] - 37:19
**immediately** [1] - 39:6
**impact** [2] - 12:18, 30:10
**impeded** [1] - 14:9
**importance** [1] - 31:24
**important** [2] - 15:14, 19:24
**importantly** [2] - 34:22, 60:8
**impose** [3] - 44:22,

55:24, 63:7
**imposed** [6] - 10:18, 31:1, 59:10, 64:24, 65:8, 66:13
**imposition** [1] - 64:23
**improper** [2] - 23:8, 27:2
**IN** [1] - 1:1
**inappropriate** [1] - 41:6
**incarcerated** [1] - 46:24
**incarceration** [1] - 31:6
**incident** [1] - 13:6
**include** [1] - 19:10
**included** [3] - 5:9, 15:2, 43:3
**includes** [1] - 27:1
**including** [4] - 13:17, 44:19, 62:5, 64:7
**incorporate** [1] - 57:24
**increase** [4] - 5:20, 6:17, 31:22, 52:2
**increased** [2] - 5:12, 53:16
**increases** [2] - 6:19, 10:16
**incredulous** [1] - 55:12
**independent** [2] - 36:1, 63:12
**indicate** [1] - 23:7
**indicated** [6] - 3:11, 9:25, 25:13, 44:4, 48:2, 59:21
**indictment** [4] - 3:17, 27:13, 27:20, 43:21
**individual** [3] - 11:17, 11:18, 12:3
**individuals** [2] - 29:15, 49:7
**ineffective** [1] - 65:10
**information** [6] - 9:22, 15:11, 18:15, 22:9, 25:21, 65:9
**initial** [3] - 54:16, 57:3, 64:25
**injured** [1] - 32:13
**instance** [1] - 57:4
**instead** [1] - 27:15
**instructions** [1] - 5:16
**intended** [1] - 31:16
**intent** [7] - 34:1, 34:2, 34:7, 34:23, 39:19, 44:13, 46:7
**interfere** [1] - 34:12
**interfered** [4] - 9:12, 15:22, 23:23, 34:18
**interference** [12] -

7:10, 8:13, 14:2, 20:23, 21:11, 21:20, 23:5, 24:16, 27:1, 32:25, 36:19, 38:4
**interfering** [1] - 9:13
**interrupted** [1] - 32:13
**invested** [1] - 27:20
**investigated** [2] - 43:4, 43:9
**investigation** [17] - 9:12, 11:12, 11:16, 14:7, 14:10, 15:16, 15:17, 15:19, 16:21, 22:14, 22:18, 23:8, 23:11, 26:5, 27:11, 27:12, 27:14
**invited** [1] - 13:4
**involve** [1] - 7:14
**involved** [2] - 7:23, 12:21
**involvement** [1] - 25:23
**involves** [2] - 9:17, 61:10
**involving** [1] - 6:11
**issue** [5] - 5:17, 7:3, 7:7, 20:14, 20:19, 22:24, 52:18
**issues** [8] - 6:2, 8:16, 8:22, 20:11, 21:24, 25:14, 26:23, 47:18
**itself** [3] - 20:13, 41:1, 55:19

## J

**Jacob** [1] - 11:9
**jail** [2] - 40:16, 62:13
**January** [28] - 11:20, 12:23, 15:6, 16:7, 17:3, 18:14, 18:16, 27:6, 27:17, 29:5, 29:17, 30:20, 30:21, 30:25, 33:16, 34:1, 40:4, 41:19, 43:13, 45:4, 47:9, 47:10, 47:12, 47:13, 51:18, 56:5, 62:6, 65:23
**job** [2] - 38:13, 51:5
**join** [2] - 27:20, 29:17
**joined** [3] - 27:12, 28:23, 32:11
**Juarez** [1] - 16:15
**Judge** [4] - 30:3, 33:3, 35:1, 44:3
**judge** [1] - 33:3
**JUDGE** [1] - 1:11
**judges** [2] - 30:20, 50:17
**judgment** [2] - 64:12,

65:4
**July** [1] - 4:7
**jury** [8] - 12:5, 12:20, 20:18, 34:7, 34:10, 39:24, 41:8, 48:7
**justice** [19] - 3:25, 5:15, 6:10, 7:11, 7:15, 8:13, 9:21, 12:19, 14:2, 15:23, 21:20, 23:5, 23:23, 33:15, 36:19, 38:4, 58:17, 61:11
**Justice** [1] - 33:20
**justified** [1] - 35:9
**justify** [2] - 36:10, 63:14

### K

**keep** [2] - 43:11, 65:24
**Kelly** [1] - 33:3
**Kelly's** [1] - 35:2
**key** [1] - 15:11
**kids** [2] - 51:6, 51:7
**kind** [4] - 20:12, 25:14, 53:23, 55:11
**knowledge** [1] - 6:23
**known** [3] - 22:15, 25:20, 27:7
**knows** [1] - 29:15

### L

**lab** [1] - 43:22
**lack** [1] - 60:14
**lacks** [1] - 33:19
**laid** [1] - 49:18
**lake** [1] - 13:18
**Lamberth** [1] - 30:3
**landed** [1] - 37:3
**language** [1] - 48:14
**large** [3] - 54:14, 59:24, 60:11
**last** [14] - 25:19, 35:3, 40:16, 52:1, 56:17, 57:21, 57:22, 59:20, 61:4, 62:24, 63:23, 64:7, 64:21, 66:13
**latter** [1] - 41:12
**law** [23] - 10:17, 10:20, 16:8, 23:6, 28:7, 28:25, 29:20, 34:21, 41:25, 43:9, 43:15, 44:20, 44:21, 49:25, 50:1, 53:8, 53:10, 53:12, 55:18, 55:19, 60:9, 62:8
**lead** [1] - 27:13
**leader** [7] - 5:13, 6:18, 19:6, 24:5, 24:7, 24:14, 58:13

**leaders** [1] - 50:7
**leadership** [3] - 49:1, 50:22, 50:25
**leading** [1] - 5:21
**leads** [1] - 62:22
**learn** [1] - 14:18
**learned** [3] - 14:19, 18:13, 18:15
**least** [6] - 25:21, 25:23, 29:2, 34:11, 44:6, 52:5
**leave** [2] - 57:9, 57:11
**leaves** [2] - 48:24, 58:16
**led** [2] - 5:10, 5:19
**left** [1] - 11:25
**legal** [2] - 52:18, 52:19
**legislators** [1] - 32:12
**legitimate** [1] - 39:23
**leniency** [1] - 41:21
**less** [2] - 23:13, 43:12
**lessens** [1] - 20:13
**lesser** [1] - 23:16
**letter** [1] - 43:7
**level** [25] - 3:6, 5:11, 5:19, 5:21, 6:17, 6:19, 7:9, 7:21, 8:1, 8:2, 8:3, 8:14, 10:3, 10:8, 14:1, 34:17, 58:9, 58:10, 58:12, 58:16, 59:7, 59:21, 59:22, 63:10
**Level** [1] - 24:19
**levels** [2] - 20:16, 59:11
**license** [1] - 43:20
**lied** [1] - 40:25
**life** [5] - 40:2, 50:10, 50:13, 56:23, 57:1
**light** [3] - 3:3, 5:4, 60:1
**like-minded** [1] - 29:15
**likely** [5] - 14:14, 42:22, 43:13, 56:20, 60:12
**limited** [3] - 4:16, 27:24, 43:2
**line** [2] - 24:25, 40:1
**lines** [1] - 36:17
**Lisa** [1] - 1:20
**LISA** [1] - 67:3
**literally** [2] - 23:3, 53:2
**live** [1] - 56:25
**lives** [1] - 32:12
**Liz** [1] - 2:7
**location** [2] - 16:25, 17:9
**look** [3] - 38:13, 52:22, 63:18
**looked** [3] - 6:21, 9:21,

54:10
**looking** [5] - 9:14, 9:20, 47:23, 48:12, 52:20
**lost** [5] - 10:25, 25:11, 51:5, 51:6
**low** [4] - 54:9, 54:10, 54:13, 60:18
**luck** [1] - 66:7
**lunches** [1] - 24:10
**lying** [1] - 40:20

### M

**magnitude** [2] - 30:20, 63:8
**maker** [1] - 55:20
**makers** [2] - 53:12
**man** [16] - 21:9, 21:10, 48:15, 50:5, 50:8, 50:10, 50:12, 51:3, 51:9, 51:12, 51:17, 52:17, 53:18
**manager** [2] - 19:7, 19:24
**March/April** [1] - 26:1
**Mark** [1] - 2:13
**MARK** [1] - 1:17
**marshal** [1] - 57:9
**MARSHAL** [1] - 57:11
**masks** [3] - 11:25, 40:5, 61:24
**mastermind** [1] - 49:15
**material** [1] - 16:20
**materialized** [2] - 4:13, 58:3
**materials** [2] - 4:18, 43:12
**math** [1] - 24:18
**Mathews** [1] - 16:17
**matter** [3] - 26:7, 27:14, 33:12
**mean** [15] - 20:13, 20:19, 21:19, 23:12, 35:23, 37:18, 49:3, 52:20, 52:21, 54:7, 54:20, 54:21, 54:24, 58:19, 65:22
**meaning** [2] - 33:14, 40:15
**meaningful** [1] - 14:6
**meaningfully** [2] - 31:11, 31:16
**means** [2] - 16:9, 16:11
**media** [1] - 40:22
**member** [1] - 32:20
**members** [2] - 56:8,

56:13
**memo** [13] - 4:7, 4:20, 6:22, 6:24, 9:3, 16:5, 24:22, 25:5, 28:16, 41:9, 46:14, 55:11, 62:14
**memorandum** [4] - 9:9, 9:25, 21:14, 51:2
**memos** [1] - 4:4
**men** [7] - 11:7, 11:19, 11:24, 12:4, 12:6, 12:20
**mentally** [1] - 37:1
**mentioned** [1] - 40:18
**mentor** [1] - 19:19
**mere** [1] - 49:10
**messages** [3] - 13:13, 41:7, 43:5
**met** [1] - 26:10
**Metropolitan** [1] - 29:1
**Michael** [1] - 44:8
**midpoint** [1] - 45:15
**might** [4] - 20:7, 38:23, 56:20, 60:10
**military** [3] - 40:18, 40:21, 41:1
**mill** [1] - 34:16
**million** [1] - 32:14
**mind** [2] - 60:9, 65:24
**minded** [1] - 29:15
**mine** [2] - 13:21, 29:6
**minus** [1] - 24:19
**minutes** [3] - 21:8, 48:21, 57:13
**misdemeanor** [2] - 4:3, 34:5
**missing** [1] - 14:6
**mistake** [1] - 52:17
**mistaken** [1] - 10:7
**mob** [5] - 28:23, 29:2, 32:11, 32:20, 40:10
**moment** [3] - 11:2, 30:9, 31:3
**month** [1] - 37:10
**months** [21] - 5:22, 18:10, 26:2, 27:15, 31:6, 35:19, 36:10, 36:12, 37:3, 44:5, 44:23, 45:15, 45:16, 45:17, 54:24, 59:13, 60:17, 64:14, 64:15, 64:17
**Moreira** [2] - 1:20, 67:10
**MOREIRA** [1] - 67:3
**morning** [8] - 2:7, 2:13, 2:22, 2:23, 2:25, 6:1, 9:1, 28:5
**most** [9] - 14:8, 30:22,

40:1, 46:17, 47:24, 48:13, 51:20, 60:8, 62:7
**mostly** [1] - 48:15
**motion** [1] - 3:14
**motivations** [1] - 34:11
**Mount** [2] - 28:22, 40:24
**mountain** [1] - 57:1
**move** [3] - 3:11, 5:3, 35:4
**moved** [1] - 3:18
**moves** [1] - 3:16
**moving** [2] - 5:5, 18:19
**MR** [65] - 2:7, 2:13, 2:19, 3:16, 4:21, 4:24, 6:14, 7:1, 8:7, 10:12, 10:19, 10:22, 11:6, 12:10, 12:12, 12:14, 12:17, 14:16, 17:21, 18:2, 18:8, 19:3, 20:10, 20:18, 21:3, 21:7, 24:17, 24:20, 24:24, 25:6, 25:9, 25:11, 25:25, 26:3, 26:22, 26:25, 28:14, 28:19, 29:13, 31:10, 35:20, 36:13, 36:16, 36:24, 37:13, 37:23, 38:16, 45:1, 45:7, 45:12, 45:19, 45:25, 46:4, 46:11, 46:15, 46:21, 46:25, 52:20, 52:24, 54:7, 55:11, 55:22, 65:17, 65:19, 66:15
**MREs** [1] - 61:24
**MS** [1] - 42:18
**multiple** [2] - 5:20, 19:17
**must** [10] - 10:16, 19:25, 23:7, 26:11, 30:25, 31:2, 32:4, 33:9, 35:24, 59:25, 65:3

### N

**named** [2] - 11:18, 18:12
**namely** [2] - 7:23, 61:5
**narrowed** [1] - 3:7
**nation's** [1] - 30:22
**nature** [6] - 19:11, 19:14, 31:24, 39:5, 40:11, 49:17
**necessary** [5] - 16:11, 29:24, 37:4, 43:10, 63:19

**need** [5] - 12:9, 31:4, 43:14, 43:25, 58:6
**needed** [1] - 18:20
**neighbor** [13] - 9:11, 11:18, 15:4, 18:12, 21:23, 22:9, 22:15, 22:19, 22:23, 22:24, 23:18, 25:16, 47:14
**never** [9] - 9:11, 13:11, 14:12, 14:17, 26:6, 26:13, 26:14, 36:5
**nevertheless** [1] - 26:18
**New** [1] - 16:19
**new** [14] - 4:4, 7:3, 17:25, 20:24, 21:21, 28:5, 31:14, 46:23, 58:2, 58:5, 59:15, 59:18, 64:8, 65:9
**news** [1] - 40:21
**none** [2] - 50:25, 55:3
**noon** [1] - 57:13
**nose** [1] - 41:25
**note** [6] - 4:8, 16:4, 26:5, 26:15, 39:12, 44:3
**noted** [7] - 19:4, 30:3, 33:5, 33:21, 38:19, 38:22, 42:7
**notes** [2] - 23:6, 67:5
**nothing** [8] - 30:1, 34:14, 37:5, 37:6, 40:15, 43:11, 51:21, 54:16
**notice** [1] - 8:23
**notified** [1] - 13:3
**notwithstanding** [1] - 25:19
**novo** [6] - 4:9, 4:15, 20:25, 21:7, 25:13, 52:9
**number** [6] - 40:18, 60:4, 60:11, 63:11, 63:20, 64:7
**NW** [4] - 1:15, 1:18, 1:22, 67:12

**O**

**oath** [2] - 44:20, 44:21
**object** [1] - 24:14
**objecting** [1] - 20:16
**objections** [1] - 65:16
**objects** [1] - 16:4
**obstruction** [15] - 3:25, 5:15, 6:10, 7:22, 9:20, 11:3, 12:18, 13:23, 14:22, 15:15, 15:21, 34:16, 49:22, 58:14, 61:20

**obtain** [2] - 17:21, 18:7
**obtained** [1] - 17:24
**obviously** [6] - 17:19, 28:4, 28:12, 37:18, 45:20, 65:22
**occurred** [4] - 16:6, 18:11, 18:18, 56:16
**OF** [4] - 1:1, 1:3, 1:10, 67:1
**offend** [1] - 43:13
**offending** [1] - 43:11
**offense** [41] - 3:6, 5:11, 5:14, 5:19, 5:21, 6:8, 6:16, 6:19, 8:1, 8:2, 8:3, 9:17, 10:3, 10:8, 15:10, 18:18, 19:12, 19:18, 24:3, 31:12, 31:19, 31:22, 32:5, 33:11, 34:17, 34:20, 39:5, 39:13, 40:12, 42:11, 48:9, 58:9, 58:14, 59:7, 59:22, 59:23, 60:5, 60:13, 60:24, 61:2
**offenses** [3] - 32:16, 34:22, 65:12
**offhand** [1] - 17:22
**OFFICE** [1] - 1:14
**office** [6] - 2:24, 4:6, 5:9, 5:12, 9:3, 9:15
**officer** [7] - 11:9, 13:5, 29:17, 47:9, 47:11, 47:14, 48:2
**OFFICER** [5] - 2:23, 6:1, 8:17, 8:19, 9:1
**officers** [11] - 13:2, 29:1, 29:3, 32:14, 40:8, 43:9, 47:20, 47:21, 49:4, 49:8, 62:8
**OFFICIAL** [1] - 67:1
**official** [2] - 15:20, 67:11
**Official** [1] - 1:21
**old** [2] - 13:17, 18:5
**one** [25] - 4:8, 5:20, 6:3, 11:8, 11:22, 11:25, 12:1, 12:3, 15:2, 15:12, 29:9, 30:2, 32:17, 34:11, 34:22, 36:22, 37:7, 44:24, 46:5, 47:17, 47:21, 54:12, 62:25, 63:1, 63:16
**one-point** [1] - 5:20
**one..** [1] - 40:3
**open** [3] - 29:4, 29:8, 29:14
**operative** [1] - 8:2

**opportunity** [2] - 7:19, 62:20
**order** [3] - 26:11, 28:17, 54:4
**ordered** [3] - 15:3, 43:24, 64:18
**orders** [2] - 15:13, 43:16
**organization** [1] - 26:9
**organized** [1] - 19:18
**organizer** [9] - 5:13, 6:18, 19:6, 19:21, 24:2, 24:7, 24:11, 24:14, 58:14
**organizing** [1] - 19:14
**original** [12] - 3:6, 4:14, 5:1, 6:20, 10:25, 16:4, 35:18, 39:7, 40:17, 54:18, 55:2, 58:4
**originally** [3] - 24:25, 37:22, 54:1
**otherwise** [2] - 41:8, 61:16
**outset** [1] - 27:7
**outside** [4] - 58:22, 59:5, 61:23, 62:10
**overstated** [2] - 52:3, 59:22
**overtaken** [1] - 19:1
**overthrow** [2] - 50:5, 50:9
**overturn** [1] - 11:8
**own** [7] - 14:8, 34:8, 39:20, 40:5, 41:2, 44:15, 53:15

**P**

**p.m** [1] - 66:20
**packed** [1] - 24:10
**papers** [1] - 8:23
**part** [4] - 40:3, 61:7, 62:1, 63:23
**participant** [2] - 32:11, 44:17
**participate** [2] - 29:4, 62:20
**participated** [1] - 11:19
**participation** [6] - 14:18, 14:23, 17:1, 19:12, 19:14, 56:6
**particular** [4] - 9:22, 10:24, 19:5, 20:5
**particularly** [2] - 11:3, 16:5
**parties** [1] - 8:23
**partisan** [1] - 42:12
**parts** [1] - 5:6

**Pat** [3] - 11:19, 12:3, 12:16, 14:11, 14:13, 14:15, 14:16, 14:24, 15:4, 15:9, 15:11, 15:25, 17:16, 18:12, 18:13, 26:7, 26:14, 27:7, 27:12, 27:20, 27:23, 28:2
**Pat's** [6] - 14:18, 14:23, 18:7, 18:9, 25:23, 58:23
**patience** [1] - 57:18
**pause** [3] - 21:4, 35:6, 59:19
**pay** [2] - 64:18, 64:22
**peaceful** [6] - 28:24, 30:23, 32:16, 34:19, 56:25, 61:8
**penalize** [1] - 53:9
**people** [3] - 49:1, 49:4, 56:12
**perceive** [1] - 30:10
**percentage** [2] - 45:5, 45:18, 45:19
**perfectly** [1] - 64:5
**perhaps** [3] - 14:8, 60:8, 62:7
**period** [1] - 48:23
**permission** [2] - 2:15, 65:5, 65:14
**permits** [1] - 61:13
**permitted** [1] - 4:16
**person** [4] - 12:16, 13:6, 15:5, 39:9
**perspective** [1] - 7:6
**phone** [20] - 6:11, 7:24, 8:14, 13:6, 13:11, 13:17, 13:20, 17:19, 17:24, 17:25, 18:7, 19:22, 19:23, 20:17, 21:25, 22:1, 22:3, 27:5, 38:6, 38:7
**phones** [27] - 5:16, 7:17, 9:10, 12:22, 12:25, 13:9, 13:14, 14:14, 14:18, 17:3, 17:12, 18:5, 20:12, 20:20, 21:19, 22:11, 22:13, 22:17, 23:13, 23:15, 23:19, 23:20, 23:22, 25:16, 28:3, 41:7
**photo** [2] - 14:5, 48:18
**photos** [2] - 16:25, 17:8
**pick** [1] - 63:20
**picture** [2] - 11:22, 43:3
**pictures** [3] - 11:22,

12:25, 38:6
**place** [7] - 25:22, 47:11, 47:13, 53:23, 55:18, 60:18, 64:25
**Plaintiff** [1] - 1:4
**planning** [3] - 8:21, 60:5, 61:24
**plans** [1] - 12:6
**play** [3] - 5:24, 63:11
**plays** [1] - 36:1
**plea** [1] - 65:11
**plead** [1] - 14:22
**plus** [13] - 5:20, 6:18, 9:16, 9:17, 9:23, 10:5, 10:6, 23:2, 23:4, 24:13, 24:14, 24:15, 27:22
**plus-three** [5] - 9:16, 10:5, 23:2, 23:4, 24:15
**plus-two** [5] - 9:17, 9:23, 10:6, 24:13, 24:14
**point** [15] - 5:17, 5:20, 6:17, 16:1, 16:2, 18:18, 20:24, 23:1, 25:19, 27:24, 38:24, 49:12, 52:2, 54:14
**points** [5] - 5:13, 5:15, 37:2, 53:4
**Police** [2] - 29:1, 40:24
**police** [12] - 11:9, 13:2, 13:5, 14:3, 20:3, 28:22, 29:17, 32:13, 47:9, 47:14, 49:4, 49:8
**political** [1] - 43:3
**politics** [1] - 42:13
**port** [2] - 47:19, 47:21
**position** [9] - 8:9, 19:8, 24:8, 46:12, 47:6, 47:22, 54:20, 55:4
**positions** [1] - 56:11
**possessed** [1] - 43:23
**possession** [2] - 14:4, 18:12
**possibility** [2] - 51:13, 51:17
**post** [10] - 17:11, 33:4, 42:1, 42:7, 42:8, 42:11, 44:7, 52:5, 60:9, 62:7
**post-arrest** [4] - 42:1, 42:7, 42:8, 60:9
**post-Fischer** [2] - 33:4, 44:7
**post-offense** [1] - 42:11
**posture** [1] - 36:14

**potentially** [1] - 27:10
**power** [6] - 28:24, 30:24, 32:9, 32:17, 34:19, 61:8
**practice** [1] - 6:7
**pre** [1] - 25:23
**precisely** [2] - 12:17, 13:12
**premature** [3] - 22:18, 23:7, 27:1
**prematurely** [1] - 22:14
**prepared** [7] - 4:6, 9:3, 10:19, 20:5, 29:8, 29:9, 29:14
**presence** [1] - 60:4
**present** [1] - 21:22
**presentation** [1] - 17:23
**presented** [1] - 23:16
**pressed** [1] - 63:7
**presses** [1] - 7:15
**presumably** [1] - 17:5
**pretenses** [1] - 40:25
**pretrial** [1] - 25:24
**pretty** [3] - 20:19, 45:23, 45:25
**prevailing** [2] - 9:5, 10:2
**previous** [1] - 59:16
**previously** [3] - 38:19, 39:22, 45:3
**primary** [1] - 42:5
**principles** [4] - 32:18, 60:8, 62:3, 66:3
**prison** [4] - 41:12, 41:15, 41:18, 62:16
**Prisons** [1] - 64:13
**privilege** [1] - 45:8
**probable** [1] - 43:21
**PROBATION** [5] - 2:23, 6:1, 8:17, 8:19, 9:1
**probation** [12] - 2:24, 4:6, 5:7, 5:9, 5:12, 8:12, 9:2, 9:4, 9:15, 9:19, 24:25, 35:13
**probation's** [3] - 5:23, 8:9, 25:2
**probative** [14] - 7:23, 8:15, 9:18, 11:3, 16:3, 16:6, 16:9, 16:12, 16:23, 16:24, 17:12, 20:16, 24:13, 58:11
**problematic** [1] - 13:15
**proceed** [3] - 3:19, 28:2, 28:5
**proceeding** [5] - 9:13,

11:1, 15:20, 18:21, 59:14
**proceedings** [1] - 67:6
**process** [3] - 18:7, 34:18, 63:23
**processes** [1] - 32:22
**productively** [1] - 41:18
**programming** [1] - 40:15
**programs** [3] - 62:16, 62:21, 66:9
**promise** [1] - 57:2
**promote** [1] - 43:14
**proof** [1] - 16:13
**proper** [1] - 51:16
**properly** [1] - 56:19
**proportion** [1] - 49:24
**proposed** [2] - 6:5, 7:3
**proposes** [2] - 6:17, 7:8, 7:21
**prosecute** [1] - 25:16
**prosecuting** [1] - 37:25
**prosecution** [4] - 9:12, 14:7, 17:16, 27:14
**proved** [2] - 17:15, 29:16
**proven** [1] - 47:17
**provide** [1] - 63:22
**provisions** [3] - 28:8, 36:11, 64:10
**public** [1] - 50:11
**punishment** [4] - 31:21, 33:10, 33:13, 61:2
**purported** [1] - 41:11
**purpose** [5] - 19:23, 44:17, 58:20, 60:5, 61:25
**purposes** [4] - 15:20, 29:25, 64:6, 66:1
**pursuant** [3] - 5:11, 64:9, 65:1
**pursue** [1] - 23:10
**put** [5] - 13:10, 45:13, 49:2, 55:19, 66:9
**puts** [1] - 61:22
**putting** [1] - 23:3

**Q**

**questioned** [2] - 41:23, 42:3
**questions** [4] - 20:6, 22:2, 35:5, 53:21
**quickly** [1] - 32:2
**quite** [3] - 15:18, 31:10, 40:14
**quote** [3] - 7:23, 16:16,

32:21

**R**

**radicalization** [1] - 39:9
**raise** [3] - 6:24, 7:4, 22:16
**raised** [2] - 21:13, 22:22
**raising** [1] - 7:3
**range** [29] - 5:4, 5:22, 8:5, 8:10, 35:18, 35:23, 36:1, 36:8, 36:9, 36:23, 37:22, 45:6, 45:15, 53:25, 54:22, 58:5, 58:7, 59:8, 59:13, 59:18, 60:18, 60:20, 60:22, 61:13, 61:16, 61:17, 62:11, 63:3
**Ranger** [2] - 40:22, 40:23
**rarely** [1] - 10:18
**rather** [1] - 4:10
**rationale** [2] - 10:15, 53:15
**RDR** [3] - 1:20, 67:3, 67:10
**read** [3] - 42:11, 51:11, 62:14
**readily** [1] - 49:4
**reading** [2] - 55:1, 55:2
**real** [1] - 62:5
**reality** [2] - 37:19, 37:20
**realize** [1] - 56:11
**really** [7] - 32:6, 36:10, 42:12, 47:15, 52:18, 53:2, 63:2
**realm** [1] - 24:9
**reason** [7] - 13:24, 23:2, 31:5, 34:25, 37:13, 59:1, 61:3
**reasonable** [2] - 62:25, 64:6
**reasonably** [1] - 36:16
**reasoning** [1] - 38:25
**reasons** [8] - 15:2, 15:12, 15:21, 36:3, 44:22, 54:3, 54:12, 63:15
**rebellion** [6] - 29:5, 29:8, 29:14, 38:8, 39:18, 46:8
**rebuild** [1] - 57:1
**recalculated** [1] - 31:11
**receive** [1] - 19:7

**received** [4] - 26:13, 29:24, 44:7, 65:10
**recent** [2] - 9:8, 44:6
**recess** [1] - 57:8
**Recess** [1] - 57:14
**recognized** [1] - 54:13
**recommendation** [7] - 6:12, 10:16, 24:19, 35:15, 35:16, 35:18, 59:12
**recommended** [4] - 37:21, 45:16, 45:20, 63:10
**recommending** [1] - 45:6
**reconvene** [1] - 57:12
**record** [14] - 2:3, 2:6, 7:23, 8:15, 9:18, 20:16, 24:14, 40:7, 40:14, 40:20, 57:16, 58:11, 59:10, 66:12
**records** [5] - 16:12, 21:25, 22:1, 22:3, 26:2
**recover** [2] - 17:7, 18:1
**recovered** [3] - 9:11, 14:12, 26:6
**recruited** [4] - 11:7, 11:17, 12:7, 19:17
**recruitment** [2] - 19:12, 58:15
**redo** [1] - 57:22
**reduce** [1] - 30:6
**Reffitt** [2] - 44:2
**reflect** [7] - 31:21, 31:23, 33:13, 44:12, 44:18, 56:8, 61:1
**reflected** [3] - 4:7, 31:1, 41:15
**reflects** [2] - 34:14, 40:8
**Reform** [1] - 64:9
**regard** [4] - 39:5, 40:13, 41:22, 43:14
**regarding** [7] - 20:17, 20:20, 20:23, 22:2, 22:25, 24:4, 24:6
**regardless** [3] - 35:25, 50:9, 61:9
**regular** [1] - 51:8
**rehabilitation** [1] - 62:19
**reimpose** [1] - 66:17
**reiterate** [1] - 25:12
**rejected** [2] - 3:4, 59:11
**related** [2] - 13:25, 14:5
**relatedly** [2] - 58:4,

59:17
**relates** [5] - 8:14, 15:23, 15:24, 33:24, 36:25
**relationship** [1] - 20:2
**relatively** [1] - 10:18
**release** [3] - 15:1, 29:21, 64:17
**relevance** [1] - 30:11
**relevant** [6] - 14:10, 19:9, 26:20, 52:18, 57:20, 61:14
**relook** [1] - 28:7
**remain** [2] - 58:19, 64:25
**remaining** [2] - 3:20, 3:21
**remains** [1] - 64:8
**remand** [7] - 3:3, 3:10, 4:12, 4:13, 5:4, 26:20, 52:12
**remember** [3] - 17:25, 18:9, 48:22
**remind** [4] - 11:2, 17:17, 29:6, 39:7
**reminding** [1] - 43:19
**remorse** [1] - 60:14
**removed** [4] - 9:6, 10:3, 15:9, 25:17
**renewed** [1] - 41:10
**reoffend** [1] - 42:4
**reoffending** [1] - 57:4
**repeat** [1] - 57:23
**repeatedly** [1] - 30:21
**report** [1] - 43:22
**reported** [1] - 24:25
**Reporter** [3] - 1:20, 1:21, 67:11
**REPORTER** [2] - 42:17, 67:1
**represented** [1] - 61:15
**republic** [1] - 39:23
**request** [4] - 28:15, 55:14, 65:5, 65:14
**requested** [2] - 46:16, 54:24
**require** [1] - 30:6
**required** [2] - 32:8, 61:7
**requires** [2] - 38:25, 42:9
**rereading** [1] - 54:8
**resentence** [2] - 3:19, 31:5
**resentenced** [1] - 44:3
**RESENTENCING** [1] - 1:10
**resentencing** [10] - 3:2, 4:11, 5:7, 7:4,

26:19, 41:9, 45:10,
58:22, 59:5
**resentencings** [2] -
4:8, 45:13
**resolution** [1] - 22:11
**resolve** [1] - 52:19
**resources** [4] - 27:4,
27:11, 27:21, 27:25
**respect** [2] - 43:15,
59:24
**respond** [2] - 6:5,
25:19
**responsibility** [1] -
60:14
**restitution** [2] - 66:13,
66:18
**restricted** [2] - 3:22,
3:23
**result** [4] - 4:12, 24:23,
26:20, 52:11
**resulted** [4] - 30:17,
32:5, 32:14, 61:4
**results** [8] - 5:21, 8:1,
8:4, 11:8, 24:23,
31:19, 59:8, 60:24
**retard** [1] - 13:20
**reveal** [1] - 26:4
**review** [4] - 4:9, 9:8,
26:18, 59:19
**reviewed** [1] - 4:4
**revised** [3] - 4:5, 5:9,
9:3
**rid** [4] - 15:3, 21:18,
22:13, 22:17
**riot** [2] - 2:10, 33:17
**ROBERTSON** [1] - 1:6
**Robertson** [46] - 1:17,
2:4, 2:14, 2:21, 3:12,
3:20, 5:13, 8:3, 11:6,
11:13, 11:18, 11:25,
12:6, 12:22, 13:3,
13:5, 13:13, 14:3,
14:13, 14:25, 15:9,
15:11, 15:17, 15:24,
17:24, 20:2, 24:5,
27:6, 27:9, 28:21,
31:12, 31:16, 32:10,
34:17, 43:6, 43:9,
47:8, 49:9, 50:15,
51:1, 55:23, 57:17,
57:19, 58:13, 64:12,
66:7
**Robertson's** [12] - 3:1,
14:7, 26:9, 31:25,
34:1, 34:2, 34:6,
34:14, 34:23, 43:7,
44:1, 59:23
**Rocky** [2] - 28:22,
40:24
**role** [8] - 10:7, 18:22,

19:5, 24:4, 36:1,
50:25, 58:12, 63:12
**roles** [3] - 49:2, 50:22,
63:11
**Rollins** [13] - 2:14,
2:20, 4:18, 7:5,
10:11, 20:9, 46:10,
46:20, 51:25, 56:1,
57:19, 62:14, 65:18
**ROLLINS** [25] - 1:17,
1:18, 2:13, 2:19,
4:21, 20:10, 20:18,
21:3, 21:7, 24:17,
24:20, 24:24, 25:6,
25:9, 25:11, 46:11,
46:15, 46:21, 46:25,
52:20, 52:24, 54:7,
55:11, 55:22, 65:19
**room** [1] - 27:18
**Room** [2] - 1:21, 67:12
**ROSEN** [1] - 1:14
**Rosen** [1] - 2:9
**roughly** [1] - 22:6
**routinely** [1] - 51:7
**rule** [10] - 29:20,
34:21, 41:25, 43:15,
49:25, 53:11, 53:13,
55:18, 55:19
**run** [1] - 34:16
**run-of-the-mill** [1] -
34:16

# S

**sacred** [1] - 30:23
**salt** [1] - 41:13
**Samayoa** [1] - 16:15
**sat** [1] - 22:8
**satisfied** [1] - 66:14
**saw** [7] - 13:11, 13:12,
13:13, 39:22, 50:3,
50:23, 54:11
**scarce** [1] - 51:3
**scene** [1] - 61:25
**science** [1] - 64:4
**scope** [4] - 19:15,
27:23, 58:22, 59:5
**score** [3] - 54:9, 54:12,
55:5
**scores** [4] - 49:16,
51:19, 54:21, 55:7
**scoring** [2] - 25:1,
25:2
**searched** [1] - 13:6
**second** [8] - 16:1,
16:2, 21:4, 28:1,
33:9, 37:13, 45:9,
66:7
**second-guess** [1] -
37:13

**Section** [6] - 5:14,
31:15, 34:4, 60:23,
61:9
**see** [10] - 2:11, 2:20,
2:21, 4:19, 11:24,
17:3, 18:3, 51:23,
56:12, 66:8
**selection** [1] - 9:17
**self** [2] - 13:4, 13:8
**self-surrender** [2] -
13:4, 13:8
**selfie** [1] - 11:14
**Senate** [1] - 48:19
**sentence** [32] - 29:24,
30:6, 31:23, 33:3,
36:2, 37:10, 37:21,
38:23, 39:1, 41:16,
43:10, 44:2, 44:5,
44:23, 45:16, 46:4,
49:7, 52:13, 52:14,
53:15, 55:24, 58:4,
59:11, 59:17, 62:24,
63:24, 63:25, 64:5,
64:25, 65:2, 65:8,
65:16
**sentenced** [3] - 44:6,
50:18, 64:16
**sentences** [5] - 31:1,
49:3, 49:5, 63:13,
65:24
**Sentencing** [2] -
33:15, 64:9
**sentencing** [63] - 3:6,
4:4, 4:5, 4:14, 4:15,
5:1, 5:4, 6:20, 6:22,
6:24, 7:4, 8:5, 8:21,
9:9, 11:1, 11:23,
16:5, 18:24, 19:4,
22:22, 23:6, 24:3,
24:22, 25:21, 26:24,
28:10, 28:16, 29:22,
29:25, 30:12, 30:15,
33:5, 34:10, 35:12,
36:25, 37:6, 38:11,
38:18, 39:8, 39:13,
40:17, 42:1, 42:11,
42:25, 43:12, 43:25,
48:15, 52:8, 54:16,
54:19, 55:3, 56:18,
57:3, 57:21, 58:3,
58:23, 59:8, 59:14,
62:25, 64:6, 64:11,
65:12
**separate** [4] - 7:21,
18:20, 42:8, 60:13
**September** [2] - 1:4,
67:8
**sergeant** [1] - 28:22
**serious** [1] - 48:11
**seriously** [1] - 33:2

**seriousness** [5] -
29:23, 31:1, 39:12,
59:23, 60:6
**serve** [1] - 64:16
**served** [2] - 40:19,
51:10
**service** [3] - 40:18,
40:21, 50:11
**set** [3] - 3:2, 17:21,
18:19
**Seventh** [1] - 1:18
**several** [4] - 15:2,
18:10, 38:19, 38:21
**share** [1] - 39:21
**shared** [1] - 44:9
**sheets** [1] - 50:17
**Sherry** [1] - 2:24
**shipped** [1] - 43:19
**short** [1] - 48:23
**shortly** [1] - 47:10
**show** [2] - 11:21,
55:18
**showed** [6] - 12:21,
17:2, 17:18, 20:1,
28:25, 29:19
**shown** [1] - 43:15
**sic** [2] - 28:24, 44:4
**sick** [1] - 41:5
**sides** [1] - 4:5
**significance** [2] - 60:6,
62:2
**significant** [12] -
27:21, 30:17, 31:20,
32:5, 37:2, 43:10,
46:1, 46:2, 50:25,
53:4, 60:25, 61:5
**significantly** [3] -
14:9, 33:1, 62:7
**similar** [1] - 45:17
**similarly** [1] - 16:19
**simply** [1] - 26:5
**sincerely** [1] - 42:21
**single** [2] - 17:11,
47:20
**sitting** [1] - 36:4
**six** [2] - 29:18, 64:15
**slate** [3] - 35:11,
35:12, 63:5
**slides** [1] - 39:21
**slim** [1] - 51:17
**Slow** [1] - 42:16
**slow** [2] - 29:11, 42:17
**soapbox** [1] - 39:24
**someplace** [1] - 54:6
**sorry** [4] - 29:13,
42:18, 56:14, 56:15
**sort** [11] - 10:24, 21:9,
21:13, 25:15, 45:2,
53:9, 53:12, 53:14,
55:3, 59:2, 63:21

**sorts** [1] - 62:18
**sought** [1] - 18:7
**Sparks** [2] - 35:2, 44:8
**speaking** [2] - 21:9,
21:10
**speaks** [1] - 20:12
**special** [2] - 16:3,
64:18
**specially** [1] - 20:16
**specific** [6] - 6:19,
31:12, 34:2, 34:19,
42:9, 50:8
**specifically** [5] - 9:9,
15:16, 18:23, 32:16,
33:24
**speculation** [2] -
23:19, 23:25
**spend** [1] - 20:10
**spent** [2] - 40:1, 50:13
**squarely** [4] - 15:19,
16:22, 32:1, 37:16
**stadium** [1] - 48:22
**staffers** [1] - 32:12
**stage** [1] - 3:2
**stand** [7] - 25:17, 26:4,
37:9, 48:2, 55:25,
56:15, 56:21
**standards** [1] - 16:22
**stands** [1] - 39:23
**start** [6] - 5:6, 29:9,
29:14, 35:25, 46:8,
63:13
**started** [3] - 11:12,
39:10, 47:7
**starting** [2] - 2:6, 39:6
**state** [3] - 31:18,
35:21, 41:8
**statements** [9] - 29:7,
34:8, 42:8, 42:12,
49:20, 50:9, 52:6,
60:9, 62:8
**STATES** [4] - 1:1, 1:3,
1:11, 1:14
**States** [8] - 1:13, 2:3,
2:8, 16:15, 16:17,
34:24, 57:17, 67:11
**stating** [1] - 43:7
**status** [1] - 40:23
**stay** [1] - 66:13
**stayed** [2] - 48:20,
48:21
**stays** [1] - 48:23
**stenographic** [1] -
67:5
**stick** [7] - 12:9, 40:6,
40:9, 47:18, 47:21,
48:6
**still** [6] - 9:4, 26:1,
30:5, 49:9, 49:14,
51:6

**stolen** [1] - 42:20
**stood** [1] - 36:17
**stop** [3] - 8:8, 23:9, 23:10
**stopped** [1] - 22:14
**straddle** [1] - 38:21
**strangers** [1] - 56:13
**Street** [2] - 1:15, 1:18
**strike** [1] - 40:8
**struggling** [1] - 35:7
**stuck** [1] - 52:9
**submission** [2] - 39:8, 40:17
**submitted** [4] - 4:5, 4:19, 35:2, 43:7
**subordinate** [1] - 11:9
**subpoena** [1] - 21:25
**substantial** [17] - 7:9, 7:10, 8:12, 12:18, 14:2, 20:23, 21:11, 21:20, 23:4, 23:9, 24:15, 27:1, 36:19, 38:4, 45:24, 45:25, 58:17
**substantially** [3] - 15:22, 23:22, 53:16
**successfully** [1] - 11:7
**suffering** [1] - 39:9
**suggest** [3] - 24:7, 41:12, 51:16
**suggested** [1] - 30:15
**suggesting** [1] - 42:5
**suggests** [2] - 23:6, 43:12, 51:21
**sum** [1] - 44:11
**summarize** [1] - 24:12
**summoned** [2] - 13:9, 19:22
**supervised** [1] - 64:17
**supervising** [1] - 2:9
**supervision** [1] - 64:24
**supervisor** [2] - 19:7, 19:24
**supplement** [1] - 17:22
**supplemental** [1] - 35:3
**supported** [2] - 31:15, 44:5
**Supreme** [1] - 33:18
**surrender** [2] - 13:4, 13:8
**surrounding** [2] - 11:2, 13:22
**swim** [1] - 13:18

## T

**table** [3] - 2:8, 2:16,

60:1
**tangible** [1] - 16:4
**targeted** [1] - 32:16
**team** [1] - 27:25
**technically** [1] - 61:10
**temporarily** [1] - 32:22
**terminal** [1] - 39:9
**termination** [4] - 22:18, 23:8, 23:14, 27:2
**terms** [6] - 24:2, 25:12, 59:3, 64:14, 64:16, 66:1
**tether** [1] - 63:22
**tethering** [1] - 63:12
**text** [4] - 13:13, 41:7, 43:5, 58:20
**THE** [94] - 1:1, 1:1, 1:10, 2:2, 2:11, 2:18, 2:20, 2:22, 2:23, 2:25, 3:18, 4:22, 5:2, 6:1, 6:2, 6:15, 7:2, 8:8, 8:17, 8:18, 8:19, 8:20, 9:1, 10:9, 10:14, 10:21, 11:5, 12:8, 12:11, 12:13, 12:15, 14:15, 17:17, 17:25, 18:6, 19:2, 20:8, 20:15, 21:2, 21:4, 24:12, 24:18, 24:21, 25:4, 25:7, 25:10, 25:18, 26:1, 26:16, 26:23, 28:4, 28:18, 29:11, 31:9, 35:6, 35:21, 36:15, 36:20, 37:12, 37:18, 38:15, 42:16, 42:17, 44:24, 45:2, 45:11, 45:13, 45:20, 46:3, 46:9, 46:13, 46:19, 46:22, 51:25, 52:23, 53:24, 55:10, 55:21, 55:23, 55:25, 56:1, 56:3, 56:4, 56:5, 57:5, 57:6, 57:7, 57:11, 57:12, 57:15, 57:18, 65:18, 65:21, 66:17
**themselves** [1] - 11:14
**theories** [2] - 42:15, 42:20
**thereafter** [1] - 47:10
**therefore** [3] - 53:14, 61:16, 64:22
**they've** [1] - 51:20
**thinking** [1] - 59:20
**third** [6] - 12:3, 12:16, 14:10, 21:9, 21:10, 66:8
**THOMAS** [1] - 1:6

**Thomas** [3] - 2:4, 57:17, 64:12
**threatened** [1] - 32:12
**threatening** [1] - 39:14
**three** [18] - 7:8, 7:25, 9:16, 10:5, 11:19, 11:24, 12:4, 12:6, 12:20, 14:1, 23:2, 23:4, 24:15, 40:16, 47:2, 51:10, 58:16, 59:11
**three-level** [2] - 14:1, 58:16
**thrown** [1] - 49:5
**thumbed** [1] - 41:25
**Tim** [1] - 2:15
**today** [20] - 4:25, 10:20, 21:9, 21:17, 21:22, 22:12, 22:17, 23:17, 25:14, 26:4, 30:1, 37:9, 39:1, 41:20, 43:13, 52:5, 52:19, 54:4, 54:24, 55:11
**together** [2] - 26:10, 49:2
**took** [5] - 13:9, 13:18, 25:22, 47:11, 47:13
**tools** [2] - 33:20, 51:14
**top** [1] - 17:14
**total** [2] - 10:8, 64:20
**totality** [1] - 38:13
**totally** [1] - 42:8
**towards** [1] - 16:13
**track** [1] - 40:20
**trafficking** [1] - 29:21
**tragic** [1] - 13:19
**trained** [2] - 29:15, 29:17
**training** [2] - 14:3, 28:25
**transcript** [8] - 21:15, 42:25, 44:9, 51:11, 54:8, 55:2, 67:5, 67:6
**TRANSCRIPT** [1] - 1:10
**transfer** [2] - 32:17, 61:8
**transition** [4] - 28:24, 30:23, 32:9, 34:19
**treat** [1] - 34:15
**treated** [1] - 31:2
**trial** [25] - 3:13, 11:23, 12:5, 12:9, 12:12, 12:16, 12:21, 13:12, 14:19, 14:20, 18:10, 18:18, 20:1, 20:19, 21:24, 22:5, 22:22, 27:16, 27:17, 27:22,

27:25, 29:18, 47:3, 47:17, 60:15
**tried** [1] - 50:11
**troubled** [1] - 38:24
**true** [7] - 26:17, 29:16, 30:1, 32:7, 33:11, 67:4, 67:6
**truth** [1] - 40:14
**try** [3] - 8:23, 57:1, 63:4
**trying** [9] - 20:24, 21:22, 22:16, 48:16, 50:5, 50:8, 53:19, 55:8
**turn** [4] - 10:22, 31:7, 32:3, 38:16
**turning** [2] - 16:1, 27:9
**two** [47] - 3:4, 5:13, 5:15, 5:17, 6:2, 6:17, 6:19, 7:21, 8:12, 8:14, 8:16, 9:5, 9:17, 9:23, 10:6, 11:7, 11:24, 16:1, 16:2, 16:14, 18:19, 20:11, 20:16, 22:4, 22:6, 24:13, 24:14, 27:13, 29:2, 35:12, 40:8, 41:10, 44:6, 48:11, 51:6, 58:10, 58:12, 60:22, 61:21
**two-level** [4] - 7:21, 8:14, 58:10, 58:12
**two-point** [4] - 5:17, 6:17, 16:1, 16:2
**type** [4] - 15:19, 48:1, 50:24
**types** [2] - 26:11, 49:20
**typical** [5] - 61:15, 61:19, 61:20, 61:23, 62:10

## U

**U.S** [5] - 1:21, 3:3, 3:7, 28:23, 57:11
**ultimate** [1] - 6:12
**ultimately** [3] - 27:17, 29:2, 29:16
**unable** [2] - 65:4, 65:13
**unaffected** [1] - 42:2
**unavailable** [1] - 65:9
**unclear** [1] - 59:4
**under** [24] - 3:25, 4:16, 5:14, 5:18, 6:15, 6:18, 7:9, 7:22, 9:6, 10:5, 10:6, 16:21, 16:23, 30:12, 30:14, 31:15, 34:25, 38:1,

40:25, 43:20, 58:10, 58:17, 60:23, 61:13
**underlying** [2] - 15:10, 17:13
**understatement** [1] - 47:16
**understates** [1] - 54:2
**understood** [3] - 18:11, 28:1, 46:9
**undue** [1] - 63:16
**uniform** [1] - 66:6
**unique** [1] - 38:20
**united** [1] - 11:14
**UNITED** [4] - 1:1, 1:3, 1:11, 1:14
**United** [8] - 1:13, 2:3, 2:8, 16:15, 16:17, 34:24, 57:16, 67:11
**universe** [1] - 17:8
**unless** [2] - 35:5, 45:22
**unnecessary** [2] - 27:3, 63:16
**unprecedented** [3] - 30:22, 32:11, 38:5
**up** [11] - 10:17, 26:10, 35:15, 44:16, 46:14, 49:24, 53:13, 53:15, 55:25, 56:1, 63:8
**uphold** [1] - 44:21
**uploaded** [1] - 17:6
**upset** [2] - 48:13, 49:11
**upward** [36] - 28:16, 30:11, 30:13, 30:16, 31:7, 31:14, 31:18, 34:25, 35:8, 35:17, 36:10, 36:21, 36:25, 37:1, 37:16, 37:17, 38:1, 38:2, 38:20, 39:4, 44:7, 45:18, 45:21, 45:24, 46:1, 46:12, 46:16, 47:6, 51:22, 54:4, 55:14, 60:22, 61:13, 62:23, 63:7
**upwardly** [1] - 61:12
**upwards** [3] - 58:5, 59:18, 66:2
**urging** [1] - 25:7
**USC** [5] - 3:8, 64:10, 64:20, 65:1, 65:7
**utmost** [1] - 29:23
**utter** [1] - 29:20

## V

**variance** [12] - 30:13, 35:9, 37:1, 38:1, 38:20, 39:4, 60:22,

60:24, 62:23, 63:7, 63:10
**variety** [2] - 36:3, 54:3
**vary** [3] - 58:5, 59:18, 60:3
**verdict** [3] - 34:8, 41:8, 65:2
**versus** [1] - 9:13
**video** [4] - 12:24, 14:5, 50:2, 50:3
**videos** [2] - 16:24, 17:8
**view** [4] - 30:7, 36:6, 54:6, 60:12
**violated** [1] - 44:21
**violation** [3] - 15:1, 15:13, 43:22
**violence** [10] - 39:6, 39:11, 39:15, 39:19, 43:1, 43:4, 43:8, 44:15, 44:19
**violent** [2] - 40:10, 44:14
**Virginia** [2] - 28:22, 43:20
**visibility** [1] - 15:8
**vote** [2] - 3:9, 33:6
**votes** [1] - 32:7
**vs** [1] - 1:5

# W

**waiver** [2] - 7:7
**waives** [1] - 64:22
**walking** [2] - 47:18, 47:19
**war** [1] - 42:13
**warrant** [1] - 38:20
**warranted** [5] - 30:16, 31:19, 37:16, 60:22, 63:19
**warrants** [3] - 13:3, 39:4, 41:21
**Washington** [4] - 1:15, 1:19, 1:22, 67:13
**ways** [2] - 39:3, 41:24
**weapon** [5] - 3:22, 3:24, 48:5, 48:7, 54:14
**weapons** [1] - 61:24
**wearing** [1] - 11:25
**Wednesday** [1] - 1:4
**week** [1] - 35:3
**weeks** [4] - 22:4, 22:6, 25:23
**weigh** [1] - 7:19
**weight** [1] - 23:3
**whatnot** [1] - 40:6
**whatsoever** [1] - 42:21
**white** [1] - 65:25

**wholly** [2] - 31:14, 35:1
**wife** [1] - 51:6
**wife's** [1] - 41:4
**wiggle** [1] - 27:18
**wildly** [1] - 41:6
**willing** [2] - 32:10, 44:17
**Wilson** [1] - 44:9
**wisely** [1] - 41:15
**wish** [2] - 4:25, 28:17
**wishes** [1] - 28:14
**witness** [1] - 22:24
**women** [1] - 41:5
**word** [3] - 14:24, 18:22, 24:23
**words** [14] - 8:11, 13:21, 29:5, 32:24, 35:21, 36:21, 38:9, 39:20, 40:24, 42:25, 44:15, 51:23, 55:15
**world** [1] - 27:24
**worst** [1] - 49:21
**worth** [1] - 43:19
**writing** [3] - 35:10, 35:11, 63:5
**written** [2] - 4:23, 19:5

# Y

**year** [3] - 18:16, 18:17, 48:10
**years** [6] - 35:12, 40:16, 40:19, 47:9, 51:10, 61:7
**York** [1] - 16:19
**yourself** [3] - 36:24, 37:3, 41:22
**yourselves** [1] - 2:5

# Z

**zero** [1] - 54:11